# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

DONALD E. REID
302 351 9219
302 425 3001 FAX
dreid@mnat.com

April 3, 2006

**VIA ELECTRONIC FILING**

The Honorable Kent A. Jordan
United States District Court
 for the District of Delaware
844 King Street
Wilmington, DE  19801

Re:   Novozymes A/S v. Genencor International, Inc., et al.
       C.A. No. 05-160 (KAJ)

Dear Judge Jordan:

We write on behalf of defendants Genencor and EDC in response to plaintiff Novozymes' letter of March 31.  Novozymes requests that the Court make a factual finding that the protein sequence of G-ZYME(R)G997 is that reported with the 4th Jorgenson Declaration and further requests that the 4th Jorgenson Declaration be admitted as evidence and added to the trial record.  Defendants respectfully submit that both requests should be denied.

It is important to recall that this lingering issue is one of Novozymes' own creation.  Novozymes filed suit the day the '031 patent issued, asserting claims that required the comparison of the accused SPEYME(R)Ethyl to a "parent B. stearothermophilus alpha-amylase".  As its March 31 letter makes clear, Novozymes' proposed claim construction requires it to prove the protein sequence of the alleged "parent", Genencor's G-ZYME(R)G997 product[1] in order to prove infringement.  Novozymes has known from the very beginning of this case that it needed to prove the protein sequence of the alleged parent, and has known almost as long that

---

[1]   The Court is well aware that defendants do not agree that G-ZYME(R)G997 is a "parent B. stearothermophilus alpha-amylase", as that term is properly construed; defendants here assume the case as defined by Novozymes simply for purposes of addressing the issues raised by the March 31 letter.

The Honorable Kent A. Jordan
April 3, 2006
Page 2

SPEZYME(R) Ethyl was derived from G997. Not surprisingly, Novozymes requested and Genencor produced last summer the documents relating to this issue (eg, the "Judy Chang memo", TE 161), all before the close of expedited discovery regarding the motion for preliminary injunction.

Novozymes even used TE 161 at depositions (at least those of Genencor employee Douglas Crabb and expert Thomas Alber), making it clear it was aware of the issues regarding the protein sequence of G-ZYME G997 long ago. Yet, since last summer, Novozymes has done little to pursue the issue. It never sought follow-up discovery regarding the sequence of G-ZYME(R)G997. It never asked for the deposition of Judy Chang. Nor did it do anything to establish the sequence of G-ZYME(R)G997 other than, at the last minute, providing additional Jorgenson declarations (actually prepared months/weeks before they were provided to defendants) and demanding that defendants stipulate that the sequence Jorgenson identified is "the" sequence of G-ZYME G997.

For the same reasons defendants refused that stipulation then, they refuse it now. So too should the Court refuse to find as a matter of fact that the sequence provided with the 4th Jorgenson Declaration is "the" protein sequence of G-ZYME G997, or that there is any single sequence. The most important reason is the evidence provided at trial by Novozymes itself of multiple different protein sequences of the alpha-amylases produced by strain G997 and strain ATCC 31,395, all of which are expressed from genes that encode the same protein. Even Dr. Jorgenson admitted at trial that he could not say he knew "the" protein sequence of G-ZYME G997, that all samples would have the same sequence, or that the sequence would stay the same over time.[2] Dr. Alber explained at length why industrial processing, including fermentation, would cause variations in the protein sequence of products such as G-ZYME G997. In the end, there is no single, verifiable, unchanging protein sequence for G-ZYME G997, and Novozymes' proposed finding of fact should be rejected. At a minimum, that proposed finding of fact should be rejected on the limited basis offered with the March 31 letter, the 4th Jorgenson Declaration. This is a core issue in the case (under Novozymes' construction) and should be decided only on consideration of the complete trial record and argument, for which there is a schedule and which the parties are busily preparing.

Defendants are not attempting to unfairly limit the record on this point by refusing to stipulate to admissibility of the 4th Jorgenson Declaration (it is plainly hearsay, and Novozymes did not event attempt to offer its predecessor declarations at trial). As the March 31 letter recites, defendants are prepared to stipulate that the sequence reported with the 4th Jorgenson Declaration is one Dr. Jorgenson did obtain based on the sample provided by Genencor and in a manner consistent with that described in TE 206, already in the record (thus,

---

[2]    Dr. Jorgenson did admit that the sequence of the full length, mature protein encoded by the DNA would not be so uncertain or variable.

The Honorable Kent A. Jordan
April 3, 2006
Page 3

there is no need for additional testimony). While defendants disagree with the conclusion asserted by Novozymes, they are prepared to address the issue on its merits.[3]

      Novozymes is improperly attempting to use a manufactured discovery issue to obtain a factual finding on a hotly disputed point. Defendants' alternative proposal permits the Court to decide the issue on a complete record. Defendants therefore respectfully submit that the Court should reject the factual finding and exhibit offered by Novozymes. We are available at the Court's convenience to discuss the issue, if necessary.

                                         Respectfully yours,

                                         Donald E. Reid (#1058)

DER/amr
cc:    Dr. Peter T. Dalleo, Clerk (Via Electronic Filing)
       Rolin P. Bissell, Esquire (Via Electronic Filing)
514282

---

[3]    The "chain of custody" issue is a red herring. Defendants' questions at trial were intended to establish that there is no single, certain sequence for any protein product, such as G-ZYME(r)G997, which has gone through industrial processing, fermentation and uncontrolled handling, over time. While that issue remains, there is no "chain of custody" issue now that Genencor has provided a sample of G-ZYME G997 and is prepared to stipulate as described above. The "chain of custody" issue would never have existed had Novozymes pursued discovery on this point in a less dilatory manner.