## SCHEDULE A

### DEFINITIONS

Unless otherwise indicted, Genencor incorporates herein the Definitions used in its First Set of Interrogatories and First Set of Document Requests.

As used herein, "the Novozymes Products" shall mean all of the products Novozymes listed in the spreadsheets it electronically produced to Genencor on June 26, 2006 namely: Liquozyme SC, Liquozyme SC-New Energy, Liquozyme SC DS, Liquozyme SC NX, Novozym 50067, Termamyl SC, and Termamyl SC DS.

As used herein, "in the U.S." refers to activities or events, including but not limited to the importation of products or services, that: (i) take (or took) place in, (ii) relate (or related) to, (iii) concern (or concened), or (iv) involve (or involved) in any way, the United States.

As used herein, "Relevant Time Period" refers to the time period from January 1, 2004 through and including the actual date of the deposition.

### 30(b)(6) CATEGORIES

1. Pricing, including discounts and rebates, of the Novozymes Products in the U.S. during the Relevant Time Period.
2. Pricing and volume trends within the markets that Novozymes has sold the Novozymes Products in the U.S. during the Relevant Time Period.
3. Sales of the Novozymes Products in the U.S. during the Relevant Time Period, including but not limited to information concerning volume, revenue, costs, profits, and margins.
4. The Excel spreadsheets "representing sales data for Novozymes' Liquozyme and Spirzyme [sic] Fuel products," produced to Genencor on June 26, 2006, including the underlying data referenced in the spreadsheets.
5. Manufacturing capacity and utilization levels for the production of the Novozymes Products in the U.S. during the Relevant Time Period.

6. Marketing polices, strategies, and practices for the Novozymes Products in the U.S. during the Relevant Time Period.

7. Market share of the Novozymes Products, including both revenue and volume of sales, for the U.S. markets in which the Novozymes Products compete with Genencor products during the Relevant Time Period.

8. Companies or business entities other than Novozymes or Genencor that participate in the U.S. markets in which the Novozymes Products compete with Genencor products during the Relevant Time Period, and Novozymes' expectation or belief of future entrants into these markets.

9. Customer relationships between Novozymes and customers and/or potential customers who have purchased or have considered purchasing the Novozymes Products in the U.S. during the Relevant Time Period.

10. Relative reputation of Novozymes and Genencor, among customers of alpha-amylase and glucoamylase products in the U.S. during the Relevant Time Period, concerning (but not limited to) product quality, customer service, technical service, and/or technical innovation.

11. Comparisons, analyses, and/or studies of the relative benefits and/or drawbacks between the Novozymes Products and any Genencor products.

12. Alleged price erosion of the Novozymes Products due to sales of SPEZYME® Ethyl.

13. Alleged loss in Novozymes' market shares for the Novozymes Products due to sales of SPEZYME® Ethyl.

14. Alleged expense increases for the Novozymes Products due to sales of SPEZYME® Ethyl.

15. Alleged lost sales of Novozymes' glucoamylase products due to sales of SPEZYME® Ethyl.

16. License agreements for industrial enzymes, including but not limited to those industrial enzymes that Novozymes sells as the Novozymes Products, as well as Novozymes' guidelines, policies, and usual practices for licensing its technology.

17. Ownership history of the '031 Patent, including but not limited to identifying all legal and beneficial owners of the '031 Patent, the date(s) of ownership, the manner of acquiring ownership, and any proposals (such as proposed assignments) for a future change in ownership.

18. Licenses and proposed licenses, of any type or nature, that include in any manner a license to the '031 Patent (including but not limited to any license of the '031 Patent itself, a license of a group of patents including the '031 Patent, and/or any license of rights to intellectual property including the '031 Patent), as well as performance of the license(s), payments under the license(s), and costs associated with the license(s).

19. Technology license agreements and proposed technology license agreements, of any type or nature, between Novozymes A/S and Novozymes North America, including but not limited to the January 1, 1996 Technology License Agreement produced by Novozymes' counsel George Hykal to Genencor's counsel Greg Lanier and Jane Froyd in an email dated July 19, 2006, as well as performance of the agreement(s), payments under the agreement(s), and costs associated with the agreement(s).

20. Marketing agreements and proposed marketing agreements, of any type or nature, between Novozymes A/S and Novozymes North America, including but not limited to the January 1, 2005 Marketing Agreement produced by Novozymes' counsel George Hykal to Genencor's counsel Greg Lanier and Jane Froyd in an email dated July 19, 2006, as well as performance of the agreement(s), payments under the agreement(s), and costs associated with the agreement(s).

21. Service agreements and proposed service agreements, of any type or nature, between Novozymes A/S and Novozymes North America for services that include: filing,

      prosecution, and maintenance of patent portfolios in the U.S. and abroad; patent litigation; contract drafting and negotiation in connection with licensing agreements and other contractual arrangements involving intellectual property; educational activities; and/or legal and patent advice and administrative services, including but not limited to the January 1, 2001 Framework Agreement for Services produced by Novozymes' counsel George Hykal to Genencor's counsel Greg Lanier and Jane Froyd in an email dated July 19, 2006, as well as performance of the agreement(s), payments under the agreement(s), and costs associated with the agreement(s).

22. Novozymes A/S' corporate structure, including but not limited to its relation with Novozymes North America, Inc.

23. Novozymes A/S' financial accounting practices, including but not limited to how "[a]ll profits made by Novozymes North America eventually flow up to Novozymes A/S," as stated in the July 18, 2006 email from Novozymes' counsel George Hykal to Genencor's counsel Jane Froyd and Greg Lanier entitled "NZ v GCOR -- Request for Consent."

24. Novozymes North America Inc.'s "interests that are being adjudicated in this lawsuit," as stated in the July 18, 2006 email from Novozymes' counsel George Hykal to Genencor's counsel Jane Froyd and Greg Lanier entitled "NZ v GCOR -- Request for Consent."

25. Whether, and if so how, any of the Novozymes Products embody and/or practice the invention claimed in the '031 Patent.