PUBLIC VERSION – REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOVOZYMES A/S,

  Plaintiff

v.

GENENCOR INTERNATIONAL, INC., and

ENZYME DEVELOPMENT CORPORATION

  Defendants

C.A. No. 05-160-KAJ

---

**PLAINTIFF'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION FOR LEAVE TO MODIFY THE**
**SCHEDULING ORDER FOR THE PURPOSE OF AMENDING ITS COMPLAINT**

NOVOZYMES A/S

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
**YOUNG CONAWAY STARGATT**
**& TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Joseph R. Robinson
David Tellekson
Robert C. Sullivan, Jr.
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700

Attorneys for Plaintiff
Novozymes A/S

Dated: July 25, 2006

**PUBLIC VERSION – REDACTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF CASES AND AUTHORITIES ............................................... ii

I.  INTRODUCTION ...................................................................... 1

II.  BACKGROUND ....................................................................... 2

III.  SUMMARY OF ARGUMENT ...................................................... 5

IV.  ARGUMENT .......................................................................... 6

A.  Amendment of the Original Complaint is Appropriate in this Case Under Both Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure .................................................................... 6

    1.  NZDK's Failure to Timely Move for Leave to Amend the Original Complaint is Reasonable in the Context of this Bifurcated Case .................................................. 7

    2.  The Addition of NZNA is not Futile and Could Prevent Manifest Injustice by Avoiding the Preclusion of Lost Profits Upon a "Technicality" .................................... 9

    3.  Genencor Would not be Prejudiced by the Addition of NZNA ............................................................ 11

    4.  The Addition of NZNA Should Require Little, If Any, Additional Effort from Genencor .............................. 15

B.  Fed. R. Civ. P. 15(b) Requires that the Complaint be Amended To Add NZNA as a Plaintiff in order to Conform the Complaint To the Evidence Presented at Trial ..................................... 16

V.  CONCLUSION ....................................................................... 17

PUBLIC VERSION - REDACTED

## TABLE OF CASES AND AUTHORITIES

CASES

*Boileau v. Bethlehem Steel Corp.,*
  730 F.2d 929 (3d Cir. 1984) ……………………………………………     6, 8

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.,*
  295 F. Supp. 2d 430 (D. Del. 2002) ……………………………………   8, 9, 13

*Enzo Life Scis., Inc. v. Digene Corp.,*
  270 F. Supp. 2d 484 (D. Del. 2003) …………………………………….     8, 9

*Foman v. Davis,*
  371 U.S. 178 (1962) ………………………………………………………   6, 8, 14

*Kalman v.Berlyn Corp.,*
  914 F.2d 1473 (Fed,. Cir. 1990) …………………………………… 9-11, 15-16

*Mentor H/S, Inc. v. Medical Device Alliance, Inc.,*
  240 F.3d 1016 (Fed. Cir. 2001) ………………………………..………..     16

*Southwestern Bell Tel. Co. v. City of El Paso,*
  346 F.3d 541 (5th Cir. 2003) ……………………………………………….      8

*U.S. Philips Corp. v. ITC,*
  424 F.3d 1179 (Fed. Cir. 2005) …………………………………………..      3

*WMS Gaming Inc. v. Int'l Game Tech.,*
  184 F.3d 1339 (Fed. Cir. 1999) …………………………………………..      9

STATUTES AND RULES

35 U.S.C. § 284 (1982) ………………………………………………………      11

Local Rule 7.1.1 ……………………………………………………………….    2, 10

Rule 15 ……………………………………………………………………………  1, 7-8, 15

Rule 16(b) …………………………………………………………….…………  1, 6-8, 10

Rule 21 ……………………………………………………………………………      1

**PUBLIC VERSION - REDACTED**

Rule 30(b)(6) ………………………………………………………………….. 14

OTHER AUTHORITIES

3 J. Moore, *Moore's Federal Practice* ¶ 16.14[1][a] (3d ed. 2006) ……………………… 8

4 J. Moore, *Moore's Federal Practice* ¶ 21.02[5][b] (3d ed. 2006) ……………………… 8

PUBLIC VERSION – REDACTED

Pursuant to Federal Rules of Civil Procedure 15, 16(b), and 21 and the Local Rules of this Court, plaintiff Novozymes A/S ("NZDK"), by and through counsel, hereby moves the Court in its underlying Motion for leave to modify the Scheduling Order in this case for the purpose of amending its Original Complaint to add Novozymes of North America Inc. ("NZNA") as a co-plaintiff.

## I.    **INTRODUCTION**

The Court's Scheduling Order of July 5, 2005 sets the date of August 31, 2005 for amending pleadings and / or adding parties.  While that date has passed, good cause exists to modify the Order to allow NZDK to amend its Original Complaint and add NZNA as a co-plaintiff.  NZDK missed the August 31, 2005 deadline, not for a lack of diligent effort, but because the reason for adding NZNA as a co-plaintiff pertained only to damages, which were not at issue during the liability phase of this lawsuit when the August 31, 2005 deadline came and passed.  Since the addition of NZNA as a co-plaintiff may be important to prevent any injustice in the award of damages, the underlying Motion has been filed at this time.  Neither of the two defendants to this action, neither Genencor International, Inc. nor Enzyme Development Corporation (collectively, "Genencor"), will be prejudiced by the addition of NZNA as a co-

PUBLIC VERSION - REDACTED

plaintiff.   No other Court-ordered deadlines need to be changed as a result of the Motion.  Thus,

for the following reasons the Motion should be granted.[1]

## II.    BACKGROUND

NZDK is a Danish corporation with its principal place of business at Krogshoejvej 36,

DK-2880 Bagsvaerd, Denmark.  (Olofson Decl., ¶ 4).[2]  NZDK is the owner by assignment of

United States Patent No. 6,867,031 ("the '031 patent"), the patent at issue in this action.  NZDK

filed its Original Complaint against Genencor on March 15, 2005, alleging patent infringement

based on Genencor's sales of certain double deletion alpha-amylase products, primarily a product

selling under the tradename Spezyme® Ethyl ("Ethyl").  As the patent owner, NZDK brought this

action against Genencor in its own name without adding NZNA as a co-plaintiff.

NZNA is an indirectly wholly-owned United States subsidiary of NZDK.[3]  (Olofson Decl.,

¶¶ 4-6).  NZNA manufactures, markets, and distributes a variety of biotechnology-based products

in the United States on behalf of NZDK.  Several of these products compete with Ethyl, including

-----------------------

[1] A "redlined" copy of the First Amended Complaint is submitted herewith at Tab 1.  Pursuant to Local Rule 7.1.1 NZDK's attorneys conferred with Genencor's attorneys, explaining the nature of this motion and its legal basis.  NZDK's attorneys proposed that the relief sought in this motion be accomplished by the presentment of a written stipulation to the Court.  As of the filing date of this motion, Genencor has been unwilling to agree to the relief sought.  Genencor's attorneys, however, have indicated that Genencor may be willing to stipulate to the relief sought after further discovery.

[2] NZDK cites to the Declaration of Richard H. Olofson filed in support of its Motion as "(Olofson Decl., ¶ X)," which is incorporated herein by reference.

PUBLIC VERSION - REDACTED

Liquozyme® SC and Termamyl® SC (collectively, "Liquozyme"). Besides certain "Excluded Products" that are not at issue in this lawsuit, NZNA has the exclusive right to manufacture, sell, and distribute in the United States any products embodying any NZDK patented invention, including any embodiments of the invention claimed in the '031 Patent. (Marketing Agreement dated January 1, 2005 (the "Marketing Agreement"), A-74 to A-77 at A-74, §§ 1 and 2). Accordingly, NZNA is the sole manufacturer, marketer, and distributor of Liquozyme in the United States.

Although NZDK did not license the '031 Patent to NZNA in a writing denominated with the specific title of "Patent License," NZDK did convey in writing to NZNA sufficient rights under all of its U.S. patents to qualify NZNA as a non-exclusive licensee of the '031 Patent. ■

(A-7 to A-13 at A-13, § Appendix). Having been granted these rights (and others) under the Technology License and the Services Agreements, NZDK is a non-exclusive licensee of the '031 Patent. *See, e.g., U.S. Philips Corp. v. ITC,* 424 F.3d 1179, 1189 (Fed. Cir. 2005) ("A nonexclusive patent license is

---

[3] NZDK owns 100% of the stock of a United States holding company called Novozymes U.S., Inc., which in turns owns 100% of the stock of NZNA. (Olofson Decl., ¶¶ 4-6).

PUBLIC VERSION - REDACTED

simply a promise not to sue for infringement."). ███████████████████

████████████████████████████████████████████

██████████████████████████████[4]

In all aspects relevant to the United States market place, NZDK and NZNA have acted as a single entity. United States customers of Liquozyme do not differentiate between the two entities; they deal with one Novozymes. (*See, e.g.*, October 14, 2004 Letter to Customer re liquefaction referencing "Novozymes" without specifying the entity, A-72 to A-73). Genencor does not compete with two "Novozymes entities" and, not surprisingly, Genencor refers in its own documents to a single competitive threat in Novozymes. (*See, e.g.*, 1/21/04 Genencor Marketing Plan providing a competitive analysis of "Novozymes" without specifying the entity, A-14 to A-71 at A-21 to A-27). Likewise, the Novozymes website does not describe two separate entities; it promotes one international Novozymes. (*See, e.g.*, http://www.novozymes. com/en, printed July 25, 2006, referencing the company as just "Novozymes," A-110)

Financially and functionally, NZDK and NZNA act as one entity. NZDK indirectly owns 100% of NZNA and operates NZNA with the same discretion and control as if NZNA were just another department within NZDK. (Olofson Decl., ¶¶ 4-6). NZNA's Board of Directors is dominated by NZDK executives. (Olofson Decl., ¶ 6). NZDK is not only entitled to all profits

---

[4] While NZNA's rights to the '031 Patent is discussed here, the same analysis and conclusion applies to United States Patent No. 6,297,038 (the "'038 Patent"), which covers the alpha amylase in Liquozyme. Accordingly, NZNA is also the sole licensee of the '038 Patent.

earned by NZNA, but files a consolidated annual report in which it reports the profits and losses of NZNA as part of its own profits and losses. (Olofson Decl., ¶¶ 7-8).

Throughout the many stages of this lawsuit, including the pleading stage, the preliminary injunction stage, the liability discovery stage, the liability trial, the post-trial briefing stage, and the damages discovery stage, Genencor has also treated NZDK and NZNA as a single entity. In each and every one of its discovery requests, Genencor defined Novozymes to include NZDK and any of its subsidiaries, e.g., NZNA. NZDK responded consistently to those discovery requests (over its own objections), by producing documents and witnesses[5] from both NZDK and NZNA -- without distinction, as well as providing interrogatory responses applied equally to both NZDK and NZNA -- without distinction. During briefing for the preliminary injunction stage, both parties argued the issue of irreparable harm to "Novozymes" without distinguishing between NZDK and NZNA. At the liability trial stage, the parties solicited the testimony of witnesses from both NZDK and NZNA without distinction (e.g., ███████████████████ ████████████████████████████). Clearly, therefore, the

---

[5] Witnesses for the damages stage have yet to be produced as of the filing date of the underlying Motion. However, it is expected that ALL "Novozymes" witnesses for this stage, including witnesses produced in accordance with Genencor's Rule 30(b)(6) notices, will be employees of NZNA.

[6] ████████████████████████████████████████████████

PUBLIC VERSION - REDACTED

"distinction" between NZDK and NZNA in this lawsuit has been non-existent -- as it should have been.

## III.     SUMMARY OF ARGUMENT

Amendment of the Original Complaint is appropriate in this case under both Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure.  NZDK's failure to timely move for leave to amend the Original Complaint is reasonable in the context of this bifurcated case.  The addition of NZNA is not futile and could prevent manifest injustice by avoiding the preclusion of lost profits upon a "technicality."  Genencor would not be prejudiced by the addition of NZNA.  The addition of NZNA should require little, if any, additional effort from Genencor.  Furthermore, Fed. R. Civ. P. 15(b) requires that the Original Complaint be amended to add NZNA as a co-plaintiff to conform the Complaint to the evidence already presented at trial.

## IV.     ARGUMENT

### A.     Amendment of the Original Complaint Is Appropriate In This Case Under Both Rules 15(a) And 16(b) Of The Federal Rules of Civil Procedure[7]

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a pleading after a responsive pleading is filed with leave of court, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Although the decision to grant or deny leave to amend

**PUBLIC VERSION - REDACTED**

is committed to the sound discretion of the court, the Supreme Court has stated that leave to amend should be freely granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent a "significant showing of prejudice," or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984) ("The leading Supreme Court case on this subject, [*Foman*], reflects the general presumption in favor of allowing a party to amend pleadings.")

On the other hand, Rule 16(b) provides that Scheduling Orders may be modified only on "a showing of good cause." Fed. R. Civ P. 16(b). When a party seeks to amend a pleading after the deadline in a Scheduling Order, thereby necessitating amendment of the Order as well, Federal Courts have combined the standards for Rules 15(a) and 16(b) into a four-factor balancing test:

> (1) the explanation for the failure to timely move for leave to amend;
>
> (2) the importance of the amendment;
>
> (3) the potential prejudice in allowing the amendment; and
>
> (4) the availability of a continuance to cure the prejudice.

---

[7] After a responsive pleading has been served, the standards for adding parties are the same whether a motion is made under Rule 15 or Rule 21. 4 J. Moore, *Moore's Federal Practice* ¶ 21.02[5][b] (3d ed. 2006).

PUBLIC VERSION - REDACTED

3 J. Moore, *Moore's Federal Practice* ¶ 16.14[1][a] (3d ed. 2006) (citing *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546-547 (5th Cir. 2003)); *see also Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 432-33 (D. Del. 2003) (Jordan, J.) (weighing substantially the same factors to motion to amend pleadings after deadline in a scheduling order); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-90 (D. Del. 2003) (same).

### 1.    NZDK's Failure To Timely Move For Leave To Amend The Original Complaint Is Reasonable In the Context Of This Bifurcated Case

Throughout the various stages of this lawsuit, the parties have cooperated to streamline the issues in order to move expeditiously towards a final case resolution. The parties agreed to a bifurcated trial where the tutorial and claim construction were consolidated into the liability trial. To date, the parties have sought, and the Court has granted, modification of the Scheduling Order for the benefit of plaintiff and / or defendants on four different occasions. Genencor itself filed an Amended Answer on February 9, 2006, more than five months after the August 31, 2005 deadline set in the Scheduling Order. Genencor proposed that particular Amended Answer neither by Motion for Leave to Amend nor by Motion for Good Cause to Modify the Scheduling Order, but through a request in Section XI.E, of the proposed pre-trial order for the liability phase. The Court allowed the Amended Answer at the final pre-trial conference without any discussion of good cause, inquiring only as to prejudice to the plaintiff.

While NZDK's proposed amendment here comes well after the August 31, 2005 deadline for amended pleadings in this bifurcated case, the delay is not for a lack of diligence on the part of NZDK. This lawsuit has moved on an expedited pace since NZDK filed its motion for a

preliminary injunction on June 22, 2005. From that date through May 12, 2006 (the filing date for the final round of post-trial briefing for the liability phase), the parties have concerned themselves solely with issues of liability. Only after the parties turned their attention to the damages phase of this bifurcated litigation did the addition of NZNA as a co-plaintiff become of moment to NZDK. Upon identifying this issue, NZDK researched the relevant legal principles and concluded that, while not necessary, it would be prudent to add NZNA as a co-plaintiff. Immediately thereafter and pursuant to Local Rule 7.1.1 and professional courtesy, NZDK brought this issue to the attention of Genencor's attorneys.

In this context, the timing of NZDK's decision to seek to add NZNA as a co-plaintiff is reasonable and consistent with the standards in Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure -- and the practice under which the parties in this litigation have guided themselves. *See Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1479-82 (Fed. Cir. 1990) (allowing plaintiff to amend a complaint to add a closely-held corporation as a co-plaintiff even after trial on damages); *see also Boileau*, 730 F.2d at 939 ("*Foman* couples the delay consideration with prejudice to the opposing party."); *Callaway*, 295 F. Supp. 2d at 433 ("As both parties have been permitted to supplement or amend the pleadings, Callaway's attempt to use the Order exclusively for its own benefit does not bear scrutiny."); *Enzo*, 270 F. Supp. 2d at 490 ("First, the Court notes that the Scheduling Order has been modified several times to serve the interests of the parties.").

> **2.** ***The Addition Of NZNA Is Not Futile And Could Prevent Manifest Injustice By Avoiding The Preclusion Of Lost Profits Upon A "Technicality"***

The addition of NZNA as a plaintiff is not futile because NZNA has standing to join this lawsuit as a co-plaintiff. *Kalman*, 914 F.2d at 1479-82; *see also WMS Gaming Inc. v. Int'l Game*

*Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999) (following *Kalman* by holding that a patentee's non-exclusive subsidiary had standing to join the lawsuit). In *Kalman*, the Federal Circuit explained when it would be appropriate to join a non-exclusive licensee:

> When the sole licensee, however, has been shown to be directly damaged by an infringer in a two supplier market, and when the nexus between the sole licensee and the patentee is so clearly defined as here, *the sole licensee must be recognized as the real party in interest*. Furthermore, in determining that [the non-exclusive licensee] has standing to join as a co-plaintiff, we not only give effect to principles of equity, but also the Congressional mandate that, in patent actions, "upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement. . . ." 35 U.S.C. § 284 (1982).

*Id.* at 1482 (emphasis supplied).

Here, ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (Expert Report of Julie L. Davis, A-78 to A-109 at A-94 to A-95). The nexus between the parties is clearly defined as NZNA is the indirectly wholly-owned, controlled, and operated subsidiary of NZDK. The facts here are squarely in line with *Kalman*. NZNA has standing to join as a plaintiff, and thus the amendment of the Original Complaint to add NZNA is not futile.

---

████████████████████████████████████████████████████
████████████████████████████████████████████████████

**PUBLIC VERSION - REDACTED**

Furthermore, NZNA as a real party in interest should be added as co-plaintiff because, *inter alia*, (i) NZDK and NZNA equitably act as a single entity in selling Liquozyme in the United Sates; (ii) NZDK and Genencor have treated both NZDK and NZNA as though they were a single entity throughout the course of the various stages of this lawsuit; and (iii) profits lost by NZNA are ultimately profits lost by NZDK. *See Kalman*, 914 F.2d at 1479-82. While NZDK ultimately collects the profits earned by NZNA, NZDK has recognized that it may be prudent to add NZNA as a co-plaintiff. ███████████████████████████████████████ ███████████████████████████████████████████ Even though NZDK should be able to collect lost profit damages without adding NZNA (as part of its statutory right to "adequate compensation" for Genencor's infringement), out of an abundance of caution NZDK believes it would be prudent now to amend its Original Complaint so there can be <u>no doubt whatsoever</u> to its ability to collect the entirety of its lost profits (and other) damages under the statute.

Furthermore, the addition of NZNA as a co-plaintiff would likely serve the interests of all of parties, as well as the interests of justice and efficiency. Adding NZNA as a plaintiff now would leave no question about the effect of the entry of a judgment or an award of damages. For example, in the absence of NZNA as a co-plaintiff in this action, the possibility exists that the Court could enter judgment against Genencor for infringement of the '031 Patent, but then rule that some or all lost profit damages were available only to NZNA, awarding NZDK only a reasonable royalty. In such a case, NZNA would likely have to bring a separate lawsuit, joining NZDK as a necessary party, to recover (non-duplicative) damages caused by Genencor's infringement to realize "adequate compensation" for that infringement. Adding NZNA as a co-

- 11 -

plaintiff now, however, would permit the Court to enter a judgment and award damages in a fashion that efficiently, comprehensively, and finally resolves this dispute in one trial before this one Court.

### 3.    *Genencor Would Not Be Prejudiced by the Addition of NZNA*

Genencor has treated NZDK and NZNA as one and the same throughout the various stages of this lawsuit. Genencor has received, and continues to receive, discovery from both NZDK and NZNA as if they were a single entity. Genencor can not claim in good faith that it did not have access to the relevant files, documents, and witnesses of NZNA at any point during this lawsuit.[9]

This is not a case where a plaintiff seeks to amend its complaint after the close of discovery. Genencor still has nearly five weeks of discovery and three weeks until its Rebuttal Expert Report on damages is due, providing Genencor with sufficient time to address any issues raised by the addition of NZNA as a co-plaintiff. [10] Novozymes has responded, and will continue to respond, to reasonable discovery requests on issues that may arise from the addition of NZNA,

---

[9] NZDK recently produced three agreements to Genencor concerning the relationship between NZDK and NZNA as it pertains to this lawsuit. Genencor claims that these agreements were responsive to prior Document Requests seeking licensing agreements and / or assignments by NZDK of the '031 Patent. As the parties had been treating NZDK and NZNA as a single entity throughout the lawsuit, these documents did not come to light when NZDK was searching its files for responsive case documents. Until just recently, NZDK construed those Requests as seeking licenses and / or assignments to parties outside of its corporate family, of which there are none. Nonetheless, the agreements were immediately produced and, as just one consequence, Genencor has already modified its deposition notices for this damages phase of the litigation to address these agreements -- for which Novozymes will provide an appropriate deposition witness.

PUBLIC VERSION - REDACTED

on an expedited basis, to ensure that Genencor will not be prejudiced. The parties have yet to conduct their Rule 30(b)(6) depositions on damages, meaning that Genencor will have a full and fair opportunity to explore the issues through every manner of discovery. In fact, as mentioned previously, Genencor has already served NZDK with an amended Rule 30(b)(6) notice of deposition, adding 30(b)(6) deposition topics concerning the relationship between NZDK and NZNA. *See Callaway*, 295 F. Supp. 2d at 433 ("Furthermore, I am not persuaded that Callaway, with more than two months of discovery remaining at the time Dunlop filed its motion for leave to amend, was unduly prejudiced by Dunlop's motion for leave to amend its counterclaim, regardless of the possible need to call an additional expert witness.").

Clearly, Genencor can not claim surprise to either the existence of NZNA, or the fact that NZNA played a role in the sale of Liquozyme to the fuel ethanol industry. NZNA employees have submitted declarations ████████████, testified at deposition ████████████ ██████, and testified at trial ████████████, expressly declaring each time their employment by NZNA and their role as an NZNA employee. In his two declarations, ████████████ ████████████████████████████████████ and extensively discussed (and was deposed on) relevant case issues, including those pertaining to the request for preliminary injunctive relief. At the liability trial, the parties elicited evidence from and concerning both NZDK and NZNA.

---

[10] *See also* the previous footnote.

PUBLIC VERSION - REDACTED

Similarly, Genencor can not claim in good faith that it would be surprised that NZDK is seeking lost profits. On June 7, 2006, Genencor served *Defendants' Second Request For The Production Of Documents And Things To Plaintiff Novozymes A/S*, in which Genencor sought "[a]ll documents and things that refer or relate to the alleged, supposed, or actual profits Novozymes has lost as a consequence of Genencor's alleged infringement of the '031 Patent." (Request No. 32). Also on June 7, 2006, Genencor served *Defendants' Third Set Of Interrogatories To Plaintiff Novozymes A/S*, in which Genencor asked NZDK to "[d]escribe in detail the alleged lost profits Novozymes suffered as a consequence of Genencor's alleged infringement of the '031 Patent" (Interrogatory No. 16), and to "[d]escribe in detail the computation methodology employed by Novozymes to establish the alleged, supposed, or actual profits Novozymes has lost or will lose as a consequence of Genencor's alleged infringement of the '031 Patent" (Interrogatory No. 17).

Clearly, Genencor anticipated that NZDK is seeking lost profits in this case and knew that NZNA was involved in the marketing and distribution of Liquozyme. Despite that knowledge, Genencor did not raise any issue concerning the relationship between the two Novozymes entities -- whether through discovery, preliminary injunction briefing, the pre-trial order, the liability trial, post-trial briefing, or this damages phase -- until July 19, 2006, when counsel for NZDK requested consent to amend its Original Complaint by adding NZNA. Even in the preliminary injunction stage of this lawsuit, when both parties where arguing the irreparable harm suffered by "Novozymes," Genencor made no effort to distinguish between the two Novozymes entities or to investigate their relationship.

- 14 -

PUBLIC VERSION - REDACTED

Furthermore, Genencor can not claim any prejudice from not having NZNA as a named plaintiff during the liability phase of this lawsuit. Genencor had full access to the files, documents, and witnesses of both of the Novozymes entities throughout that phase. Genencor knew of the existence of NZNA and that it played some (in fact, a significant) role in the marketing and distribution of Liquozyme -- at least as early as June 22, 2005 when NZDK filed its Motion for a Preliminary Injunction. The presence or absence of NZNA as a named party *per se* in the liability portion of this lawsuit did not, and could not, affect the issues of infringement, validity, or enforceability. NZDK is the undisputed owner of the '031 Patent, precluding any arguments pertaining to standing. The liability phase concerned (i) the actions of Novozymes' employees in prosecuting the patent, regardless of which Novozymes entity employed them; and (ii) the actions of Genencor in developing, manufacturing, marketing, and distributing Ethyl. It is actually no surprise whatsoever that the parties disregarded NZNA until the damages phase of this bifurcated lawsuit, as NZNA's formal participation as a named party in the liability phase of this lawsuit was unnecessary.

Even now, the addition of NZNA does not raise issues of any complexity. The relationship between the Novozymes entities is quite simple. The parties are in the midst of damages discovery and Genencor has sufficient time to investigate additional defenses that may be raised by the addition of NZNA, if any. *Kalman* is very instructive on this issue.

In *Kalman*, the defendants claimed prejudice when the plaintiff sought to amend and add his closely held corporation as co-plaintiff after the trial on damages and after discovery was closed. 914 F.2d at 1479-82. The defendants specifically argued that they did not have the opportunity to investigate the relationship between the parties. *Id.* The Court, however, refused

- 15 -

PUBLIC VERSION - REDACTED

to be persuaded by that argument, explaining that defendants had received discovery from the corporation that plaintiff sought to add by amendment, and that the defendant had chosen to treat the two parties as a single entity throughout the lawsuit. *Id.* Having so chosen, they could not later decide that they would be prejudiced if they did not learn more about the relationship. *Id.* The situation is even less prejudicial in this case as Genencor will be afforded discovery to investigate the relationship between the Novozymes entities despite having treated them as one throughout the entirety of this lawsuit. Accordingly, Genencor will not suffer prejudice, let alone "significant" or "undue" prejudice, if NZDK is granted leave to amend its Original Complaint to add NZNA. *Id.*; *see also Foman*, 371 U.S. at 182 (prejudice alone is insufficient; prejudice must be substantial); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, *opinion on merits*, 244 F.3d 1365 (Fed. Cir. 2001) (permitting the licensee to join the patent owner at the appellate stage to cure a jurisdictional defect).

### 4.      The Addition of NZNA Should Require Little, If Any, Additional Effort From Genencor

The addition of NZNA should not require much additional effort from Genencor. There is no need for additional discovery of NZNA as NZDK has already provided Genencor with access to NZNA's files, documents, and witnesses. There is no need for an additional expert as this issue does not raise any additional economic matters pertinent to damages – Novozymes has the same profit margin and capacity, regardless of its formal corporate structure. Only a few issues are raised by the addition of NZNA (e.g., the relationship between the parties and the specific rights of NZNA under the '031 Patent), none of which appears to add any real complexity to the case. In fact, the issues would be simplified if both parties were formally involved, as it would then be

PUBLIC VERSION - REDACTED

clear that the distinction between them would be unnecessary. In this regard, Genencor has nearly three weeks to submit its Rebuttal Expert Report, nearly five weeks before the close of the discovery and the submission of a proposed Pre-Trial Order, and over ten weeks before trial is scheduled to commence, to address whatever issues it considers important relevant to the addition of NZNA as a co-plaintiff. Accordingly, NZDK does not anticipate the need for a continuance in the damages phase of the lawsuit.

### B. Fed. R. Civ. P. 15(b) Requires That The Complaint Be Amended To Add NZNA As A Plaintiff In Order to Conform The Complaint To The Evidence To Be Presented At Trial

Fed. R. Civ. P. 15(b) provides that amendment is appropriate at any time if the pleadings need to be conformed to the evidence. In relevant part Rule 15(b) states the following:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be upon motion of any party *at any time, even after judgment* . . .

Here, the parties presented evidence at the liability trial as if NZNA had been a co-plaintiff. Genencor implicitly consented to the addition of NZNA as a co-plaintiff by not just failing to object to, but actually soliciting evidence of NZNA's conduct at that trial, ████████████ ████████████████████████. Accordingly, for this and other reasons as discussed in this memorandum, NZDK should be allowed to amend its Original Complaint to conform the pleadings to the evidence knowingly presented at trial by NZDK and Genencor, and which has (and will continue to be) presented during this damages phase of the case and at the upcoming damages trial.

- 17 -

PUBLIC VERSION - REDACTED

## V.    CONCLUSION

Because neither prejudice nor any other factor outweighs the liberal standards of Rule 15,

justice requires that NZDK be given leave to amend its Original Complaint to add NZNA as co-

plaintiff.

NOVOZYMES A/S


Dated:    July 25, 2006            /s/ *Karen E. Keller*
                                       Josy W. Ingersoll (No. 1088)
                                       Rolin P. Bissell (No. 4478)
                                       Karen E. Keller (No. 4489)
                                       **YOUNG CONAWAY STARGATT**
                                          **& TAYLOR, LLP**
                                       1000 West Street, 17th Floor
                                       Wilmington, Delaware 19801
                                       (302) 571-6600
                                       kkeller@ycst.com

                                       Joseph R. Robinson
                                       David Tellekson
                                       Robert C. Sullivan, Jr.
                                       **DARBY & DARBY P.C.**
                                       805 Third Avenue
                                       New York, New York 10022
                                       (212) 527-7700

                                       Attorneys for Plaintiff
                                       Novozymes A/S

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on August 1, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Donald E. Reid, Esquire
> MORRIS NICHOLS ARSHT & TUNNELL
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE  19899-1347

I further certify that on August 1, 2006,  I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> **BY ELECTRONIC MAIL**
>
> Tharan Gregory Lanier, Esquire
> Jane Froyd, Esquire
> JONES DAY
> 2822 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Novozymes A/S*