# EXHIBIT A

Case 1:05-cv-00160-KAJ-MPT　　Document 158-2　　Filed 08/18/2006　　Page 1 of 16



"Hykal, George E." &lt;ghykal@Darbylaw.com&gt;

05/23/2006 10:41 AM

To "Greg Lanier" &lt;tglanier@JonesDay.com&gt;, "Jane L Froyd" &lt;jfroyd@JonesDay.com&gt;
cc "Sullivan, Robert" &lt;rsullivan@Darbylaw.com&gt;
bcc
Subject Novozymes A/S v Genencor Int'l et al. -- Damages Phase

Greg and Jane,

Not knowing when Judge Jordan will make his ruling on liability, and having such a tight schedule for this phase of the case (expert reports are due July 7th), we're proceeding to the damages portion of the litigation. We will be serving you with a second set of document requests and interrogatories in the next 2 days. We also plan on noticing a 30(b)(6) deposition on all damages issues in the near future.

For now, however, we request that you update your responses to the document requests and interrogatories relevant to the issue of damages. For the financial requests, we believe that, initially, defendants only need to produce documents sufficient to show revenues, costs, and profit margins for the relevant time period (from intro of Spezyme Ethyl until the present). Spread sheets summarizing the relevant data would be sufficient. We reserve the right to request further supporting documents, and will advise you if we need such documents in the future.

The following is the list of the pending document requests and interrogatories that we believe are relevant to the damages issues in this case. Please update defendants' responses to these requests as soon as possible.

**Already Pending Document Requests Relevant to Damages:**

#44: All documents and things referring or relating to any offers for sale or sales of any of Defendant's Spezyme® Ethyl Product in the United States, including but not limited to all price quotations, price lists, pricing sheets, discount schedules, sales call reports, potential-customer lists, customer lists, potential-customer files, customer files, contracts for sale, agreements to sell, and invoices.

#45: All training manuals for all employees involved in sales or offers for sale of any of Defendant's Spezyme® Ethyl Product that are or were manufactured, offered for testing, offered for sale or sold in the United States, including but not limited to training manuals for all employees, agents, representatives or distributors who sell/have sold or offer/have offered for sale Spezyme® Ethyl for or on behalf of Defendant.

#46: All documents and things constituting or relating to any communication between Defendant and any third party, including but not limited to an actual or potential customer, discussing any feature, function, capability, aspect, advantage, disadvantage, benefit, performance or malfunction of any of Defendant's Spezyme® Ethyl Product that are and/or were manufactured, offered for testing, offered for sale or sold in the United States. Documents responsive to this request should include, at a minimum, all correspondence (documented in any form such as by e-mail, notes from a telephone conversation, letter, etc.) between Defendant and customers or potential customers of Spezyme® Ethyl related to any feature, function, capability, aspect, advantage, disadvantage, benefit, performance or drawback of Spezyme® Ethyl or its use.

#47: All documents and things relating to any comparison, analysis or study of any feature, function, capability, aspect, advantage, disadvantage, benefit, performance, malfunction, flaw or defect of any of Defendant's Spezyme® Ethyl Product that are and/or were manufactured, offered for testing, offered for sale or sold in the United States.

#48: All documents and things relating to the market(s) for alpha-amylase enzymes for fuel ethanol and/or

food grade applications in the United States. Documents responsive to this Request should include, at a minimum, documents showing the market shares and customer demand for any alpha-amylase product, including Spezyme® Ethyl in the United States.

#49: All documents and things relating to the market(s) for any and all products competing with a Spezyme® Ethyl Product in the United States.

#50: All documents and things relating to bids and quotations made, and prices charged, for any of Defendant's Spezyme® Ethyl Product that are or were sold, offered for sale, used, tested, or manufactured in the United States.

#51: All planning and strategy documents relating to the research, development, testing, financing, marketing, or sale of any of Defendant's Spezyme® Ethyl Product in the United States.

#52: Documents sufficient to show Defendant's monthly or quarterly revenues derived from sales of each of Defendant's Spezyme® Ethyl Product in the United States.

#53: Documents sufficient to show Defendant's monthly, quarterly and annual profits, gross and net, along with the data upon which such profits have been calculated, resulting from the sale of any of Defendant's Spezyme® Ethyl Product that are or were sold, offered for sale, used, tested, or manufactured in the United States.

#54: Documents sufficient to show the costs incurred in the research and development of any of Defendant's Spezyme® Ethyl Product that are or were sold, offered for sale, used, tested, or manufactured for use in the United States.

#55: All annual and quarterly reports, financial statements, whether audited or unaudited, and prospectuses relating to Defendant covering the period beginning January 1, 2002, to the present.

**Already Pending Interrogatories Relevant to Damages:**

#6: Identify the dates and circumstances when Genencor first became aware of the existence of the '031 patent, and describe the action, if any, taken by Genencor as a result of becoming aware of the patent.

#7: Identify each and every customer to whom you have sold or otherwise provided Spezyme Ethyl product in the United States; and for each customer identify the total monthly sales in units and dollars for Spezyme Ethyl since its introduction.

#8: Identify each individual responsible for or knowledgeable about the development, manufacture, marketing, sales or distribution of the Spezyme Ethyl product in the United States.

--George

George E. Hykal
Attorney at Law
Darby & Darby P.C.
805 Third Avenue
New York, NY 10022
212.527.7697 | Direct
212.527.7701 | Fax

http://www.darbylaw.com

CONFIDENTIALITY NOTICE. This email message and any attachments may be confidential and may be subject to the attorney-client privilege or other privilege. If you are not the intended recipient, please do not read, copy or re-send this email message or its attachments; immediately notify the sender by reply email or by collect call to 212.527.7700 or 206.262.8900; and delete this email message and any attachments. Thank you for your assistance.

# EXHIBIT B

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVOZYMES A/S,<br><br>                Plaintiff<br><br>v.<br><br>GENENCOR INTERNATIONAL, INC., and<br><br>ENZYME DEVELOPMENT CORPORATION<br><br>                Defendants | C.A. No. 05-160-KAJ |

## NOVOZYMES A/S FIRST SET OF INTERROGATORIES (NOS. 1-9)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and the Orders of the Court, Plaintiff Novozymes A/S ("Novozymes"), by its attorneys, hereby requests that Defendants Genencor International, Inc. and Enzyme Development Corporation (collectively "Genencor" or "Defendants") answer the following interrogatories under oath, and serve such answers on or by July 22, 2005, or by such other time as may be mutually agreed upon between the parties, at the office of Darby & Darby P.C., 805 Third Avenue, New York, New York 10022.

## INSTRUCTIONS AND DEFINITIONS

The following instructions and definitions apply to the Interrogatories propounded below.

1. Unless otherwise defined herein, words and phrases are to be given their ordinary meaning consistent with the Federal Rules of Civil Procedure and shall not be unduly restrictively construed so as to avoid responding to the fair scope of the Interrogatory.

2. If, in responding to these Interrogatories, Defendants perceive any interrogatory, instruction, or definition to contain an ambiguity, Defendants' response shall set forth the matter deemed ambiguous and the construction used in responding to the interrogatory. Under no circumstances should Defendants fail to answer an interrogatory on the basis of a failure to resolve an ambiguity in an Interrogatory.

3. As used herein, the terms "Defendants", "Defendant", "Genencor", "you", or "your" shall mean Genencor International, Inc. and Enzyme Development Corporation, collectively and/or individually; as well as all affiliates, all subsidiaries, all parent companies, and all controlled or controlling companies thereof; and any present or former officers, directors, major stockholders, predecessors or successors in interest, general partners, limited partners, employees, agents, representatives (including, but not limited to, attorneys, agents, accountants or advisors) of; persons or organizations who conducted research, analysis or testing for; and any other person(s) acting (or who acted) or purported to act on behalf of Genencor International, Inc. and/or Enzyme Development Corporation.

4. The terms "Novozymes" and "Plaintiff" shall mean Novozymes A/S and/or Novozymes North America, Inc.

5. The term "person", when used in connection with a Discovery Request, shall include, but is not limited to, any natural person(s), business(es), partnership(s), corporation(s), or other entities; and any employee(s), agent(s), attorney(s), or representative(s) of any of the foregoing.

6. As used herein, the term "document" shall have the full meaning ascribed to it under Rule 34 of the Federal Rules of Civil Procedure including, without limitation, the original (and every copy of the original which differs in any way from it) of any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded or from which intelligence or information can be perceived, which is or has been in the possession, control or custody of Defendant, or of which Defendant(s) have knowledge, including, without limitation, papers, books, records, catalogues, price lists, pamphlets, periodicals, letters, correspondence, scrap books, notebooks, blueprints, site drawings, engineering drawings, architectural drawings, schematics, board layouts, circuit diagrams, engineering specifications, fabrication specifications, renderings, bills of material or material specifications, parts lists, progress reports, meeting minutes, bulletins, circulars, forms, notices, postcards, telegrams, deposition transcripts, contracts, agreements, invoices, leases, reports, studies, working papers, charts, proposals, graphs, sketches, diagrams, indexes, maps, analyses, statistical records, reports, results of investigations, reviews, ledgers, journals, balance sheets, accounts, bills, books of accounts, invoices, vouchers, purchase orders, receipts, expense accounts, canceled checks, bank checks, statements, sound and tape recordings, video tapes, audio tapes, computer tapes, disks, electronic mail, or other recording media (including programming instructions and other materials necessary to understand such media), any other computerized information or source control data, memoranda (including any type or form of notes, memoranda, or sound recordings

of personal thoughts, recollections or reminders, or of telephone or other conversations, or of acts, activities, agreements, meetings or conferences), photostats, microfilm, instruction lists or forms, diaries, calendar or desk pads, stenographers notebooks, appointment books, and other papers similar to any of the foregoing.

7.  The terms "relate" and "concern", as well as variants thereof (such as "relating" or "related"), when used in connection with a Discovery Request, shall mean, without limitation, any information, document or thing(s) that constitutes, contains, embodies, evidences, reflects, identifies, states, concerns refers directly or indirectly to, or is in any way relevant to the particular subject matter identified in the Request.

8.  The term "and" as well as the term "or", when used in connection with a Discovery Request, shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Discovery Request any information which might otherwise be construed to be outside its scope.

9.  When used in connection with a Discovery Request, the terms "all" and "each" shall be construed as "all and each".

10. The use of the singular form of any word includes the plural and vice-versa. To the extent that certain words are given the suffix "(s)", this suffix should not be construed as an intention to limit the construct of the term(s) with and withou said suffix to the singular and/or plural forms.

11. Any pronoun shall be construed to refer to the masculine, feminine, or neutral gender as in each case is most appropriate.

12. The term "identify", when used in connection with a Discovery Request, shall be construed to require specified information for a specified subject matter. The term "identify"

- 4 -

   a. when used with reference to an individual, to state the individual's name, the individual's present or last known address, current or last known home address and telephone number, and current employer and title;

   b. when used in connection with a business entity, organization, or association, to state its name, address, and telephone number and the name of the individual(s) at such business with knowledge of the subject matter of these requests, and to identify the owner(s) of such business;

   c. when used in connection with a communication, to identify every person involved in and every document relating to the communication and to state the date, type (*e.g.*, telephone conversation, face-to-face conversation, email, letter), and substance of the communication; and

   d. when used in connection with a document, to state the type of document (*e.g.*, letter, email, memoranda, computer hard drive), the subject matter of the document, date of the document, author(s) of the document, addressee(s) or the document, and recipient(s) of the document.

13. The term "the '031 patent" shall mean U.S. Patent No. 6,867,031 entitled "AMYLASE VARIANTS".

14. The term "Lawsuit" shall mean the above-captioned case.

15. The term "Complaint" shall mean the complaint filed in the Lawsuit by Novozymes.

16. The term "Answer" shall mean the answers filed in the Lawsuit by either one or both of the defendants, as the case may be.

17. As used herein, the term "enzyme" shall mean any protein capable of catalyzing a chemical reaction.

18. As used herein, the term "alpha-amylase" shall mean any enzyme that is capable of catalyzing the breakdown of alpha-1,4-glucosidic bonds in starch.

19. As used herein, the term "Spezyme Ethyl Product" and "Spezyme Ethyl Products" shall mean any of Defendants' alpha-amylase products associated with the trade name Spezyme®.

20. As used herein, the term "fuel ethanol process" shall refer to any process that involves the production of ethanol fuel from starch crops such as corn, barley, and wheat.

21. If an interrogatory is answered by reference to records from which the answer may be derived or ascertained, as permitted by Fed. R. Civ. P. Rule 33(d):

   a. specify the documents to be provided in sufficient detail to permit Plaintiff's counsel to locate and identify the records and to ascertain the answer as readily as could Defendants;

   b. produce any computerized information or summaries thereof that Defendants have or can adduce;

   c. provide any relevant compilations, abstracts or summaries in Defendants' custody or readily obtainable by Defendants; and

   d. produce the documents for inspection and copying with the answers to these interrogatories.

22. As used herein, references to "Prior Art" include, but are not limited to, documents (i.e., printed publications) and materials that qualify as prior art pursuant to 35 U.S.C.

§ 102, including any patent, patent application, publication, reference, knowledge, use, sale, offer for sale, material, apparatus, information, device, or invention that discloses or in any way relates

23. As used herein, references to "correspondence," "communication" or "communications," shall mean all written, electronic, or oral exchanges or transmittals between or among two or more persons made by any mode of transmission (e.g., e-mail, instant messaging, facsimile, telex, courier, U.S. Mail, in person, or via telephone) and in any form (e.g., electronic, documentary, memorandum).

## INTERROGATORIES

### INTERROGATORY NO. 1:

State each and every fact that supports or tends to support, or refutes or tends to refute your contention that you have not infringed claims 1 or 3 of the '031 patent, either directly or indirectly (has not contributed to or induced infringement), literally or under the doctrine of equivalents, including, without limitation, your claim construction for each element of claims 1 and 3, and all documents and/or tests which support your allegations.

### INTERROGATORY NO. 2:

State each and every fact that supports or tends to support, or refutes or tends to refute your contention that claims 1 and 3 of the '031 patent are invalid including, but not limited to, providing a claim chart for each such claim and for each item or item(s) of prior art, or other evidence, that forms the basis for each such invalidity contention.

### INTERROGATORY NO. 3:

State each and every fact that supports or tends to support, or refutes or tends to refute your contention that the patent in suit is unenforceable due to inequitable conduct, including, but not limited to your contention that (1) the results presented in the Borchert Declaration and/or in the Interview are not actually statistically significant; (2) poor experimental design precludes drawing the conclusion that the results are unexpectedly or surprisingly greater than those obtained for the prior art enzymes; and (3) the results are not, in fact, unexpected or surprising.

**INTERROGATORY NO. 4:**

State each and every fact that supports or tends to support, or refutes or tends to refute your contention that the patent in suit is unenforceable due to prosecution laches.

**INTERROGATORY NO. 5:**

With respect to your Spezyme Ethyl product sold in the United States, identify: (1) its amino acid sequence; (2) the host cell strain in which it is produced; (3) the DNA sequence from which the Spezyme Ethyl product is obtained; (4) the parent alpha-amylase from which it was derived; (5) the amino acid sequence of the parent alpha-amylase from which it was derived; (6) its alpha-amylase activity; and (7) any patent protection that has been sought for the product, its manufacture, or use.

**INTERROGATORY NO. 6:**

Identify the dates and circumstances when Genencor first became aware of the existence of the '031 patent, and describe the action, if any, taken by Genencor as a result of becoming aware of the patent.

**INTERROGATORY NO. 7:**

Identify each and every customer to whom you have sold or otherwise provided Spezyme Ethyl product in the United States; and for each customer identify the total monthly sales in units and dollars for Spezyme Ethyl since its introduction.

**INTERROGATORY NO. 8:**

Identify each individual responsible for or knowledgeable about the development, manufacture, marketing, sales or distribution of the Spezyme Ethyl product in the United States.

**INTERROGATORY NO. 9:**

For each of the foregoing interrogatories, identify the three persons at Genencor most knowledgeable about the subject matter and your answers thereto.

Dated: July 1, 2005

NOVOZYMES A/S

/s/ 

Richard H. Morse (No. 531)
Josy W. Ingersoll (No. 1088)
Karen E. Keller (No. 4489)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Joseph R. Robinson
Steven E. Lipman
Robert C. Sullivan, Jr.
Samuel S. Woodley
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700

*Attorneys for Plaintiff*
*Novozymes A/S*

- 10 -

## CERTIFICATE OF SERVICE

I, Robert C. Sullivan, Jr., hereby certify that on July 1, 2005, I caused to be served a true and correct copy of the foregoing document to the following counsel of record:

**BY ELECTRONIC MAIL**

Donald E. Reid, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE  19899-1347

Tharan Lanier, Esquire
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025


DARBY & DARBY P.C.


_____
Robert C. Sullivan, Jr.
805 Third Avenue
New York, New York 10022
(212) 527-7700

*Attorneys for Novozymes A/S*