IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVOZYMES A/S,<br><br>                     Plaintiff,<br><br>          v.<br><br>GENENCOR INTERNATIONAL, INC. and<br>ENZYME DEVELOPMENT CORPORATION,<br><br>               Defendants. | C.A. No. 05-160-KAJ |

**PART 1 OF 3**
**UNREPORTED CASES ATTACHED TO**
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO MODIFY**
**THE SCHEDULING ORDER FOR THE PURPOSE OF AMENDING ITS COMPLAINT**

1

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1431065 (D.Del.)
(Cite as: Slip Copy)

**H**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

AFFINION LOYALTY GROUP, INC., Plaintiff,

v.

MARITZ, INC., Defendant.

No. Civ.A. 04-360-JJF.

May 22, 2006.

Jack B. Blumenfeld, and Maryellen Noreika, of Morris, Nichols, Arsht, & Tunnell, Wilmington, Delaware, Steven Lieberman, Sharon L. Davis, and R. Elizabeth Brenner, of Rothwell, Figg, Ernst, & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz, Patricia Smink Rogowski, and Paul E. Crawford, of Connolly, Bove, Lodge, & Hutz, Wilmington, Delaware, J. Bennett Clark, Jennifer E. Hoekel, and Marc W. Vander Tuig, of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court are Maritz' Motion To Dismiss For Lack Of Subject Matter Jurisdiction (D.I.80) and Affinion Loyalty Group's Motion To Join Assignee as Co-Plaintiff Pursuant to Federal Rule Of Civil Procedure 25(c) (D.I.82). For the reasons discussed, Maritz' Motion will be denied and Affinion Loyalty Group's Motion will be granted in part.

## I. BACKGROUND

On June 8, 2004, Trilegiant Loyalty Solutions, Inc. ("Trilegiant") filed its Complaint, alleging that Maritz, Inc. ("Maritz") infringes United States Patent Nos. 5,774,870 ("the '870 patent"), 6,009,412 ("the '412 patent"), and 6,578,012 ("the '012 patent") (collectively, "the patents-in-suit"). [FN1] On October 17, 2005, Trilegiant was acquired by Affinion Group Holdings, Inc. ("Affinion Holdings"). As a part of the acquisition, Trilegiant assigned all rights, title, and interest in the patents-in-suit to Affinion Net Patents, Inc. ("Affinion Patents"), another Affinion Holdings subsidiary.

FN1. Also pending before the Court is Affinion Loyalty Group's Motion For Leave To Amend Its Complaint And To Dismiss Defendant's Counterclaims Relating To The '870 and '012 Patents (D.I.101), which would dismiss all claims and counterclaims relating to the '870 and '012 patents. That Motion will be addressed at a later time.

In January 2006, Maritz filed its motion to dismiss for lack of subject matter jurisdiction, contending that, based on the assignment to Affinion Patents, Trilegiant, now Affinion Loyalty Group, Inc. ("Affinion Loyalty Group"), [FN2] lacks standing to pursue its claims. Affinion Loyalty Group subsequently filed its motion to join Affinion Patents as a co-plaintiff, contending that the joinder would render Maritz' motion moot. Maritz opposes this solution, arguing that Affinion Loyalty Group cannot act as a co-plaintiff because it lacks standing as a non-exclusive licensee. Maritz further contends that the case should be dismissed because Trilegiant disregarded its obligation to inform the Court and Maritz of the change in ownership and because Maritz has been unduly prejudiced.

FN2. Trilegiant changed its name to Affinion Loyalty Group on February 21, 2006.

## II. DISCUSSION

Affinion Loyalty Group does not dispute that, alone, it lacks standing, thereby temporarily depriving the Court of jurisdiction. Thus, the Court will first determine whether to dismiss the instant action in light of Affinion Loyalty Group's motion to allow Affinion Patents to participate pursuant to Federal Rule of Civil Procedure 25(c). Second, the Court will decide whether Affinion Loyalty Group has standing to continue as a co-plaintiff in this action. Finally, the Court will address Maritz' argument that the instant action should be dismissed due to Affinion Loyalty Group's delay in notifying Maritz and the Court of the assignment.

*A. Whether The Court Should Dismiss This Action For Lack Of Subject Matter In Light Of Affinion Loyalty Group's Motion To Join Affinion Patents As*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1431065 (D.Del.)
**(Cite as: Slip Copy)**

*Co-Plaintiff Pursuant To Federal Rule Of Civil Procedure 25(c)*

A court, which temporarily lacks subject matter jurisdiction due to a plaintiff's lack of standing, may regain jurisdiction if the original plaintiff had Article III standing and there is a way to cure the deficiency. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed.Cir.2005). In patent cases, joinder or substitution of an assignee of all rights, title, and interest in the patents-in-suit is permissible under Federal Rule of Civil Procedure 25(c) to cure a lack of standing. *General Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258 (D.Del.1982).[FN3]

> FN3. Federal Rule of Civil Procedure 25(c) provides:
> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.
> *Fed.R.Civ.P.* 25(c).

*2 The parties do not dispute that Trilegiant had standing when it initiated the instant action. Affinion Loyalty Group has moved pursuant to Rule 25(c) to cure the temporary lack of standing. Accordingly, the Court must determine whether it will join or substitute Affinion Patents as a plaintiff.

B. *Whether Affinion Loyalty Group Has Standing As A Co-Plaintiff In This Suit*

Affinion Loyalty Group moves the Court to join, rather than substitute, Affinion Patents as a party because it maintains an interest in the litigation as a result of a non-exclusive license it received from Affinion Patents. "Under certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee. Such a licensee is an 'exclusive licensee." ' *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed.Cir.1995). However, "[a] non-exclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement." *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed.Cir.2005).

The patent-licensing agreement between Affinion Loyalty Group and Affinion Patents provides Affinion Loyalty Group with a non-exclusive license to practice the patents-in-suit, and, therefore, Affinion Loyalty Group may not remain a plaintiff in this suit.[FN4] While the license also provides that Affinion Loyalty Group is entitled to participate in and receive the proceeds from infringement suits relating to the patents-in-suit, such a contractual clause cannot alter statutory requirements and give Affinion Loyalty Group co-plaintiff standing. *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1034 (Fed.Cir.1995).Accordingly, Affinion Loyalty Group will be dismissed as a plaintiff and Affinion Patents will be substituted in its place.

> FN4. Section 2.1 of the Patent License Agreement provides:
> Licensor hereby grants to Licensee a *non-exclusive*, fully paid up, royalty-free, worldwide, sublicensable ... license to make, use, sell, offer to sell and import all products and devices and practice all methods claimed in the Netcentives Patents in the Field, subject to the restrictions set forth in the Cendant Patent License.
> (D.I.82, Ex. 2) (emphasis added).

Maritz contends that Affinion Loyalty Group has failed to comply with the technical requirements of Rule 25(c), which require the party or successor seeking joinder or substitution to serve parties in accordance with Rule 5 and non-parties in accordance with Rule 4. *Fed.R.Civ.P.* 25(c). Because Affinion Patents has remained silent throughout the pendency of the instant motions, the Court will require Affinion Loyalty Group and Affinion Patents to enter a stipulation substituting Affinion Patents for Affinion Loyalty Group.

C. *Whether The Court Should Dismiss This Action Due To Affinion Loyalty Group's Delay In Notifying Maritz And The Court Of The Assignment To Affinion Patents*

Having concluded that the Court's lack of subject matter jurisdiction can be cured, the Court must determine whether it should grant Maritz' motion to dismiss as a sanction for Affinion Loyalty Group's delay in informing the Court and Maritz of the assignment to Affinion Patents. Under Third Circuit case law, "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339,

Slip Copy
Slip Copy, 2006 WL 1431065 (D.Del.)
**(Cite as: Slip Copy)**

342 (3d Cir.1982).[FN5] In determining whether a punitive dismissal is warranted, a court is to consider six factors:

> FN5. Both parties cite *Schreiber Foods, 402 F.3d 1198,* in support of their arguments on Maritz' motion to dismiss. However, the Court concludes that *Schreiber* is inapplicable to the instant dispute. In *Schreiber,* the Federal Circuit acknowledged the defendant's argument that the case should be dismissed as a sanction for the plaintiff's misrepresentations regarding ownership of the patents. The Court, however, declined to address this argument because the lower court had dismissed the suit for lack of subject matter jurisdiction, not as a sanction for the plaintiff's misconduct.

*3 (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal ...; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, (3d Cir.1984); *Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir.1992).

The Court concludes that dismissal for Affinion Loyalty Group's delay would be inappropriate in this case. It is true that Affinion Loyalty Group should have informed the Court and Maritz shortly after the assignment to Affinion Patents. However, the Court concludes that Maritz is not unduly prejudiced by the temporary lack of information. Maritz was informally aware of the assignment as early as December 2005. Furthermore, Affinion Patents was formed in October 2005 for the sole purpose of holding the patents, and therefore, it is unlikely that Affinion Patents would have a substantial number of documents pertinent to this suit that were not in Affinion Loyalty Group's possession during the exchange of discovery. Finally, Affinion Loyalty Group has exhibited no history of dilatoriness, nor is there any evidence that Affinion Loyalty Group acted willfully or in bad faith. Accordingly, the Court will deny Maritz' motion to dismiss as a sanction for Affinion Loyalty Group's delay in informing the Court and Maritz of the assignment.

## III. CONCLUSION

For the reasons discussed, Maritz' Motion To Dismiss For Lack Of Subject Matter Jurisdiction (D.I.80) will be denied. Furthermore, Affinion Loyalty Group's Motion To Join Assignee as Co-Plaintiff Pursuant To Federal Rule Of Civil Procedure 25(c) (D.I.82) will be granted in part and Affinion Patents shall be substituted for Affinion Loyalty Group.

An appropriate Order will be entered.

D.Del.,2006.
Affinion Loyalty Group, Inc. v. Maritz, Inc.
Slip Copy, 2006 WL 1431065 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1435848 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Motion to Amend Complaint and Dismiss Defendant's Counterclaims (Apr. 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1204459 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's First Motion to Compel Production of Documents (Mar. 17, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 1182436 (Trial Motion, Memorandum and Affidavit) Maritz' Combined Reply in Support of Motion to Dismiss and Response to Plaintiff's Motion to Join Assignee as Co-Plaintiff (Mar. 3, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 809100 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Motion to Compel Production of Documents (Feb. 21, 2006) Original Image of this Document (PDF)
• 2005 WL 2867933 (Trial Motion, Memorandum and Affidavit) Reply to Amended Counterclaim (Sep. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 3987288 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Second Motion to Compel Production of Documents (Mar. 17, 2005) Original Image of this Document with Appendix (PDF)
• 1:04cv00360 (Docket) (Jun. 8, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**2**

Westlaw.

Not Reported in F.Supp.                                                                                          Page 1
Not Reported in F.Supp., 1991 WL 352525 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States District Court, N.D. Illinois, Western
Division.
Robert N. BLUMENTHAL, Andreas T. Melville, and
  Furnace Control Corp., Plaintiffs,
                         v.
      BARBER-COLMAN HOLDING CORP.,
  Barber-Colman Company, and Surface Combustion,
            Inc., Defendants.
            No. 90 C 20365.

                   Nov. 26, 1991.


Joseph Gerard McGraw and Harold L. Turner,
Rockford, Ill., Daniel D. Ryan, Milwaukee, Wis., for
plaintiffs.
Charles S. Oslakovic, Chicago, Ill., Michael C.
Payden, Rockford, Ill., Jules Jay Morris, Foxboro,
Mass., for defendants.

                    *ORDER*

ROSZKOWSKI, District Judge.
**\*1** Before the court is Defendants' motion to dismiss
Plaintiff Furnace Control as a party to this lawsuit.
For the reasons set forth herein, the court grants
Defendants' motion to dismiss.


                *BACKGROUND*

Plaintiffs filed suit in the Northern District of Illinois,
Western Division on December 26, 1990 alleging a
cause of action against Defendants for patent
infringement. Plaintiffs' complaint alleges that
Plaintiffs Robert N. Blumenthal and Andreas T.
Melville are joint owners of the patent-in-suit and
alleges that Plaintiff Furnace Control Corporation is
licensed under that patent.

Furnace Control is a Wisconsin corporation wholly
owned and controlled by Plaintiffs Blumenthal and
Melville, the patentees in this cause of action.
Plaintiffs contend that Furnace Control holds a
non-exclusive worldwide license under the
patent-in-suit and is the sole licensee of the
patent-in-suit. Plaintiffs further contend that Furnace
Control is the only vehicle by which thep atentees

have developed and commercialized the technology
protected by the patent-in-suit and that Furnace
Control has paid all the costs of developing and
manufacturing the inventions described in the
patent-in-suit. Finally, Plaintiffs allege that Furnace
Control has paid all the legal fees and costs of
preparing, filing, prosecuting and policing the
patent-in-suit.

Defendants, on the other hand, argue that Furnace
Control possesses only a "bare license" that conveys
no legally assertable patent interest and, therefore, has
no right to join in this cause of action. Defendants
assert that the license agreement between Plaintiffs
Blumenthal and Melville grants Furnace Control a
non-exclusive right under the patent-in-suit, with no
right to sublicense. As such, Defendants move to
dismiss Furnace Control as a party to the present cause
of action.


                  *DISCUSSION*

In *Life Time Doors, Inc. v. Walled Lake Door Co.,* 505
F.2d 1165, 1167 (6th Cir.1974), the Sixth Circuit
Court of Appeals held that a "mere licensee has no
right even to be joined in a suit for infringement."
Citing *Life Time Doors,* the district court in *Michod v.
Walker Magnetics Group, Inc.,* 115 F.R.D. 345, 346
(N.D. Ill.1987) stated "It is hornbook law that only a
patent owner or an exclusive licensee may sue for
patent infringement."

Defendants argue that Plaintiff Furnace Control is a
"bare licensee" and, therefore, has no right to join in
this suit for patent infringement. A "bare licensee" is
defined as "a grant of authority to make use of vend
the patented product throughout the United States or
in a given part of it with no right of exclusion
whatsoever." *Innis, Speiden & Co. v. Food
Machinery Corp.,* 2 F.R.D. 261, 263 (D.Del.1942).
Furthermore, in *Waterman v. Mackenzie,* 138 U.S. 252,
255 (1891), the United States Supreme Court held that
there are three situations in which a transfer of patent
rights can properly provide the transferee with a
sufficient interest in the patent to warrant participation
in an infringement action. In *Waterman* the Court
stated:
**\*2** The patentee or his assigns may, by instrument in
writing, assign, grant, and convey, either (1) the whole
patent, comprising the exclusive right to make, use,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 352525 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

and vend the invention throughout the United States; or (2d) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States.

*Id.*    The Court then went on to state that "Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement." *Id.*

Plaintiffs direct this court's attention to the case of *Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed.Cir.1990). In *Kalman*, the patentee (Kalman) and his brother formed Process Developments Limited (hereinafter "PDL") in order to manufacture and market products under Kalman's patent. Kalman and his brother each owned 50% of PDL's stock and were its only directors. Noting the Kalman's patented device was manufactured and marketed solely by PDL and Defendant had knowledge of Kalman's license to PDL, the Federal Circuit Court of Appeals held:
[W]e do not give any licensee who joins the patentee standing to sue an infringer. When the sole licensee, however, has been shown to be directly damaged by an infringer in a two supplier market, and when the nexus between the sole licensee and the patentee is so clearly defined as here, the sole licensee must be recognized as the real party in interest.

*Id.* at 1481-82.

Upon reading *Kalman,* the court finds that the Federal Circuit also ruled that "It is will settled that a non-exclusive licensee of a patent has no standing to sue for infringement" *Id.* at 1481,*ci ting. Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891). The other cases Plaintiff relies on in opposition to Defendants' motion to dismiss, likewise hold that a "bare licensee" or a non-exclusive licensee has no right to join in a suit for patent infringement. *See, Weinar v. Rollform Inc.,* 744 F.2d 797, 807 (Fed.Cir.1984); *E.W. Bliss Co. v. United States,* 253 U.S. 187, 192 (1920) holding that only a licensee who has an exclusive right under the patent may maintain a suit for infringement.

Clearly, Plaintiff Furnace Control holds a non-exclusive license in the patent-in-suit. The license agreement specifically states as follows:
... the Licensee has previously received from the Licensors on a royalty-free basis the nonexclusive worldwide right to make, have made, sell, and use products incorporating the inventions claimed in the Patent Rights ...

3
The parties agree as follows:
1.    The Licensors perpetuate their grant to the Licensee of the nonexclusive worldwide right, without the right to sublicense, to make, have made, sell, and use products incorporating the inventions claimed in the Patent Rights.

3
4. The Licensors shall have the right to unilaterally terminate this Agreement without cause upon ninety (90) days advance written notice to the Licensee.

*3 Moreover, deposition testimony supports that fact that Plaintiff Furnace Control is a non-exclusive licensee and has no right to control who the patent owners license under the patent in suit. *See,* Melville Dep., p. 112, 117. Plaintiff Blumenthal stated during his deposition that the decision to license other parties would be made by the patent owners and not by Furnace Control and that Furnace Control's rights under the patent agreement are non-exclusive. Blumenthal Dep., p. 5-6, 12. In fact, Plaintiff Blumenthal admitted at his deposition that attempts were initially made to license others, including Defendant Barber-Colman. Blumenthal Dep., p. 6. Accordingly, because Plaintiff Furnace Control's rights are expressly stated to be non-exclusive and because the licensors have retained the right to terminate the license unilaterally without cause, Plaintiff Furnace Control has no legally assertable patent interest and, as such, has no right to join in this cause of action. Defendants' motion to dismiss is granted.

*CONCLUSION*

For the reasons set forth herein, Defendants' motion to dismiss Plaintiff Furnace Control from the present cause of action is granted. Final pretrial conference set for December 20, 1991 at 2:00 p.m. before Magistrate Judge P. Michael Mahoney stands as set.

N.D.Ill.,1991.
Blumenthal v. Barber-Colman Holding Corp.
Not Reported in F.Supp., 1991 WL 352525 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 3:90cv20365 (Docket) (Dec. 26, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 352525 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**3**

Westlaw.

Slip Copy                                                                                              Page 1
Slip Copy, 2005 WL 2465900 (D.Del.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
CORNING INCORPORATED, et al., Plaintiffs,
v.
SRU BIOSYSTEMS, et al., Defendants.
**No. Civ.A. 03-633 JJF.**

Oct. 5, 2005.

Richard L. Horwitz, and David E. Moore, of Potter
Anderson & Corroon LLP, Wilmington, Delaware,
Kenneth E. Krosin, Andrew E. Rawlins, Larry L.
Shatzer, and George C. Best, of Foley & Lardner,
Washington, D.C., for Plaintiffs, of counsel.
Steven J. Balick, and John G. Day, of Ashby &
Geddes, Wilmington, Delaware, John J. McDonnell,
Daniel A. Boehnen, Matthew J. Sampson, Richard A.
Machonkin, Patrick G. Gattari, of McDonnell
Boehnen Hulbert & Berghoff LLP, Chicago, Illinois,
for Defendants, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.
\*1 Pending before the Court are several evidentiary
matters raised by the parties. Plaintiffs, Corning
Incorporated and Artificial Sensing Instruments ASI
AG (collectively, "Corning") have filed three motions:
(1) Motion In Limine (D.I.198), (2) Motion In Limine
To Exclude Any Testimony At Trial From Dr.
Buckman Based Upon His Supplemental Expert
Report (D.I.210-2), and(3 ) MotionI n Limine To
Exclude Certain Of SRU's Deposition Designations
(D.I.228). Defendants, SRU Biosystems, LLC, SRU
Biosystems, Inc. and SRU Holdings, LLC
(collectively, "SRU") have filed two motions: (1) In
Limine Motions (D.I.199), and (2) Motion In Limine
No. 7 To Exclude Evidence Of Harm Caused By
SRU's Alleged Acts Of Infringement (D.I.202). In
addition, the parties raised several evidentiary
objections during the course of the trial, which the
Court instructed thep arties to brief post-trial. This
Memorandum Opinion constitutes the Court's rulings
with regard to the pending evidentiary matters.

DISCUSSION

I. Corning's Motions In Limine (D.I.198)

A. *Motion In Limine To Preclude Argument Or Expert
Testimony From Dr. A. Bruce Buckman That Applies
An Incorrect Legal Standard (D.I.198-1)*

By its Motion, Corning requests the Court to exclude
certain testimony of Dr. Buckman on the grounds that
his infringement opinions are improperly based on a
comparison of SRU's optical sensors to a preferred
embodiment of the '843 patent and to a commercial
embodiment of the inventor's optical sensor, rather
than to the patent's claims. Corning contends that the
correct analysis for infringement compares the
accused infringing device to the patent's claims, and
therefore, Dr. Buckman's testimony to the contrary
should be excluded as irrelevant.

Corning raises this same objection post-trial and also
contends that Dr. Buckman's testimony on
obviousness should be excluded to the extent that it is
based upon an incorrect legal standard. Specifically,
Corning contends that Dr. Buckman improperly uses
the claimed invention as a blueprint to piece together
the claimed invention from the prior art, an approach
disfavored by the Federal Circuit.

In response, SRU contends that Dr. Buckman's
testimony about the patent and the inventor's
commercial embodiment provides important scientific
information essential to a proper understanding of the
claims and the technology as a whole. SRU contends
that this testimony is also relevant to infringement
under the doctrine of equivalents. As for his testimony
on obviousness, SRU contends that Dr. Buckman
applied the correct standard.

Reviewing the parties' arguments in light of the
proffered evidence, the Court will deny Corning's
motion and overrule its related trial objections. To the
extent that Dr. Buckman's testimony goes to the
overall technology and background of the invention it
is admissible evidence. To the extent that it can be said
that Dr. Buckman's testimony applied the incorrect
legal standard in the context of his infringement
opinions, the Court concludes that his testimony
should not be stricken, but that any inconsistencies
between his analysis and the correct legal standards
should be considered in the weight to be afforded to
Dr. Buckman's trial testimony. The Court's conclusion
applies equally to Dr. Buckman's testimony on
obviousness.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2465900 (D.Del.)
**(Cite as: Slip Copy)**

### B. *Motion In Limine To Preclude Argument Or Testimony Contrary To The Court's Claim Construction (D.I.198-2)*

**\*2** Corning next contends that any argument or testimony proffered by SRU which is contrary to the Court's claim construction should be excluded. In response, SRU contends that Dr. Buckman's supplemental expert report expressly applies the Court's claim construction, and therefore, his testimony should not be excluded.

Reviewing the parties' arguments in light of the evidence adduced at trial, the Court will deny Corning's motion and overrule its related trial objection. Dr. Buckman's supplemental expert report applies the Court's claim construction, and Corning had ample opportunity at trial to cross-examine Dr. Buckman on his opinions to the extent that they departed from the Court's claim construction. Further, any deviations between Dr. Buckman's testimony and the Court's claim construction will be considered by the Court in determining the weight to afford Dr. Buckman's testimony.

### C. *Motion In Limine To Preclude SRU's Expert From Opining On Patent Law (D.I.198-3)*

Corning next contends that any testimony offered by Dr. Buckman on patent law should be excluded. Because Dr. Buckman has no legal training or experience, Corning contends that he should not be permitted to offer such testimony because he is not qualified as an expert on patent law under Fed.R.Evid. 702.

SRU maintains that Dr. Buckman's testimony was offered as a technical expert, not a legal expert. SRU maintains that Dr. Buckman is qualified to provide expert testimony as to how the '843 patent is invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, and that this testimony should not be excluded simply because it overlaps with the legal principles applicable to invalidity.

To the extent that Dr. Buckman provided the Court with a legal opinion, the Court agrees with Corning that his testimony is irrelevant, and therefore, Corning's motion will be granted and its related trial objection sustained. However, because the written description inquiry involves factual questions, the

Court concludes that Dr. Buckman was permitted to discuss the technology at issue in light of the factors relevant to the written description inquiry. To the extent Dr. Buckman's testimony provided such a factual analysis and opinion, rather than a legal opinion, the Court will deny **Corning's** motion and overrule its related trial objection.

### D. *Motion In Limine To Preclude Defendants From Introducing Evidence Regarding U.S. Patent No. 5,071,248 (the "'248 patent") (D.I.198-4)*

**Corning** contends that evidence proffered by SRU relating to its dismissed counterclaims for invalidity and non-infringement of the '248 patent should be excluded. **Corning** contends that this evidence is irrelevant to the issues of infringement, validity and enforceability of the '843 patent. **Corning** raises the same objection post-trial and also contends that evidence concerning **SRU's** counterclaims for breach of contract, tortious interference and/or misappropriation of trade secrets should be excluded as irrelevant.

**\*3** In response, **SRU** contends that this evidence should be admitted because it is relevant to the issue of invalidity and whether this is an exception case under 35 U.S.C. § 285. According to **SRU**, evidence related to the '248 patent is relevant because the '248 patent is a continuation of the '843 patent. **SRU** also contends that evidence about its dismissed counterclaims is relevant to demonstrate that **Corning** initiated this lawsuit based on its desire to block **SRU** from entering the market, rather than based on legal merit.

Subsequent to the filing of this motion, the parties signed a Covenant-Not-To-Sue dismissing **SRU's** counterclaims regarding non-infringement and invalidity of the '248 patent. In addition, **SRU** voluntarily dismissed its state law claims against **Corning** with prejudice. Accordingly, the Court concludes that the dismissed counterclaims are irrelevant to this action, and therefore, the Court will grant **Corning's** motion and sustain its related trial objections.

### E. *Motion To Preclude Questions Implicating The Attorney-Client Privilege Or Attorney Work Product (D.I.198-5)*

**Corning** next requests the Court to preclude **SRU** from questioning witnesses in a way that will require the witness to invoke the attorney-client privilege. The

Slip Copy                                                                Page 3
Slip Copy, 2005 WL 2465900 (D.Del.)
**(Cite as: Slip Copy)**

Court concludes that Corning's request is overbroad and vague. Further, the Court gave **Corning** the opportunity to present any specific objections regarding the attorney-client privilege post-trial, and **Corning** declined to brief any such objections in its post-trial evidentiary submissions. Accordingly, the Court will deny **Corning's** motion as moot.

*F. Motion In Limine To Preclude SRU's Assertion That Professor Clifford Pollock Has A Conflict Of Interest (D.I.198-6)*

**Corning** requests the Court to exclude any argument or testimony suggesting that **Corning's** expert witness Professor Clifford Pollock has a conflict of interest arising from **Corning's** employment of his former graduate student, Dr. Eric Mozdy. **Corning** contends that **SRU's** assertion is baseless and unduly prejudicial to **Corning**.

In response, **SRU** contends that Professor Pollock's former graduate student is working in the department of **Corning** that is developing a biosensor product that will compete with **SRU's** biosensor product. **SRU** contends that there is a close relationship between Dr. Pollock and Dr. Mozdy and that any evidence tending to show a bias on the part of Dr. Pollock is relevant.

The Court agrees with **SRU** that evidence demonstrating a conflict of interest on the part of Dr. Pollock as a result of the employment by **Corning** of Dr. Mozdy is relevant to showing bias on the part of Dr. Pollock. Accordingly, the Court will deny **Corning's** motion.

*G. Motion To Preclude Testimony From Lance Laing (D.I.198-7)*

**Corning** next requests the Court to preclude **SRU** from offering the testimony of Lance Laing. Because Mr. Laing did not testify at trial, the Court will deny this motion as moot.

II. **Corning's** Motion In Limine To Exclude Any Testimony At Trial From Dr. Buckman Based Upon His Supplemental Expert Report (D.I.210-2)

**\*4** By its Motion, **Corning** requests the Court to exclude any testimony offered by Dr. Buckman based on his untimely supplemental expert report. **Corning** contends that it was prejudiced by the late submission, and therefore, exclusion of this evidence is appropriate.

In its November 5, 2005, Memorandum Order (D.I.239), the Court concluded that Dr. Buckman's supplemental report was not untimely, and therefore, denied Plaintiffs' Motion To Strike The Supplemental Expert Report Of Dr. A. Bruce Buckman (D.I.210-1). For the reasons stated in that Memorandum Order, the Court will likewise deny Plaintiff's request to exclude trial testimony based on Dr. Buckman's supplemental report.

III. Corning's Motion In Limine To Exclude Certain Of SRU's Deposition Designations (D.I.228)

By its Motion, Corning seeks to exclude from evidence the portions of the deposition transcripts of Thomas R. Beall, Dr. Pasqual Marque, and Joseph P. Fredette designated by SRU. Plaintiff contends that these designations are irrelevant to the issues before the Court and prejudicial to Corning. The Court will review each of the areas sought to be excluded.

*A. Evidence Relating To Commercial Embodiments*

Corning requests the Court to exclude testimony from Dr. Marque's deposition relating to ASI's commercial embodiments of its patented technology, as well as information from Dr. Fredette regarding a marketing evaluation conducted on ASI's technology. Corning contends that this testimony is irrelevant to the issues of infringement and validity, because both analyses require the Court to look to the claims of the patent and not the commercial embodiments of the claims.

SRU contends that this testimony is relevant to the "secondary considerations" of obviousness. Specifically, SRU contends that the evidence is relevant to the commercial success of the patentee's invention.

The Court agrees with SRU that the testimony proffered is relevant to issues concerning the patent's validity, including secondary considerations regarding whether the claimed invention is obvious under 35 U.S.C. § 103. In addition, the Court is persuaded that the testimony has some relevance to interchangeability considerations for the purposes of analyzing infringement under the doctrine of equivalents. Given the testimony's relevance, and in the context of a bench trial, the Court is not persuaded that Corning will suffer any undue prejudice based on the admission of this testimony into evidence.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2465900 (D.Del.)
(Cite as: Slip Copy)

Accordingly, the Court will deny Corning's request to exclude this testimony and overrule its related trial objection.

### B. *Licensing Agreements And Negotiations*

Corning also requests the Court to exclude deposition testimony from Mr. Beall concerning the licensing agreements and negotiations between Corning and ASI, and testimony from Mr. Marque concerning his research leading up to the licensing agreement. Corning contends that this evidence is irrelevant to the issues of infringement and validity. In addition, Corning requests the Court to exclude evidence concerning the Corning-SRU negotiations. Corning contends that this evidence is unduly prejudicial to Corning.

*5 In response, SRU contends that this testimony is relevant to the secondary considerations of obviousness. SRU also contends that the negotiations between itself and Corning show the value of a potential license and are therefore relevant to obviousness.

As with testimony concerning the commercial success of the patented invention, the Court agrees with SRU that the testimony sought to be excluded by Corning is relevant to the secondary considerations of obviousness under Section 102. *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed.Cir.1997). The Court is also persuaded that Corning will not suffer any undue prejudice as a result of the admission of this testimony. Accordingly, the Court will deny Corning's request to exclude this testimony.

### C. *Evidence Concerning Corning Personnel Involved In Concluding SRU's Alleged Infringement Of The '843 Patent*

Corning next requests the Court to exclude deposition testimony relating to Corning's internal consideration and conclusion that SRU allegedly infringes the '843 patent. Specifically, this topic is relevant to the relationship between Dr. Pollock and Dr. Mozdy, as well as other scientists at Corning who were former graduate students of Dr. Pollock. The Court has previously concluded that testimony concerning Dr. Pollock's relationshipwi th scientists at Corning is probative of bias, and thus, relevant to an evaluation of the credibility of Dr. Pollock. For the reasons discussed above, the Court also concludes that

Corning will not be unduly prejudiced by the admission of this testimony. Accordingly, the Court will deny Corning's request to exclude this testimony.

### D. *Education, employment, and other background designations*

Corning also contends that the Court should exclude the deposition testimony of Mr. Beall, Mr. Fredette, and Dr. Marque concerning their education and employment, as well as other deposition testimony concerning their background. Corning contends that this evidence is a "waste of time should the Court exclude the other substantive portions [of the testimony] addressed in this motion." (D.I. 228 at 12).

The Court has denied Corning's request to exclude the substantive portions of the deposition designations raised by Corning, and the Court is persuaded that this background testimony is relevant. Accordingly, the Court will deny Corning's motion to exclude this evidence.

### IV. Defendants' In Limine Motions (D.I.199)

### A. *Motion In Limine To Exclude The Non-Probative Opinions Of Plaintiffs' Expert, Dr. Clifford R. Pollock (D.I.199-1)*

By its Motion and related trial objection, SRU requests the Court to exclude certain calculations performed by Dr. Pollock and his related testimony. SRU contends that Dr. Pollocks' calculations are "new" and that his testimony is based on different assumptions than he used in his expert report.

The Court concludes that Dr. Pollock's testimony is not "new" and is not unduly prejudicial to SRU. Dr. Pollock's calculations were identical to those used in his expert report, except that he changed the value of the thickness of the titanium oxide film in accordance with the testimony of SRU's witness, Dr. Cunningham, who provided testimony at trial that differed from his deposition testimony. In addition, PDX-77 and 78 and the associated testimony about strength of gratings, the quantity of light that is coupled off the tooth of each grating and that the binding causes the angle at which light leaves the tooth to change is not new evidence, because Dr. Pollock's expert report discusses these issues. Accordingly, the Court will deny SRU's Motion and overrule its related trial objection.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2465900 (D.Del.)
(Cite as: Slip Copy)

Page 5

B. *Motion In Limine To Exclude The Expert Report And Testimony of Gerald J. Mossinghoff (D.I.199-2)*

*6 In its Motion, SRU acknowledges that it sought the exclusion of Mr. Mossinghoff's testimony in a prior Motion (D.I.129). However, in the instant Motion, SRU provides additional reasons why SRU's prior motion should be granted.

By Memorandum Order dated November 5, 2005, the Court granted SRU's motion to exclude the testimony of Mr. Mossinghoff. Because this issue has already been addressed and the present motion is a continuation of the previously filed and granted motion, the Court will deny the instant request as moot.

C. *Motion In Limine To Exclude Evidence Regarding SRU's Filing And Voluntary Dismissal Of Counterclaims For Breach Of Contract, Trade Secret Misappropriation, And Tortious Interference (D.I.199-3)*

By its motion, SRU requests the Court to exclude any evidence related to the counterclaims for breach of contract, trade secret misappropriation and tortious interference filed by SRU and subsequently voluntarily dismissed by SRU. SRU contends that this evidence has "no tendency to make the existence of any fact that is of consequence to the issues of infringement or validity of the patent-in-suit more probable or less probable than it would be without the evidence." (D.I. 199, Tab 3 at 2).

The Court has concluded in the context of **Corning's** motion and related trial objections that evidence related to the dismissed counterclaims are irrelevant to the claims at issue. Accordingly, the Court will grant **SRU's** motion.

D. *Motion In Limine To Exclude Evidence That Third-Parties Did Not Enter Into Business Relationships With SRU (D.I.199-4)*

By its motion, **SRU** requests the Court to exclude evidence that **SRU** has not been able to enter into business relationships with potential partners and venture capital firms. Because **Corning** did not offer this evidence at trial, the Court will deny as moot **SRU's** motion.

E. *Motion In Limine To Exclude Evidence Regarding Infringement And The Outcome Of The Infringement Portion Of The Trial (D.I.199-5)*

**SRU** next requests the Court to exclude all evidence regarding infringement and the outcome of the infringement trial from the validity portion of the trial. Because the issues of infringement and validity were tried together before the Court, **SRU's** motion will be denied as moot.

F. *Motion In Limine To Exclude Evidence Regarding SRU's Opinions Of Counsel (D.I.199-6)*

**SRU** also requests the Court to exclude evidence regarding **SRU's** opinions of counsel, because those issues are related to willfulness. Because **Corning** did not offer evidence regarding **SRU's** opinions of counsel during the invalidity and infringement trial, and because these issues were tried before the Court instead of a jury, the Court will deny as moot **SRU's** motion.

V. **SRU's** Motion In Limine No. 7 To Exclude Evidence Of Harm Caused By **SRU's** Alleged Acts Of Infringement (D.I.202)

By its motion and related trial objection, **SRU** requests the Court to exclude all evidence, testimony or argument related to **Corning's** claim that it will be harmed by **SRU's** alleged acts of infringement. **SRU** contends that **Corning's** Complaint contained no such allegations of harm and that **Corning** has waived its damages claim. **SRU** also contends that **Corning** refused to provide discovery regarding its optical biosensor product.

*7 **Corning** contends that **SRU** has been on notice that **Corning** was seeking an injunction from the time it filed its Complaint in this action. **Corning** contends that its claim for injunctive relief is separate and distinct from its claim for monetary damages. Thus, **Corning** contends that its decision not to proceed with its claim for monetary damages has no affect on its claim for injunctive relief. As for **SRU's** contention regarding discovery, **Corning** contends that any discovery not produced was the result of **SRU's** failure to request such discovery.

The Court agrees with **Corning** that its claim for injunctive relief survived its withdrawn claim for monetary damages, and **SRU** was on notice that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2465900 (D.Del.)
(Cite as: Slip Copy)

**Corning** sought injunctive relief. As for any lack of discovery, the Court concludes that **SRU** has not established that it requested such discovery or that such discovery, if requested, was not disclosed in other documents produced by **Corning**. Accordingly, the Court will deny **SRU's** motion in limine and overrule its related trial objection.

VI. **Corning's** Additional Evidentiary Objections

A. ***Corning's* Objection To Dr. *Buckman's* Opinion On New Matter In the '843 Patent Application**

In its post-trial briefing, **Corning** also objects to Dr. Buckman's opinion that portions of the '843 specification added by amendment constitute new matter that cannot be viewed as part of the original filing. **Corning** contends that Dr. Buckman has no training in patent law and therefore, he cannot render such an opinion.

In response, **SRU** contends that the new matter involves Figure 9 and its associated text in the '893 patent, and that **Corning** did not rely on this portion of the patent to show an adequate written description. **SRU** also contends that Dr. Buckman's opinion on this issue is probative evidence that should not be excluded.

It appears to the Court that **Corning** has not relied on Figure 9 and its associated text in their written description argument, and therefore, **Corning's** objection is moot. However, to the extent that the issue is not mooted, the Court concludes that Dr. Buckman's opinion has probative value to the new matter determination of whether one skilled in the art would recognize that the original specification disclosed the allegedly new matter. Accordingly, the Court will overrule Corning's objection to Dr. Buckman's testimony on this matter.

B. *Corning's Objection To Dr. Cunningham's Expert Testimony*

Corning objects to the testimony of Dr. Cunningham on the grounds that Dr. Cunningham was not qualified as an expert witness and it was improper for SRU to attempt to elicit expert testimony from him. Specifically, Corning contends that it was improper to provide Dr. Cunningham with a document that he neither wrote nor received and ask him to provide an opinion on the meaning of the document, particularly

where, as here, Dr. Cunningham provided no expert report and was not qualified as an expert witness.

**SRU** contends that the "standing objection" made by **Corning** during trial related to different testimony by Dr. Cunningham than **Corning** seeks to exclude in its post-trial evidentiary papers. **SRU** also contends that Dr. Cunningham's testimony is not being used to prove infringement, and that Dr. Cunningham's position as **SRU's** chief technical officer qualifies him to offer lay opinion on the operation of **SRU's** technology.

\*8 Under Rule 701, a lay witness may testify regarding his own perceptions and knowledge and participation in the day-to-day affairs of a business. In the Court's view, Dr. Cunningham's testimony was not offered by **SRU** as expert testimony, but as Rule 701 testimony regarding the background of **SRU** and its technology. Accordingly, Dr. Cunningham's testimony will not be used as expert testimony by the Court in its infringement analysis, and therefore, the Court will overrule **Corning's** objection.

C. *Corning's Objections To SRU's Demonstrative Exhibits*

**Corning** contends that several demonstrative exhibits used by **SRU** during the trial misrepresent the technologies involved. **Corning** also contends that these exhibits should be excluded from evidence under Rule 402 and 403.

**SRU** contends that **Corning** relies on several of the exhibits to which it objects in its own Findings of Fact and Post-Trial Briefs, and **Corning** has not explained how it can suggest that the exhibits are inaccurate while relying on them in their Briefs. **SRU** also contends that **Corning** did not raise its objections during trial.

The Court concludes that the demonstrative exhibits cited by **Corning** are relevant and that **Corning** had adequate opportunity to cross-examine witnesses concerning the accuracy of those exhibits. Accordingly, the Court concludes that any objections **Corning** maintains to these exhibits goes to their weight and not their admissibility, and therefore, the Court will overrule **Corning's** objections.

D. *Corning's Objections On The Grounds Of Hearsay And Improper And Untimely Expert Testimony*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Corning** objects that the following exhibits are hearsay and inadmissible under Federal Rules of Evidence 701 and 702, because they are improper expert testimony. **Corning** further objects to the exhibits on the grounds that most of them were designated in an untimely manner. The Court will address each exhibit raised in turn.

### 1. DTX 21A-Journal of Biomolecular Screening

The Court will overrule **Corning's** objection to DTX 21A. First, **Corning** never raised an objection to DTX 21A at trial (Tr. 803), and therefore, the Court concludes that any objection raised at this juncture has been waived. However, even if a proper objection was lodged, the Court concludes that **Corning** has not established that **SRU** used DTX 21A to prove the truth of the matter asserted therein, and therefore, DTX 21A is not inadmissible hearsay. In addition, the Court concludes that DTX 21A is not untimely, because it a full color version of DTX 21 which was timely identified in SRU's original exhibit list. Finally, the Court concludes that DTX 21A is not inadmissible expert opinion of Dr. Cunningham, because the article contained in DTX 21A was admitted into evidence as PTX 136 and Dr. Cunningham, as a lay witness, could testify about its content-namely, the results of the experiments he performed.

### 2. DTX 23A and 23B-SRU Presentations

The Court will overrule Corning's objections to DTX 23A and 23B. First, the Court notes that Corning did not object to the admission of these exhibits (Tr. 803, 1074), and therefore, Corning has waived any objection to these exhibits. However, even if the Court considers the substantive basis of Corning's objection, the Court concludes that these exhibits are admissible. DTX 23A and 23B are not untimely, because they are full color versions of DTX 23, which was timely listed on SRU's exhibit list. In addition, the Court concludes that these exhibits are business records of SRU that fall within the hearsay exception of Rule 803(6), and that Mr. Dempsey and Dr. Cunningham were qualified to testify about these exhibits under Rule 701 based on the personal knowledge they gained while working for SRU.

### 3. DTX 26, 52, 106-Expert reports of Dr.B uckman

\*9 The Court will overrule Corning's objection to DTX 26, 52 and 106. Corning did not raise any

objections to these exhibits during trial (Tr. 1399), and therefore, the Court concludes that Corning waived its objection. In the alternative, the Court concludes that these exhibits are admissible pursuant to Fed.R.Evid. 807, because they show the underlying calculations and assumptions upon which Dr. Buckman based his opinion.

### 4. DTX 115-Dr. Buckman's drawing attempting to discredit Dr. Pollock's modeling of the SRU structure

The Court will overrule Corning's objection to DTX 115. Corning did not raise any objection to this exhibit at trial (Tr. 1400), and therefore, the Court concludes that Corning waived its objection. In the alternative, the Court concludes that this exhibit is not inadmissible hearsay. Although this exhibit was labeled as a trial exhibit, rather than as a demonstrative exhibit, it was used in court by Dr. Buckman to explain his trial testimony and it was adopted by Dr. Buckman during his testimony.

### 5. DTX 118-GlaxoSmithKline Document

The Court will overrule Corning's objection to DTX 118. Based on the testimony of Mr. Dempsey, the Court concludes that this exhibit falls within the business records exception of the hearsay rule. (Tr. 783-787). In addition, the Court concludes that Corning has not demonstrated any undue prejudice related to the untimeliness of this exhibit.

### 6. DTX 119-Data SRU recently generated with an imaging system having a resolution of nine microns

The Court will overrule Corning's objection to DTX 119. Corning did not object to this exhibit (Tr. 1074), and therefore, the Court concludes that Corning waived any objection to its admissibility. In the alternative, the Court concludes that, based upon the testimony of Dr. Cunningham (TR. 858-869), the exhibit is admissible under the business records exception to the hearsay rule. The Court further concludes that Corning has not established any undue prejudice as a result of the untimeliness of this exhibit.

### 7. DDX 13-Demonstrative exhibit comparing figures from the '843 patent with figures from prior art references

The Court will overrule Corning's objection. Corning

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 8
Slip Copy, 2005 WL 2465900 (D.Del.)
**(Cite as: Slip Copy)**

did not object to this exhibit at trial, and therefore, the Court concludes that Corning has waived any objection to its admissibility. In the alternative, the Court concludes that the exhibit was adopted by Dr. Buckman as part of his trial testimony, because the exhibit was used by Dr. Buckman as a demonstrative exhibit. Accordingly, the Court concludes that DDX 13 is not inadmissible hearsay.

8. DTX 58 and 60-Dr. Buckman's FDTD simulation of a structure with a waveguiding film and a diffraction grating

The Court will overrule **Corning's** objection to DTX 58 and 60. The Court concludes that the simulations designated by these exhibit numbers are relevant and are not unduly prejudicial to **Corning**.

### E. *Corning's Objection To SRU's Allegedly "New" Non-Infringement Defense*

**\*10 Corning** contends that **SRU** set forth at trial a previously undisclosed non-infringement defense, namely, that the **SRU** sensor does not have a continuous titanium oxide film. **Corning** contends that because this defense was never raised, its presentation at trial unfairly surprised and prejudiced **Corning**. In response, **SRU** contends that it is not advancing a non-infringement argument on this basis.

The Court agrees with **SRU** and finds that this argument is not a basis to support a defense of non-infringement by **SRU**. Accordingly, the Court will overrule **Corning's** objection to the proffered evidence.

### VII. SRU's Additional Evidentiary Objections

#### A. *SRU's Objection To Certain Testimony Of Dr. Pollock And Related Exhibits*

**SRU** contends that (1) Dr. Pollock offered testimony regarding a new set a calculations; (2) Dr. Pollock offered new testimony regarding the differences in the strength of gratings and exhibits PDX 77 and 78; and (3) Dr. Pollock offered new testimony that some quantity of light is coupled off the tooth of each grating and that binding causes the angle at which the light leaves to change. The Court concludes that such testimony was not new. Dr. Pollock's calculations were identical to those used in his expert report,

except that Dr. Pollock changed the value of the thickness of the titanium oxide film in accordance with Dr. Cunningham's revised testimony at trial. Further, PDX 77 and Dr. Pollock's associated testimony were not new. Dr. Pollock discussed the effect of grating strength in his expert report. Similarly, PDX 78 and the associated testimony were not new. Accordingly, the Court will overrule SRU's objection.

#### B. *SRU's Objection To Dr. Mrksich's Opinion*

During trial, Corning introduced an SRU document reporting experimental protocols and asked Dr. Mrksich, "Is it your opinion that a typical user of an optical biosensor could follow the instructions included in Exhibit 76 to produce a chemo-responsive layer?" (Trial Tr. at 359.) SRU contends that none of Dr. Mrksich's reports expressed such an opinion, and therefore Dr. Mrksich's responses should be excluded from evidence as beyond the scope of any expert reports provided by the witness.

The Court concludes that Dr. Mrksich expressed his opinion on the issues raised by Corning in his First Expert Report (D.I.283, Ex. A) and during his deposition. In addition, the Court finds that Dr. Mrksich's opinion is supported by other trial evidence not objected to by SRU. Accordingly, the Court will overrule SRU's objection to Dr. Mrksich's testimony.

#### C. *SRU's Objection to Court Exhibit 2*

SRU next objects to Corning's reliance on Court Exhibit 2, a purported FDTD simulation that was allegedly based on Dr. Buckman's FDTD simulation. SRU objected to the admission of this exhibit at trial, and the Court sustained SRU's objection. (Trial Tr. at 1377, 1380, 1382.) The Court is not persuaded that its trial ruling was erroneous, and therefore, the Court will sustain SRU's objection and strike Plaintiff's Findings of Fact to the extent that they rely on Exhibit 2 and are unsupported by other record evidence.

#### D. *SRU's Objection To Argument And Findings Allegedly Unsupported By Record Evidence*

**\*11 SRU** contends that Corning's Proposed Findings of Fact 54 and 496, as well as point 1 on page 24 of Corning's Opening Post-Trial Brief, should be stricken because they rely upon non-admitted exhibits PTX 137, DTX 30, and PDX 75. In response, Corning contends that the cited argument and findings of fact

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2465900 (D.Del.)
**(Cite as: Slip Copy)**

are supported by other cited record evidence and
DTX-30 was offered at trial, but inadvertently omitted
from the Joint Exhibit List.

The Court agrees with **Corning** that there is
independent record evidence to support Findings of
Fact 54 and 496 such that those findings should not be
stricken from the record. In addition, the Court notes
that DTX-30 was admitted into evidence at trial. (Tr.
1399). Accordingly, the Court will overrule SRU's
objection.

### CONCLUSION

For the reasons discussed, the Court has granted in
part, denied in part and denied as moot Corning's
Motion In Limine (D.I.198), denied Corning's Motion
In Limine To Exclude Any Testimony At Trial From
Dr. Buckman Based Upon His Supplemental Expert
Report (D.I.210-2), and denied Corning's Motion In
Limine To Exclude Certain Of SRU's Deposition
Designations (D.I.228). In addition, the Court has
granted in part, denied in part and denied as moot
SRU's In Limine Motions (D.I.199) and denied SRU's
Motion In Limine No. 7 To Exclude Evidence Of
Harm Caused By SRU's Alleges Acts Of Infringement
(D.I.202). The Court has also sustained and/or
overruled the various trial objections lodged by the
parties.

An appropriate Order detailing the Court's rulings on
these evidentiary matters has been entered.

D.Del.,2005.
Corning Inc. v. SRU Biosystems
Slip Copy, 2005 WL 2465900 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00633 (Docket) (Jul.1 0, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**4**

Westlaw.

Not Reported in F.Supp.2d                                                                            Page 1
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
     United States District Court,D. New Jersey.
     GLOBESPANVIRATA, INC., Plaintiff,
                           v.
TEXAS INSTRUMENTS INC., et al., Defendants,
               **No. Civ.A. 03-2854(GEB).**

                    July 12, 2005.

Robert J. Stickles, Klett, Rooney, Lieber & Schorling,
PC, William B. McGuire, Brian M. English,
Tompkins McGuire Wachenfeld & Barry LLP,
Thomas F. Doherty, McCarter & English, LLP,
Newark, NJ, for Plaintiff.
Liza M. Walsh, Agnieszka Antonian, Connell Foley,
LLP, Roseland, NJ, for Defendants.

               MEMORANDUM OPINION
HUGHES, J.
*1 This matter comes before the Court on Defendants,
Texas Instruments, Inc. ("TI") and the Leland
Stanford Junior University's ("Stanford"),
("Defendants"), Application to preclude use of certain
documents addressed in the expert witness report of
DirkHart ogs, PhD ("Hartogs Report") and certain
documents produced by Plaintiff, **GlobespanVirata**
("Globespan"), in May 2005. Additionally,
Defendants seek to assert an additional claim, Claim 9
of the 447 patent, which is dependent on
already-asserted claims 1, 2, 3, and 7. Plaintiff
opposes both Applications. The Court has reviewed
the written submissions of the parties and conducted
oral argument on June 22, 2005. For the reasons that
follow, Defendants' Application to preclude certain
documents addressed in the Hartogs Report and
Defendants' Application to assert an additional claim
are both denied.

            *I. BACKGROUND AND PROCEDURAL HISTORY*

The underlying matter arises under the antitrust and
patent laws of the United States and the laws of the
State of New Jersey. Pl.['s] Br. at 2. The Plaintiff, a
global provider of circuits, software, and designs for
Digital Subscriber Line ("DSL"), alleges that
Defendants, who together own numerous patents
related to Asymmetric Digital Subscriber Line

("ADSL") technology, engaged in an unlawful
conspiracy requiring Plaintiff to license ADSL-related
patents by the block rather than individually. As a
result, Plaintiff argues it was forced to license many
unnecessary patents from Defendant. *Id.*

In May 2005, Plaintiff produced new evidence and
documents of prior art addressed within the Hartogs
Report. Defendants claim this production, five months
after the December 2004 cut-off date for patent
document production, violates the Court's Order of
August 16, 2004, which "[o]rdered that a party failing
to disclose information shallb e precluded from using
as evidence any witness or information not so
disclosed." Docket Entry # 91.

Defendants contend that certain evidence and
documents addressed in the Hartogs Report should be
precluded from trial based on Federal Rule of Civil
Procedure Rule 37(c) because of Plaintiff's failure to
timely supplement its discovery. Defs.['s] App. dated
June 20, 2005, at 1. However, Plaintiff argues that the
exclusion of the documents at issue would result in
"reversible error," Pl['s] Reply App. dated June 20,
2005, at 1.

Plaintiff further asserts that Defendants should have
known about the documents because they are simply the
foreign versions of the U.S. patents at issue. Pl ['s]
App. dated June 21, 2005, at 2. Furthermore, Plaintiff
argues that exclusion of the foreign patents would be
highly prejudicial because of their "early publication
dates ... (which) are critical to Globespan's invalidity
case." *Id.* Plaintiff contends that Defendants would
suffer no prejudice because the foreign counterparts
contain "no technical information beyond what was
previously disclosed in the U.S. patents. *Id.*

*2 Defendants argue that "[a]lthough Globespan
produced some of the prior art references prior to the
discovery cut-off of December 2004, its failure to
notify Defendants that it would rely on this prior art
for its defenses is not contemplated by the spirit of the
August 16[th] Order," which instructed parties that they
would be precluded from relying on evidence not
produced prior to the the discovery cut-off. Defs.['s]
App. dated June 11, 2005, at 4.

Defendants also request permission to add an
additional claim on Patent No. 5,479,447 ("447"),
claim 9. Defs.['s] App. dated June 20, 2005, at 8.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff contends that Defendants should not be permitted to assert the additional claim because the claim had not been the subject of any discovery and was not construed in the *Markman* hearing or by the Court's Markman Order. Pl['s] Reply App. dated June 21, 2005, at 4. In addition, Plaintiff notes that the request to add an additional claim after two years of discovery would be extremely prejudicial. *Id.* Thus, Plaintiff asserts the additional claim should not be permitted.

II. *DISCUSSION*

A. Federal Rule of Civil Procedure 37(c)-Application for Preclusion by Defendants

Under Rule 26 of the Federal Rules of Civil Procedure, a party is required to supplement the discovery process only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2). Furthermore, under Rule 37, a court may impose sanctions if a party "without substantial justification fails ... to amend a prior response to discovery as required by Rule 26(e)(2) ... unless failure is harmless." Fed.R.Civ.P. 37(c)(1). In addition, preclusion of such evidence has been used by the Court when parties fail to disclose. Pl['s] App. dated June 16, 2005 at 1. The Third Circuit Court of Appeals held that "[t]he exclusion of evidence for violation of a discovery order is an extreme sanction." *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir.1999) (citations omitted). Before precluding evidence, the Court has considered whether the party: (1) revealed previously undisclosed evidence when the trial was imminent; or (2) acted in bad faith. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-93 (3d Cir.1994).

In deciding whether to preclude evidence under Rule 37,

"the Third Circuit Court of Appeals has identified five factors to consider: (1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) importance of the evidence to the proffering party."

Defs.['s] App. dated June 20, 2005, at 4 (see *In re Mercedes-Benz Anti-Trust Litigation,* 225 F.R.D. 498, 506 (D.N.J.2005)); *see also Quinn v. Consol. Freightways Corp.,* 283 F.3d 572, 577 (3d Cir.2002).

*3 In deciding the issue of prejudice or surprise, this Court has held that it "should not speculate on how [the surprised party] would have used the additional information disclosed;" rather prejudice exists when the surprised party likely would have conducted discovery differently. *In re Mercedes-Benz Anti-Trust Litig.,* 225 F.R.D. 498 at 506. However, the Court did hold that prejudice could be cured by both an additional deposition and permitting plaintiffs to submit a supplemental brief. *In re Mercedes-Benz Anti-Trust Litig.,* 225 F.R.D. at 505-08. As a result, the Court did not excludes upplemental evidence to be admitted.*Id* .

The Third Circuit has held that absent a willful deception or "flagrant disregard" of a Court Order, exclusion of evidence would be extreme. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d. Cir.1977). In addition, it has been held that when a party possesses evidence and fails to disclose it, the evidence can be excluded from trial as was the case in *AstraZeneca AB v. Mutual Pharm. Co.* when the party had the evidence in their possession but failed to produce it because it was yet to be translated from German. *AstraZeneca AB v. Mutual Pharm. Co.* 278 F.Supp.2d. 491 at 502 (E.D.Pa.2003).

In considering the bad faith factor, preclusion of evidence under Rule 37 has been held to be appropriate when a party has access to information but did not use such information in the response. *In re Mercedes-Benz Anti-Trust Litig.,* 225 F.R.D. at 507. Also, when the non-disclosing party is specifically asked to provide exact information in its possession and it fails to do so, it can be inferred the party acted in bad faith. *Id.* However, under Rule 26, supplementation is only necessary "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2).

B. Federal Rule of Civil Procedure 16(b)-Application for Permission to Assert a New Claim 9 on the '447 Patent

When a party moves to amend the deadlines established in the pretrial scheduling order, the party must first satisfy Rule 16(b) of the Federal Rules of Civil Procedure and demonstrate good cause. *See Eastern Minerals & Chem. Co. v. Mahan,* 225 F.3d 330, 340 (Ed Cir.2000). Specifically, Rule 16 provides that a pretrial Scheduling Order "shall not be modified except upon a showing of good cause and by leave of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

the District Judge, or, when authorized by local rule, by a Magistrate Judge." Fed.R.Civ.P. 16(b). "A finding of good cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Rent-A-Center v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y.2003) (citations omitted); see also Fed.R.Civ.P. 16 advisory committee's note ("[T]he court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension."). Moreover, "[t]he lack of prejudice to the nonmovant does not show 'good cause." ' Deghand v. Wal-Mart Stores, Inc., 904 F.Supp. 1218, 1221 (D.Kan.1995) (citations omitted).

*4 The Third Circuit has determined that "scheduling orders are the heart of the case management [and cannot] be flouted." Turner v. Schering-Plough Corp., 901 F.2d 335, 341 n. 4 (3d Cir.)(quoting Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d Cir.1986)); U.S. v. Princeton-Gamma-Tech, Inc., 817 F.Supp. 488, 497 (D.N.J.1993). "The reason for this is simple-scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed." Id. (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir.2000)).

### III. ANALYSIS

### A. Federal Rule of Civil Procedure 37(c)-Application for Preclusion by Defendants

Defendants request that certain evidence addressed in the Hartogs Report and certain documents produced in May of 2005, be precluded from trial based upon Rule 37(c)(1) because of Plaintiff's failure to timely supplement its discovery responses. Defs.['s] App. dated June 20, 2005, at 1. Defendants assert Plaintiff relied on new art in the Hartogs Report and under the Mercedes test, this new art should be precluded from trial. However, Defendants cannot claim prejudice as they concede they were aware of "some of the prior art references prior to the discovery cut-off of December 2004." Defs.['s] App. dated June 11, 2005, at 4. Additionally, there is no showing of willful disregard or bad faith on the part of Plaintiff. Therefore, because evidence sought to be precluded is critical to Plaintiff, Defendants Application for preclusion of both evidence addressed in the Hartogs Report and certain

documents produced in May 2005 is denied.

Defendants in this case concede factors two and three of the five factor Mercedes test which effectively state that the court should consider the: (2) ability of the injured party to cure the prejudice; and (3) likelihood of disruption of trial. In their Application, Defendants state that "[t]he likelihood of disruption at trial is irrelevant, given the current stage of litigation." Defs.['s] App.d ated June 20, 2005, at 6. Furthermore, "[D]efendants do not dispute that the newly asserted contentions in the Hartogs Report are important to Globespan." Defs.['s] App. dated June 20, 2005, at 7. Therefore, under the Mercedes test, preclusion in this case would only be appropriate if Defendants were prejudiced by the late production of evidence or if Plaintiff acted in bad faith or willfully disregarded a court order on production of evidence.

Similar to In re Mercedes-Benz Anti-Trust Litig, any prejudice that might have occurred based on the late production of evidence by Plaintiff here, could be cured for example, by an additional deposition. Additionally, Plaintiff did not act in bad faith because it produced the evidence as soon as it had it in it's possession. Unlike the plaintiff in AstraZeneca AB v. Mutual Pharm. Co., whom had the evidence but failed to translate from German to English, Plaintiff did not have such evidence in its possession. Defendants did however have the American counterpart patent which had been timely produced and Plaintiff did produce supplemental evidence when it came into possession. Pl ['s] App. dated June 21, 2005, at 2. As a result, exclusion based on bad faith would be inappropriate. Also, Plaintiff cannot be found to have acted in willful disregard of a court order. Unlike MOSAID Technologies, Inc. v. Samsung Elecs. Co., in which the Court determined the plaintiff had disregarded orders of the court to produce evidence it had in it's possession for more than a year, Plaintiff has produced all evidence in its possession. MOSAID Technologies, Inc. v. Samsung Elecs. Co. 2004 WL 2550309 at *4 (D.N.J.2004). The evidence referenced in the Hartogs Report and provided in May 2005 only recently came into Plaintiff's possession. Therefore, preclusion based on willful disregard would be inappropriate because Plaintiff did not act with disregard to a Court Order. For these reasons, Defendants' Application for preclusion of both evidence addressed in the Hartogs Report and documents produced in May 2005 is denied.

### B. Federal Rule of Civil Procedure 16(b)-Application for Permission to Assert Additional Claim 9 on the

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

### '447 Patent

**\*5** In view of the various patents involve and number of claims to be construed, the parties, with the Court's encouragement, discussed the *Markman* procedures and hearings as far back as the initial scheduling conference on November 13, 2003. Thereafter, the *Markman* practice was discussed at a conference on March 10, 2004 and the final *Markman* procedure addressed at a conference on June 24, 2004. The *Markman* hearing was conducted before Judge Brown, culminating in a seventy-six page opinion filed April 7, 2005. Now, at the very late date, Defendants seek permission to assert an additional claim, claim 9 of the '447 patent which necessitates claim construction.

During the *Markman* hearing, Defendants failed to alert the Court of its intentions to assert such a claim. Pl['s] App. dated June 21, 2005, at 5. Also, Judge Brown's *Markman* Opinion and Order did not address claim 9. Under Rule 16, modifying a Court's scheduling order is only appropriate when the movant shows that deadlines could not be met despite its diligence. Fed.R.Civ.P. 16. In this case, Defendants expressly seek permission to assert claim 9 "if Globespan is allowed to maintain the many new inequitable conduct ... and written description contentions in the Hartogs Report." Defs.['s] App. dated June 20, 2005, at 8. Allowing supplementation of evidence by Plaintiff is entirely different to allowing Defendants permission to assert a new claim. Defendants had ample time to assert claim 9 and if the Court were to grant permission to assert an additional claim, it would in effect render the scheduling order meaningless. By opening the claim construction phase and allowing new claims after an elaborate and comprehensive *Markman* opinion, the case will surely be further delayed. No good cause has been shown for a subsequent *Markman* hearing and Defendant had the opportunity previously to assert claim 9. Therefore, for reasons asserted herein, Defendants' Application for permission to assert claim 9 is denied.

### IV. *CONCLUSION*

For the reasons set forth herein, Defendants' Rule 37(c) Application for preclusion of both evidence addressed in the Hartogs Report and documents provided in May 2005 is denied. Preclusion is considered an extreme sanction and only necessary where a party is prejudiced and the prejudice cannot be cured or when it can be determined a party acted in bad faith or in willful disregard of a court order. In this case, any prejudice to Defendants caused by the late

production of evidence can be cured by additional depositions. Furthermore, because Plaintiff produced supplemental evidence when it came into its possession, it cannot be found to have acted either in bad faith or in willful disregard of a court order.

Additionally, Defendants' Application for permission to assert an additional claim is likewise denied. Defendants had the opportunity to assert claim 9 of the '447 patent during the initial *Markman* hearing. Under Rule 16, a pretrial order can be modified if despite a party's diligence, a deadline could not be reasonably met. However, Defendants failed to raise claim 9 until after Plaintiff supplemented evidence. Therefore, it would be inappropriate for the schedule to be modified in this case and the *Markman* hearing to begin anew. Accordingly, Defendants' Application for permission to assert Claim 9 is denied.

D.N.J.,2005.
GlobespanVirata, Inc. v. Texas Instruments, Inc.
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1354532 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Globespan's Defense that the '447 Patent is Unenforceable Due to Inequitable Conduct (Apr. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1354534 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Globespan's Motions for Judgment as A Matter of Law or in the Alternative A New Trial (Apr. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1314921 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of its Appeal of Judge Hughes's Denial of Plaintiff's Motion to Compel Discovery (Apr. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1354528 (Trial Motion, Memorandum and Affidavit) Ti's Brief on Globespan's Defense that the '447 Patent is Unenforceable Due to Inequitable Conduct (Apr. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1354525 (Trial Motion, Memorandum and Affidavit) Defendant's Opposition to Plaintiff's Consolidated Brief in Support of Globespanvirata, Inc.'s Motions for Judgment as A Matter of Law or in the Alternative A New Trial (Apr. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1314918 (Trial Pleading) Amended Answer to Second Amended Complaint, Affirmative Defenses and Counterclaims of Texas Instruments

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Incorporated, the Leland Stanford Junior University, its Board of Trustees and Stanford University Otl, Llc (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1314919 (Trial Motion, Memorandum and Affidavit) Defendants' Oppposition to Plaintiff's Motion for Reconsideration of Order Dismissing the per Se Tying Claims in Counts I and Ii of the Second Amended Complaint, or in the Alternative for Leave to Amend the Complaint (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1314920 (Trial Motion, Memorandum and Affidavit) Ti's Brief on Globespan's Defense that the '447 Patent is Unenforceable Due to Inequitable Conduct (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1354518 (Trial Motion, Memorandum and Affidavit) TI's Brief on Globespan's Defense that the Globespan Products at Issue are Company Licensed Products Covered by the TI-Conexant Systems License Agreement (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1354523 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendants' Motion for Award of Prejudgment Interest (Apr. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1314917 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiff's Appeal of the March 3, 2006 Order Denying Plaintiff's Motion to Compel Discovery of the Alcatel Documents (Apr. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1042425 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Globespan's Motion for Reconsideration of Order Dismissing the Per Se Tying Claims in Counts I and II of the Second Amended Complaint, or in the Alternative for Leave to Amend the Complaint (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1042423 (Trial Motion, Memorandum and Affidavit) Consolidated Brief in Support of Globespanvirata, Inc.'s Motions for Judgment as a Matter of Law or in the Alternative A New Trial (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 653859 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiff's Motion to Compel Discovery of the Alcatel Documents (Feb. 7, 2006)
• 2006 WL 1042469 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Texas Instruments Inc. and Stanford University's Argument to Preclude Mr. Reed from Testifying About Changing the ADSL Standard (Jan. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 381582 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Texas

Instruments Inc. and Stanford University's Argument to Preclude Mr. Reed From Testifying About Changing The Adsl Standard (Jan. 30, 2006)
• 2006 WL 1042468 (Trial Motion, Memorandum and Affidavit) Bench Memorandum of Law to Limit the Deposition Testimony of Dr. John Bingham (Jan. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1042470 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Ti's Reply to Globespan's Memorandum that TI Should be Precluded from Relitigating Disclosures Regarding the TU Thesis (Jan. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 381577 (Trial Motion, Memorandum and Affidavit) Memorandum In Opposition To Globespan's Proposition That ¢ y35 U.S.C. | 271(f)¢ y¢ r;0001;;LQ;35USCAS271;1000546;¢ r Does Not Apply To Method Or Process Claims (Jan. 25, 2006)
• 2006 WL 381578 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Ti's Reply to Globespan's Memorandum That Ti Should Be Precluded From Relitigating Disclosures Regarding the Tu Thesis (Jan. 25, 2006)
• 2006 WL 381579 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Defendants' Motion to Preclude Opinion Testimony By Dr. Hartogs Not Disclosed in His Expert Report (Jan. 25, 2006)
• 2006 WL 381580 (Trial Motion, Memorandum and Affidavit) Bench Memorandum of Law to Limit The Deposition Testimony of Dr. John Bingham (Jan. 25, 2006)
• 2006 WL 381581 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Preclude DavidR espect to Globespan's Reliance On the Patent Rosenblatt from Offering Testimony With Misuse Opinion (Jan. 25, 2006)
• 2006 WL 1042471 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Globespan's Argument that TI Should be Precluded from Relitigating Arguments Concerning Disclosures of the TU Thesis (Jan. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1042472 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Preclude Opinion Testimony By Dr. Hartogs not Disclosed in His Expert Report (Jan. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1042473 (Trial Motion, Memorandum and Affidavit) Certification of Agnes Antonian in Support Support of Defendants' Motion to Preclude Trial Testimony By Dr. Hartogs not Disclosed in His Expert Report (Jan. 24, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 381574 (Trial Motion, Memorandum and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Affidavit) Memorandum In Support of Defendants'
Motion To Preclude Opinion Testimony By Dr.
Hartogs Not Disclosed In His Expert Report (Jan. 24,
2006)
• 2006 WL 381575 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law In Support of
Globespan's Argument That 'Ti Should Be Precluded
From Relitigating Arguments Concerning Disclosures
of the Tu Thesis (Jan. 24, 2006)
• 2006 WL 381573 (Trial Motion, Memorandum and
Affidavit) Memorandum in Support of Opposition to
Globespan's Argument to Preclude Alan Cox from
Offering Certain Testimony on the Measure of
Damages (Jan. 22, 2006)
• 2006 WL 1042474 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law in Support of
Globespan's Argument to Preclude Alan Cox from
Offering Certain Testimony on the Measure of
Damages (Jan. 18, 2006) Original Image of this
Document (PDF)
• 2006 WL 1042475 (Trial Motion, Memorandum and
Affidavit) Memorandum in Support of Defendants'
Opposition to Globespan's Motion to Limit Testimony
of Dr. TU (Jan. 18, 2006) Original Image of this
Document (PDF)
• 2006 WL 381568 (Trial Motion, Memorandum and
Affidavit) Memorandum in Support of Defendants'
Opposition to Globespan's Motion to Limit Testimony
of Dr. Tu (Jan. 18, 2006)
• 2006 WL 381570 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law in Support of
Globespan's Argument to Preclud Alan Cox from
Offering Certain Smony on the Measure of Damages
(Jan. 18, 2006)
• 2006 WL 381572 (Trial Motion, Memorandum and
Affidavit) Plaintiff's Brief in Support of Motion to
Compel Discovery of the Alcatel Documents (Jan. 18,
2006)
• 2006 WL 381567 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law In Support of
Precluding Certain Testimony from Dr. Jerome C. TU
(Jan. 16, 2006)
• 2006 WL 381569 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law in Support of
Precluding Portions of Globespan's January 16, 2005
Counter-Designations (Jan. 16, 2006) Original Image
of this Document (PDF)
• 2006 WL 1042476 (Trial Motion, Memorandum and
Affidavit) Opposition to Globespan's Motion to
Exclude Evidence Relating the '447 Patent
Specification to Globespan's ADSL Products (Jan. 5,
2006) Original Image of this Document (PDF)
• 2006 WL 381566 (Trial Motion, Memorandum and
Affidavit) Opposition To Globespan's Motion To
Exclude Evidence Relating The "447 Patent

Specification To Globespan's Adsl Products (Jan. 5,
2006)
• 2006 WL 1042477 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law in Support of
Globespan's Argument to Preclude TI or its Expert
from Attempting to Show Infringement Based on
Comparisons of Globespan's Products to Patent
Preferred Embodiments (Jan. 4, 2006) Original Image
of this Document (PDF)
• 2006 WL 1042478 (Trial Motion, Memorandum of
Law Supporting
Affidavit) Globespan's Argument That Ti's Engineers Cannot
Testify on Patent Essentiality (Jan. 3, 2006) Original
Image of this Document (PDF)
• 2006 WL 381565 (Trial Motion, Memorandum and
Affidavit) Memorandum of Law Supporting
Globespan's Argument That Ti's Engineers Cannot
Testify On Patent Essentiality (Jan. 3, 2006)
• 2006 WL 381576 (Trial Motion, Memorandum and
Affidavit) Memorandum In Support of Texas
Instruments Inc. And Stanford University's Motion To
Limit Testimony of Plaintiff's Expert Dr. Fuja on
Claim Construction (2006)
• 2005 WL 3968943 (Trial Motion, Memorandum and
Affidavit) Globespan's Memorandum in Opposition to
Defendants' Motions in Limine (Dec. 12, 2005)
Original Image of this Document (PDF)
• 2005 WL 3968944 (Trial Motion, Memorandum and
Affidavit) Globespan's Brief in Opposition to
Defendants' Motion for Reconsideration of Part of the
Order on Summary Judgment (Dec. 8, 2005) Original
Image of this Document (PDF)
• 2005 WL 3522918 (Trial Motion, Memorandum and
Affidavit) Plaintiff's Reply Brief in Support of Motion
to Preclude Tim Williams, PH.D., from Testifying at
Trial on the Subject of Patent Essentiality (Dec. 1,
2005)
• 2005 WL 3968939 (Trial Motion, Memorandum and
Affidavit) Plaintiff's Reply Brief in Support of Motion
to Preclude Tim Williams, Ph.D., from Testifying at
Trial on the Subject of Patent Essentiality (Dec. 1,
2005) Original Image of this Document (PDF)
• 2005 WL 3522917 (Trial Motion, Memorandum and
Affidavit) Memorandum in Support of Defendants'
Opposition to Plaintiff's Motion to Preclude Tim
Williams, PH.D., from Testifying at Trial on the
Subject of Patent Essentiality (Nov. 29, 2005)
• 2005 WL 3968942 (Trial Motion, Memorandum and
Affidavit) Memorandum in Support of Defendants'
Opposition to Plaintiff's Motion to Preclude Tim
Williams, Ph.D., from Testifying at Trial on the
Subject of Patent Essentiality (Nov. 29, 2005)
Original Image of this Document (PDF)
• 2005 WL 3968941 (Trial Motion, Memorandum and
Affidavit) Plaintiff's Brief in Support of Motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Preclude Tim Williams, Ph.D., from Testifying at Trial on the Subject of Patent Essentiality (Nov. 21, 2005) Original Image of this Document (PDF)

• 2005 WL 3522916 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion to Dismiss with Prejudice counts III, V, VI and VII and the Per Se Tying Claims in Counts I and II of Plaintiff's Second Amended Complaint (Nov. 18, 2005)

• 2005 WL 3968940 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion to Dismiss with Prejudice Counts III, V, VI and VII and the Per Setying Claims in Counts I and II of Plaintiff's Second Amended Complaint (Nov. 18, 2005) Original Image of this Document (PDF)

• 2005 WL 3522915 (Trial Motion, Memorandum and Affidavit) Plaintiffs Brief in Opposition to Defendants' Motion to Dismiss With Prejudice Counts III, V, VI, and VII And The Per Se Tying Claims in Counts I and II of Plaintiffs Second Amended Complaint (Nov. 7, 2005)

• 2005 WL 3172629 (Trial Motion, Memorandum and Affidavit) Redacted Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment That Defendant Texas Instruments is Not Entitled to Lost-Profits Patent Damages (Oct. 31, 2005)

• 2005 WL 3172635 (Trial Motion, Memorandum and Affidavit) Redacted Version Plaintiff's Reply Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 31, 2005) Original Image of this Document (PDF)

• 2005 WL 3968950 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment that Defendant Texas Instruments is not Entitled to Lost-Profits Patent Damages (Oct. 31, 2005) Original Image of this Document (PDF)

• 2005 WL 3968951 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 31, 2005) Original Image of this Document (PDF)

• 2005 WL 3172624 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 26, 2005)

• 2005 WL 3172617 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment that Defendant Texas Instruments is not Entitled to Lost Profits Patent Damages (Oct. 24, 2005) Original Image of this Document (PDF)

• 2005 WL 3172615 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 18, 2005)

• 2005 WL 3968952 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion to Strike Patent Damages Report of Alan J. Cox, Ph.D. (Oct. 18, 2005) Original Image of this Document (PDF)

• 2005 WL 3968953 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment That Defendant Texas Instruments is not Entitled to Lost Profits Patent Damages (Oct. 14, 2005) Original Image of this Document (PDF)

• 2005 WL 3742094 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Dismiss with Prejudice Counts III, V, VI and VII and the Per Se Tying Claims in Counts I and II of Plaintiffs' Second Amended Complaint (Oct. 11, 2005)

• 2005 WL 2898263 (Trial Pleading) Second Amended Complaint and Demand for Jury Trial (Sep. 26, 2005)

• 2005 WL 3969037 (Trial Pleading) Second Amended Complaint and Demand for Jury Trial (Sep. 26, 2005) Original Image of this Document (PDF)

• 2005 WL 2511467 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Plaintiff's Motion for Partial Summary Judgment (Aug. 25, 2005)

• 2005 WL 3742095 (Trial Motion, Memorandum and Affidavit) Defendants' Redacted Reply Memorandum in Further Support of Motion to Dismiss Declaratory Judgment Counts XII-XV as to Non-Counterclaim Patents (Aug. 19, 2005)

• 2005 WL 3742096 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Aug. 19, 2005)

• 2005 WL 2511460 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Aug. 18, 2005)

• 2005 WL 3742097 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment (Aug. 18, 2005)

• 2005 WL 3968948 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Aug. 18, 2005) Original Image of this Document (PDF)

• 2005 WL 3968949 (Trial Motion, Memorandum and Affidavit) ¨Redacted¨ Plaintiff's Response to Defendants' Separate Statement of Undisputed Facts (Aug. 18, 2005) Original Image of this Document

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

(PDF)
• 2005 WL 2511446 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Aug. 5, 2005)
• 2005 WL 3742098 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiff's Motion to Separate Trial Pursuant to Fed.R.Civ.P. 42 (Aug. 5, 2005)
• 2005 WL 3968945 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (Aug. 5, 2005) Original Image of this Document (PDF)
• 2005 WL 3968946 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendants' Motion to Dismiss Declaratory Judgment Counts XII-XV as to Non-Counterclaim Patents ŸRedacted¨ (Aug. 5, 2005) Original Image of this Document (PDF)
• 2005 WL 2511441 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment ŸRedacted¨ (Aug. 4, 2005)
• 2005 WL 3742099 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,400,322, 5,479,447 and 5,596,604 (Aug. 4, 2005)
• 2005 WL 3968947 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment ŸRedacted¨ (Aug. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 3172608 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion for Partial Summary Judgment That Defendant Texas Instruments is Not Entitled to Lost Profits Patent Damages Redacted (2005)
• 2004 WL 3373594 (Trial Pleading) Texas Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTLI, LLC;'s Reply Claim Construction Brief (Sep. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 3770169 (Trial Motion, Memorandum and Affidavit) Texas Instruments, Inc., the Leland Stanford Junior University and its Board of Trustees, and Stanford University OTL, LLC;'s Reply Claim Construction Brief (Sep. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 3373590 (Trial Pleading) Plaintiff Globespan Virata Inc.'s Reply Brief Regarding Claim Construction (Sep. 23, 2004)
• 2004 WL 3373592 (Trial Pleading) Texas

Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTL, LLC,'s Reply Claim Construction Brief (Sep. 23, 2004)
• 2004 WL 3770155 () Second Expert Witness Report of Dirk Hartogs, Ph.D. (Sep. 23, 2004) Original Image of this Document (PDF)
• 2004 WL 3770168 (Trial Motion, Memorandum and Affidavit) Plaintiff GlobespanVirata Inc.'s Reply Brief Regarding Claim Construction (Sep. 23, 2004) Original Image of this Document (PDF)
• 2004 WL 3373583 (Trial Pleading) Plaintiff Globespan Virata Inc.'s Opening Brief on Claim Construction (Sep. 2, 2004)
• 2004 WL 3373586 (Trial Pleading) Texas Instruments, Inc., the Leland Stanford Junior University and Its Board of Trustees, and Stanford University OTL, LLC,'s Opening Claim Construction Brief (Sep. 2, 2004)
• 2004 WL 3770167 (Trial Motion, Memorandum and Affidavit) Texas Instruments, Inc., the Leland Stanford Junior University and its Board of Trustees, and Stanford University OTL, LLC,'s Opening Claim Construction Brief (Sep. 2, 2004) Original Image of this Document (PDF)
• 2004 WL 3373581 (Trial Motion, Memorandum and Affidavit) Conexant Systems, Inc.'s Response and Affirmative Defenses to Second Amended Counterclaims of Texas Instruments Incorporated (Aug. 26, 2004)
• 2004 WL 3770200 (Trial Pleading) Conexant Systems, Inc.'s Response to Second Amended Counterclaims (Aug. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3373578 (Trial Motion, Memorandum and Affidavit) Response and Affirmative Defenses to Second Amended Counterclaims of Texas Instruments Incorporated (Aug. 20, 2004)
• 2004 WL 3373575 (Trial Pleading) Answer and Counterclaim of Texas Instruments Incorporated, the Leland Stanford Junior University, Its Board of Trustees and Stanford University OTL, LLC to Globespanvirata, Inc.'s First Amended Complaint (Jul. 30, 2004)
• 2004 WL 3770199 (Trial Pleading) Answer and Counterclaim of Texas Instruments Incorporated, the Leland Stanford Junior University, Its Board of Trustees and Stanford University Otl, LLC to Globespanvirata, Inc.'s First Amended Complaint (Jul. 30, 2004) Original Image of this Document (PDF)
• 2004 WL 3659542 (Trial Pleading)First Amended Complaint and Demand for Jury Trial (Jul. 6, 2004)
• 2004 WL 3770198 (Trial Pleading)First Amended Complaint and Demand for Jury Trial (Jul. 6, 2004) Original Image of this Document (PDF)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1638136 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

• 2004 WL 3686652 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiff's Motion to Open Discovery Into Patent Misuse (Feb. 25, 2004)

• 2003 WL 24309441 (Trial Pleading) Globespan's Response to Amended Counterclaims (Sep. 19,2 003) Original Image of this Document (PDF)

• 2003 WL 24309440 (Trial Pleading) Amended Answer (Sep. 9, 2003) Original Image of this Document (PDF)

• 2003 WL 24309439 (Trial Pleading) Answer (Aug. 11, 2003) Original Image of this Document (PDF)

• 2003 WL 24309438 (Trial Pleading) Complaint (Jun. 12, 2003) Original Image of this Document (PDF)

• 2003 WL 24135475 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (2003)

• 2003 WL 24210318 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Reconsideration of Part of the Order on Summary Judgment (2003)

• 2003 WL 24303857 () First Expert Report of TIM A. WILLIAMS, Ph.D. (2003) Original Image of this Document (PDF)

• 2003 WL 24309428 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motions in Limine and Motion to Strike (2003) Original Image of this Document (PDF)

• 2003 WL 24309429 (Trial Motion, Memorandum and Affidavit) Corrected Memorandum in Support of Defendants' Motions in Limine and Motion to Strike (2003) Original Image of this Document (PDF)

• 2003 WL 24309430 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment (2003) Original Image of this Document (PDF)

• 2003 WL 24309431 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (2003) Original Image of this Document (PDF)

• 2003 WL 24309432 (Trial Motion, Memorandum and Affidavit) Consolidated Brief in Support of Globespanvirata, Inc.'s Motions for Judgment as a Matter of Law or in the Alternative a New Trial (2003) Original Image of this Document (PDF)

• 2003 WL 24309433 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Precluding Portions of Globespan's January 16, 2005 Counter-Designations (2003) Original Image of this Document (PDF)

• 2003 WL 24309434 (Trial Motion, Memorandum

and Affidavit) Memorandum in Support of Defendants' Opposition to Plaintiff Globespan's Argument That TI's Engineers Cannot Testify on Patent Essentiality (2003) Original Image of this Document (PDF)

• 2003 WL 24309435 (Trial Motion, Memorandum and Affidavit) Defendants' Redacted Reply Memorandum in Further Support of Motion to Dismiss Declaratory Judgment Counts XII-XV as to Non-Counterclaim Patents (2003) Original Image of this Document (PDF)

• 2003 WL 24309436 (Trial Motion, Memorandum and Affidavit) Redacted Memorandum in Support of Defendants' Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,400,322, 5,479,447 and 5,596,604 (2003) Original Image of this Document (PDF)

• 2003 WL 24309437 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion for Judgment on the Pleadings on Counts III, V, VI and VII in the First Amended Complaint (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.