IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVOZYMES A/S,<br><br>    Plaintiff,<br><br>  v.<br><br>GENENCOR INTERNATIONAL, INC. and<br>ENZYME DEVELOPMENT CORPORATION,<br><br>    Defendants. | C.A. No. 05-160-KAJ |

**PART 2 OF 3**
**UNREPORTED CASES ATTACHED TO**
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO MODIFY**
**THE SCHEDULING ORDER FOR THE PURPOSE OF AMENDING ITS COMPLAINT**

5

Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 2009366 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Edwin GONZALEZ, Donna Ann Minor, Kara Pietrowicz and Alberina Ziemba, Plaintiffs,
v.
COMCAST CORPORATION, a Pennsylvania corporation, Comcast Cablevision of Willow Grove, a Pennsylvania corporation, Comcast Cable Communications, Inc., a Delaware corporation, Suzane Keenan, Allen R. Peddrick, Richard Germano, James Sullivan, E. Mark Connell, Dina Galeotafiore, Al Calhoun, Steve Trevison, Philip Annone, John McGowan, Vincent Johnson, and Michael A. Doyle, Defendants.
No. Civ.A. 03-445-KAJ.

Aug. 25, 2004.

Victor F. Battaglia, Sr., Biggs & Battaglia, Wilmington, DE, for Plaintiffs.
William M. Kelleher, Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

JORDAN, J.

*1 On June 10, 2004, the plaintiffs filed a Motion for Leave to File a Second Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Docket Item ["D.I."] 165; the "Motion.") The plaintiffs seek to add Melanie Penna as a defendant (*id.* at 3) and to assert three additional claims based on Delaware state law, including claims for fraud and deceit (*id.* at 33-34), *prima facie* tort (*id.* at 34-35), and civil conspiracy (*id.* at 35-37).

Rule 16 of the Federal Rules of Civil Procedure provides that a pretrial scheduling order "shall not be modified except upon a showing of *good cause* and by leave of the district judge...." Fed.R.Civ.P. 16(b) (emphasis added). A scheduling order was issued in this case on August 19, 2003 and required that all motions to join other parties and to amend or supplement the pleadings be filed on or before December 1, 2003. (D.I. 31 at 2.) The plaintiffs' Motion was filed on June 10, 2004, over seven months after that deadline. To grant the plaintiffs' Motion would also require substantial changes in other deadlines set forth in the scheduling order, including the trial date. Therefore, under Rule 16, the plaintiffs are required to show good cause why their Motion should be granted and such changes made.

The plaintiffs make several arguments in support of their Motion. None of them, however, establishes or even attempts to establish the good cause required for modifying the deadlines in the scheduling order. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Dilmar Oil Co. V. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.1997), *aff'd* 129 F.3d 116 (4th Cir.1997) (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed.1990)). Instead of focusing on why, despite diligent effort, plaintiffs could not have asserted their motion at an earlier time, within the scheduling order guidelines, the plaintiffs focus on why they believe the defendants will not be unduly prejudiced if their Motion is granted (D.I. 173 at 1-7) and why adding three more state law claims is not futile (D.I. 173 at 7-9). These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

The untimeliness of the plaintiffs' Motion is also emphasized by the fact that I have already ruled on a summary judgment motion made by the defendants. (D.I.185.) Granting the plaintiffs' Motion, which was filed after the discovery deadline and only three months before the joint proposed final pretrial order is due on September 22, 2004 (D.I. 188 at 1) would indeed be unduly prejudicial to the defendants.

Accordingly, IT IS HEREBY ORDERED that the plaintiffs' Motion (D.I.165) is DENIED.

D.Del.,2004.
Gonzalez v. Comcast Corp.
Not Reported in F.Supp.2d, 2004 WL 2009366 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00445 (Docket) (May. 01, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**6**

Westlaw.

Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Dannette G. MCLAUGHLIN, Plaintiff,
v.
DIAMOND STATE PORT CORP., Defendant.
No. C.A.03-617(GMS).

Dec. 21, 2004.

Laurence V. Cronin, Smith, Katzenstein, & Furlow, Wilmington, DE, for Plaintiff.
Donald E. Reid, Jason A. Cincilla, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

MEMORANDUM

SLEET, J.

I. INTRODUCTION

*1 Presently before the court is plaintiff Dannette McLaughlin's Motion For Leave To File Her Amended Complaint. (D.I.34.) In McLaughlin's original complaint, filed July 1, 2003, she alleged one count of unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and one count of unequal pay in violation of the Equal Pay Act, 29 U.S.C. § 206 (1998). (D.I.1.) She now seeks to amend by adding a retaliation claim under Title VII, and an equal protection claim under 42 U.S.C. § 1983 (2003). (D.I.34.) Because McLaughlin has unduly delayed her request to amend, and because of the undue prejudice to the defendant that would result from an amendment, McLaughlin's motion will be denied.

II. JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1331 (1993).

III. BACKGROUND

As of the time the complaint was filed, McLaughlin had been a part-time employee of Diamond State Port Corp. ("Diamond State") for six years. (D.I. 1 ¶ 12-13.) From September 2000 through May 2002, McLaughlin applied for various full-time positions with Diamond State. (Id.¶ 18.) However, she was unsuccessful in her bid to become full time and each position for which she applied was eventually filled by a man. (Id.¶ 20.) Although Diamond State proffered nondiscriminatory reasons for not hiring McLaughlin (id.¶ ¶ 21, 26), she has reason to believe gender discrimination to be the true reason (id.¶ ¶ 21-42). As a result, McLaughlin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("the EEOC") on May 28, 2002. (D.I. 34 Ex. A.) On April 3, 2003, the EEOC issued McLaughlin a right-to-sue letter. (Id.Ex. B.) She then proceeded to file suit against Diamond State and the International Longshoreman's Assoc. on July 1, 2003.[FN1] (D.I.1.) A scheduling conference was held on February 25, 2004 during which the court set the deadline for amendments to the pleadings to be April 30, 2004. The discovery deadline was set at August 31, 2004, and the deadline for case-dispositive motions was set at September 14, 2004. (D.I.17.)

   FN1. International Longshoreman's Assoc. was dismissed as a defendant and only Diamond State remains. (Order of the Court, January 16, 2004.)

On July 29, 2004, McLaughlin signed a second EEOC Charge of Discrimination in which she alleges Diamond State retaliated against her for filing the first discrimination charge by passing her over for promotion. (D.I. 39 Ex. C.) The second charge is based on McLaughlin's assertion that Diamond State supervisor William Stansberry told James Woolford, who told Malik Davidum, who told McLaughlin, that "because [she] put this suit out, that [she'll] never get a job." (McLaughlin Dep. at 165:16-166:6,D .I. 39 Ex. D.) McLaughlin was issued another right-to-sue letter on September 20. (D.I. 34 Ex. D.) In the meantime, on August 30 plaintiff's counsel informed counsel for Diamond State of McLaughlin's intention to amend the complaint to add the retaliation and § 1983 claims: Please be advised that plaintiff has filed a new EEOC charge alleging retaliation. As soon as we receive the right to sue, we will be filing a Motion to Amend the Complaint. In addition, as discovery has revealed the Port to be a "state actor," we will also be adding a claim under 42 U.S.C. § 1983. I wanted you to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

aware of these issues before our Conference with Judge Sleet currently scheduled for September 1, 2004 at 9:00 a.m.
*2 I am on trial this week and will be difficult to reach. Please leave me a message if you have any questions and I will try to return your call before September 1, 2004. Thank you.

(August 30, 2004 Letter from Plaintiff's Attorney to Defendant's Attorney, D.I. 34 Ex. 2.)

Diamond State replied the same day:
I received your letter of today in which you noted that McLaughlin intends to move to amend her complaint to add a claim or [sic] retaliation and a section 1983 claim. You closed your letter by asking that I call if I have any questions. I will do so now. I am writing as well in the event that you are carrying a Blackberry. The schedule entered by the court provides that the time to amend pleadings expired over 4 months ago. Obviously we will oppose any effort on the of [sic] McLaughlin to amend her pleadings to add additional, baseless claims. In all events, if you intend to raise this issue with the Court in any substantive manner at the September 1 teleconference, please send me a detailed email identifying what exactly you intend to present so that I can be prepared to respond.

(August 30, 2004 Email from Defendant's Attorney to Plaintiff's Attorney, D.I. 41 Ex. C.)

The teleconference referenced in the above correspondence actually took place on September 3, and resulted in a revised scheduling order. In particular, the court acceded to the parties' requests to move the discovery deadline to October 1 and the deadline for case-dispositive motions to October 18. (D.I.26.) No mention of McLaughlin's desire to amend her complaint was made to the court by either party.

Pursuant to the amended scheduling order, McLaughlin was deposed on September 28. At her deposition, counsel for Diamond State requested a copy of the second EEOC Charge. (D.I. 41 at 8-9.) It was provided on October 8, along with an offer to make McLaughlin available for another deposition. (Id.Ex. A.) According to McLaughlin, Diamond State declined to re-depose her. (Id. at 9.) McLaughlin filed the present motion on October 14 (D.I.34), and Diamond State filed a motion for summary judgment as to the claims in the original complaint on October 18 (D.I.36.)

A pre-trial conference in this case is scheduled for January 5, 2005, and trial is scheduled for January 24, 2005.

IV. DISCUSSION

Bearing in mind that leave to amend a pleading is to "be freely given," Fed.R.Civ.P. 15(a), it is within the discretion of the court to deny leave where a party will be substantially or unduly prejudiced, or where the court finds "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment," Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993).

As to McLaughlin's § 1983 claim, the court is truly at a loss as to how it escaped counsel for McLaughlin that Diamond State is a state actor. Diamond State correctly points out that McLaughlin should have been alerted to this fact by the reference to Del.Code Ann., tit. 29, § 8735(a) (2003), in Diamond State's answer, filed on July 15, 2003 (D.I. 4 ¶ 3). Section 8735(a) states:
*3 There shall be established within the Department of State a body corporate and politic, with corporate succession, constituting a public instrumentality of the State, and created for the purpose of exercising essential governmental functions which is to be known as the "Diamond State Port Corporation."

Thus, McLaughlin should have discovered Diamond State's status as a state actor as soon as counsel read the answer and did even cursory research as to its substance. Either this research didn ot happen, or counsel did not realize the potential for a § 1983 claim. Moreover, the court finds it difficult to believe McLaughlin worked forDi amond State for six years without knowing it is an arm of the State of Delaware. It is noteworthy that McLaughlin's submissions are conspicuously vague in outlining the reasons for this oversight. The only concrete explanation for delay the court can discern from the briefs is that McLaughlin "delayed raising the § 1983[sic] until the retaliation claim had perfected in order to avoid a multiplicity of amendment motions." (D.I. 41 at 10.) Yet McLaughlin did not sign her second EEOC complaint until July 29, 2004, which was over one year after she was put on notice of Diamond State's status as a state actor. The court doubts counsel really thought it was proper to sit idly on its § 1983 claim for over a year (allowing the deadline for amendments to pass) in anticipation of a retaliation claim. Therefore, the court accords very little weight to McLaughlin's justification for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

extraordinary delay in seeking to add the § 1983 claim.

As to the retaliation claim, the court is sympathetic to the plight of the employee who is retaliated against by her employer after the deadline for amendments to the pleadings has passed. Indeed, had McLaughlin's counsel raised the amendment issue at the September 3 teleconference, the court would have given it serious consideration (especially since the whole purpose of the teleconference was to amend the scheduling order). Instead, counsel chose to be inconsiderate of the court's time and burden it with lengthy, eleventh-hour briefing on an issue that could have been disposed at the teleconference with relative ease. Furthermore, counsel offers no excuse for this failure other than to say the defendant requested the issue not be brought up at the teleconference. Based on the defendant's email of August 30, Diamond State merely requested details of the proposed amendment in order to properly prepare his response for the teleconference. Certainly, this was not an unreasonable request. Counsel for McLaughlin argues that such a request was, in fact, unreasonable because counsel for the defendant knew counsel for the plaintiff was on trial and would be unable to respond to a request for details. (D.I. 41 at 9.) In other words, **McLaughlin's** counsel sprung notification of amendment on **Diamond** State on the eve of the teleconference, and then condemns **Diamond** State for not accommodating counsel's busy trial schedule. It goes without saying that **McLaughlin's** position is untenable. Even further undermining her argument is the fact that the teleconference was actually delayed by two days (from September 1 to September 3), giving **McLaughlin** ample opportunity to fulfill **Diamond** State's request for details.

*4 **McLaughlin** also argues that delay was necessary because she needed to receive a right-to-sue letter before seeking to amend. (Id. at 8.) However, **McLaughlin** fails to account for the fact that she could have sought leave to amend *before* the end of discovery. She received her right-to-sue letter on September 20, which was eight days before her own deposition and ten days before the end of discovery. Knowing of the impending deadlines, McLaughlin should have been fully prepared to file her motion to amend immediately upon receiving the letter. Instead she delayed until October 14, just two business days before the deadline for case-dispositive motions.

Another explanation is offered in a footnote:
Plaintiff notes as well that much of the evidence of retaliation was not developed until very recently, after defendant first withheld and then provide [sic] documents and required that plaintiff return to depose a witness about issues on which Defendant prohibited discovery in prior depositions. See, Markow deposition (Affidavit of Laurence V. Cronin ("Cronin Aff.") at Ex. B). Indeed, it was not until Stansbury's deposition in September that defendant finally acknowledged that there had been promotions subsequent to the EEOC charge being filed, having failed to provide any documentation regarding those promotions and assured counsel that there was none. See Stansbury deposition (Cronin Aff. at Ex. D).

(D.I. 41 at 1 n. 2.) This explanation is inadequate for two reasons. First and foremost, McLaughlin obviously had enough information to file a charge with the EEOC in July 2004. Thus, it was not a discovery problem that prevented her from seeking to amend her complaint. Second, the above footnote asks the court to draw inferences from three deposition transcripts with no pinpoint cites. The two Markow depositions total 220 pages and the Stansbury deposition is 137 pages. Counsel once again shows its disregard for the court's time by asking it to sift through 357 pages of testimony to find evidence of dilatory tactics. It is counsel's responsibility to point the court to relevant evidence. Consequently, the court does not accept McLaughlin's explanation for the delay in seeking to add her retaliation claim.

Another consideration in deciding whether to permit an amendment is prejudice to the defendant. Although Diamond State does not explicitly argue this point, the court finds implicit prejudice. The purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies. If the court were to permit parties to ignore these deadlines, unfair surprise would abound.

In this case, briefing on McLaughlin's motion was completed on November 1. Even if the court would have decided the motion that day, Diamond State would have required time to file another answer. Additionally, it is quite likely that more discovery would have been necessary.[FN2] With the schedule now so compressed, it is likely that the filing of dispositive motions would have been precluded by the court or the time for trial postponed. Clearly, the loss to the defendant of the opportunity to achieve summary disposition of the matter or the delay resulting from an accommodation of the plaintiff's request to amend would be prejudicial to Diamond State.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

FN2. McLaughlin disagrees that more discovery would be necessary. She is clearly mistaken. For instance, her main piece of retaliation evidence is at least double hearsay. Although Stansbury's statement may be non-hearsay as an admission of a party opponent, Fed.R.Evid. 801(d)(2), the statement would only become admissible if Woolford testified, or if there were an applicable exception for Woolford's recital of Stansbury's statement to Davidum and for Davidum's recital of Woolford's statement to McLaughlin. Thus, it seems most likely that Woolford would need to be deposed.

### V. CONCLUSION

*5 Since McLaughlin does not adequately explain the prolonged delay in filing her motion to amend, and since permitting such an amendment would impose undue prejudice on Diamond State, the court will deny her motion.

### ORDER

IT IS HEREBY ORDERED that:

The plaintiff's Motion For Leave To File Her Amended Complaint (D.I. 34) be DENIED.

D.Del.,2004.
McLaughlin v. Diamons State Port Corp.
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00617 (Docket) (Jul. 01, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7

Westlaw.

95 F.3d 1164
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))
**(Cite as: 95 F.3d 1164)**

Page 1

NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,Federal Circuit.
**McNEILAB**, INC., Plaintiff-Appellant,
v.
**SCANDIPHARM**, INC., Defendant/Third Party Plaintiff-Appellee,
and BASF AKTIENGESELLSCHAFT, Third Party Defendant.
**No. 94-1508.**

July 31, 1996.

E.D.Pa.

AFFIRMED IN PART, REVERSED IN PART.

Before NEWMAN, MAYER, and PLAGER, Circuit Judges.

NEWMAN, Circuit Judge.

*1 The principal issues of law are (1) the standing of exclusive licensee McNeilab, Inc. (herein McNeilab or McNeil) to bring this suit against Scandipharm, Inc. for patent infringement, and (2) whether the patentee, BASF Aktiengesellschaft, is a necessary party. On motion of BASF the district court had dismissed Scandipharm's third party complaint against BASF. The court thend ismissed McNeilab's infringement suit against Scandipharm for absence of BASF as a necessary party.[FN1] McNeilab appeals the judgment that it lackss tanding without joinder of BASF. We conclude that BASF is not a necessary party to this suit, and that McNeilab has standing to sue and recover damages for infringement. The district court's decision is *affirmed in part, reversed in part, and remanded*.

FN1. *McNeilab, Inc. v. Scandipharm, Inc.,* 862 F.Supp. 1351 (E.D.Pa.1994) (Memorandum and Order).

McNEILAB'S STANDING TO SUE

It is necessary to distinguish between a licensee's standing to sue, and the requirement that the patentee be party to the suit along with the licensee. Although the considerations are related, they are not identical.

A licensee that has an insufficient property interest in the patented subject matter has no standing to bring suit for infringement, whether or not the patentee is joined in the suit. Thus a licensee that has only the non-exclusive right to practice a patented invention is deemed not to have a judicially enforceable interest against an infringer, but is viewed as possessing only an immunity from exclusion by the patent owner. A simple non-exclusive license does not encompass the legal right to exclude others, and the non-exclusive licensee does not have the right to prevent infringement of the patent by others. *See generally Kalman v. Berlyn Corp.* 914 F.2d 1473, 1481, 16 USPQ2d 1093, 1099 (Fed.Cir.1990) ("It is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement.").

In contrast, grant by the patentee of the exclusive license to make, use, and sell an invention is deemed to be the grant to the licensee of all substantial rights in the patent, including the right to exclude all others. The licensee occupies the patentee's entire property interest, with the right to protect and preserve that interest and to remedy violations thereof. Although title to the patent remains in the patentee, the patentee is not a necessary party to suit brought by the exclusive licensee, when the patentee has retained no substantial rights in the licensed subject matter. Such licensee can sue infringers in its own name and without joinder of the patentee. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A.,* 944 F.2d 870, 875, 20 USPQ2d 1045, 1049 (Fed.Cir.1991).

Between the extremes of the fully exclusive and the bare non-exclusive license there is a continuum of practical commercial arrangements. Depending on the alignment of rights and obligations, a licensee that has a sufficiently substantial interest in the patent to be entitled to damages for infringement may nonetheless be required to join the patentee in an infringement suit, in order to protect the defendant against multiple suits for the same infraction. The retention by the patentee of an interest sufficient to support an independent action for damages is the basis of the requirement that the patentee be joined in the suit.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1164    Page 2
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))
**(Cite as: 95 F.3d 1164)**

*2 The variety of commercial arrangements that have been embraced in the rule that when less than all substantial rights are transferred from the patentee to a licensee, the patentee and licensee should be joined in the suit is illustrated in, e.g., *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131, 33 USPQ2d 1771, 1774 (Fed.Cir.1995) (patentee retained certain rights to make, use, and sell the patented product, and should have been joined in the infringement action); *Kalman*, 914 F.2d at 1481-82, 16 USPQ2d at 1099 (sole manufacturing licensee should have been joined with the patentee since both had standing to sue for infringement); *Weinar v. Rollform, Inc.*, 744 F.2d 797, 806-07, 223 USPQ 369, 374-75 (Fed.Cir.1984), cert. denied, 470 U.S. 1084 (1985) (licensee having exclusive right to sell had standing to join with the patentee and recover damages from the infringer).

The Federal Rules of Civil Procedure authorize joinder of a necessary party, either voluntarily or involuntarily, as the circumstances may warrant. Fed.R.Civ.P. 19; *Abbott Labs.*, 47 F.3d at 1133, 33 USPQ2d at 1776. This procedure has long been available. See *Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926) (the assignee, who retained non-exclusive rights for certain uses, was a necessary party and could be joined involuntarily in a suit brought by the exclusive licensee for other uses). Although subject to interpretation at the margins, precedent generally supports the right of the exclusive licensee to sue for infringement without joining the patentee as a party when the license transfers all substantial patent rights, leaving no patent rights with the patentee; but when the patentee has retained any substantial right under the patent, the patentee must be a party to the suit and may be involuntarily joined.

Scandipharm argues that the exclusive license to McNeil did not impart standing to sue without joinder of BASF because (1) McNeil was not licensed for all of the products within the scope of the two BASF patents, (2) BASF retained certain security interests, (3) there was a restriction against assignment of the license, and (4) BASF may have retained the right to sue infringers. We review these points *seriatim*.

*1. The Licensed Product*

The licensed product is a cylindrical microtablet containing a specific pancreatic enzyme, described and claimed in BASF's United States Patents No. 4,797,287 and No. 4,828,843. Claim 1 of the '287 patent is as follows:

1. A cylindrical pharmaceutical microtablet consisting essentially of pancreatin, said microtablet having a convex upper face and convex lower face, wherein the cylinder diameter and the height independently of one another are each from 1.0 to 2.5 mm, the ratio from the said diameter to the said height being from 1:0.5 to 1:1.5, and the radius of curvature r of the convex upper and lower faces of the cylindrical microtablet is from 0.6 to 1.5 times the diameter of the cylinder.

*3 BASF, through its subsidiary Knoll AG (KAG), granted McNeilab and its McNeil Pharmaceutical Division the exclusive patent and knowhow license to make, use, and sell the product. At the time the agreement was entered into, the license grant was as follows:KAG hereby grants to McNeil a right and license to use the Know-How relating to the Product and the Patent Rights to make, use and sell the Product within the Territory. Such right and license shall be exclusive.

Scandipharm argued that because the patents include formulations or dimensions other than the precise "Product" that is made and sold by McNeil, the license is not an exclusive license and does not impart standing to sue without joinder of BASF. The district court agreed.

McNeil states that BASF retained no right to make, use, or sell the product that is exclusively licensed by the agreement, and that there is no other substantial patent right. McNeil states that since BASF retained no substantial patent right, McNeil's property interest as exclusive licensee is in substance that of an assignee. Cf. *Novacolor, Inc. v. American Film Technologies, Inc.*, No. 91 C 6213, 1992 WL 170564 (N.D.Ill.) (when the licensed rights were "in reality, the commercial value, and thus the very essence, of Novacolor's patents" the licensees had become "in economic reality the assignees of the patent.") On the facts of this case McNeil's standing was not diminished because the exclusive license, at the time of its grant, defined the licensed subject matter as the product of commercial interest.

*2. BASF's Retained Interests*

The agreement provides that either BASF or McNeil can terminate the license in the event of default and certain other events. As summarized by the district court:

Either party may terminate the agreement on ninety days' written notice of default by the other party if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1164                                                                                                       Page 3
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))
**(Cite as: 95 F.3d 1164)**

there is failure to cure the default within the ninety day period. Either party may terminate the Agreement immediately if the Agreement becomes void or unenforceable as a result of governmental action, if unreasonable burdens or excessive liabilities are imposed on a party with respect to its performance, or if the other party is insolvent, bankrupt, or liquidated. KAG may terminate the Agreement if McNeil Pharmaceutical Division becomes unaffiliated with Johnson & Johnson.

*McNeilab, Inc. v. Scandipharm, Inc.*, 862 F.Supp. 1351, 1360 (E.D.Pa.1994) (Citations to Agreement omitted).

The right of the patentee to terminate the license in the event of the licensee's failure of performance does not negate the substantiality of the exclusive transfer of all rights to make, use, and sell the licensed product. *Vaupel,* 944 F.2d at 875, 20 USPQ2d at 1049. Recovery of the patent right, should the arrangement fail through no fault of the patentee, is a common security provision when payment depends on the licensee's future performance. Such provision for contingencies that may defeat the entire arrangement does not change the fundamental nature of the agreement. Reasonable provision for unintended possibilities or force majeure does not defeat the substantiality of the transfer of the exclusive right to make, use, and sell the patented subject matter.

### 3. *The Restriction on Alienation*

*4 The agreement required that McNeilab obtain the consent of the patentee to any assignment of the license other than to an affiliated company. The district court held that this contractual restraint on assignability "substantially impaired McNeilab's claim that it is an assignee."

When payment depends on the licensee's commercial performance in the future, the grant of the exclusive right to make, use, and sell the licensed subject matter is not significantly diminished by reasonable conditions to assure that the license remains with the chosen licensee. See *Vaupel,* 944 F.2d at 875, 20 USPQ at 1049 ("The sublicensing veto was a minor derogation from the grant of rights."); *Watson v. United States,* 222 F.2d 689, 691, 105 USPQ 352, 354 (10th Cir.1955) ("That precautionary provision [prohibiting assignment without consent] was intended to protect the rights of the parties under the contract, not to proscribe, limit, or nullify their intent and purpose to vest immediately in the transferee the right to manufacture, sell, and use the [patented invention].")

The restriction on alienation did not restrain McNeilab's full exercise of the exclusive license to make, use, and sell the patented subject matter. This was not a retention by BASF of a substantial right under the patent, but a safeguard of the bargained-for consideration, which was based on the licensee's performance. Thus this contract term did not of itself defeat McNeilab's standing to sue, and its right to do so without joining the patentee.

### 4. *The Right to Sue Infringers*

The license agreement states that the patentee is not obligated to sue infringers, in the following provision:
6.10 *Negation of Warranties.* Nothing in this Agreement shall be construed as:
(a) a warranty [that the licensed product] is or will be free of infringement of patents of third parties; or
(b) an obligation to bring or prosecute actions or suits against thirdp arties for infringement. However, should KAG choose not to enforce any of the rights licensed to McNeil hereunder within a reasonable amount of time after learning of such infringement, McNeil shall be permitted to bring or prosecute such actions or suits in its own right and with the right to retain all awards recovered thereby.

The district court described clause 6.10(b) as a "significant retention of rights by KAG," stating that "the right to sue therefore rests with KAG, not McNeil." The district court concluded that despite the clause's permission to McNeil to sue in its own right, McNeil did not have standing to sue without KAG's presence as a party.

We read this clause to different effect. Clause 6.10 is a "negation," not a grant or retention of a right. Clause 6.10(b) states that KAG is not obligated to sue infringers: the parties stated their contractual intent to negate any such obligation, thus resolving any potential future question on this point, as is the role of well-drafted agreements. Thus McNeil can not, by this contract, require BASF (KAG) to bring or prosecute this infringement action. Nor can BASF bar McNeil's enforcement of the patents against infringers; indeed, it states that McNeil need not share any proceeds with the patentee, again resolving possible uncertainty in this fuzzy area of law. Clause 6.10(b) does not place on BASF the obligation to sue infringers; it negates such obligation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1164
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))
(Cite as: 95 F.3d 1164)

Page 4

*5 Clause 6.10(b) does not change McNeil's exclusive license to make, use, and sell the licensed product. This contractual "negation" of any obligation upon BASF to sue infringers is not the retention by BASF of a substantial right in the licensed patents.

*5. The Totality of These Provisions*

Scandipharm argues that even if any one of these provisions is not viewed as the retention of a substantial patent right, taken together they weigh as substantial. Viewing the totality of the challenged provisions, we conclude that they do not defeat the completeness of the transfer. BASF cann either practice the licensed invention nor authorize anyone else to do so. BASF's right to terminate in the event of default or nonperformance, the restriction on alienation, and BASF's negation of any obligation to enforce the patent against infringers, do not affect the exclusivity of McNeil's license; they are merely safeguards against conditions subsequent. Precedent is in accord. See Vaupel, 944 F.2d at 875, 20 USPQ2d at 1049 (suit by exclusive licensee when patentee retained insubstantial rights); Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc., 73 F.3d 1085, 1087, 37 USPQ2d 1237, 1238 (Fed.Cir.1995) (suit by exclusive licensee with exclusive right to sue for infringement); Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011, 152 USPQ 182, 184 (Ct.Cl.1967) (clauses in exclusive patent license agreement that reserved certain rights to the patentee are conditions subsequent and do not defeat the tax status of the license as a sale). Cf. Radionics, Inc. v. Elekta Instrument AB, 33 USPQ2d 1110, 1113 (D.Mass.1994) ( "An [exclusive license] agreement transferring all substantial rights and retaining only incidental ones is an assignment and provides the assignee standing to sue for infringement."); Ciba-Geigy Corp. v. Alza Corp., 804 F.Supp. 614, 633, 26 USPQ2d 1321, 1335 (D.N.J.1992) ("this Court finds that the Regents transferred substantial rights to exclusivity, to transfer, and to institute a lawsuit under the patent .... the Regents is not a necessary party to this action under Rule 19(a).")

Thus the courts have viewed the licensee with the exclusive right to make, use, and sell the patented subject matter as legally equivalent to the assignee for the purpose of determining standing to sue for infringement. The courts have recognized that there is no substantive difference between the property interests of the exclusive licensee and the assignee of the patent, and thush ave sometimes used the terms interchangeably, subordinating the purity of the distinction to the reality of the legal rights. See, e.g., Waterman v. Mackenzie, 138 U.S. 252, 255 (1891) (the transfer of "the exclusive right to make, use and vend the invention ... is an assignment, properly speaking"). We agree that there is no substantive difference between the property interests of an assignee and of an exclusive licensee who has been granted all substantial patent rights including the right to exclude the patentee. Although it would be more accurate to preserve the distinction whereby the term "assignment" is reserved for transfers that include nominal title, we agree with precedent that when the transfer includes all substantial patent rights including the right to exclude the transferor, there is no significant difference between the rights transferred by assignment and those transferred by exclusive license.

*6 On the facts of this case and in accordance with precedent, we conclude that McNeil has standing to sue in its own name and without joinder of BASF.

THE THIRD PARTY COMPLAINT

Scandipharm imports its accused product from the Italian company Eurand International S.p.A. Scandipharm represented to the district court that Eurand and BASF have a contractual arrangement in Europe concerning this product, and that Scandipharm benefits from that arrangement as a defense against infringement in the United States. The district court held that any arrangement in Europe, to which neither McNeil nor Scandipharm is a party, did not state a cause of action relevant to this action for infringement of United States patents. The court granted BASF's request for dismissal of Scandipharm's third party complaint,[FN2] and denied a request by Eurand to intervene in the action. Although Scandipharm states that these actions were incorrect, we conclude that the district court acted correctly in dismissing Scandipharm's third party complaint and in denying Eurand's request to intervene.

> FN2. BASF made a written commitment to the district court to cooperate in reasonable discovery and to be bound by the judgment. Scandipharm does not assert that any additional assurances are required on these issues.

S       ummary

The dismissal of McNeilab's suit against Scandipharm

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1164  
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))  
**(Cite as: 95 F.3d 1164)**

Page 5

is reversed. The dismissal of the third party complaint is affirmed. The case is remanded for further proceedings.

Taxable costs in favor of McNeilab.

C.A.Fed.,1996.  
McNeilab, Inc. v. Scandipharm, Inc.  
95 F.3d 1164, 1996 WL 431352 (C.A.Fed. (Pa.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8

Westlaw.

Not Reported in F.Supp.2d                                                                                               Page 1
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**Briefs and Other Related Documents**
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Thomas B. **MONAHAN**, Mayna Santiago, Danny Silva, Andrea Janvier and All Other Similarly Situated Employees of the **Wilmington** Police Department, Plaintiffs,
v.
CITY OF **WILMINGTON**, a political subdivision of the State of Delaware, Captain Gilbert Howell, individually and in his official capacity, Inspector James Stallings, individually and in his official capacity, Chief Michael Boykin, individually and in his official capacity, Corporate Black Employees Network, an unincorporated association, Linda Morris, Lynn Tucker-King, and **Wilmington** Fraternal Order of Police, Lodge # 1, Defendants.
No. Civ.A. 00-505 JJF.

Jan. 30, 2004.

Victor F. Battaglia, Sr., of Biggs & Battaglia, **Wilmington**, Delaware, for Plaintiffs.
Jan A.T. van Amerongen, Jr., of Jan A.T. Van Amerongen, LLC, **Wilmington**, Delaware, for Defendants Michael Boykin and James Stallings.
William W. Erhart, of William W. Erhart, P.A., **Wilmington**, Delaware, for Defendant Gilbert Howell.
Daniel B. Rath, of Landis, Rath & Cobb, LLP, **Wilmington**, Delaware, for Defendant City of **Wilmington**.
Kathleen Furey McDonough, of Potter Anderson & Corroon, LLP, **Wilmington**, Delaware, for Defendants Corporate Black Employees, Linda morris, and Lynn Tucker King.
Jeffrey M. Weiner, of Law Offices of Jeffrey M. Weiner, **Wilmington**, Delaware, for Defendant **Wilmington** Fraternal Order of Police, Lode # 1.

*OPINION*
FARNAN, J.
*1 Presently before the Court is Plaintiffs' Motion To Amend Complaint And Prospective Plaintiffs' Motion For Joinder And Intervention. (D.I.74.) For the following reasons, the Court will grant Plaintiffs' Motion in part.

BACKGROUND

On July 23, 2001, by Memorandum Opinion and Order, the Court denied Plaintiffs' motion for class certification. Plaintiffs moved for a stay pending appeal of the Court's Order, which the Courtgr anted. On appeal, the Third Circuit affirmed the Court's denial of class certification and the Court subsequently lifted the stay on March 28, 2003. By their Motion (D.I.74), Plaintiffs request the Court to grant them leave to amend their Complaint to add prospective plaintiffs (the "proposed plaintiffs") to the instant action.

DISCUSSION

I. Parties' Contentions

Plaintiffs contend that under the liberal standards provided by Federal Rule of Civil Procedure 15, the Court should grant their Motion. Plaintiffs contend that their amendment is not futile because the tolling of the statute of limitations continued from the time they filed their Complaint through appeal. Further, Plaintiffs contend that even without continued tolling during appeal, the Court should grant leave to amend because under Rule 15(c) the proposed plaintiffs' claims arose from the same transactions set forth in the Complaint. Plaintiffs contend that Defendants had notice of the proposed plaintiffs.

In response, Defendants contend that the proposed plaintiffs' claims are time barred under the applicable statute of limitations periods, and thus, shouldb e denied as futile. Defendants contend that the tolling of the statute of limitations for the proposed plaintiffs' claims ended once the Court denied Plaintiffs' class certification. Defendants also contend that the Court should not permit an amendment adding the proposed plaintiffs pursuant to Rule 15(c) because Plaintiffs cannot demonstrate that, but for a mistake, the proposed plaintiffs would have joined the instant lawsuit. In addition, Defendants contend they did not have notice of the proposed plaintiffs, and therefore, would suffer undue prejudice if the Court grants Plaintiffs' Motion.

II. Legal Standard

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Federal Rule of Civil Procedure 15 permits a court to freely grant a party leave to amend his or her pleadings "when justice so requires." Fed.R.Civ.P. 15. The decision of whether to grant a motion to amend is within the discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). However, a court should deny leave to amend if the moving party is guilty of undue delay, bad faith, dilatory motive, prejudice, or his or her amended claims are futile. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Defendants contend that the Court should deny Plaintiffs' Motion because it is both unduly prejudicial and futile.

### III. Analysis

#### A. *Whether The Proposed Plaintiffs' Claims Should Be Denied As Futile*

*2 Defendants contend the Court should deny Plaintiffs' Motion as futile because the proposed plaintiffs' claims are untimely. An amendment to a pleading is deemed futile if it could not withstand a motion to dismiss. *Satellite Fin. Planning Corp. v. First Nat'l Bank,* 646 F.Supp. 118, 120 (D.Del.1986).

##### 1. *Whether The Statute Of Limitations Tolled Following The Court's Stay Of The Action And Pending Appeal*

It is settled that the filing of a class action complaint tolls the statute of limitations period for putative plaintiffs. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 2395-96 (1983). However, at issue in the instant action is whether the statute of limitations continues to toll during an appeal of a district court's denial of class certification. Defendants contend that the statute of limitations on the proposed plaintiffs' claims resumed following the Court's denial of class certification. In support of their contention, Defendants rely upon the Third Circuit's decision in *Nelson v. County of Allegheny,* 60 F.3d 1010 (3d Cir.1995). For the following reasons, the Court finds Defendants' reliance upon *Nelson* to be misplaced.

In *Nelson,* the Third Circuit held that the statute of limitations does not continue to toll pending an appeal of a district court's denial of class certification. *Id.* at 1013. The Third Circuit reasoned that, as distinguished from the relevant state law that treated a denial of class certification to be a final order, a "[d]enial of class certification by a federal court ... is interlocutory and ordinarily not immediately appealable." *Id.* (citation omitted). Therefore, the Third Circuit concluded that permitting the statute of limitations to toll until final resolution on appeal of *all claims* would "result in a substantial extension of the tolling period" that would violate the state's intent in limiting certain actions. *Id.;* see also *Armstrong v. Martin Marietta Corp.,* 138 F.3d 1374, 1390 (11th Cir.1998) (characterizing as unreasonable the tolling of the statute of limitations pending an appeal of a denial of class certification prior to the enactment of Rule 23(f) because of the "uncommon and rarely successful" nature of interlocutory appeals).

In December of 1998, subsequent to *Nelson,* subsection (f) of Rule 23 was enacted in order to add a "permissive interlocutory appeal procedure." Fed.R.Civ.P. 23(f) advisory committee notes to the 1998 Amendments. Although the Third Circuit has not addressed the impact of subsection (f) on the continued vitality of *Nelson,* in the Court's view, subsection (f) grants a district court the ability to toll the statute of limitations pending an appeal of its denial of class certification, provided the appealing party requests and is granted a stay by the district court.

In *Nat'l Asbestos Workers Medical Fund v. Philip Morris, Inc.,* 2000 WL 1424931 (E.D.N.Y. Sept. 26, 2000), the court evaluated the effect of Rule 23(f). The court noted that Rule 23(f) "was designed to accommodate the need for quick appellate review of class certification decisions." *Id.* at *2 (citation omitted). Therefore, unlike prior practice, Rule 23(f) provides a reasonable basis for putative class plaintiffs to continue to rely upon a filed class action to redress their individual claims pending an appeal of a denial of class certification. *Id.;* *Armstrong,* 138 F.3d at 1390 n. 35 (noting that then proposed Rule 23(f) may "significantly increase[ ] the frequency of interlocutory appeals of class certification orders," and therefore, "might allow continued tolling of statutes of limitations during the pendency of an appeal"). Based upon these considerations, the Court considers the danger resulting from "a substantial extension of the tolling period," *Nelson,* 60 F.3d at 1014, to be significantly reduced. The Court agrees with the rationale put forth in *Nat'l Asbestos,* and concludes that the enactment of Rule 23(f) signals the now "permissive" nature of class certification appeals. Accordingly, the Court concludes that its stay of the proceedings pending appeal of the denial of class certification continued the tolling of the statute of limitations for the proposed plaintiffs' claims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

### 2. Whether The Proposed Plaintiffs' Claims Are Futile Because They Are Untimely

*3 Section 1981, 1983, and 1985 claims are characterized as personal injury claims, and therefore, courts apply relevant state statute of limitations provisions. Callwood v. Questel, 883 F.2d 272, 274 (3d Cir.1989). Delaware law provides a two year statute of limitations for personal injury claims. 10 Del. C. § 8119. Section 1986 claims have a one year statute of limitations. 42 U.S.C. § 1986. In a Title VII action, if the Equal Employment Opportunity Commission (the "EEOC") has not filed an action in one hundred-eighty days from the filing of a charge, a plaintiff has ninety days from the receipt of a notice of a right to sue upon which to file suit. 42 U.S.C. § 2000e-5(f)(1); Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir.1999) (stating that courts treat the ninety day requirement as a statute of limitations period). In Delaware, a breach of contract claim has a three year statute of limitations period. 10 Del. C. § 8106.

#### a. The Proposed Plaintiffs' Section 1981, 1983, And 1985 Claims

In their Amended Complaint (D.I.74), the proposed plaintiffs allege that Defendants violated their rights on or about two time periods, July 15, 1998 and April 26, 2000. Id. at 9, 10. Based upon the Court's calculations, the Court finds that the proposed plaintiffs' Section 1981, 1983, and 1985 claims alleged to have occurred on July 15, 1998 are timely.[FN1] Therefore, the Court finds that permitting Plaintiffs' to amend their Complaint and add the proposed plaintiffs' Section 1981, 1983, and 1985 claims alleged to have occurred in 1998 and 2000 will not lead to the amendment of futile claims.

> FN1. In computing the time for the statute of limitations, the Court included only the time from the Court's denial of Plaintiffs' certification to the day Plaintiffs filed their motion to stay. The Court did not add the time between the date of filing to the date of the Court's grant of the stay.

#### b. The Proposed Plaintiffs' Section 1986 Claims

Based upon the Court's calculations, the proposed plaintiffs' Section 1986 claims arising from the denial of employment in 1998 are time barred, and therefore, the Court will deny an amendment adding these claims because permitting such amendment would be futile.

#### c. The Proposed Plaintiffs' Title VII Claims

Based upon the Court's calculations, Ms. Buhrman's, Mr. Chaffin's, and Mr. Chorlton's Title VII claims were filed within the statute of limitations period provided by 42 U.S.C. § 2000e-5(f)(1), and therefore, are not futile. However, without a relation back to the filing of the Complaint under Rule 15(c)(3), Mr. Bluestein's and Mr. Browne's Title VII claims are untimely.

To amerliorate the running of the statute of limitations, Rule 15(c)(3) imposes three conditions, all of which must be met for a party to successfully relate back an amended complaint adding a new plaintiff. See Singletary v. Pennsylvania Depot of Corrections, 266 F.3d 186, 193-94 (3d Cir.2001) (describing the three elements of Rule 15(c)(3)); see also Nelson, 60 F.3d at 1014 n. 7 (noting that the relation back of amendments applies equally to amendments changing and adding plaintiffs). The three elements of Rule 15(c)(3) are whether 1) the claim arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, 2) whether the defendant had notice of the filing of the action within the period provided by Rule 4(m) and will not be prejudiced in maintaining a defense, and 3) the newly named plaintiffs failed to add their names to the complaint because of a mistake. Fed.R.Civ.P. 15(c)(3); Nelson, 60 F.3d at 1015.

*4 In the instant case, only the second and third elements are disputed. As discussed below, see infra Section III(B), the Court finds that in the circumstances of this case Defendants had notice of Mr. Browne and Mr. Bluestein and will not be prejudiced in maintaining a defense to their Title VII claims. With respect to the third element, the Court finds that the facts in the instant case demonstrate that but for Mr. Bluestein's and Mr. Browne's mistake, they would have been named in the Complaint. Fed.R.Civ.P. 15(c)(3)(B). The Complaint was filed as a class action and it was not until after the Court denied class certification and subsequent appeal that Mr. Browne and Mr. Bluestein could have reasonably known that a class action was the incorrect method by which to pursue their claims. Therefore, the Court finds that Mr. Bluestein's and Mr. Browne's failure to add their names to the Complaint was due to mistake.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

In sum, the Court concludes that under Rule 15(c)(3) Mr. Bluestein's and Mr. Browne's Title VII claims are entitled to relate back to the filing of the Complaint. Accordingly, their Title VII claims are not futile.

### d. *The Proposed Plaintiffs' Breach Of Contract Claims*

Based upon the Court's conclusion that the stay pending appeal tolled the statute of limitations, the Court finds that the proposed plaintiffs' breach of contract claims are timely.

### B. *Whether Defendants' Are Unduly Prejudiced By The Proposed Plaintiffs' Claims*

Defendants contend that the Court should deny Plaintiffs' Motion because they had no notice of the proposed plaintiffs, and therefore, will be unduly prejudiced if the Court grants Plaintiffs' Motion. In the Third Circuit, a party opposing a motion to amend a complaint "must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely.' " *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) (citations omitted). Applying the *Bechtel* standard, the Court finds Defendants' unsupported lack of notice objection to be unconvincing, particularly because the Complaint was filed as a class action. A class action complaint obviously places defendants on notice of other potential plaintiffs alleging substantially similar causes of action. Further, the proposed plaintiffs have not plead any claims that were not included in the Complaint; therefore, the Court finds that Defendants will not be unduly prejudiced in maintaining new defenses.

### CONCLUSION

For the reasons discussed, the Court will grant Plaintiffs' Motion to Amend (D.I.74) with regard to 1) the proposed plaintiffs' Section 1981, 1983, and 1985 claims; 2) the proposed plaintiffs' Section 1986 claims from the year 2000; and 3) the proposed plaintiffs' Title VII claims. The remaining claims in Plaintiffs' Motion will be denied.

An appropriate Order will be entered.

### ORDER

*5 At **Wilmington**, this 30th day of January, 2004, for the reasons discussed in the Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiffs' Motion To Amend Complaint And Prospective Plaintiffs' Motion For Joinder And Intervention (D.I.74) is *GRANTED* with respect to:
1) The proposed plaintiffs' Section 1981, 1983, and 1985 claims;
2) The proposed plaintiffs' Section 1986 claims from the year 2000; and
3) The proposed plaintiffs' Title VII claims.
4) The remaining claims in Plaintiffs' Motion (D.I.74) are denied.

D.Del.,2004.
Monahan v. City of Wilmington
Not Reported in F.Supp.2d, 2004 WL 758342 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00505 (Docket) (May. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.