# TAB 6

LEXSEE 2006 U.S. DIST. LEXIS 3700

NIKKO MATERIALS USA, INC. d/b/a GOULD ELECTRONICS, INC., an Arizona Corporation, Plaintiffs, v. R.E. SERVICE CO., INC., a California corporation, Defendant.

No. C 03-2549 SBA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2006 U.S. Dist. LEXIS 3700

January 12, 2006, Decided
January 13, 2006, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Costs and fees proceeding at *Nikko Materials USA, Inc. v. R.E. Serv. Co., 2006 U.S. Dist. LEXIS 3750 (N.D. Cal., Jan. 13, 2006)*
Corrected by *Nikko Materials USA, Inc. v. R.E. Serv. Co., 2006 U.S. Dist. LEXIS 15775 (N.D. Cal., Mar. 16, 2006)*

**PRIOR HISTORY:** *Johnson & Johnston v. R.E. Serv. Co., 2004 U.S. Dist. LEXIS 26973 (N.D. Cal., Nov. 2, 2004)*

**COUNSEL:** [*1] For Johnson & Johnston Associates, Inc., a New Hampshire corporation, Nikko Materials USA, Inc., Plaintiffs: Matthew Herman Poppe, Christiana Eugenia State, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA; Amelia K. Smith, Robert Michael Isackson, Esq., William Benjamin Tabler, III, Orrick Herrington & Sutcliffe, LLP, New York, NY; Rita E. Tautkus, Lanahan & Reilley LLP, San Francisco, CA.

For R.E. Service Co., Inc., a California corporation, Defendant: Archie S. Robinson, Robert A. Nakamae, Robinson & Wood, Inc., San Jose, CA.

For R.E. Service Co., Inc., a California corporation, Cross-claimant: Archie S. Robinson, Robert A. Nakamae, Robinson & Wood, Inc., San Jose, CA.

For Johnson & Johnston Associates, Inc., a New Hampshire corporation, Cross-defendant: Amelia K. Smith, Orrick Herrington & Sutcliffe, LLP, New York, NY; Matthew Herman Poppe, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA; Rita E. Tautkus, Lanahan & Reilley LLP, San Francisco, CA.

For R.E. Service Co., Inc., a California corporation, Cross-claimant: Archie S. Robinson, Robinson & Wood, Inc., San Jose, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINIONBY:** SAUNDRA BROWN ARMSTRONG

**OPINION:** [*2]

**ORDER**

(Docket Nos. 435, 439, 458)

This matter comes before the Court on Plaintiff Nikko Materials USA, Inc.'s ("Plaintiff or "NIKKO") Motion re Award of Damages Including Prejudgment Interest [Docket No. 435], NIKKO's Motion for Enhanced Damages [Docket No. 458], and NIKKO's Motion for Permanent Injunction [Docket No. 439]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS NIKKO's Motion re Award of Damages Including Prejudgment Interest [Docket No. 435], NIKKO's Motion for Enhanced Damages [Docket No. 458], and NIKKO's Motion for Permanent Injunction [Docket No. 439].

**BACKGROUND**

Plaintiff NIKKO is a New Hampshire corporation that designs, develops, manufactures, and sells products for use in the printed circuit board industry. NIKKO has obtained numerous patents in the United States and abroad relating to the manufacture and design of printed circuit boards.

Johnson & Johnston Associates, Inc. ("JJA") and Defendant R.E. Service Co., Inc. ("RES") have engaged in protracted litigation over three patent [*3] infringement actions. The first action between the parties commenced on October 6, 1992, when RES sued JJA for a declaratory judgment alleging that JJA's *U.S. Patent No. 5,153,050* ("the *050 Patent*") was invalid, unenforceable and not infringed. JJA counterclaimed that RES was willfully infringing the *050 Patent* through the manufacture and sale of its AC3. and AC2 products. In June 1994, a jury found that the *050 Patent* was valid and that RES had indeed infringed it. Accordingly, on July 26, 1994, the Court entered a final judgment that the *050 Patent* was not invalid and that it was infringed by RES' AC3 and AC2 products.

In late 1996, RES began to sell its SC2 and SC3 products. As a result, on January 21, 1997, JJA initiated a second infringement action against RES alleging that RES' SC2 and SC3 products infringed the *050 Patent*. Meanwhile, JJA was issued *U.S. Patent No. 5,674,596* ("the *596 Patent*") n1 on October 7, 1997.

> n1 The *050 Patent* is parent to the *596 Patent*.

On October 9, 1998, RES was prevented [*4] from producing and selling its SC2 and SC3 products when the Court issued an injunction following the second trial. During the next three-and a-half years, between October 1998 and March 2002, RES ceased to produce and sell its SC2 and SC3 products in compliance with the injunction.

On March 28, 2002, however, the Federal Circuit overturned the judgment in the second litigation and RES subsequently resumed production and sales of its SC2 and SC3 products.

On May 29, 2003, JJA commenced a third action against RES, seeking relief for willful infringement of *U.S. Patent Nos. 5,674,596* (the "*596 Patent*") and 5,942,315 (the "*315 Patent*"), both now owned by NIKKO. n2 On April 11, 2005, a unanimous jury found that RES made, used, offered to sell, and sold SC2 and SC3 products that infringed NIKKO's *596 Patent*, and that RES' infringement was willful. Acting in an advisory capacity only, the jury also found that RES had failed to show by a preponderance of the evidence that NIKKO unreasonably delayed in filing suit for infringement of the *596 Patent*.

> n2 The remainder of this Order will refer to the Plaintiff exclusively as "NIKKO."

[*5]

Following trial, NIKKO filed the instant Motion re Award of Damages, Motion for Enhanced Damages, and Motion for Permanent Injunction.

**LEGAL STANDARD**

**A. Damages and Prejudgment Interest**

Pursuant to *35 U.S.C. § 284*, "upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *35 U.S.C. § 284*.

Since Congress' overriding purpose in enacting *35 U.S.C. § 284* is to afford patent owners complete compensation, prejudgment interest is ordinarily awarded. *General Motors Corp. v. Devex Corp., 461 U.S. 648, 655, 103 S. Ct. 2058, 76 L. Ed. 2d 211 (1983)*. "An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also the foregone use of the money between the time of the infringement and the date of the judgment." *Id. at 655-56*; *see also Miller v. Robertson, 266 U.S. 243, 258, 45 S. Ct. 73, 69 L. Ed. 265 (1924)* [*6] (prejudgment interest required for "full compensation"); *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir. 1986)* (normal procedure is to award prejudgment interest from date of infringement to date of payment, since only such award will satisfy Congress' overriding purpose in § 284). "Prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Devex, 461 U.S. at 657*.

A trial court is afforded wide latitude in determining the interest rate at which prejudgment interest should be assessed and may award such interest at or above the prime rate. *Amtel Corp. v. Silicon Storage Technology, Inc., 2002 U.S. Dist. LEXIS 27109 at 12-13 (N.D. Cal. 2002)* (citing *Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 556-57 (Fed. Cir. 1983)*. Additionally, "[i]n applying prejudgment interest, courts have recognized that compounding is necessary to fully compensate the patentee." *Amp Inc. v. Lantrans Inc., 22 U.S.P.Q. 2d 1448, 1453 (C.D. Cal. 1991)*. "Because a patentee's damages include the foregone use of money, compounding [*7] is needed to account for the time value of money." *Id.* Thus, "courts have approved annual compounding and even daily compounding." *Id.*

**B. Enhanced Damages**

Pursuant to *35 U.S.C. § 284*, damages may be increased up to three times the compensatory award for patent infringement. An award of enhanced damages, as well as the extent of the enhancement, is committed to the discretion of the district court. *Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992)*. Although the statute does not set forth a standard for determining when to enhance damages, an award of enhanced damages is warranted "where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful." *Id.* However, a finding of willfulness does not mandate enhanced damages. *Id.* The key inquiry is "the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.*

A number of factors have been identified by courts for determining whether damages should be enhanced and/or to what extent. These factors include:

> (1) whether the infringer deliberately copied the ideas or [*8] design of another;
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a god-faith belief that it was invalid or that it was not infringed; and
>
> (3) the infringer's behavior as a party to the litigation.

*Id. at 826-27.* Additional factors that courts have considered, particularly in deciding the extent of enhancement, include:

> (1) defendant's size and financial condition;
>
> (2) closeness of the case;
>
> (3) duration of the defendant's conduct;
>
> (4) remedial action by the defendant;
>
> (5) defendant's motivation for harm;
>
> (6) whether the defendant attempted to conceal its misconduct.

*Id.*

### C. Injunctive Relief

"The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent." *Smith International, Inc. v. Hughes Tool Company, 718 F.2d 1573, 1577 (Fed. Cir. 1983)* (citing *Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 135, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969))*. Congress enacted *35 U.S.C. § 283* to protect this [*9] right to exclude. *Id.*

Pursuant to *35 U.S.C. § 283*, injunctions may be granted under the principles of equity to prevent the violation of any rights secured by patent, on such terms as the court deems reasonable." *Id.* "Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research." *Id. at 1578.*

"In the patent area, it is the general rule that an injunction will issue when infringement has been adjudged, absent any sound reason for denying it." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 106 F. Supp. 2d 696, 700 (D. NJ. 2000)* (internal quotations omitted). Although the district court possesses broad discretionary powers to grant or deny an injunction depending on the facts of the case, "injunctive relief against an adjudged infringer is usually granted." *Id.*

In imposing injunctive relief, a district court must consider the equities of the situation, which includes consideration of the following four factors: (1) [*10] whether the patentee would be irreparably harmed without an injunction; (2) whether the patentee has an adequate remedy at law; (3) whether granting the injunction is in the public interest; and (4) whether the balance of hardships favor an injunction. *Id. at 700-701.* "A court need not give each factor equal weight, rather, the court must consider the equities of the particular case." *Id. at 701.*

### ANALYSIS

### A. Award of Damages

Since the parties stipulated to the amount of damages that would be awarded to NIKKO in the event that the jury found RES liable for patent infringement, n3 the sole issue in dispute in Plaintiff's Motion for Damages is whether NIKKO should be awarded prejudgment interest and, if so, how it should be calculated. NIKKO seeks an order providing that it shall be awarded prejudgment interest and that the interest shall be calculated using the prime rate and compounded annually. RES, on the other hand, argues that the prejudgment interest, if awarded, should be calculated using the rate of interest "equal to

the weekly average 1-year constant maturity Treasury yield ('T-bill')."

n3 Specifically, the parties agreed that NIKKO would be entitled to a "reasonable royalty rate" of 7.5% on RES' sales revenues for the SC2 and SC3 from October 7, 1997 to April 11, 2005. This results in damages in the amount of $ 282,745.62.

[*11]

The first issue to be determined is whether RES is entitled to prejudgment interest. With respect to this issue, RES argues in its Opposition brief that the Court should refrain from ruling on whether NIKKO is entitled to prejudgment interest until after the Court has ruled on RES' Motion for Application of Laches because NIKKO's allegedly "unreasonable" delay in filing the third lawsuit against RES also bars NIKKO from recovering prejudgment interest. As set forth in this Court's Order denying RES' Motion for Application of Laches, however, RES has not shown that NIKKO unreasonably or inexcusably delayed filing suit against RES. Accordingly, since RES has not provided the Court with a valid justification for withholding prejudgment interest, and since prejudgment interest is typically awarded pursuant to *35 U.S.C. § 284*, the Court hereby finds that NIKKO is entitled to prejudgment interest.

The next issue for the Court to determine is the rate to be used in calculating the prejudgment interest. In a recent case in the Northern District of California, *Amtel Corp.*, the district court applied the prime rate, after concluding that the prime rate was the most [*12] accurate estimate of the interest rate the patentee would have charged the infringer for a loan since it is the "rate charged by banks to its most credit-worthy customers." *See 2002 U.S. Dist. LEXIS 27109 at * 13*. Relying on *Amtel*, NIKKO argues that its request for the prime rate is more than reasonable, especially given the fact that a loan to a "privately held corporation without an independent board of directors, like RES" would have carried a substantial amount of risk. RES, on the other hand, argues that the Court should apply the "T-bill" rate. RES, however, does not identify any cases where a district court has used the T-bill rate for calculating prejudgment interest. In fact, in arguing that the T-bill rate is regularly applied in the Northern District of California, RES mistakenly equates prejudgment interest with post-judgment interest. While this district has adopted the T-bill rate for *post-judgment* interest, a matter controlled by *28 U.S.C. § 1961*, a trial court is afforded wide latitude in determining the interest rate at which prejudgment interest should be assessed and may award such interest at or above the prime rate. [*13] *Amtel Corp., 2002 U.S. Dist. LEXIS 27109 at * 12-13 (citing Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 556-57 (Fed. Cir. 1983))*. Again, since RES offers no valid reason why the prime rate is not appropriate, the Court hereby grants NIKKO's request to adopt the prime rate. Finally, since RES does not dispute that the prejudgment interest should be compounded annually, NIKKO's request for damages and prejudgment interest is hereby GRANTED in its entirety.

**B. Enhanced Damages**

In its separately filed Motion for Enhanced Damages, NIKKO also requests that the Court award it enhanced damages equal to three times the amount of actual damages, or $ 848,236.86, pursuant to *35 U.S.C. § 284*. In support of its Motion, NIKKO relies on the following arguments: (1) RES was found to have willfully infringed the *596 Patent*, (2) RES failed to properly investigate the scope of the *596 Patent*; (3) the issues of infringement and willfulness were not "close" questions; and (4) RES' willful infringement continued throughout the trial. In response, RES does not dispute that it was found to have willfully infringed the *596* [*14] *Patent*, but nevertheless argues that damages should not be enhanced because (1) RES defended against this litigation in good faith; (2) RES did not intentionally copy the *596 Patent*; (3) RES consulted with legal counsel prior to conducting its infringing activities; and (4) RES attempted to slow its sales during trial in an effort to mitigate potential damages. Alternatively, RES requests that, if this Court is inclined to award enhanced damages, it only increase the award of damages by ten percent.

Having considered the papers submitted by the parties in support of and in opposition to the Motion for Enhanced Damages, the Court hereby finds that NIKKO's request for enhanced damages is well-supported. First, given the lengthy history of litigation between the two parties to the instant suit, NIKKO has presented a compelling argument that RES did not defend against this lawsuit in good faith. Notably, as NIKKO points out in its Reply brief, RES' experience from the two prior cases belies RES' current contention that it was completely unaware of the possibility that its products would be found to infringe the *596 Patent*. Further, all of the arguments upon which RES relies in its Opposition [*15] brief were presented to the jury during trial and found to be unavailing. Additionally, RES has utterly failed to explain why, if it truly intended to present a meritorious defense, it did not take any depositions and did not designate any experts to testify on the issue of infringement at trial.

Second, RES' argument that it did not intentionally copy NIKKO's patent is unsubstantiated and is therefore

unpersuasive. Since this issue was never squarely addressed by the parties at trial, the Court does not have any competent evidence upon which it can conclude that RES' President and founder, Mark Frater, did not intentionally copy the *596 Patent*.

Third, RES' conclusion that it reasonably relied on its counsel's opinion before engaging in any infringing activities is equally unpersuasive. Merely obtaining an opinion of counsel does not automatically shield an infringer from an award of enhanced damages. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir.1992). The court must consider the nature of the opinion and the effect it had on the infringer's actions. *Id.* Opinions of counsel that are not thorough, that do not discuss pertinent facts or law, or that [*16] evidence that the attorney did not understand pertinent facts are all deemed incompetent and do not provide a shield to enhanced damages. *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181-83 (Fed. Cir. 1994); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 943-45 (Fed. Cir. 1992). Here, RES' President, Mark Frater, admitted at trial that the written opinion Mr. O'Banion provided to him in 1996 was merely a preliminary opinion. In fact, the March 27, 1996 letter quite plainly states that Mr. O'Banion considered only the application claims pending as of June 28, 1994, more than three years before the *596 Patent* issued. Although Mr. Frater claimed at trial that he engaged in follow-up telephone calls with Mr. O'Banion after the *596 Patent* issued, his testimony did not elucidate -- in any way -- the level of detail of Mr. O'Banion's advice or the factual basis or rationale for Mr. O'Banion's purported conclusions, if any. Based on this evidence, the Court hereby concludes that the legal opinion upon which RES relied was not thorough and omitted many facts relevant to a full infringement analysis. As such, the Court finds that RES did not reasonably investigate the scope of the *596 Patent*.

Fourth, [*17] RES has not shown that it engaged in any "remedial" measures. For example, although RES claims, in its Opposition brief, that it slowed sales of the SC2 and SC3 during the period leading up to the trial, RES has not produced any evidence that the slowing of sales was intentional. Indeed, what is relevant is the fact that RES continued to sell the infringing products over the entire course of the litigation, including the trial. Finally, the facts of the underlying proceeding amply support a finding that this was not a "close" case. Indeed, the trial itself only spanned six days and the jury deliberated for less than two hours before rendering a unanimous verdict in NIKKO's favor.

Accordingly, the Court hereby finds that RES' culpability in the underlying litigation was high and that NIKKO is therefore entitled to trebled damages. Thus, NIKKO's Motion for Award of Enhanced Damages is GRANTED.

### C. Injunctive Relief

In its Motion for Permanent Injunction, NIKKO requests that the Court enjoin RES from making, using, offering to sell, selling or importing into the United States a laminate product having either one or two sheets of copper foil joined at their borders by a flexible [*18] adhesive, including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets. NIKKO also requests that the Court order RES to destroy any infringing products remaining in its inventory and to account for any sales of any infringing products sold between the time the jury verdict was rendered and the time all infringing products are destroyed. NIKKO further requests that the Court order RES to pay NIKKO a royalty of 7.5% of the sales price for any post-verdict sales.

In its Opposition, RES argues that the Court should not issue an injunction because: (1) NIKKO will suffer irreparable harm if the injunction does not issue because NIKKO has not shown that it produces a competing steel laminate product; (2) NIKKO already has an adequate remedy at law; and (3) there is no public interest in enjoining RES from making and selling its SC2 and SC3 products. The Court finds that RES' arguments are without merit. Inherent in patent law is the express right to exclude others from practicing the patented subject matter. *Studiengesellschaft Kohl mbH v. Northern Petrochemical Co.*, 784 F.2d 351, 357 (Fed. Cir. 1986). [*19] Further, when patent infringement has been adjudged, as it has been here, the patentee is entitled to a presumption of irreparable harm. *See Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989). Additionally, RES' reliance on its own belief that NIKKO will not be harmed because it "does not have a competing steel product" is misplaced. NIKKO has continually asserted that its CAC laminate product competes directly with RES' SC2 SC3 products and RES has produced no evidence to the contrary. Indeed, RES has not provided this Court with any authority in support of its contention that the Court should deny NIKKO injunctive relief based on RES' own self-serving and unsupported assumptions regarding NIKKO's future marketing plans. Since the current damages award addresses only the harm NIKKO has suffered in the *past* as a result of RES' sales of the SC2 and SC3 products, NIKKO does not have an adequate remedy at law and is therefore entitled to equitable relief.

Accordingly, the Court hereby GRANTS NIKKO's request to permanently enjoin RES from making, using, offering to sell, selling or importing into the United

States a laminate product having either [*20] one or two sheets of copper foil joined at their borders by a flexible adhesive, including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets. RES shall account for any sales of any infringing products sold between the time the jury verdict was rendered and the date of this Order, and to pay NIKKO a royalty of 7.5% of the sales price for any post-verdict sales.

## CONCLUSION

IT IS HEREBY ORDERED THAT NIKKO's Motion re Award of Damages [Docket No. 435] is GRANTED.

IT IS FURTHER ORDERED THAT NIKKO'S Motion for Enhanced Damages [Docket No. 458] is GRANTED. NIKKO shall be awarded enhanced damages in the amount of $ 848,236.86 plus prejudgment interest in the amount of $ 122,843.74.

IT IS FURTHER ORDERED THAT NIKKO's Motion for Permanent Injunction [Docket No. 439] is GRANTED.

IT IS FURTHER ORDERED as follows:

1. RES, its officers, agents, servants, employees, and attorneys, and any person or entity in active concert or participation with any of the above persons or entities who has action notice of this Order are immediately and [*21] permanently enjoined from:

a. Infringing claims 12, 13, and 14 of *United States Patent No. 5,674,596* by making, using, offering to sell, selling or importing into the United States RES' commercial laminate products sold under the trade names SC2 and SC3 for use in manufacturing printed circuit boards.

b. Making, using, offering to sell, selling or importing into the United States a laminate product having either one or two sheets of copper foil joined at their borders by a flexible adhesive, including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets.

c. Assisting, aiding or abetting any other person in engaging in any of the proscribed activities referred to herein.

IT IS FURTHER ORDERED THAT on or before February 17, 2006, RES will provide to the Court and to NIKKO's counsel an accounting for all of its gross revenues resulting from or in connection with its making, using, offering to sell, selling, or importing laminate products having either one or two sheets of copper foil joined at their borders by a flexible adhesive [*22] (including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets) between April 12, 2005 and the date of this Order, inclusive.

IT IS FURTHER ORDERED THAT RES shall pay to NIKKO an amount in United States dollars equal to 7.5% of RES' gross revenues resulting from or in connection with its making, using, offering to sell, selling, or importing laminate products having either one or two sheets of copper foil joined at their borders by a flexible adhesive (including, without limitation, RES' SC2 and SC3 products in which the metal substrate is a steel or carbon steel and the flexible adhesive is applied in strips around the perimeter of the sheets) between April 12, 2005 and the date of this Order, inclusive.

IT IS SO ORDERED.

Dated: January 12, 2006

SAUNDRA BROWN ARMSTRONG

United States District Judge

# TAB 7

LEXSEE 1986 U.S. DIST. LEXIS 17129

SPALDING & EVENFLO COMPANIES INC., Plaintiff, v. ACUSHNET COMPANY, Defendant

Civil Action No. 81-0088-N

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

1986 U.S. Dist. LEXIS 17129; 2 U.S.P.Q.2D (BNA) 1070

November 28, 1986

OPINIONBY: [*1]

NELSON

OPINION:

ORDER OF PRELIMINARY INJUNCTION

DAVID S. NELSON, UNITED STATES DISTRICT JUDGE

Pursuant to an Order, approved December 17, 1985 and entered in accordance with a stipulation of the parties, Robert W. Meserve, Esq. was appointed a special master "to hear evidence and report the same together with his findings of fact and conclusions of law with respect to the Plaintiff's Motion for Preliminary Injunction"; and

In compliance with that Order, the special master held hearings on December 16, 17, and 18, 1985 and January 6, 7, 8, and 17, 1986. He took evidence from several witnesses and admitted 138 exhibits. On January 29, 1986, the master heard oral arguments on the merits of plaintiff's motion for preliminary injunction. He completed his draft report, and in accordance with *Rule 53(e)(5) of the Fed. R. Civ. P.* sent each party a draft report. Counsel for the parties reviewed the reports and submitted written comments. On May 6, 1986, a hearing on the draft report was held. Thereafter, counsel were given an opportunity to file additional written comments.

On May 30, 1986, the special master filed with the Clerk of the Court his 52 page report wherein he set forth his [*2] findings of fact and conclusions of law. The defendant subsequently filed objections to the special master's report, pursuant to *Rule 53(e)(1) of the Fed. R. Civ. P.*

A hearing was held on October 10, 1986 before the Court on plaintiff's motion to have the Court act upon the the special master's report and upon defendant's objections. The defendant contended, among other things, that the plaintiff had failed to establish immediate and irreparable harm. The plaintiff's four and one-half (4 1/2) year delay in seeking an injunction by itself, the defendant argued, "destroys Spalding's eligibility for the preliminary relief it seeks." Acushnet Reply Memorandum at 13. The master himself left unanswered "whether the plaintiff's conduct [relative to the delay] . . . was such that plaintiff should be barred from interlocutory relief." Master's Report at para. 31.

While a delay in seeking a preliminary injunction may support the inference that the plaintiff has not suffered immediate harm, delay by itself without more does no preclude consideration of injunctive relief. See *Rexnord, Inc. v. Laitram Corp. and Intralox, Inc., 628 F. Supp. 467 (E.D. Wis. 1986)* (delay a factor to consider [*3] in assessing irreparable injury); *Medtronic, Inc. v. Daig Corp., 221 U.S.P.Q. 595, 597 (D. Minn. 1983)* (preliminary injunction sought and issued three and one-half (3 1/2) years after filing of complaint). n1 In the instant case, the plaintiff filed suit in 1981 within one (1) month of the defendant's introduction of its Pinnacle Ball. Whatever prejudice the defendant may have suffered by marketing its infringing golf balls during the subsequent four and one-half (4 1/2) year period has resulted from its own deliberate challenge of the validity of the plaintiff's patent. Moreover, given the injuries sustained by the plaintiff and the procedural events that followed the filing of the complaint as set forth in paragraphs 27, 35-36, and 39-41 of the master's report, it cannot be said that the plaintiff has delayed unreasonably to prevent such further harm.

Case 1:05-cv-00160-KAJ-MPT    Document 172-3    Filed 09/01/2006    Page 10 of 12

Page 2

1986 U.S. Dist. LEXIS 17129, *; 2 U.S.P.Q.2D (BNA) 1070

n1 Acushnet seeks to distinguish the case at bar from Medtronic in which the court issued a preliminary injunction because the defendant became bankrupt and jeopardized the plaintiff's ability to recover monetary damages should the plaintiff subsequently prevail at trial. *Medtronic, Inc. v. Daig Corp., supra at 597*. The failure to show the defendant's financial instability, however, is not determinative, and other factors may be considered with respect to the issuance of a preliminary injunction. *Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1269 n.2 (Fed. Cir. 1985)*.

[*4]

The primary inquiry before the court is whether the plaintiff has suffered immediate and irreparable harm. Although the master declined to decide the "issue of irreparable injury," he all but held that such harm exists. Because of the defendant's infringing conduct, the plaintiff's golf balls have lost "significant" market penetration and expansion as well as pre-existing sales growth and "exposure" in pro shops. Master's Report at paras. 35-36, 40-41. Also adversely affected are the plaintiff's golf product line as to non-patented golf items and products, consumer pull, exclusivity and commercial reputation. Master's Report at paras. 39, 41. The master opined that if "the Court had power to multiply [the] amount [of damages] they might be made more adequate, but the effect on the plaintiff's total business is not compensable as such, and will continue." Master's Report at 27 (emphasis supplied).

It appears that the master hedged in deciding the ultimate issue of irreparable injury because the defendant advanced the novel legal theory that "damages not compensable under the patent laws after a full trial on the merits [cannot] become somehow compensable by way of injunctive [*5] relief before a trial on the merits." Acushnet's Reply Memorandum at 22; see also Master's Report at para. 44. At oral argument the defendant cited the Velo-Bind case to support this proposition. *Velo-Bind, Inc. v. Minn. Mining & Mfg. Co., 647 F.2d 965, 972 (9th Cir.), cert. denied, 454 U.S. 1093 (1981)*. In Velo-Bind, however, the court held that "lost profits on sales of unpatented, consumable supplies" may not be awarded as damages after a trial on the merits, but failed to address the issue now before this court, i.e., whether such noncompensable damages may be considered in assessing the sufficiency of irreparable harm. *Velo-Bind, Inc., supra at 972*.

It is apparent that Spalding's damages as enumerated in paragraphs 35-36 and 39-41 of the master's report (loss of market share, loss of consumer pull and of revenue from non-patented golf product line, etc.) constitute traditional irreparable injury inasmuch as such "market effects [cannot be] fully compensable in money." *Atlas Powder Co. v. Ireco Chemicals, 773 F.2d 1230, 1233 (Fed. Cir. 1985)*. To hold that this court may not consider the above-mentioned damages in evaluating irreparable injury would [*6] contradict and disable the express language of the patent statute which authorizes injunctive relief to prevent future infringement. See *35 U.S.C. § 283* (principles of equity govern issuance of injunctions). The preliminary relief presently sought does not compensate the plaintiff for the defendant's past infringing conduct, but merely prevents the defendant from infringing the patent in the future. This court is not persuaded that the defendant should be licensed to continue to commit future wrongs. See *Atlas Powder Co., supra at 1231-33* (Fed. Cir. 1985)(injunctive relief designed to preserve status quo, not to allow wrongdoer to continue wrong).

The plaintiff must still clearly show, however, that its patent is valid and infringed, that the injury to the defendant by issuance of an injunction does not outweigh the harm to the plaintiff if the injunction is denied, and that such issuance will not cause public injury, *Atlas Powder Co., supra at 1233; Roper Corp., supra at 1269*, and this Court so finds by adopting the master's findings of fact and conclusions of law.

NOW, THEREFORE, after due consideration of special master Meserve's report, the record upon which [*7] special master Meserve based his findings and conclusions, defendant's objections to the special master's report, the memoranda of the parties directed to these objections, and arguments at the hearing, this Court:

HEREBY ORDERS AND DECREES THAT:

1. The finding of fact and conclusions of law in special master Meserve's report are hereby adopted by this Court; and

2. The Court further finds and concludes that plaintiff will suffer irreparable injury if the requested preliminary injunction is not granted; and

3. ACUSHNET COMPANY, its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them who shall receive actual notice of this Order by personal service or otherwise, are preliminarily enjoined, under *35 U.S.C. § 283*, during the pendency of this action from:

a. manufacturing, using, selling, or offering for sale or use, or causing to be manufactured, used, sold, or offered for sale or use it "Pinnacle", "Titlest IDT", and "Club Special" brand golf balls and/or any other golf ball that infringes claim 3 of U.S. Patent No. *3,819,768*, to wit:

Case 1:05-cv-00160-KAJ-MPT    Document 172-3    Filed 09/01/2006    Page 11 of 12

Page 3

1986 U.S. Dist. LEXIS 17129, *; 2 U.S.P.Q.2D (BNA) 1070

any golf ball that comprises a core and a cover, wherein said cover comprises [*8] from about 90 to about 10 percent of an ionic copolymer of an olefin having from 2 to 5 carbon atoms, and a sodium salt of an unsaturated monocarboxylic acid containing from 3 to 8 carbon atoms, and from about 10 to about 90 percent of an ionic copolymer of an olefin having from 2 to 5 carbon atoms and a zinc salt of an unsaturated monocarboxylic acid containing from 2 to 8 carbon atoms; and where said cover comprises from about 55 to 45 percent of an ethylene base sodim salt copolymer and from about 45 to about 55 percent of an ethylene base zink salt copolymer; and

b. otherwise directly infinging or contributing to the infringing of or inducing infringement of claim 3 of U.S. Patent No. *3,819,768*.

SO ORDERED.

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on September 1, 2006, I caused to be served a true and correct copy of the foregoing document to the following counsel of record:

**BY ELECTRONIC MAIL AND HAND DELIVERY**

Donald E. Reid, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

**BY ELECTRONIC MAIL**

Tharan Gregory Lanier, Esquire
Jane Froyd, Esquire
JONES DAY
2822 Sand Hill Road, Suite 240
Menlo Park, CA 94025

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Andrew A. Lundgren
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Novozymes A/S*