**REDACTED – PUBLIC VERSION**

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOVOZYMES A/S,<br><br>        Plaintiff<br><br>    v.<br><br>GENENCOR INTERNATIONAL, INC., and<br>ENZYME DEVELOPMENT CORPORATION<br><br>        Defendants | C.A. No. 05-160-KAJ |

**PLAINTIFF'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR LEAVE TO MODIFY THE
SCHEDULING ORDER FOR THE PURPOSE OF AMENDING ITS COMPLAINT**

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
**YOUNG CONAWAY STARGATT
 & TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Joseph R. Robinson
David Tellekson
Robert C. Sullivan, Jr.
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700
Attorneys for Plaintiff
Novozymes A/S

Dated:    August 28, 2006

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF CASES AND AUTHORITIES ............................................................................ ii

I.      INTRODUCTION .................................................................................................... 1

II.     ARGUMENT ............................................................................................................ 2

   A.   Good Cause Exists to Modify The Scheduling Order ...................................... 2

   B.   NZNA Has Standing To Join This Lawsuit As A Co-Plaintiff ......................... 5

      1.   The Close Nexus Between NZDK And NZNA, Provides NZNA
           With Standing To Join This Lawsuit As a Co-Plaintiff. ......................... 5

      2.   Kalman And Its Progeny Are Not Distinguishable ................................. 9

      3.   General Policy Supports The Standing Of NZNA As A Co-Plaintiff. ......... 13

   C.   Genencor Would Not Be Prejudiced by the Addition of NZNA ........................ 14

III.    CONCLUSION ......................................................................................................... 18

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## TABLE OF CASES AND AUTHORITIES

<u>Page(s)</u>

**CASES**

*A.L. Smith Iron Co. v. Dickson,*
    141 F.2d 3 (2d Cir. 1944)....................................................................................... 13

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.,*
    295 F. Supp. 2d 430 (D. Del. 2003)..................................................................... 2, 5

*Enzo Life Scis., Inc. v. Digene Corp.,*
    270 F. Supp. 2d 484 (D. Del. 2003)......................................................................... 2

*Gayler v. Wilder,*
    51 U.S. (10 How.) 477 (1850) ............................................................................... 13

*Kalman v. Berlyn Corp.,*
    914 F.2d 1473 ..................................................................................................... 1, 6, 9

*Ortho Pharmaceutical Corp. v. Genetics Inst.,*
    52 F.3d 1026 (Fed. Cir. 1995)............................................................................. 6, 9, 11

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
    383 F.3d 1303 (Fed. Cir. 2004)............................................................................ 11, 12

*Ricoh Co. v. Nashua Corp.,*
    947 F. Supp. 21 (D.N.H. 1996)............................................................................. 6, 7, 11

*Rite-Hite Corp. v. Kelley Co., Inc.,*
    56 F.3d 1538 (Fed. Cir. 1995)............................................................................. 5, 7, 9, 11

*Scarborough v. Eubanks,*
    747 F.2d 871 (3d Cir. 1984)..................................................................................... 5

*Southwestern Bell Tel. Co. v. City of El Paso,*
    346 F.3d 541 (5th Cir. 2003) ................................................................................... 2

*Textile Productions, Inc. v. Mead Corp.,*
    134 F.3d 1481 (Fed. Cir. 1998)............................................................................ 6, 7, 9, 11

*Waterman v. Mackenzie,*
    138 U.S. 252 (1891)............................................................................................... 5, 6

*WMS Gaming Inc. v. Int'l Game Tech.,*
    184 F.3d 1339 (Fed. Cir. 1999).......................................................................... 3, 6, 9

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## I.    INTRODUCTION

Novozymes A/S's (NZDK) motion to add Novozymes North America, Inc. (NZNA), should be granted. NZNA has standing to be a co-plaintiff based on its position as the one and only U.S. licensee of the patent-in-suit (the "031 patent"). Also, Defendants have failed to demonstrate any prejudice, and the delay in bringing this motion is excusable.

In the United States, NZDK, and its wholly-owned U.S. subsidiary, NZNA, act as one in the distribution of the products that compete with Defendants' infringing Spezyme® Ethyl products. Under *Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir. 1990) and other Federal Circuit precedent, this relationship gives NZNA legal standing to join with NZDK as a co-plaintiff to assert the patent-in-suit and to collect damages. The intricacies of the relationship are not important to the question of liability and only became relevant during the damages phase of this case. This is why the Court's deadline of August 31, 2005 was not met. However, from the first day of this case until now, both sides have treated NZDK and NZNA as one. All documents in the possession of NZNA were produced in response to document requests made of NZDK; witnesses from both NZDK and NZNA were made available for deposition and testified at trial; and Defendants had the full availability of both entities throughout discovery and trial on liability. Because no distinction has been made between NZNA and NZDK, Defendants have been unable to establish prejudice in formally adding NZNA as a co-plaintiff.

-1-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## II.    ARGUMENT

### A.    Good Cause Exists to Modify The Scheduling Order

Good cause exists to modify the Scheduling Order because the lateness of the instant motion to add NZNA as a co-plaintiff is not due to a lack of diligence.[1]  In fact, both of the parties and the Court have worked very diligently to move this case along on an expedited basis, proceeding through a preliminary injunction motion[2], rigorous discovery  (including scientific experiments, numerous depositions, voluminous document review and production, and several rounds of expert reports), trial preparation, a complete liability trial, three rounds of post-trial

---

[1] In their Opposition, Defendants accuse the Plaintiff of attempting to "conflate the standard under Rule 16(b) with the more lenient standard of Rule 15(a), which governs motions to amend pleadings." (See Opposition, at 18).  The four-factor balancing test used by the Plaintiff is set forth in Moore's Federal Practice -- a generally accepted treatise on issues of federal procedure -- for the exact scenario at hand here --where a party seeks to amend a pleading after the scheduling order deadline for doing so has passed. (*See* Opening Brief, at 7-8).  Balancing tests, similar to this test, are used by many federal courts, including those in Delaware.  See 3 J. Moore, *Moore's Federal Practice*, 16.14[1][a] (3d ed. 2006) (citing *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546-547 (5th Cir. 2003)); *see also Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 432-33 (D. Del. 2003) (Jordan, J.) (weighing substantially the same factors for motion to amend pleadings after deadline in scheduling order); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-90 (D. Del. 2003) (same).

[2] Defendants point to the Plaintiff's decision to move for a preliminary injunction as if it was an unusual practice in a patent case.  Plaintiff, however, faced the situation where its only competitor was manufacturing and distributing an infringing product at a lower price, resulting in the loss of many of Plaintiff's customers and forcing it to lower its own prices.  (*See Opening Brief in Support of Plaintiff's Motion for a Preliminary Injunction* (the "PI Brief"), D.I. # 25).  Plaintiff had no choice but to seek a preliminary injunction in this case.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

briefing, another round of discovery and expert reports, and preparation for a second trial, all in the seventeen months since the patent issued and the complaint was filed on March 15, 2005. (*See* Complaint, D.I. #1). The timing of this motion cannot be attributed to the lack of diligence by the Plaintiff, and certainly not to the nefarious motives urged by Defendants.

The timing of this motion simply reflects the fact that the standing issues did not come to the forefront until the damages phase of this action. During the damages phase of the lawsuit was the first time that the NZDK has been able to fully investigate its damages claims and the law applicable thereto and confirm (i) that NZNA had the proper standing to be a co-plaintiff in this case; and (ii) that its addition would be prudent in preventing an unlikely, but still possible, injustice based on the technicalities of the law of lost profits.[3]

From the day it filed its complaint , NZDK believed that it was entitled to recover its lost profits, based on lost U.S. sales of its wholly-owned manufacturing subsidiary, because of the nature of the relationship between the two entities. *See, e.g., WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999) (holding that a patentee was entitled to the lost profits of its wholly owned manufacturing subsidiary). Plaintiff's position has not changed, but

_____

[3] The complex and uncertain nature of standing and lost profits, and the lack of time to fully investigate these issues prior to the August 31, 2005 deadline for amending pleadings and adding parties is confirmed by the Defendants' conduct in this case. Defendants did not even seek discovery on the issues of NZDK's relationship with NZNA and NZNA's rights to the '031 Patent until after the Plaintiff requested Defendants consent to add NZNA as a co-plaintiff. Before then, the Defendants simply chose to treat NZDK and NZNA as if they were one and the same. (*See* Opening Brief, at 4-6).

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

based on additional investigation in connection with preparing NZDK's damages case it was recognized that (i) NZNA can be added as co-plaintiff, and (ii) that doing so would ensure that NZDK and NZNA are fully compensated for the harm that Defendants have caused. Once this was fully realized, NZDK immediately raised this issue with the Defendants. (*See* July 18, 2006 Email from Hykal, George E. to Jane L. Froyd and Greg Lanier, Subject: NZ v GCOR -- Request for Consent, attached as Exhibit G to *Declaration of Jane L. Froyd In Support Of Defendants' Opposition To Plaintiff's Motion For Leave To Modify The Scheduling Order For The Purpose Of Amending Its Complaint* (the "Froyd Declaration"), D.I. #158).

Predictably, the Defendants have now latched on to the scheduling order as their primary defense in the damages phase of this lawsuit. Defendants attempt to use the timing of NZDK's request to add NZNA as a co-plaintiff to deflect attention away from the damages actually suffered by NZNA and NZDK, and towards a needless battle of procedure and technicalities. (*See, e.g.,* Defendants' Motions *in limine*, Appendix[4], at B-1 to B-9). While Defendants will not suffer any prejudice by the addition of NZNA as a co-plaintiff (*see, infra.*, § III.C.), they seek to use the deadline in the scheduling order as a shield. The scheduling order is meant as a way for courts to manage their cases, not as a way for infringers to attempt escaping payment for the damage they have caused to patentees. Defendants should not be allowed to hide behind the good

---

[4] Citations to the "Appendix" refer to *Appendix B To Plaintiff's Reply Brief In Support Of Its Motion For Leave To Modify The Scheduling Order For The Purpose Of Amending Its Complaint*, which is being filed contemporaneously herewith.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

cause standard of Rule 16(b) when there is a reasonable explanation for the timing of the request

and no prejudice to the Defendants. *See Callaway Golf Co. v. Dunlop Slazenger Group Ams.,*

*Inc.*, 295 F. Supp. 2d 430, 433 (D. Del. 2003) (Jordan, J.) ("Callaway's attempt to use the Order

exclusively for its own benefit does not bear scrutiny."); *see also Scarborough v. Eubanks*, 747

F.2d 871, 878 (3d Cir. 1984) (reiterating the Third Circuit's policy preference of deciding cases

and issues on the merits).

**B.    NZNA Has Standing To Join This Lawsuit As A Co-Plaintiff**

      1.    The Close Nexus Between NZDK And NZNA, Provides
              NZNA With Standing To Join This Lawsuit As a Co-Plaintiff.

      NZNA has standing to join this lawsuit as a co-plaintiff because it is the only entity in the

U.S. granted the right to practice the patent-in-suit, and the only U.S. entity with the right to sell

the Liquozyme® SC and Termamyl® SC; a right damaged by the Defendants' infringement of the

'031 Patent. In *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995), the

Federal Circuit, sitting *en banc*, stated that "[u]nder certain circumstances, a *licensee*[5] may

possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee."

In support of this statement, the Federal Circuit cited the seminal case of *Waterman v. Mackenzie*,

138 U.S. 252 (1891), in which the Supreme Court stated that "[a]ny rights of the licensee must be

enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect

---

[5] Throughout this brief, all emphasis in quotations has been added unless otherwise noted.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

the rights of all parties, joining the *licensee* with him as a plaintiff." *Waterman*, 138 U.S. at 255-56. Thus, the ability of a party, such as NZNA, to protect its rights as a co-plaintiff have long been recognized. Accordingly, NZNA has standing to join NZDK, the patentee, in this patent infringement suit.

In *Rite-Hite*, the Federal Circuit explained that "[s]uch a licensee is *usually* an 'exclusive licensee.'" 56 F.3d at 1552. The clear inference from this statement is that the Federal Circuit recognizes that facts can dictate, as here, that licensees, other than the traditional exclusive licensee, have standing to join the patentee as a co-plaintiff. *See WMS Gaming*, 184 F.3d at 1361 (holding that the patentee's wholly owned subsidiary had standing to join the lawsuit without mention or discussion of the existence of any license); *Kalman*, 914 F.2d at 1481 (holding that "sole licensee" had standing to join the lawsuit as a co-plaintiff) (internal citations omitted); *Ricoh Co. v. Nashua Corp.*, 947 F. Supp. 21, 23-24 (D.N.H. 1996) (citing *Kalman* in support of holding that manufacturing subsidiary had standing to join as a co-plaintiff through an implied exclusive license).

In determining whether a licensee has standing, the Federal Circuit has made it clear that the "use of the word 'exclusive' is not controlling; *what matters is the substance of the arrangement*." *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998); *see also Ortho Pharmaceutical Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995) ("It is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license."). Courts look for an "express or *implied* promise" by the patentee to the licensee "that others shall be excluded from practicing the

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

invention within that territory." *Rite*-Hite, 56 F.3d at 1552; *see also Textile*, 134 F.3d at 1484

(licensee's standing as co-plaintiff is proper where "the patentee has promised, expressly or

*impliedly*, that 'others shall be excluded from practicing the invention' within the field covered by

the license."); *Ricoh*, 947 F. Supp. At 24 ("It is important to stress, however, that the exclusive

license need not be express; it may be *implied*."). Such a promise is implied from the relationship

between NZDK and NZNA.

    The Federal Circuit's test on standing for a sole licensee in *Kalman* is entirely consistent

with the above stated holdings of *Rite-Hite* and *Textile*. In *Kalman*, the Federal Circuit held:

> It is important to note that in this case we do not give any licensee
> who joins the patentee standing to sue an infringer. When the sole
> licensee, however, has been shown to be directly damaged by an
> infringer in a two supplier market, and when the nexus between the
> sole licensee and the patentee is so clearly defined as here, the sole
> licensee must be recognized as the real party in interest.
> Furthermore, in determining that [the sole licensee] has standing to
> join as a co--plaintiff, we not only give effect to principles of
> equity, but also the Congressional mandate that, in patent actions,
> "upon finding for the claimant the court shall award the claimant
> damages adequate to compensate for the infringement. . . . 35
> U.S.C. § 284 (1982).

*Id.* at 1481-82. In this holding, the Federal Circuit found that the substance of the arrangement

between the licensee and the patentee ensured that the licensee had the ability, through the

patentee, to exclude others from practicing the patent. Factors such as (i) the close "nexus"

between the patentee and the licensee; (ii) the fact that the licensee was the only entity licensed to

practice the patent; and (iii) the licensee was being directly damaged in a two supplier market,

provided the Federal Circuit with the confidence that the licensee had an implied promise from

the patentee that any infringers would be excluded from the market. *See id.* Here, the substance

-7-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

of the arrangement between NZDK and NZNA provides the same certainty that NZNA has an

implied promise from NZDK, the patentee, to exclude any infringers of the '031 Patent.

First, the nexus between these two entities is an extremely close one. NZNA is a wholly

owned subsidiary of NZDK. (*See Declaration of Richard H. Olofson* (the "Olofson

Declaration"), D.I. # 154, at ¶ 6).

REDACTED

NZDK issues consolidated audited financial statements that incorporate the profits and losses of

NZNA. (*See id.*, at ¶ 8).

Second, other than its patentee parent, NZNA is the sole entity permitted to practice the

'031 Patent in the United States. (*See Plaintiff's Response to Defendants' Fourth Set Of

Interrogatories*, Appendix, at B-23 to B-24 (responses to interrogatories 21 and 22); Olofson Tr.,

at B-17:2-14).

REDACTED

It is also the general policy of Novozymes to monitor

for infringement of its patents worldwide and to aggressively pursue any identified infringers by

all means allowed under the applicable patent laws, with this lawsuit serving as a confirmatory

example.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

Third, NZNA sells a competing product (Liquozyme® SC) in direct competition with the accused infringing products (Spezyme® Ethyl) in what is essentially a two supplier market. (*See* August 4, 2006 Deposition Transcript of Maurice G. Beto (the "Beto Tr."), Appendix, at B-32:23 to B-33:2, B-33:23 to B-34:11; Declaration of David J. Teece ("Teece Declaration"), Appendix, at B-41, ¶¶ 24-25, B-44, ¶¶ 39-42). Defendants' sales of Spezyme® Ethyl directly harm both NZNA and NZDK, as those sales by Defendants directly result in lost profits by the Novozymes entities. (*See* Teece Declaration, ¶¶ 24-25, 39-42). In fact, it was the lost sales of Liquozyme® SC and the erosion to the price of these enzyme products in the market upon the entry of Spezyme® Ethyl that caused NZDK to expedite the prosecution of the '031 Patent and file the instant action against Defendants. (*See* PI Brief, D.I. # 25).

Under these circumstances, an implied promise from NZDK to NZNA that any and all infringers would be excluded from the market is the only logical conclusion. Accordingly, NZNA has standing to join this lawsuit as a co-plaintiff with NZDK. *See WMS Gaming,* 184 F.3d at 1361; *Textile,* 134 F.3d at 1484; *Rite*-Hite, 56 F.3d at 1552; *Kalman,* 914 F.2d at 1481-82.

2.     Kalman And Its Progeny Are Not Distinguishable.

Defendants attempt to distinguish the Federal Circuit's holdings in *Kalman* and *WMS Gaming* fail. First, Defendants rely heavily on the label of "exclusive" and "non-exclusive" license in attempting to distinguish the licensee in *Kalman* and NZNA. (*See* Opposition, at 13-14). The cases to which they cite (e.g., *Textile, Rite-Hite, Ortho*), however, make it clear that these labels are not controlling; rather "what matters is the substance of the arrangement." *Textile,* 134 F.3d at 1484; *see also Ortho.,* 52 F.3d at 1032. Defendants focus much of their brief discussing the use of the term "non-exclusive license" by NZDK in its opening brief and in the

-9-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

January 1, 1996 Technology License Agreement[6] ("Technology License," attached as A-1 to A-6 of the Appendix to NZDK's opening brief, D.I. # 153).  Defendants, do not, however, attempt to distinguish the substance of the arrangement between NZAS and NZDK from the substance of the arrangement between PDL (Kalman's closely owned corporation) and Kalman (the patentee). Moreover, Defendants admit in a footnote that "[t]o be fair, the *Kalman* court does not specifically call PDL an 'implied exclusive licensee,' but this is the logical reading of the case. . ." (*See* Opposition, at 13, n.7).  Similarly, the substance of the arrangement between NZDK and NZNA supports an implied exclusive license of the '031 Patent to NZNA, just as in *Kalman*.

Second, Defendants trumpet "an important and dispositive distinction between *Kalman* and this case -- the licensee in *Kalman* manufactured and sold <u>products that practiced the patent</u>." (*See* Opposition at 14).  This fact has no bearing on the issues here.  NZDK and NZNA are entitled to recover their lost profits even though they sell a product covered by a sister patent (the '038) rather than the '031 patent-in-suit.  The cases relied on by Defendants throughout their Opposition (e.g., *Textile*, *Rite-Hite, Ortho*) confirm that this is a meaningless distinction.

-------

-10-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

In determining the standing of licensees as co-plaintiffs in patent infringement cases, the Federal Circuit has focused on the express or implied right of the licensee to exclude or stop others from infringing the patent at issue. *See Textile*, 134 F.3d at 1484; *Rite*-Hite, 56 F.3d at 1552. In this case, the Defendants do not dispute that NZNA manufactures a product that competes directly with the accused infringing product (Spezyme® Ethyl). Accordingly, NZNA's right to exclude the Defendants from practicing the '031 Patent is the "proprietary stick from the bundle of patent rights" being asserted by NZNA (and NZDK) in this case (as it is asserted by patentees in all infringement cases). *See Ortho*, 52 F.3d at 1031-32 ("The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States."); *Ricoh*, 947 F. Supp. at 24 ("As the exclusive copier supply manufacturing arm of Ricoh Corp., REI holds a sufficient number 'of the proprietary sticks from the bundle of patent rights,' *Ortho*, 52 F.3d at 1031, to confer co-plaintiff standing to sue for infringement of the '603 Patent."). NZNA suffers legal damages when this proprietary right to exclude is violated. It is simply of no moment whether NZNA loses sales of products covered by the patent-in-suit or another patent. What is important is that NZNA has the right to expect that such infringing sales be stopped and to be compensated for its lost sales. Thus, Defendants' distinction is without meaning.

Third, Defendants claim that the relationship between NZDK and NZNA is distinguishable from the *Kalman* case because their relationship is closer to that shared between two sister corporations in *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed. Cir. 2004). (*See* Opposition, at 16-17). The holding in *Poly-America* is inapplicable here. The sister corporation relationship in *Poly-America* is not analogous to the relationship between NZDK and

-11-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

NZNA, a wholly owned manufacturing arm of NZDK, which is more analogous to the

relationships found in the *Kalman*, *WMS Gaming*, and *Ricoh* cases.[7]  Additionally, the lost profits

analysis in *Poly-America* is not applicable to the lost profits analysis in this case for a variety of

reasons that need not be addressed here.[8]  Further, the *Poly-America* opinion simply does not

address the issue of standing. *See Poly-America*, 383 F.3d at 1311.  The plaintiff patentee holding

company in *Poly-America* did not seek to add its sister manufacturing corporation as a co-

plaintiff, and the issue of the sister corporation's standing to join the suit was simply never

addressed by the Federal Circuit. *See id.*

　　　　3.　　General Policy Supports The Standing Of NZNA As A Co-Plaintiff.

　　　　A closer look at the policy reasons behind the limitations on the standing of licensees

further confirms that NZNA has standing to join this lawsuit as a co-plaintiff.  In *Gayler v.*

---

[7] The relationship between the two sister corporations in *Poly-America* is a peer relationship, as opposed to the parent subsidiary relationship between NZNA and NZDK.  This distinction has great meaning because NZDK, as the patentee, controls the actions of its U.S. manufacturing subsidiary, NZNA.  On the other hand, neither sister corporation in *Poly-America* controls the actions of the other.  The clear control of NZNA by NZDK is what allows this Court to confidently infer that NZNA would have the right to exclude others from practicing the '031 Patent as the patentee is controlling the actions of both the corporations.  This line of reasoning is consistent with the relationships in *Kalman*, *WMS Gaming*, and *Ricoh*.

[8] The Federal Circuit in *Poly-America* explained that the patentee in that case had not alleged that it lost an profits itself and was only seeking to recover its sister's lost profits, stating that "it is not clear here whether Poly-America has itself suffered lost profits from the infringement, a matter that may be dealt with on remand." 383 F.3d at 1311.  Here, NZDK consolidates the profits and losses of its subsidiaries and has clearly lost profits based on the lost sales from its line of Liquozyme® SC products.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

*Wilder*, 51 U.S. (10 How.) 477, 494-95 (1850), the Supreme Court provided an early discussion

on the policy behind the limitation on standing of licensees in patent infringement suits:

> Such a division would inevitably lead to fraudulent impositions
> upon persons who desired to purchase the use of the improvement,
> and would subject a party who, under a mistake as to his rights,
> used the invention without authority, to be harassed by a
> multiplicity of suits instead of one, and to successive recoveries of
> damages by different persons holding different portions of the
> patent right in the same place."

Almost a century later, the Second Circuit provided a slightly different list of policies for limiting

a licensee's standing to bring a patent infringement suit:

> It is indeed true that a mere licensee may have an interest at stake
> in such a suit; his license may be worth much more to him than the
> royalties which he has agreed to pay, and its value will ordinarily
> depend on his ability to suppress the competition of his rivals. The
> reason why he is not permitted to sue is not because he has nothing
> to protect. But against that interest is the interest of the infringer to
> be immune from a second suit by the owner of the patent; and also
> the interest of the patent owner to be free to choose his forum... .
> Indeed, the owner may have granted a number of licenses, and it
> would be exceedingly oppressive to subject him to the will of all
> his licensees. These two interests in combination have been held to
> overweigh any interest of the licensee...

*A.L. Smith Iron Co. v. Dickson*, 141 F.2d 3, 6 (2d Cir. 1944). These policies can be summarized

as the following: (i) a party seeking a license or other rights to a patent should only have to deal

with one party, without worry of being sued by previous licensees; (ii) an unintentional infringer

should only have to answer to one patent suit, without worry of successive suits for the same

infringement; and (iii) a patentee should not be forced into lawsuits all over the country by its

many licensees. The grant of standing to NZNA as a co-plaintiff with the Patentee in this case

would raise none of these concerns. NZNA is the sole licensee and is a wholly-owned subsidiary

operating at the discretion of its patentee parent.

-13-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

For all of these reasons, NZNA has standing to join this lawsuit as a co-plaintiff.

### C.     Genencor Would Not Be Prejudiced by the Addition of NZNA

Defendants have not demonstrated any prejudice by the addition of NZNA as a party. Defendants do not dispute that they have treated NZDK and NZNA as a single entity throughout this lawsuit. Defendants do not dispute that they have been provided access to the files and employees of NZNA as if NZNA was already a plaintiff to this lawsuit. The Defendants' two weak allegations of prejudice actually confirm that the Defendants will suffer no prejudice.

Defendants' first contention -- that NZNA's inclusion in the case during the liability phase would have revealed "the hypocrisy of a manufacturer and marketer asserting unmet need" without producing a product under the patent (*see* Opposition, at 23)-- is supported by neither the facts of the case, nor logic. Defendants did not present this "hypocrisy" argument earlier because it has no merit, not because NZNA was not yet a plaintiff.

During the liability phase, Plaintiff argued (and the Court agreed) that Defendants did not have a thermostable alpha amylase product that could effectively compete with the Plaintiff's line of Liquozyme® SC products. (*See Findings Of Fact And Conclusions Of Law*, D.I. # 161, at ¶ 58). Accordingly, the Defendants had an unmet need for a thermostable alpha amylase product with the properties of Spezyme® Ethyl in order to effectively compete in the fuel ethanol market. NZNA's decision to not commercialize a product under the '031 Patent does not reveal any hypocrisy by either NZNA or NZDK because they were already manufacturing and selling another patented thermostable alpha amylase product to this market and garnering a dominant share with it. (*See* Teece Declaration, ¶ 41). Defendants' attack of the unmet need argument

-14-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

remains equally illogical and unpersuasive whether or not NZNA was a plaintiff at the time of the attack.

Second, Defendants claim that they missed the opportunity to file a summary judgment motion by the July 3, 2006 dispositive motion deadline. (*See* Opposition, at 23-34). Defendants do not, however, attribute this alleged prejudice in anyway to the relief requested in this motion. (*See id.*). Rather, the Defendants blame an allegedly belated production of documents by the Plaintiff for missing the July 3, 2006 dispositive motion deadline, and make the completely unfounded and equally unsupported accusation that the Plaintiff intentionally withheld these documents in order to produce them after the deadline. (*See id.*). The Defendants also rely on these unsupported accusations to "request permission from the Court to file a summary judgment motion on this issue at this time," and for a postponement of the damages trial "so that the parties and the Court have time to resolve this issue prior to trial." (*See* Opposition at 24, n.10).

The fact is that Defendants' chose not to explore the relationship between NZNA and NZDK in either phase of discovery in this case. The Defendants did request license agreements pertaining to the '031 patent. As NZDK has not licensed the '031 patent to any outside company, and it is its policy and practice not to license core technology, NZDK did not believe it had any responsive documents. Arguably, one of the internal agreements between NZDK and NZNA (the Technology License), which provides NZNA with a covenant not to sue by NZDK for all of NZDK's U.S. patents, could be said to be responsive to the request. However, to the extent that this document should have been produced earlier, the lack of production was not intentional. Also, the Technology License would have been produced if the Defendants had directed any of their document requests to the relationship between NZNA and NZDK, and it would still not have

-15-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

supported Defendants' proposed motion for summary judgment. None of the remainder of the

agreements that were allegedly "belatedly" produced even arguably fall within an earlier

document request by the Defendants.[9]  Therefore, the production of the agreements in the

damages phase of the case does not constitute prejudice to Defendants.

With the long history of competition between Genencor and Novozymes, it is difficult to

believe that the Defendants would be unaware that NZDK sold its competing Liquozyme®

products through its U.S. subsidiary, NZNA. This fact was confirmed early in the case when

**REDACTED**

Despite this

knowledge, the Defendants did not seek any discovery pertaining to the relationship between

---

[9] It is very telling that the Defendants do not even cite to the requests which purportedly called
for the production of the allegedly "belatedly" produced documents.

-16-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

NZDK or NZNA, or pertaining to NZNA's rights to the '031 Patent until July 21, 2006, after NZDK raised the issue of adding NZNA as a co-plaintiff.

Furthermore, Defendants cannot credibly claim that they did not anticipate that NZDK would be seeking to recover lost profits in this lawsuit.

**REDACTED**

From the start, it should have been clear to the Defendants that this would be a lost profits case.

**REDACTED**

Despite knowing that (i) the Plaintiff would be seeking lost profits, (ii) the Plaintiff sold its competing product through a wholly owned subsidiary, and (iii) that subsidiary was not a formal plaintiff to this action, the Defendants did not seek any discovery on the relationship between the NZDK, NZNA, and the '031 Patent.

Over 15 months of litigation passed before the July 3, 2006 dispositive motion deadline for the damages phase of the trial, and Defendants had every motivation and opportunity to investigate their lost profits defense throughout the entire period. Yet Defendants did not make any inquiries into the status of NZNA until after the deadline when the Plaintiff sought to amend its complaint to add NZNA as a co-plaintiff. Defendants now attempt to shift the blame for their inaction onto the Plaintiff. Defendants learned nothing after the dispositive motion deadline that they could not have learned with proper discovery requests prior to that deadline.

-17-

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

If granted by the Court, the relief requested by the Plaintiff in this motion would not prejudice the Defendants.

## III.    CONCLUSION

Because (i) there is good cause to modify the scheduling order under Fed. R. Civ. P. 16(b), (ii) NZNA has standing to join this lawsuit as a co-plaintiff, and (iii) neither prejudice, nor undue delay, nor futility, nor any other factor outweighs the liberal pleading rules of Fed. R. Civ. P. 15(a), justice requires that NZDK be given leave to amend its Original Complaint to add NZNA as co-plaintiff.

NOVOZYMES A/S

Dated:    August 28, 2006

/s/ Karen E. Keller
Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen Keller (No. 4489)
**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Joseph R. Robinson
David Tellekson
Robert C. Sullivan, Jr.
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700
Attorneys for Plaintiff
Novozymes A/S

-18-

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on September 5, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Donald E. Reid, Esquire
> MORRIS NICHOLS ARSHT & TUNNELL
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE  19899-1347

I further certify that on September 5, 2006,  I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**

> Tharan Gregory Lanier, Esquire
> Jane Froyd, Esquire
> JONES DAY
> 2822 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Andrew A. Lundgren*
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for Novozymes A/S*