# TAB 3

Part 2 of 2

1    A DISTRICT JUDGE BY DESIGNATION IN THAT CASE.  BUT IT'S VERY

2    SIMPLE, THAT IN MAHURKAR HE WAS FOLLOWING THE OLD RULE.  IF YOU

3    LOOK AT THE PORTION OF THE DECISION THAT DISCUSSES THE ENTRY OF

4    AN INJUNCTION, HE STARTS FROM THE PREMISE IN THE RICHARDSON

5    CASE DECIDED BY THE FEDERAL CIRCUIT IN, I BELIEVE, 1988, THAT

6    INJUNCTION SHOULD ISSUE IN A PATENT CASE ONCE INFRINGEMENT HAS

7    BEEN FOUND.  THAT'S EXACTLY WHAT THE SUPREME COURT UPSET IN THE

8    EBAY CASE.  AND THAT SHOWS WHY MAHURKAR ISN'T TERRIBLY USEFUL

9    HERE.  THAT'S OLD LAW.

10            SECOND POINT THEY MADE IS WE NEED TO LET THE

11   MARKET VALUE THE PATENT.  WELL, THE JURY HAS VALUED THIS

12   PATENT.  AND WE DIDN'T HEAR ANY RESPONSE FROM FINISAR WITH

13   RESPECT TO OUR CITATION OF THE SHATTERPROOF GLASS CASE.  IN THE

14   SHATTERPROOF GLASS CASE, THE FEDERAL CIRCUIT'S ENDORSEMENT IS

15   EXACTLY WHAT WE'RE SUGGESTING THE COURT DO HERE.  IT EVEN USES

16   THE TERM "COMPULSORY LICENSE."  THAT'S NOT A BAD THING.  IT'S

17   NOT TO BE FORBIDDEN.  THAT'S EXACTLY WHAT WE HAVE TO DO HERE.

18   AND IN THE SHATTERPROOF GLASS CASE, THE DISTRICT COURT IMPOSED

19   THE SAME ROYALTY RATE FOR THE POST VERDICT COMPULSORY LICENSE

20   AS THE JURY HAD FOUND FOR THE PREVERDICT REASONABLE ROYALTY.

21            THE COURT:  BUT HOW DO I FIGURE THAT OUT GIVEN

22   THAT WE HAVE -- HAVE BEEN VERY CLEAN EXCEPT FOR THE $20,250.25?

23            MR. CASTANIAS:  WELL, THE POINT IS, YOUR HONOR,

24   THAT THE -- THE JURY'S VERDICT IS THE JURY'S VERDICT.  THAT'S

25   THE VALUATION OF THE PATENT.  AND I THINK EVERYBODY HERE



1   AGREES, ALL THE WITNESSES, ALL OF THE LAWYERS, WE DON'T KNOW

2   EXACTLY WHAT WENT ON IN THAT ROOM; BUT WE DO KNOW THAT A

3   VALUATION WENT ON IN THAT ROOM.  AND THAT'S THE VALUATION.  AND

4   IT'S NOT EXACTLY $1.32.  IT'S $1.32.09 OR SOMETHING LIKE THAT.

5   IT CARRIES ON SEVERAL DIGITS.  SO THE MATH IS NOT -- IS NOT

6   PERFECT TO THE CENTS, BUT THAT'S FINE.  WE CAN -- WE CAN

7   APPROXIMATE AND HONOR THE JURY'S VERDICT HERE WITH THE GOING

8   FORWARD COMPULSORY ROYALTY RATE.

9            THE COURT:  AND HOW DO I DEAL WITH THE PROBLEM

10  THAT WAS BROUGHT UP AND THE ONE I WORRIED ABOUT BEFORE IN THAT

11  YOU'VE GOT SOME CUSTOMERS HAVING THREE OR FOUR BOXES, SOME OF

12  THE NEW BOXES MAYBE WILL HANDLE A COUPLE DIFFERENT TV SETS.

13  EVIDENTLY YOU'RE NOW TRACKING YOUR BOXES BETTER.  WHY SHOULDN'T

14  I BE LOOKING AT SOMETHING LIKE GEM STAR AND LOOKING AT A PER

15  SUBSCRIBER?  THAT WOULD SEEM TO BE A LITTLE BIT EASIER WAY OF

16  KEEPING A CONTROL.  WE DON'T HAVE TO WORRY ABOUT CHANGES IN

17  TECHNOLOGY.  IT'S A SUBSCRIBER -- BASE IT ON THAT SOMEHOW.

18            MR. CASTANIAS:  THE COURT -- THE COURT COULD DO

19  THAT.  WE WOULDN'T URGE THAT THE COURT DO THAT BECAUSE AS I

20  REMEMBER THE PROOFS THAT CAME IN THIS CASE, THE INFRINGEMENT

21  THAT WAS ALLEGED HAD TO BE DONE IN PART AT LEAST AT THE SET TOP

22  BOX LEVEL.  AND SO A METRIC THAT'S BASED ON NUMBER OF SET TOP

23  BOX PLACES IN THE SERVICE -- PLACED INTO SERVICE IS IT'S CLEAN.

24  AS MR. MCGEORGE TESTIFIED, IT'S VERY EASY FOR US TO CALCULATE.

25  IT'S VERY EASY FOR US TO MAKE REGULAR REPORTS TO THE COURT WITH



1  REGARD TO THE NEW SET TOP BOXES PLACED INTO SERVICE.

2         THE COURT:  BUT ON THE OTHER HAND, THE AMOUNT OF

3  MONEY DOESN'T COME FROM BOXES; IT COMES FROM PEOPLE.  I MEAN,

4  THAT'S WHO YOU'RE CHARGING FOR THIS.  SO, FOR THAT MATTER, I

5  GUESS IT COULD BE BY HOUSEHOLD, TOO.  I'M NOT SURE WHETHER

6  SUBSCRIBERS -- I GUESS IT WOULD NOT BE TYPICAL TO HAVE MORE

7  THAN ONE SUBSCRIBER BY HOUSEHOLD.

8         MR. CASTANIAS:  I DON'T -- I DON'T THINK THAT

9  WOULD BE TYPICAL.  I DON'T THINK THERE'S BEEN ANY EVIDENCE ON

10  THAT, BUT I THINK THE MOST IMPORTANT POINT, YOUR HONOR, IS WHAT

11  MR. DONALDSON TOLD YOU TODAY AND WHAT HE TOLD YOU AT TRIAL.

12  AND THAT IS THE PER SET TOP BOX APPROACH IS THE INDUSTRY

13  STANDARD.  THAT SEEMS TO ME TO BE THE TIE BREAKER.

14         THE COURT:  GO AHEAD.

15         MR. CASTANIAS:  BUT, WITH RESPECT TO FINISAR'S

16  CLAIMS THAT, OH, THIS IS GOING TO ENGENDER MULTIPLE LITIGATION.

17  NO.  THE COMPULSORY LICENSE HERE WOULD BE PAID THROUGH THE LIFE

18  OF THE PATENT IF THE VERDICT REMAINS IN PLACE.  YOU DON'T EVEN

19  NEED TO SEVER OFF ANOTHER CASE.  THIS IS A SIMPLE MATHEMATICAL

20  CALCULATION.

21         TO THEIR POINT THAT A JURY TRIAL WOULD BE

22  REQUIRED ON THESE ISSUES, WE DISAGREE.  THIS SORT OF POST

23  VERDICT ACCOUNTING IS AN EQUITABLE MATTER FOR THE COURT, AND

24  IT'S FOR THE COURT.  IN MUCH THE SAME WAY THAT AN EMPLOYMENT

25  CASE IS FRONT PAID, IT'S TRADITIONALLY BEEN AN ISSUE FOR THE

1    COURT WHERE BACK PAY MIGHT BE DECIDED BY THE JURY.

2              FINALLY, THE POINT ABOUT WILLFUL INFRINGEMENT

3    AND MULTIPLYING THE DAMAGES ON POST VERDICT X BY DIRECTV, I

4    THINK THE COURT RECOGNIZED ONE OF THE FLAWS IN THAT ARGUMENT.

5    THERE'S ANOTHER FLAW IN IT, TOO, AND THAT THIS IS THAT IF

6    THERE'S A COMPULSORY LICENSE HERE, IT'S NOT INFRINGEMENT.

7    SECTION 271 A OF THE PATENT CODE SAYS:  WHOEVER WITHOUT

8    AUTHORITY MAKES USE OR SELLS OFFERS FOR SALE, AND SO ON IS AN

9    INFRINGEMENT.  THAT WOULD BE WITH AUTHORITY.

10             UNLESS THE COURT HAS FURTHER QUESTIONS ON THE

11   ISSUE OF THE INJUNCTION AND THE ISSUE OF THE GOING FORWARD

12   ROYALTY RATE, LET ME TURN TO THE MATTER OF ENHANCEMENT.

13             THE COURT:  WELL, LET'S GET BACK TO -- YOU'RE

14   ARGUING FOR A SET TOP BOX FEE, ONE TIME FEE, AND YOU'RE

15   SUGGESTING $1.32 BASED ON YOU'RE DIVIDING OUT, I GUESS, THE 55

16   MILLION WHAT THE JURY AWARDED OR SOMETHING LIKE THAT.  BUT

17   OBVIOUSLY NEITHER I NOR ANY OTHER COURT OR ANY JURY WANTS TO

18   SEE THIS AGAIN, AND SO I ENTER A COMPULSORY LICENSE OF WHATEVER

19   X DOLLARS PER SET TOP BOX.  HOW IS THAT GOING TO BE CALCULATED?

20   I MEAN, COUNSEL BROUGHT UP PRETTY GOOD POINT AND TECHNOLOGY

21   CHANGES.  IS THE HOME ENTERTAINMENT UNIT INCORPORATING SET TOP

22   BOX TECHNOLOGY AS SET TOP BOX.  IT COULD HANDLE SEVERAL TV'S.

23   THE OLD METHOD WAS ONE BOX PER TV, AND THAT WOULD HAVE

24   OBVIOUSLY RESULTED IN MORE REVENUE FOR THEM THAN A NEW BOX THAT

25   CAN HANDLE MULTIPLE TV'S.  IF IT HADN'T DONE IT IN '95 ON YOUR

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
85

1   SET TOP BOX METHOD, IT WOULD HAVE BEEN, OKAY, WHATEVER.  EVEN

2   IF TAKING YOUR EXPERT, 30 CENTS PER SET TOP BOX, EVERY SINGLE

3   SET TOP BOX WOULD GIVE THEM 30 CENTS.  NOW, YOU GET INTO 2006,

4   2007 AND SET TOP BOXES ARE DIFFERENT.  THEY'RE NOT JUST SELLING

5   ONE PER SUBSCRIBER, RATHER THAN THREE OR FOUR PER SUBSCRIBER.

6   HOW DO I -- HOW DO I INCORPORATE THAT?

7           MR. CASTANIAS:  WELL, I THINK, YOUR HONOR, THAT

8   THE -- AS I MENTIONED BEFORE, THIS IS AN EQUITABLE

9   DETERMINATION FOR THE COURT.  AND IF WE'RE GOING TO CONTINUE TO

10  BE PAYING IN ROYALTIES AND PROVIDING REPORTS TO THE COURT,

11  THERE'S GOING TO BE A MINIMAL AMOUNT OF CONTINUED INVOLVEMENT

12  ON THE COURT'S PART.  I THINK THAT'S INHERENTLY PART OF A

13  COMPULSORY LICENSE PROGRAM.  BUT IT'S GOING TO BE MINIMAL.  AND

14  TO THE EXTENT THAT THAT ISSUE COMES UP IN THE FUTURE, THEN IT

15  CAN BE RESOLVED EITHER BY FIRST DISCUSSIONS WITH COUNSEL AS TO

16  HOW THAT METRIC IS BEING APPLIED WITHIN THE INDUSTRY.  WE'RE

17  CERTAINLY GOING TO HAVE OTHER -- OTHER EVIDENCE FROM THE WAY

18  THAT THE OTHER LICENSES ARE DEALT WITH BECAUSE AGAIN THE SET

19  TOP BOX METRIC IS THE INDUSTRY STANDARD.  IT'S THE IMPEG WAY OF

20  DOING BUSINESS.  AS MR. DONALDSON TALKED ABOUT THE OTHER WAYS

21  THAT THE PER SET TOP BOX APPROACH IS USED IN THE INDUSTRY.

22  WE'RE CERTAINLY NOT GOING TO BE WRITING ON A CLEAN SLATE THERE.

23  WE'RE GOING TO HAVE SOME EXPERIENCE.

24           THE COURT:  WAS THE IMPEG LICENSE ACCEPTED AS AN

25  EXHIBIT?

1          MR. CASTANIAS:  I BELIEVE IT WAS, YOUR HONOR.

2          MR. SAVIKAS:  WOULD YOU LIKE THE NUMBER?

3          THE COURT:  WELL, THE NUMBER, AND DOES ANYBODY

4   KNOW WHAT -- DOES IT HAVE ANYTHING IN THERE ABOUT WHAT IS A SET

5   TOP BOX, BECAUSE THAT'S, IN EFFECT, WHAT THE QUESTION COMES UP,

6   THAT A SET TOP BOX UNDER THE OLD TECHNOLOGY IS SOMETHING THAT

7   RUNS ONE TV OR IS A SET TOP BOX ANY OLD THING THAT HAPPENS TO

8   RUN ONE TO A THOUSAND TVS?  GO AHEAD.  I MEAN, THAT'S JUST A

9   QUESTION THAT COMES UP IN ALL THIS.

10         MR. CASTANIAS:  SURE.  WE'LL TRY TO ANSWER THAT.

11         THE COURT:  I THINK PLAINTIFFS HAVE MADE A POINT

12  THERE THAT NEEDS TO BE LOOKED AT.

13         MR. CASTANIAS:  I'M INFORMED OF TWO THINGS, YOUR

14  HONOR, WHICH MAY BE HELPFUL.  FIRST, IT'S DEFENDANT'S

15  EXHIBIT 223; IS THAT CORRECT?  222 AND 223.  AND SECONDLY,

16  MR. TOUTON INFORMS ME THAT THOSE ARE ACTUALLY CALCULATED ON A

17  PER DECODER BASIS, WHICH WE VIEW AS EQUIVALENT TO PER SET TOP

18  BOX.  AND TO THE EXTENT THAT THAT'S HELPFUL WITH REGARD TO NEW

19  TECHNOLOGY, THAT MAY BE USEFUL FOR THE COURT AND FOR THE

20  PARTIES AS WELL.

21         THE COURT:  I'M SORRY.  DID YOU SAY 223?

22         MR. CASTANIAS:  I BELIEVE IT'S 223 AND 222 ARE

23  THE IMPEG LICENSES, DEFENDANT'S EXHIBITS.

24         MR. TOUTON:  YOUR HONOR, LOUIS TOUTON HERE.

25         THE COURT:  YES.

1    MR. TOUTON:  FILL IN A LITTLE BIT ON THE SECOND

2  POINT THAT MR. CASTANIAS JUST GAVE, IS THAT THE IMPEG LICENSE

3  MEASURES THE ROYALTY IN TERMS OF DECODERS, THAT IS, THE

4  CIRCUITRY IN THE BOX THAT PRODUCES A UNIQUE OUTPUT THAT A

5  TELEVISION COULD RECEIVE.  AND, THEREFORE, IN A BOX THAT

6  HYPOTHETICALLY IN THE FUTURE COULD SUPPORT TWO TELEVISIONS,

7  THERE WOULD BE TWO DECODERS AND TWO ROYALTIES DUE UNDER THE

8  IMPEG LICENSE.

9    THE COURT:  I'M SORRY --

10    MR. TOUTON:  THERE'S A DEFINITION --

11    THE COURT:  PARAGRAPH 1.14 AND 1.15, WHERE THEY

12  START TALKING ABOUT WHERE DECODING PRODUCTS, DECODING SOFTWARE

13  IS IN THAT LICENSE AND THEN -- OKAY.  ALL RIGHT.  GO AHEAD.

14    MR. CASTANIAS:  THANK YOU, YOUR HONOR.  IF I CAN

15  TURN TO THE ISSUE OF ENHANCEMENT FOR A MOMENT.  IT'S WORTH

16  TREATING BOTH THE ISSUE OF ENHANCEMENT AND ATTORNEY'S FEE

17  SOMEWHAT TOGETHER BECAUSE THE STANDARDS ARE SIMILAR, ALTHOUGH

18  THEY'RE NOT IDENTICAL.  AND FINISAR'S CLAIMS OF ENTITLEMENT ARE

19  BASED IN ESSENCE ON THE SAME TWO FACTORS.  BUT LET ME START

20  WITH ENHANCEMENT BECAUSE IT'S BASED AS MR. ROBERTS SAID

21  PRIMARILY ON THE JURY'S FINDING OF WILLFUL INFRINGEMENT.

22    NOW YOUR HONOR HAS CARRIED AND CONTINUES TO

23  CARRY OUR MOTION FOR JMOL OF NONWILLFULNESS, AND THAT MOTION

24  SHOULD BE GRANTED AT THE APPROPRIATE TIME.  FINISAR'S

25  WILLFULNESS CASE IN THIS LITIGATION BASICALLY BOILS DOWN TO

1    DIRECTV KNEW OF THE PATENT AND YET CONTINUED TO INFRINGE.  WE

2    POINTED OUT IN YESTERDAY'S BRIEF AND IN OUR JMOL MOTIONS,

3    THAT'S NOT THE LAW.  IN FACT, THE FEDERAL CIRCUIT HAS SUSTAINED

4    TRIAL COURT GRANT OF JMOL, OF NONWILLFULNESS IN QUITE SIMILAR

5    CIRCUMSTANCES.  IN FACT, WHAT DIRECTV AND MR. CROOK DID IN

6    RESPONSE TO FINISAR'S ACTIONS WAS NOT REASONABLE AS A MATTER OF

7    LAW, THEN WILLFULNESS REALLY DOESN'T MEAN MUCH OF ANYTHING.  IN

8    FACT, WHAT WE SUBMIT IS THAT THE COURT SHOULD FOLLOW THE

9    APPROACH THAT THE FEDERAL CIRCUIT TOOK IN THE RECORPORATION

10   CASE, WHICH IS THE CASE THAT LAYS OUT THE ENHANCEMENT FACTORS.

11   BUT THAT CASE FOUND NO WILLFULNESS AS A MATTER OF LAW, AND IT

12   WAS IN ESSENCE FOR TWO REASONS:  ONE, BECAUSE THERE WAS NO

13   COPYING; AND TWO, BECAUSE THERE WAS A COMPETENCE OPINION LETTER

14   REASONABLY RELIED UPON, THE SAME THAT WE HAVE HERE.

15           BUT THE QUESTION THAT FINISAR HAS PUT BEFORE THE

16   COURT TODAY IS THE MATTER OF ENHANCED DAMAGES.  AND THEY'VE

17   OFFERED NOTHING BUT A SUGGESTION THAT YOU DO THE MAXIMUM AND

18   TREBLE THE DAMAGES IN THIS CASE.  AND WHAT WE'RE REALLY TALKING

19   ABOUT HERE, YOUR HONOR, IS PUNITIVE DAMAGES.  IN THE SUPREME

20   COURT'S PUNITIVE DAMAGES CASE STATE CONDUCT HAS TO BE PRETTY

21   REPREHENSIBLE TO ALLOW PUNITIVE DAMAGES CONSISTENT WITH THE DUE

22   PROCESS CLAUSE.  UNDER RECORPORATION, THAT'S BASICALLY WHAT THE

23   COURT IS USING THOSE FACTORS TO HELP IT FIND.  THE WORDS OF

24   THAT DECISION IS TO ASSIST THE TRIAL COURT IN EVALUATING THE

25   DEGREE OF THE INFRINGER'S CULPABILITY.

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
89

1    NOW, OUR BRIEFS HAVE SHOWN THAT THERE IS JUST

2  NOT THE LEVEL OF CULPABILITY OR REPREHENSIBILITY PRESENT HERE

3  TO JUSTIFY AWARDING PUNITIVE DAMAGES IN ANY AMOUNT TO FINISAR.

4  I'M NOT GOING TO REPEAT THOSE SHOWINGS, BUT I DO WANT TO

5  EMPHASIZE THE FOLLOWING:  ONE, NO COPYING IN THIS CASE.

6  DIRECTV WAS ON THE MARKET BEFORE THE 505 PATENT EVEN ISSUED.

7  NUMBER TWO, MR. CROOK OBTAINED A COMPETENT, DETAILED 55-PAGE

8  LONG INFRINGEMENT OPINION FROM MR. ZIMMERMAN AND REASONABLY

9  RELIED UPON.  THERE IS NO REQUIREMENT, AS FINISAR ARGUED TO THE

10  JURY AND REPEATS IN ITS BRIEF HERE.  BUT AN OPINION ADDRESSED

11  BOTH NONINFRINGEMENT AND INVALIDITY.  THAT'S THE GRACO AGAINST

12  BINKS IN 60 FED. 3RD.  FINISAR'S CRITICISMS OF MR. ZIMMERMAN'S

13  OPINION IN THIS CASE HAVE BEEN AT BEST THE SORT OF AROUND THE

14  EDGES, NITPICKING CRITICISMS, AND THEY DO NOT UNDERMINE ITS

15  ESSENTIAL COMPETENCE.

16    ANOTHER POINT, THIS CASE WAS AND REMAINS BY ANY

17  MEASURE CLOSE.  THAT WAS EXACTLY THE WORD THIS COURT USED IN

18  DESCRIBING OUR CONTINUED TO BE CARRIED MOTION FOR SUMMARY

19  JUDGMENT AND NOW JUDGMENT AS A MATTER OF LAW WITH RESPECT TO

20  ANTICIPATION BASED ON THE DEXA (PHONETIC) ARCHITECTURE

21  VIDEOTECH SYSTEMS TEXTBOOK.  THE COURT SAID IT WAS VERY, VERY

22  CLOSE.

23    IN ADDITION, WE PREVAILED ON EIGHT OF THE 15

24  CLAIMS IN THIS SUIT.  SEVEN OF THEM WERE FOUND BY THIS COURT TO

25  BE INVALID AND INDEFINITE, AND EIGHT CLAIMED 25 WAS DROPPED



1    VIRTUALLY ON THE EVE OF TRIAL AND STIPULATED TO BE

2    NONINFRINGING BY FINISAR.  AND THAT DID -- CONTRARY TO WHAT

3    FINISAR SAYS IN ITS BRIEF OF YESTERDAY, QUOTE, ALTER THE

4    RELATIONSHIP OF THE PARTIES BECAUSE FINISAR NOW HAS SEVEN

5    CLAIMS THAT IT CAN'T USE AGAINST ANYBODY ANYWHERE ANYTIME

6    ANYMORE.

7              IN ADDITION, SHOWING MORE OF THE CLOSENESS OF

8    THIS CASE THIS COURT HAS CONTINUED TO CARRY SEVERAL OF THE

9    GROUNDS IN OUR JMOL MOTIONS, ALL THAT ARE NONINFRINGMENT

10   MOTIONS.  AND EVEN THE ISSUE OF WILLFULNESS, WHICH WAS THE

11   SUBJECT OF ONE OF THOSE MOTIONS, IS AT THE VERY LEAST A CLOSE

12   ISSUE.



13             ANOTHER FACTOR UNDER THE RECORPORATION CASE,

14   THERE WAS NO EFFORT ON THE PART OF DIRECTV TO CONCEAL ITS

15   MISCONDUCT.  AND MOREOVER, THERE WAS NO MOTIVATION TO HARM

16   FINISAR, NOTWITHSTANDING THE ALLEGATION MADE IN FINISAR'S JUNE

17   28TH BRIEF THAT WE INTENDED HARM TO A LICENSING PROGRAM OF

18   FINISAR.  YOU CAN'T FIND A SINGLE PIECE OF EVIDENCE THAT LEADS

19   TO THAT CONCLUSION IN THIS CASE.  THAT IS ATTORNEY ARGUMENT.

20             IN SHORT, YOUR HONOR, OUR CONDUCT WAS IN GOOD

21   FAITH AND NOWHERE NEAR THE SORT OF REPREHENSIBLE CONDUCT THAT

22   MERITS PUNITIVE OR ENHANCED DAMAGES.

23             NOW, TURNING TO A COUPLE OF THE POINTS THAT

24   FINISAR MADE WITH REGARD TO ENHANCEMENT THIS MORNING, WHAT I

25   HEARD A LOT ABOUT WAS DIRECTV'S ABILITY TO PAY.  WHILE THAT

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

91



```
 1   MIGHT BE APPROPRIATE TO CONSIDER UNDER THE RECORPORATION

 2   FACTORS ONCE THE COURT HAS DETERMINED THAT THERE'S

 3   REPREHENSIBLE PUNISHABLE CONDUCT, THAT'S NOT THE CASE HERE.

 4   THERE ISN'T A FACTOR THAT SHOWS EGREGIOUS REPREHENSIBLE CONDUCT

 5   HERE.

 6            I HEARD THEM ALSO SAY THAT MR. CROOK PUT THE

 7   ZIMMERMAN OPINION IN A DRAWER.  HE DIDN'T HOLD A MEETING; HE

 8   DIDN'T HAVE A TECHNICAL PERSON REVIEW IT.  WELL, I'M SURE THAT

 9   THAT OPINION EVENTUALLY WENT INTO A FILE CABINET.  BUT IT WAS

10   READ, AND IT WAS RELIED UPON.  AND DIRECTV DID NOT CHANGE

11   BECAUSE MR. CROOK HAD A COMPETENT OPINION LETTER THAT SAID

12   YOU'RE NOT INFRINGING.

13            MOREOVER, I URGE THE COURT TO TAKE A LOOK AT THE

14   ZIMMERMAN OPINION LETTER.  LOOK AT THE NUMBER OF PAGES IN THAT

15   EXHIBIT DEVOTED TO DISCUSSING OF THE TECHNICAL ASPECTS OF HOW

16   THE GUIDE SYSTEM WORKS.  IT'S HARD TO SAY THAT THAT WAS WRONG.

17   IN FACT, I DON'T THINK FINISAR'S EVER SAID THAT IT WAS WRONG

18   WITH RESPECT TO ITS DESCRIPTION OF THE GUIDE SYSTEM.  WHAT IT

19   SAID IS IT DIDN'T ADDRESS THE REST OF THE SYSTEM.

20            BUT LET ME NOW TURN TO THE ISSUE OF ATTORNEY'S

21   FEES BECAUSE THE ONE FACTOR IN RECORPORATION I'VE LEFT OUT IS

22   THE ONE THAT THEY ADDRESS UNDER THE HEADING OF ATTORNEY'S FEES.

23   AS I MENTIONED BEFORE, THE STANDARDS HERE ARE SIMILAR, BUT NOT

24   QUITE IDENTICAL.  THEIR MAIN CASE FOR ATTORNEY'S FEES IS THEY

25   SAY WHILE THE JURY FOUND WILLFULNESS, THAT'S ENOUGH, YOU SHOULD
```



1   AWARD US OUR FEES.  BUT SECTION 285 ISN'T A SIMPLE FEE SHIFTING

2   STATUTE, EVEN IN THE CASE OF WILLFULNESS.  THE COURT STILL HAS

3   TO FIND THE CASE EXCEPTIONAL, AND THE COURT'S BURDEN IN THAT

4   CASE IS TO FIND IT BY CLEAR AND CONVINCING EVIDENCE.  EVEN WERE

5   THE COURT TO FIND IT EXCEPTIONAL, IT WOULD THEN HAVE TO MAKE

6   THE FURTHER DETERMINATION THAT ATTORNEY'S FEES WERE MERITED.

7   THAT'S THE MODINE MANUFACTURING CASE IN 970 S.2D., CITED IN OUR

8   BRIEF.

9            FOR THE SAME SORTS OF REASONS THAT I'VE OUTLINED

10  WITH REGARDS TO ENHANCEMENT, THE ATTORNEY'S FEES HERE SHOULD

11  ALSO BE DENIED.  THIS CASE WAS CLOSED ON NUMEROUS GROUNDS.

12  EVEN IF FINISAR'S WILLFULNESS CLAIM IS NOT OVERTURNED ON JMOL,

13  THAT ISSUE ITSELF WAS TOO CLOSE TO MERIT FEES.  WE PREVAILED ON

14  EIGHT OUT OF THE 15 CLAIMS IN THE SUIT, AND THE CASE WAS

15  LITIGATED FAIRLY AND WELL ON BOTH SIDES.  IN ALL THOSE REGARDS

16  THIS CASE WAS NOT EXCEPTIONAL WITHIN THE MEANING OF SECTION

17  285.

18            NOW THAT SAID, IT IS APPROPRIATE FOR US TO

19  BRIEFLY COMMENT ON THE ACCUSATIONS THAT ARE LACED THROUGHOUT

20  FINISAR'S MAIN BRIEF, THE ACCUSATION OF LITIGATION MISCONDUCT.

21            THE COURT:  WELL, I'M SURE YOU DISAGREE WITH ALL

22  OF THEM.

23            MR. CASTANIAS:  WELL -- AND INDEED I'M NOT GOING

24  TO GO THROUGH THEM.

25            THE COURT:  THAT'S PUT IN YOUR BRIEFS.  I MEAN,



1    YOU MIGHT WANT TO PROPERLY GET INTO THE ISSUE OF THE -- YOU'D

2    MENTIONED COST AND YOU'D MENTIONED THE CALCULATION OF

3    PREJUDGMENT INTEREST.

4                    MR. CASTANIAS:  RIGHT.  I'D JUST LIKE TO MAKE

5    ONE MORE POINT WITH REGARD TO THE FEES AND --

6                    THE COURT:  ALL RIGHT.

7                    MR. CASTANIAS:  WE DON'T CLAIM TO BE THE ONLY

8    PREVAILING PARTY HERE.  I BELIEVE I HEARD THERE'S 79 MILLION

9    REASONS WHY WE'RE NOT THE PREVAILING PARTY.  OUR CLAIM IS THAT

10   WE WERE ALSO THE PREVAILING PARTY BECAUSE WE INVALIDATED SEVEN

11   CLAIMS AND WON ON AN EIGHTH.  THE MANILDRA DRILLING CASE WHICH

12   IS FINISAR'S CASE THAT IT CITED IN ITS BRIEF FILED YESTERDAY

13   SAYS WITH HANDLING A COMPETITOR'S PATENT BE DECLARED INVALID

14   MEETS THE DEFINITION OF PREVAILING PARTY.  THE SAME GOES FOR

15   THE CASE OF FINLAND STEEL CITED IN OUR BRIEF.

16                   LET ME TURN VERY QUICKLY TO THE ISSUE OF

17   PREJUDGMENT INTEREST.  AS THE COURT HAS NOTED, WE DON'T OPPOSE

18   FINISAR'S REQUEST FOR INTEREST AT THE TEXAS STATUTORY RATE; BUT

19   WHAT WE DO SAY IS THAT THE TEXAS STATUTORY RATE AS A MATTER OF

20   STATUTORY CONSTRUCTION IS SIMPLE INTEREST.  THAT'S THE

21   EQUITY -- IF YOU'LL EXCUSE ME FOR JUST A SECOND, YOUR HONOR,

22   LET ME GRAB THE CASE.  THAT'S THE T8 VERSUS MUTUAL LIFE

23   INSURANCE OF NEW YORK CASE OUT OF THIS DISTRICT IN 1997, IN

24   FACT IT'S EVEN OUT OF THIS DIVISION.  IT SAYS THAT UNDER THE

25   TEXAS STATUTE IT ALLOWS FOR INTEREST AT THE RATE OF SIX PERCENT





```
 1   PER ANNUM, WHICH THE TEXAS COURTS HAVE INTERPRETED AS MEETING

 2   SIMPLE INTEREST.  THAT'S AT 893 TO 894 OF 965 F. SUPP.  THE

 3   COURT GOES ON TO SAY IN A LATER PORTION OF THE OPINION, AGAIN

 4   DISCUSSING THE TEXAS STATUTE:  THIS SIX PERCENT PER ANNUM IS

 5   SIMPLE INTEREST, AND IT CITES THE GORMAN AGAINST LIFE INSURANCE

 6   COMPANY OF NORTH AMERICA CASE AT 859 SOUTHWESTERN 2D. 382, OUT

 7   OF THE TEXAS COURT OF APPEALS, HOUSTON, FIRST DISTRICT, 1993

 8   AND CHEMICAL COMPANY VERSUS DEHAVEN, 824 SOUTHWESTERN 2D. 257,

 9   ALSO OUT OF THE HOUSTON TEXAS APPEALS COURT 14TH DISTRICT, AND

10   THEN A SOUTHERN DISTRICT OF TEXAS CASE OF HARTFORD ACCIDENT AND

11   INDEMNITY, 862 F. SUPP. 160.  OUR POINT WITH REGARD TO

12   COMPOUNDING IS THIS:  THE TEXAS STATUTE SAYS IT'S SIMPLE.

13   THAT'S THE WAY THE INTEREST SHOULD BE CALCULATED.  ALSO ADD

14   THAT WITH REGARD TO THE PARTICULAR METRICS WITH REGARD TO THE

15   COMPOUNDING CALCULATIONS THAT FINISAR OFFERS, ALL THEY OFFERED

16   TODAY WAS SUPPOSITIONS AND HOW DIRECTV PROBABLY GETS ITS MONEY

17   TO SUPPORT THOSE CALCULATIONS.  AND WE DON'T HAVE ANY EVIDENCE

18   ON THAT, AND I THINK THE COURT POINTED OUT THAT THERE -- IT WAS

19   A LITTLE BIT OF UNREALITY TO DOING IT ON A DAILY BASIS.

20           FINALLY, LET ME ADDRESS THE ISSUE OF COST VERY

21   BRIEFLY.  FINISAR SAYS IT'S NOT TIME TO ASK FOR COSTS.  WE

22   BELIEVE THIS IS EXACTLY THE SORT OF THING THAT SHOULD BE

23   DETERMINED NOW, CAN BE DETERMINED NOW, AND IT SHOULD BE DENIED

24   NOW.

25           AGAIN, I POINT OUT DEFENDANTS PREVAIL ON EIGHT
```

1    CLAIMS; FINISAR, ON SEVEN.  WE'RE NOT CLAIMING TO BE THE

2    PREVAILING PARTY, BUT WE ARE CLAIMING THAT WE WOULD BE ENTITLED

3    TO OFFSET IN THAT CIRCUMSTANCES, SO THE ISSUE OF COST WASHES

4    OUT.

5              IN ADDITION, BECAUSE SEVEN OF THE 505 PATENT

6    CLAIMS WERE DECLARED INVALID AND HAVE NOT TO THIS POINT BEEN

7    DISCLAIMED AT THE PATENT AND TRADEMARK OFFICE, SECTION 288 OF

8    TITLE 35, THE PATENT LAWS, THIS ENTITLES FINISAR TO COSTS IN

9    THIS CASE.  FINISAR'S REQUEST FOR COST SHOULD BE DENIED.

10             THE COURT:  LET ME ASK YOU.  IN THE -- ATTACHED

11   TO ONE OF YOUR BRIEFS, I'VE GOT DEFENDANT'S RECALCULATION,

12   PLAINTIFF'S CALCULATION OF PREJUDGMENT INTEREST, AND THEN GOT

13   DEFENDANT'S RECALCULATIONS.  NOW YOU HAVE IN THERE COMPOUNDED

14   ANNUALLY.  AND YOU COME UP WITH $13 MILLION AS OPPOSED TO THEIR

15   $14 MILLION.  THAT'S WHAT I'M UNDERSTANDING THE DIFFERENCE HERE

16   TO BE?

17             MR. CASTANIAS:  IF THE COURT REJECTS THE TEXAS

18   LAW THAT SAYS THAT THE INTEREST IS SIMPLE INTEREST, THAT WOULD

19   BE THE DIFFERENCE.  BUT IF YOU TURN BACK TO EXHIBIT 1 -- I

20   THINK YOU'RE LOOKING AT EXHIBIT 2, YOUR HONOR.

21             THE COURT:  OKAY.

22             THE CLERK:  YOUR TIME IS UP.

23             MR. CASTANIAS:  YOUR HONOR, I'LL TRY TO ANSWER

24   THIS QUESTION, AND THEN I'LL BE DONE.

25             THE COURT:  ALL RIGHT.

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06                                    96

1              MR. CASTANIAS:  DO YOU HAVE EXHIBIT 1 IN FRONT

2      OF YOU?  IF NOT, I CAN GET IT.

3              THE COURT:  I HAVE IT.

4              MR. CASTANIAS:  EXHIBIT 1 SHOWS AT SIMPLE

5      INTEREST, THE NUMBER WOULD BE 11,163,697.

6              THE COURT:  OKAY.  ALL RIGHT.

7              MR. CASTANIAS:  THANK YOU, YOUR HONOR.

8              MR. ROBERTS:  WE JUST HAVE TWO MINUTES FOR

9      REBUTTAL, YOUR HONOR?

10             THE COURT:  ALL RIGHT.

11             MR. ROBERTS:  I JUST WANTED TO POINT OUT THAT ON

12     DETERMINING COSTS UNDER THE STATUTE, IT'S NOT POSSIBLE TO JUST

13     DISCLAIM A PATENT CLAIM THAT'S INVALID UNLESS YOU KNOW IT'S

14     INVALID AT THE TIME.  SO ASKING US TO DISCLAIM THAT PRIOR TO

15     THE FILING OF SUIT IS REALLY AN EXERCISE IN CLAIRVOYANCE IN

16     THAT YOU MUST NOT HAVE THE STATUTE SHOULD BE CONSTRUED.  I

17     DON'T KNOW IF THIS IS IN THE PAPERS, BUT IF YOU TAKE THE JURY'S

18     DAMAGES FINDINGS, DIVIDE THAT INTO THE REVENUE, I BELIEVE THE

19     RATE IS .1428 PERCENT.  THAT WOULD OBVIOUSLY BE PREFERABLE TO

20     $1.32 PER SET TOP BOX BASIS BECAUSE OF THE DIFFICULTIES WE'VE

21     OUTLINED IN IDENTIFYING WHAT A SET TOP BOX IS.

22             FINALLY, THE SHATTERPROOF GLASS CASE IS REALLY

23     AN ANOMALY.  IN THAT CASE THE PLAINTIFF ASKED FOR FOUR PERCENT.

24     THE JURY GAVE HIM FIVE PERCENT, AND THE PLAINTIFF SAID THAT'S

25     GREAT, WE'LL TAKE IT.  AND IT WAS THE DEFENDANT WHO OPPOSED

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

97

1    THAT ENTRY, THAT COMPULSORY LICENSE POST VERDICT, NOT THE

2    PLAINTIFF.  SO THE ISSUES THAT WERE PRESENT IN THIS CASE WERE

3    REALLY NOT LITIGATED IN THAT CASE.

4              FINALLY, THE MAHURKAR CASE IS USEFUL BECAUSE OF

5    THE ECONOMIC ANALYSIS PROVIDED BY JUDGE EASTERBROOK ON THE

6    VALUE OF AN INJUNCTION.  AND HERE THE BALANCE OF THE HARM, THEY

7    TALKED ABOUT THE FCC LICENSE, BUT WE REALLY SEE NO EVIDENCE

8    ABOUT THAT, JUST SOME QUOTING OF THE STATUTE, AND WE DON'T KNOW

9    REALLY WHAT THE IMPACT OF THAT WOULD BE.  THANK YOU, YOUR

10   HONOR.

11             THE COURT:  ALL RIGHT.

12             MR. CASTANIAS:  YOUR HONOR, ONE POINT.  THE .14,

13   WHATEVER THE NUMBERS WERE THAT WERE OFFERED BY MR. ROBERTS IN

14   REBUTTAL, THIS IS THE FIRST TIME WE'VE HEARD THAT BECAUSE IT'S

15   NOT IN THE BRIEF.  IT'S A LITTLE LATE FOR US TO BE ABLE TO

16   RESPOND TO THAT.

17             THE COURT:  OKAY.  WE'VE GOT -- ACTUALLY I'D

18   NORMALLY TAKE A BREAK, BUT I'VE GOT A DOCTOR'S APPOINTMENT THIS

19   AFTERNOON, SO I'M GOING TO GO AHEAD AND MAKE MY ANNOUNCEMENTS

20   NOW.

21             FIRST, BEFORE I FORGET BECAUSE OF THE BULK OF

22   PAPER EXHIBITS, I AM GOING TO ORDER THAT THE PARTIES GET

23   TOGETHER, TAKE THE ADMITTED EXHIBITS, GO AHEAD AND PUT THEM ON

24   DISK LIKE YOU DID WITH ALL THE OTHER LISTS, AND THAT'S WHAT THE

25   DEPUTY CLERK WILL KEEP OR OUR CLERK'S OFFICE WILL KEEP.  IT'S

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

98

1  THE DISK FORM OF THEM.  AND THEN THE PARTIES WILL BE

2  RESPONSIBLE FOR KEEPING THE ORIGINALS.  AND SHOULD THE HIGHER

3  COURT ASK FOR A COPY OF ONE OR ANOTHER, THEN YOU'LL BE

4  RESPONSIBLE FOR GETTING IT UP.  AND IF THERE WINDS UP BEING

5  SOME KIND OF A PROBLEM OVER, GEE, THAT ISN'T THE REAL EXHIBIT

6  THAT'S BEING SET FORWARD, THE COURT SHOULD HAVE THE ELECTRONIC

7  COPY.  THAT'LL MEAN OBVIOUSLY SOME COOPERATION WHERE YOU VIEW

8  EACH OTHER'S VERSIONS.  SOME OF THEM -- I THINK THERE ARE A

9  COUPLE OF THEM THAT'S REDACTIONS OR A PAGE TAKEN OUT OR

10  SOMETHING LIKE THAT; BUT I'D LIKE TO GET THAT DONE SO THAT OUR

11  LIMITED STORAGE SPACE DOWNSTAIRS IS NOT COMPLETELY TAKEN UP

12  WITH THESE BOXES, ESPECIALLY IN VIEW OF THE NUMBER OF PATENT

13  CASES I'M GETTING IN.  IF I -- I SHOULD HAVE THOUGHT OF THAT

14  EARLIER, BUT THAT'S WHAT I WANT DONE ON THAT.  WE'LL KEEP THE

15  ELECTRONIC VERSION.  YOU'LL BE RESPONSIBLE FOR THE ORIGINALS OF

16  YOUR OWN.  IF THERE'S ANY DISPUTE, THEN THE ELECTRONIC VERSION

17  WILL BE THE ONE, SO I SUGGEST THAT BOTH SIDES CHECK THAT

18  ELECTRONIC, MUTUALLY EXCHANGE THOSE, MAKE SURE THEY'RE CORRECT

19  AND THEN HANG ON TO THEM.

20          ALL RIGHT.  AS FAR AS THE -- I'LL START OFF WITH

21  THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON THE GECSEI

22  TEXTBOOK, THAT'S DOCUMENT, I BELIEVE, 106 AND THE MOTIONS FOR

23  JMOL ON ANTICIPATION.  TAKING A LOOK AT ANTICIPATION, THE COURT

24  REFERS TO BROWN VERSUS 3M AT 265 FED.3RD, 1349, FIFTH CIRCUIT

25  2001.  AND THAT CASE TEACHES A NUMBER OF THINGS, BUT ONE OF

1    THOSE IS THAT ANTICIPATION SUFFICIENT TO PRECLUDE PATENT

2    PROTECTION MEANS A LACK OF NOVELTY.  IT'S A QUESTION OF FACT.

3    AND FOR ANTICIPATION TO PRECLUDE PATENT PROTECTION, EVERY

4    ELEMENT AND LIMITATION OF THE CLAIMED INVENTION MUST BE FOUND

5    IN A SINGLE PRIOR REFERENCE.  AND THEN THEY POINT OUT -- THIS

6    IS A SHORTHAND WAY -- THAT WHICH INFRINGES A PATENT, IT LATER

7    WINDS UP ANTICIPATING AN EARLIER.  IN OTHER WORDS, YOU

8    BASICALLY HAVE TO LAY OUT THE INVENTION IN THE ANTICIPATED

9    REFERENCE.  I THINK BOTH EXPERTS ON BOTH SIDES UNDERSTOOD THAT.

10         LOOKING AT A SUMMARY JUDGMENT, AT THE SUMMARY

11   JUDGMENT FIRST, ALL FACTS AND DISPUTES HAVE TO BE RESOLVED IN

12   FAVOR OF THE NONMOVEMENT.  IN THAT CASE -- IN THIS CASE IT

13   WOULD BE -- WOULD HAVE TO BE RESOLVED IN FAVOR OF FINISAR.  AND

14   TO SOME DEGREE IT WAS CLOSE, BUT THE STANDARD, OF COURSE, IS

15   CLEAR AND CONVINCING EVIDENCE TO OVERCOME THE PRESUMPTION OF

16   INVALIDITY.

17         NOW MR. EDEN'S REBUTTLE IN THE COURT'S MIND WAS

18   SOMEWHAT CONFUSING.  IT KEPT FOCUSING ON THINGS THAT DR. TJADEN

19   REALLY DIDN'T SAY AND TALKING ABOUT THAT 10.5 DIAGRAM RATHER

20   THAN TAKING A LOOK AT THE TEXT ITSELF.  BUT ON THE OTHER HAND,

21   DR. TJADEN'S AFFIDAVIT THE WAY HE CHARTED EXACTLY WAS NOT

22   CLEAR.  I CAN TELL YOU, THE COURT HAD THE VERY DIFFERENT

23   IMPRESSION THAT TO COMBINE THE CHART DESCRIPTION FOR ONE STEP

24   OR THE CHART DESCRIPTION FOR ANOTHER STEP, AND TO COMBINE THAT

25   WITH PARTS OF THE TEXT THAT WEREN'T EVEN CHARTERED OR MENTIONED

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

100

1    IN THE AFFIDAVIT.  THAT MIGHT GET PRETTY CLOSE TO ANTICIPATION.

2    BUT THAT'S NOT CLEAR, IT'S NOT CONVINCING, AND IT'S THE LIGHT

3    MOST FAVORABLE TO NONMOVEMENT.  SO MOTION FOR SUMMARY JUDGMENT

4    IS DENIED.

5              THEN WHEN WE TAKE A LOOK AT THE JUDGMENT AS A

6    MATTER OF LAW, OF COURSE, THERE WE'RE TAKING A LOOK AT THE

7    STANDARD OF REVIEW ON A JMOL, AND AS IT'S PRETTY COMMON LAW,

8    THE COURT CAN'T MAKE CREDIBILITY DETERMINATIONS, CAN'T WEIGH

9    CONFLICTING EVIDENCE.  THAT'S REEVES VERSUS SANDERSON PLUMBING

10   AT 530 US. 133 -- THAT'S AT PAGE 155 -- 120 SUPREME COURT,

11   2097, PAGE 2110, AND THAT'S 2000.

12             THE CASES HAVE RECOGNIZED THE JUDGMENT, AS A

13   MATTER OF LAW, IS A HEAVY BURDEN.  TAKE A LOOK AT THE PINEDA

14   VERSUS UNITED PARCEL SERVICES CASE, 360 FED. 3RD, 483, AND THEY

15   ALSO USE LANGUAGE SUCH AS IF REASONABLE PERSONS COULD DIFFER ON

16   INTERPRETATION, AND THE MOTION SHOULD BE DENIED.  JMOL IS GOING

17   TO BE GRANTED WHEN THE FACTS AND INFERENCES POINT SO STRONGLY

18   AND OVERWHELMINGLY IN FAVOR OF ONE PARTY IF THE COURT BELIEVES

19   REASONABLE MEN COULD NOT ARRIVE AT A CONTRARY VERDICT.  WE SEE

20   THAT IN WALLACE VERSUS METHODIST HOSPITAL SYSTEM, 271 FED. 3RD,

21   212 AT PAGE 219, FIFTH CIRCUIT OF 2001.

22             AND THEN AGAIN LOOKING AT REEVES, THE SUPREME

23   COURT SAID THAT NORMALLY BE GRANTED ONLY WHEN THERE'S NO

24   LEGALLY SUFFICIENT EVIDENTIARY BASIS FOR A REASONABLE JURY TO

25   FIND FOR THE PARTY ON AN ISSUE, ONE SET PARTY HAS BEEN FULLY

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

101

1   HEARD.

2          AND SO LOOKING AT CASES AND WHAT THE COURT HAS

3   TO DO IS, OF COURSE, SHOULD FIRST DRAW ALL REASONABLE

4   INFERENCES IN FAVOR OF THE NONMOVEMENT, ELLIS VERSUS WEESLER,

5   258 FED. 3RD, 326:  GIVE CREDENCE TO EVIDENCE SUPPORTING

6   MOVEMENT THAT IS UNCONTRADICTED AND UNIMPEACHED.  AND THAT'S

7   ELLIS VERSUS WEESLER, AND I'VE GOT TO SAY THAT THERE'S ALMOST

8   NO EVIDENCE IN THIS CASE IS UNCONTRADICTED OR UNIMPEACHED IN

9   ONE WAY OR ANOTHER.  AND THEN TAKE INTO ACCOUNT MOVANT'S BURDEN

10  OF PROOF.  THAT'S SET OUT IN THE HARSKO VERSUS KIRKEN CASE, 965

11  FED. SUPP, 580, PAGE 584.  THAT'S OUT OF THE DISTRICT COURT OF

12  MARYLAND, PENNSYLVANIA, 1997.  IT WAS A PATENT CASE.  AND GIVEN

13  THE VARIOUS BURDENS OF PROOF IN A PATENT CASE, IT MAKES A LOT

14  OF SENSE.

15          SO AS TO JUDGEMENT AS A MATTER OF LAW

16  DR. TJADEN'S BURDEN OR DEFENDANT'S BURDEN WOULD HAVE BEEN ON

17  ANTICIPATION WAS STILL CLEAR AND CONVINCING EVIDENCE.  AND

18  AGAIN, I'VE GOT TO SAY THAT WITH THE TESTIMONY PROVIDED BY

19  MR. EATON, IT CERTAINLY SEEMED THAT A CASE FOR ANTICIPATION

20  MIGHT HAVE BEEN MADE.  BUT, ON THE OTHER HAND, I'VE GOT TO TAKE

21  INTO CONSIDERATION THAT I'VE READ THE GECSEI BOOK, HAD DONE A

22  LOT MORE STUDY THAN WAS ACTUALLY JUST PRESENTED AT TRIAL.  AND

23  I'VE GOT TO LOOK WHEN I'M LOOKING AT THIS, WHAT WAS PRESENTED

24  TO THE JURY.  AGAIN, TO THE JURY THERE WERE PARTS OF THAT BOOK

25  THAT WERE NOT CHARTED OR MENTIONED BY DR. TJADEN IN HIS

1   TESTIMONY.  HE CHOSE TO USE SUMMARIES FOR THE STEPS TO EACH

2   CLAIM RATHER THAN THE LANGUAGE OF THE CLAIM ITSELF.  THAT WAS

3   CONFUSING, AND I MADE A NOTE THAT EVEN MR. TOUTON SEEMED TAKEN

4   A LITTLE ABACK WHEN THAT FIRST WENT UP ON THE BOARD.  THE JURY

5   WAS INSTRUCTED THAT DIRECTV HAD TO PROVE BY CLEAR AND

6   CONVINCING EVIDENCE EACH AND EVERY STEP OF A CLAIM WAS PRESENT

7   IN THE GECSEI BOOK.  HIS TESTIMONY USED SUMMARIES AND

8   CONCLUSION AND ANIMATION THAT WAS NOT IN THE BOOK.  NOW BRIEF

9   USE IN ANIMATION CAN SOMETIMES EXPLAIN A DIAGRAM, BUT THOSE

10  ANIMATED JELLY BEANS, FOR EXAMPLE, IN FIGURE 10.5 COULD ALSO BE

11  SEEN AS JUST AN EXTRAPOLATION OR INTERPRETATION OF THE DIAGRAM

12  THAT WASN'T IN THE BOOK ITSELF, WASN'T REALLY TAKEN FROM THE

13  TEXT, AND IT MAY NOT HAVE BEEN CLEARLY AND CONVINCING -- OR IT

14  WASN'T CLEARLY AND CONVINCING ESTABLISHED, IF THAT'S THE

15  INTERPRETATION THAT ONE SKILLED IN THE ART PRIOR TO

16  NOVEMBER 1991 WOULD HAVE DRAWN.  AND, OF COURSE, THE JURY IS

17  ENTITLED TO DISBELIEVE DR. TJADEN.  THEY COULD DISCOUNT HIS

18  CREDIBILITY -- CREDIBILITY BASED ON ANY NUMBER OF FACTORS,

19  INCLUDING THE AMOUNT HE WAS PAID, THE AMOUNT OF TIME HE TOOK,

20  ANY NUMBER OF FACTORS WHICH THEY'RE INSTRUCTED THEY CAN

21  CONSIDER.  AND THEY'RE ENTITLED TO CONSIDER THE ALTERNATE

22  EXPLANATIONS FOR THE DIAGRAMS AND THE ANIMATED DIAGRAM GIVEN BY

23  MR. EATON.

24          I'VE INDICATED MR. EATON'S TESTIMONY FROM THE

25  COURT'S POINT OF VIEW MAY NOT HAVE BEEN CLEAR AND CONVINCING,

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

103

1    BUT THAT WASN'T HIS BURDEN.  IT'S WASN'T FINISAR'S BURDEN TO

2    PROVE BY CLEAR AND CONVINCING; IT WAS DEFENDANT'S BURDEN.

3    TECHNICALLY, DEFENDANT -- PLAINTIFF COULD BE SILENT ON THAT

4    ISSUE AND THE OTHER SIDE JUST MIGHT NOT MAKE THE BURDEN AND

5    COULD JUST TAKE HIM ON CROSS EXAMINATION.  SO IN THE END

6    DEFENDANT -- DIRECTV HAD THE BURDEN OF PROOF BY CLEAR AND

7    CONVINCING EVIDENCE.  THE JURY DIDN'T FIND THAT HE MADE IT --

8    THEY MET IT, AND THE COURT CAN'T POINT TO ANY EVIDENCE THAT WAS

9    CLEAR AND CONVINCING OR SO OVERWHELMING REASONABLE JURY SHOULD

10   HAVE FOUND OTHERWISE.  MOTION FOR JUDGMENT AS A MATTER OF LAW

11   ON THAT ISSUE IS DENIED.

12           THEN WE GO ON TO THE LATCHES.  NOW, HERE THE

13   JURY'S OPINION OR VERDICT IS ADVISORY.  IT'S AN EQUITABLE

14   DEFENSE, AND THE COURT HAS TO LOOK AT THE PARTICULAR FACTS AND

15   CIRCUMSTANCES OF THIS CASE, WEIGH THE EQUITIES OF THE PARTIES.

16   THAT'S THE AC HACKERMAN COMPANY VERSUS KHCHAIDES CONSTRUCTION,

17   960 FED. REPORTER 2D. 1020, FED CIRCUIT 1992.  AND HERE DIRECTV

18   WOULD HAVE HAD THE BURDEN TO PROVE TWO FACTORS:  ON, DEFENDANT

19   DELAYED FILING SUIT FOR UNREASONABLE LENGTH OF TIME, THE TIME

20   PLAINTIFF KNEW OR SHOULD HAVE KNOWN OF ITS CLAIM AGAINST THE

21   DEFENDANT, AND THE DELAY OPERATED A PREJUDICE OR INJURY TO

22   DEFENDANT.  THAT'S AT PAGE 1032 OF THE HACKERMAN CASE.

23   MATERIAL PREJUDICE IS ESSENTIAL FOR A LATCHES DEFENSE, AND THEY

24   TALK ABOUT THAT IN THE HACKERMAN CASE AT PAGE 1033.

25   EVIDENTIARY PREJUDICE ARISES WHEN THE DELAY CAUSES DOCUMENTS TO

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
104

1   BE LOST, UNRELIABILITY OF MEMORY, DEATH OF WITNESSES, SO FORTH.

2   ECONOMIC PREJUDICE ARISES IF THE DEFENDANT WOULD HAVE LOST

3   MONETARY INVESTMENTS OR INCURRED DAMAGES WHICH COULD HAVE BEEN

4   PREVENTED BY AN EARLIER SUIT.

5           NOW, THERE WAS SOME EVIDENCE BY SAUSVILLE THAT

6   HE BROUGHT THE PATENT TO THE ATTENTION OF HUGHES IN 1997 AND

7   THEN SOME EVIDENCE BROUGHT OUT BY MR. SAVIKAS ON CROSS

8   EXAMINATION THAT HE KNEW OR SHOULD HAVE BEEN ABLE TO FIGURE OUT

9   THE DIRECTV SYSTEM INFRINGED.  THAT WAS MAINLY BASED ON

10  SUPPOSEDLY HOW SMART HE WAS.  BUT THE PROBLEM HERE FROM THE

11  JURY'S POINT OF VIEW AND THE COURT'S POINT OF VIEW IS

12  DIRECTV'S -- LIKE BOTH PARTIES DID AND COUNSEL ARE ENTITLED TO

13  DO, BUT I THINK YOU HAVE TO BE CAREFUL WHEN YOU'RE DOING THIS

14  TO A JURY BECAUSE THEN THEY HAVE CONFLICTING EVIDENCE ARGUING

15  BOTH SIDES OF THE ISSUE.  FROM THE JURY'S POINT OF VIEW AND

16  FROM YOUR EVIDENCE ON BOTH SIDES AND IF THERE'S CONFLICTING

17  EVIDENCE, JMOL CAN'T BE GRANTED.  WE HAD A PROFESSOR FROM MIT

18  EXPLAIN THAT DIRECTV'S METHOD WAS FAR DIFFERENT FROM THAT OF

19  THE PATENT.  AND ON THE OTHER SIDE SHOW THAT SAUSVILLE, WHO A

20  SHORT TIME IN 1997 WAS EMPLOYED AS A SALESMAN FOR FINISAR,

21  SHOULD HAVE INSTANTLY KNOWN OF THE INFRINGEMENT.  WHEN YOU'VE

22  GOT THAT KIND OF CONFLICT, THE COURT CAN'T FAULT THE JURY FOR

23  FAILING TO FIND LATCHES, AND AS A MATTER OF EQUITY THE COURT

24  DOESN'T FIND THE ARGUMENT VERY CONVINCING.  DIRECTV ALSO ARGUED

25  THAT FINISAR COULD HAVE BROUGHT A SET TOP BOX, ANALYZED THE

1  SYSTEM TO DETERMINE INFRINGEMENTS, AND THAT RAISES THE QUESTION

2  IS:  ARE PATENT HOLDER REQUIRED TO ASSUME THAT TECHNOLOGY

3  ASSOCIATED WITH THEIR FIELD IS INFRINGING, INVESTIGATE IT AND

4  TAKE ACTION?  THE MERE USE OF SATELLITES AND TV DOESN'T MAKE IT

5  INFRINGING OR EVEN USE FOR PROGRAM DATA.

6         THE SIX-YEAR PRESUMPTION DOESN'T REALLY HELP

7  DIRECTV.  JUST LIKE MOST PRESUMPTIONS, IT'S A BURSTING BUBBLE

8  PRESUMPTION.  WE SEE THAT AT 960 FED. 2D. AT 1037 THERE IN THE

9  HACKERMAN CASE.  WE HAVE SAUSVILLE, LEVINSON, AND RAWLS SAYING

10  THEY DIDN'T KNOW OF THE POSSIBLE INFRINGEMENT UNTIL THE TIME

11  WITHIN THE SIX YEARS BEFORE SUIT.  YES, THERE WAS SOME CROSS

12  EXAMINATION OF THEM, BUT THERE'S NO REAL BASIS TO FIND THEY'RE

13  NOT CREDIBLE.

14         THE LETTER WAS SENT IN 2004 AND THEN SOME 400

15  DAYS LATER SUIT WAS FILED, SO AGAIN, LOOKING AT BURDENS OF

16  PROOF HERE, MAYBE FINISAR COULD HAVE KNOWN ABOUT THE

17  INFRINGEMENT; BUT IT'S JUST AS LIKELY THAT THEY DIDN'T AND

18  SHOULD NOT HAVE.  SO THE COURT FINDS IT'S NOT BEEN SHOWN BY A

19  PREPONDERANCE OF THE EVIDENCE AND CERTAINLY NOT TO ANY HIGHER

20  STANDARD OF PROOF THAT FINISAR KNEW OF POTENTIAL INFRINGEMENT

21  BY DIRECTV PRIOR TO 2003 AND FINDS IT'S NOT BEEN SHOWN BY A

22  PREPONDERANCE OF THE EVIDENCE.

23         MORE IMPORTANTLY, IN THE ISSUE OF ECONOMIC

24  PREJUDICE, WHICH IS ANOTHER ISSUE, THERE'S NO REAL EVIDENCE OF

25  ECONOMIC PREJUDICE.  THERE WAS TESTIMONY OF SUPPOSEDLY TWO

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06                                                    106

1   INEXPENSIVE ALTERNATIVES.  SUPPOSEDLY THEY COST ABOUT $800,000

2   TOTAL.  IT COULD HAVE BEEN USED.  BUT THERE WAS NO TESTIMONY

3   WHY THEY WEREN'T USED OR WHY THEY WOULD HAVE BEEN -- IT WOULD

4   BE MORE EXPENSIVE TO USE THEM NOW THAN IT WOULD HAVE BEEN BACK

5   THEN.  THE COURT CAN IMAGINE THAT WAS TRUE, BUT I DIDN'T HEAR

6   ANY TESTIMONY ABOUT THAT FROM THE DEFENDANT.  THE DEFENDANT'S

7   BEEN MAKING GOOD PROFITS.  NOTHING INDICATES THEY CAN'T

8   CONTINUE MAKING GOOD PROFITS AND GOOD REVENUES, EVEN IF THERE

9   WAS A COMPULSORY LICENSE.  AND SO NO REAL EXPLANATION ABOUT WHY

10  THERE HAVE BEEN ECONOMIC PREJUDICE IF THIS HAD BEEN BROUGHT UP

11  AT THE DAY THAT THE PATENT WAS ISSUED OR -- YEAH, THE DAY THE

12  PATENT ISSUED.  AND THEN EVIDENTIARY PREJUDICE, YOU GET INTO

13  WHERE DOCUMENTS AND WITNESSES AND SO FORTH WHERE THERE WAS SOME

14  HINT BY MS. FERGUSON OF DOCUMENTS BEING HARD TO FIND AND SOME

15  COPIES OF DOCUMENTS BEING A LITTLE DIFFERENT, BUT SHE NEVER

16  TESTIFIED, FOR EXAMPLE, THAT THERE WAS A DOCUMENT DISPOSAL

17  PROGRAM IN PLACE OR BEEN A FIRE THAT DESTROYED A BUNCH OF

18  DOCUMENTS.  YES, THERE'S BEEN SOME CHANGE OF CORPORATION, BUT

19  YOU'D EXPECT KEY DOCUMENTS WOULD BE KEPT.  NO TESTIMONY ABOUT

20  KEY WITNESS BEING MISSING.  WE HAD TESTIMONY FROM THE FIRST CEO

21  OR PRESIDENT, MR. HARTENSTEIN.  WE HAD MS. FERGUSON, WHO WAS

22  THERE FROM THE BEGINNING, SHE SAID, IN HER JOB IN MARKETING.

23  AND THEN ROBERT ARCENEAU, I BELIEVE, WHO HAD TESTIFIED THAT HE

24  WAS THERE FROM AT LEAST 1992, AND HE WAS RESPONSIBLE FOR THIS

25  PROGRAMMING.  AND I THINK THAT HE PUT HIMSELF THE ULTIMATE

1    AUTHORITY OR THE ABSOLUTE AUTHORITY ON THE SYSTEM.  SO THERE'S

2    NO INDICATION THAT ANY DELAY, EVEN IF THERE HAD BEEN A LONG

3    DELAY, WOULD SOMEHOW PREJUDICE DIRECTV.  SO THEN DIRECTV

4    DOESN'T MEET IT'S BURDEN ON THIS.  AND THE JURY WASN'T

5    CONVINCED, AND MORE IMPORTANTLY, NEITHER IS THE COURT.  SO, THE

6    MOTION FOR SUMMARY -- ANY MOTION FOR SUMMARY JUDGMENT AND THE

7    JUDGMENT AS A MATTER OF LAW ON LATCHES ARE DENIED.

8             NOW, WE THEN GET INTO THE INDUCED INFRINGEMENTS,

9    AND IN LIGHT OF THE FINDING OF DIRECT INFRINGEMENT BY THE JURY

10   MAY BE MOOT.  THE BURDEN ON THIS ISSUE IS ON FINISAR BY A

11   PREPONDERANCE OF THE EVIDENCE.  AND THERE WAS AMPLE EVIDENCE OF

12   JOINT INFRINGEMENT BY THE NAMED DEFENDANTS.  BUT THE COURT

13   CONCLUDES INSUFFICIENT EVIDENCE AS TO ANYBODY OTHER THAN THE

14   NAMED DEFENDANTS BEING INVOLVED IN ANY TYPE OF INFRINGEMENT.

15   SO THE COURT CONCLUDES THERE IS NO LEGALLY SUFFICIENT BASIS FOR

16   A JURY TO FIND INDUCED INFRINGEMENT AS WHO WAS INDUCED OTHER

17   THAN THE NAMED DEFENDANTS ALREADY.  SO THE DEFENDANT'S MOTION

18   FOR JMOL ON INDUCED INFRINGEMENT IS GRANTED.  AGAIN, THE COURT

19   RECOGNIZES THIS MAY BE MOOT.  AND SIMILARLY, AS TO THE

20   CONTRIBUTORY INFRINGEMENT, FINISAR HAS THE BURDEN BY A

21   PREPONDERANCE OF THE EVIDENCE.  AMPLE EVIDENCE OF JOINT

22   INFRINGEMENT OF THE NAMED DEFENDANTS.  INSUFFICIENT EVIDENCE AS

23   TO ANYBODY OTHER THAN THE NAMED DEFENDANTS BEING INVOLVED.  NO

24   REAL EVIDENCE OF A SALE OF AN ITEM OR METHOD THE ALLOWED

25   SOMEONE ELSE TO INFRINGE.  AND SO, AGAIN, THE COURT CONCLUDES

1   THERE IS LEGAL INSUFFICIENT -- THERE IS NO LEGALLY SUFFICIENT

2   THAT A JURY FIND CONTRIBUTORY INFRINGEMENT.  DEFENSE MOTION FOR

3   JMOL ON CONTRIBUTORY INFRINGEMENT IS GRANTED.

4               NOW, WILLFUL INFRINGEMENT, DEFENDANT HAS A JMOL

5   ON THAT.  HERE, THE BURDEN IS ON THE DEFENDANT TO PROVE BY

6   CLEAR AND CONVINCING EVIDENCE.  AND THE COURT HAS TO BE MINDFUL

7   OF VARYING DEGREES OF WILLFULNESS RANGING FROM WHAT YOU MIGHT

8   TALK ABOUT AS A NEGLIGENT DISREGARD OF PATENT HOLDER'S RIGHTS

9   CHOOSING NOT TO INVESTIGATE TOO CLOSELY OR QUICKLY TO A

10  DELIBERATE VIOLATION OF THOSE RIGHTS, DELIBERATELY COPYING,

11  STEALING EMPLOYEES, STEALING DOCUMENTS.  AND IT'S TAKEN FROM

12  THE VIRGINIA PANEL CORPORATION VERSUS MACK PANEL COMPANY, 133

13  FED. 3RD. 860, FIFTH CIRCUIT, 1997.  IT'S SPECIFICALLY AT PAGE

14  867 AND ALSO AT NOTE 4 ON PAGE 867.

15              NOW, THE FACTORS THAT THE COURT SHOULD LOOK AT

16  TO SEE IF THERE WAS LEGALLY INSUFFICIENT EVIDENCE AS SET OUT

17  BASICALLY IN THE JURY INSTRUCTIONS IS WAS THE INFRINGER -- AND

18  THIS IS ON WILLFUL -- DID THE INFRINGER DELIBERATELY COPY THE

19  IDEAS OF ANOTHER, DID THEY DELIBERATELY COPY THE IDEAS OF

20  ANOTHER?  NO EVIDENCE OF THAT.  IF THERE HAD BEEN, IT WOULD

21  INDICATE A MORE SEVERE FORM OF INFRINGEMENT INVOLVING KNOWING

22  VIOLATION AT THE VERY START.  THIS FACTOR IS IN DIRECTV'S

23  FAVOR.  WHETHER THE INFRINGER ONLY KNEW THE OTHER -- THE

24  OTHER'S PATENT PROTECTION INVESTIGATED THE SCOPE OF THE PATENT

25  AND FORMED A GOOD FAITH BELIEF THAT IT WAS INVALID OR NOT

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
109

1    INFRINGED.  THERE WAS SOME EVIDENCE ON THIS, BUT CLEARLY THE

2    LETTER WAS SENT IN 2004.  MR. CROOK SEEMED WELL QUALIFIED IN

3    THE FIELD OF PATENT LAW, NEVER EXPLAINED HOW HE HIMSELF OR HIS

4    DIRECT STAFF DETERMINED THE INFRINGEMENT.  THERE'S AN

5    INDICATION HE THOUGHT THERE WAS NO INFRINGEMENT, BUT CLEARLY

6    THERE'S NO EVIDENCE ABOUT WHY HE MIGHT HAVE THOUGHT IT WAS

7    INVALID OR INDEFINITE.  IT SEEMED LIKE HE WOULD HAVE BEEN WELL

8    QUALIFIED, BUT AS SET OUT IN EARLY HEARINGS AND EARLIER

9    RULINGS, DIRECTV CHOSE NOT TO LIST HIM AS AN EXPERT, CHOSE NOT

10   TO PROVIDE ANY OPINIONS HE MIGHT HAVE AS A WILLFULNESS OPINION.

11   AND THERE MAY HAVE BEEN GOOD TACTICAL REASONS TO DO THIS, SUCH

12   AS NOT WANTING TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE; BUT

13   THAT'S DEFENDANT'S CHOICE.  WHEN YOU MAKE TACTICAL CHOICES IN A

14   CASE LIKE THIS, AND YOU WANT TO PROTECT SOME THINGS, YOU LOSE

15   THE OPPORTUNITY TO USE THAT.  NOW, HE DID TESTIFY ABOUT

16   CONTACTING OUTSIDE COUNSEL.  THAT PROCESS WASN'T PARTICULARLY

17   QUICK.  THERE WAS SOME EXPLANATION.  TAKE OVER DIRECTV, SHAKE

18   UP AT THE LAW FIRM, BUT THAT'S NOT ENOUGH TO OVERTURN THE

19   JURY'S VERDICT ON WILLFULNESS.  AND THERE IS EVIDENTLY THERE

20   WAS NEVER ANY REAL INVESTIGATION OR OPINION ON VALIDITY.  THE

21   OUTSIDE FIRM DIDN'T LOOK AT THAT, AND THAT WAS REALLY -- WHEN

22   THE COURT HAS BEEN CALLING THIS CASE CLOSE, THAT'S WHAT WAS

23   CLOSE.  YOU READ THAT OPINION, I'M SORRY, READ THAT PATENT AND

24   YOU RIGHT AWAY -- I MEAN, I THINK ANYBODY LOOKS AT THAT AND

25   SAYS THAT SEEMS TO HAVE SOMETHING TO DO WITH SATELLITE TV OR

1   CABLE TV OR THAT KIND OF THING.  AND ON THE OTHER HAND, YOU

2   THINK THIS HAS BEEN GOING ON FOR YEARS BEFORE 1995.  SURELY

3   THERE'S SOMETHING, I MEAN, ODD ABOUT THIS.  BUT THAT'S WHAT I

4   MEAN BY CLOSE, WHEN YOU TAKE A FIRST LOOK AT IT AND YOU LISTEN

5   TO THE ANTICIPATION OF EVIDENCE AND ALL, IT'S CLOSE, BUT

6   INFRINGEMENT WASN'T, WHEN YOU GET INTO WILLFULNESS, I HEARD

7   VIRTUALLY NO TESTIMONY AT ALL ON THE PART OF DIRECTV THAT THEY

8   REALLY INVESTIGATED WHAT WOULD LOGICALLY SEEM TO HAVE BEEN

9   THEIR GOOD DEFENSES, INVALIDITY, INDEFINITENESS.  SO THIS

10  FACTOR HAS TO BE IN FINISAR'S FAVOR IN DECIDING WILLFULNESS.

11          WHETHER DIRECTV HAD A SUBSTANTIAL DEFENSE ON

12  INFRINGEMENT, I REASONABLY BELIEVE THE DEFENSE WOULD BE

13  SUCCESSFUL IF LITIGATED, AND THERE WERE DEFENSES TO THE CLAIMS.

14  DEFINITENESS ON MANY CLAIMS IS GRANTED.  INFRINGEMENT ISSUE IS

15  VERY HARD TO DEFEND.  ANTICIPATION, OBVIOUS DEFENSES MIGHT --

16  WITH A DIFFERENT PRESENTATION OR DIFFERENT CROSS EXAMINATION

17  MIGHT HAVE CONVINCED SOME JURIES.  BUT, THE PREMISE IS

18  CONSIDERING THE PREVIOUS CONSIDERATION, THERE WASN'T EVIDENCE

19  THAT THIS WAS ACTUALLY CONSIDERED OR DECIDED BY DIRECTV.

20  MR. CROOK MAY HAVE MADE THE DECISION.  NO DISCUSSION THAT

21  MANAGEMENT LOOKED AT IT, EVALUATED IT, WEIGHED COST BENEFIT OR

22  ANYTHING LIKE THAT.  THIS ONE, THIS FACTOR TILTS TOWARD

23  FINISAR.

24          WHETHER DIRECTV MADE A GOOD FAITH EFFORT TO

25  AVOID INFRINGING A PATENT, FOR EXAMPLE, BY TAKING REMEDIAL