FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
111

1    ACTION BY CEASING INFRINGING ACTIVITY OR ATTEMPTING TO GO

2    AROUND THE PATENT, NO EVIDENCE OF ANY ATTEMPT TO AVOID

3    INFRINGEMENT.  THERE WAS SOME TESTIMONY ABOUT SOME FAIRLY CHEAP

4    ALTERNATIVES GOING AS HIGH AS $800,000, BUT NO EVIDENCE THEY

5    WERE IMPLEMENTED, NO EVIDENCE BY MANAGEMENT OR MR. CROOK OR

6    ANYBODY SAT DOWN AND SAID, WELL, WE'VE GOT THESE IMPLEMENT --

7    OR THESE ALTERNATIVES, BUT IF WE ADOPT THEM, THEY'LL IMPOSE

8    THESE COSTS OR MAKE THIS SERVICE THIS MUCH WORSE OR IT WILL

9    CAUSE OUR VIEWERS THESE PROBLEMS.  NO LIKELIHOOD OF ANALYSIS

10   OF, WELL, WE'VE GOT AN 80 PERCENT CHANCE OF PREVAILING ON

11   INVALIDITY, SO WE'VE GOT A -- WE DON'T REALLY NEED TO TAKE

12   THESE EFFORTS.  NO COST BENEFIT ANALYSIS, SO AGAIN THIS

13   FAVOR -- THIS FACTOR, I'M SORRY, MAKING A GOOD FAITH EFFORT TO

14   AVOID INFRINGING THE PATENT AT -- TILTS TOWARDS FINISAR.

15          WHETHER DIRECTV TRIES TO COVER UP ITS

16   INFRINGEMENT, NO EVIDENCE OF COVER UPS.  THEY KEPT ON WITH THE

17   SAME PROCEDURES THEY ALWAYS USED.  THEY TOOK SOME TIME IN

18   GETTING THEIR OPINIONS, BUT THAT'S NOT THE SAME AS A COVER UP.

19   THERE IS NO INDICATION OF HIDING OR DESTROYING DOCUMENTS.  TV

20   WAS OUT, AND THAT THEY THEMSELVES -- DIRECTV POINTS OUT, DIDN'T

21   MEAN THAT, YOU KNOW, SET TOP BOXES ARE THERE, BUT CLEARLY

22   LOOKED AT.  SO THAT ONE FAVORS DIRECTV.

23          WHETHER DIRECTV WOULD HAVE GONE ON A LEGAL

24   OPINION THAT APPEARED TO BE WELL SUPPORTED AND BELIEVABLE, THE

25   DEVISED METHOD IS NOT INFRINGED OR IT WAS INVALID, YES, THERE

1   WAS AN OPINION.  IT CAME AFTER THE LAWSUIT WAS FILED.  AND NO

2   DISCUSSION OF AN OPINION OR DISCUSSION BY MANAGEMENT OR MR.

3   CROOK EARLIER WHEN THEY FIRST GOT THAT LETTER.  SO THERE'S SOME

4   REASONABLE EFFORT ON INFRINGEMENT, BUT NONE ON ANALYSIS AND

5   VALIDITY.  SO, THE COURT CONCLUDES THE WILLFULNESS HERE IS NOT

6   THE DIRECT COPYING AND DELIBERATELY STEALING OF IDEAS OR

7   PIRATING OF EMPLOYEES OR SOMETHING LIKE THAT KIND OF

8   WILLFULNESS; BUT CONSIDERING THE FACTORS THAT ARE SUPPOSED TO

9   BE CONSIDERED AND THE ONES THAT ARE SET UP FOR THE JURY, THERE

10  WAS LEGALLY SUFFICIENT EVIDENCE FOR A JURY TO FIND WILLFULNESS.

11  AND SO THE JUDGMENT, AS A MATTER OF LAW, IS DENIED.

12          THE JMOL -- AND OBVIOUSLY BOTH SIDES MOVED TO

13  THAT, AND THAT'S PRETTY CLOSE TO THE ANALYSIS ON ANTICIPATION

14  THAT I JUST GAVE.  DIRECTV HAD THE BURDEN BY CLEAR AND

15  CONVINCING EVIDENCE.  IT SEEMED THAT THERE WAS A DISCUSSION OF

16  COMBINING REFERENCES AND ESPECIALLY THE MOTIVATION FOR DOING

17  THE COMBINATION WAS NEITHER CLEAR NOR CONVINCING.  THE BEST

18  EVIDENCE TO MOTIVATE TO COMBINE WAS PROBABLY WHAT CAME FROM

19  MR. EATON, AND HIS INFERENCE OF WHAT WAS GOING ON WITH VIDEO

20  TEXT.  BUT THE JURY IS ENTITLED TO CREDIT HIS DENIAL OF

21  OBVIOUSNESS OVER THE TESTIMONY OF DIRECTV'S WITNESSES, NO REAL

22  ATTEMPT WAS MADE TO USE EATON BY DEFENDANT FOR THAT PURPOSE.

23          THEN WE HAVE THESE SHORTHAND SUMMARIZATION OF

24  STEPS IN THE CLAIM.  THAT'S A LITTLE CONFUSION THERE, AND NO

25  REAL SHOWING THAT THESE ANIMATIONS AND SO FORTH WOULD HAVE BEEN

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
113

1    OBVIOUSLY SOMEONE SKILLED IN THE ART.  AND, YEAH, THE

2    PERFUNCTORY QUESTION IS ASKING IS HE GOING TO TESTIFY WHAT

3    SOMEONE SKILLED IN THE ART BACK THEN SHOULD HAVE KNOWN.  BUT

4    IT'S GOT TO BE CLEAR AND CONVINCING, NOT JUST A PERFUNCTORY

5    LOSS OR -- AGAIN, THE COURT FINDS WHEN YOU HAVE A BURDEN OF

6    PROOF THAT CLEAR AND CONVINCING EVIDENCE THERE WAS CONFLICTS IN

7    THE EVIDENCE, AND THERE'S JUST INSUFFICIENT EVIDENCE FOR THE

8    COURT TO CONCLUDE THAT NO REASONABLE JURY COULD HAVE FOUND THE

9    WAY THEY DID ON OBVIOUSNESS.  SO THAT JMOL IS DENIED.

10               NEXT WE TAKE A LOOK AT DAMAGES.  NOW HERE UNDER

11   35 USC 284, THE COURT MAY ENHANCE DAMAGES UP TO THREE TIMES.

12   AND IN GENERAL WHEN A JURY FINDS WILLFUL ENHANCEMENT, AN

13   ENHANCEMENT OF DAMAGES IS APPROPRIATE.  THAT'S SET OUT IN

14   RECORPORATION VERSUS PORTEC INC. CASE, AND WE SEE THAT AT 970

15   FED. 2D. 816, PAGES 826, 827.  THAT WAS AGGREGATED ON THE

16   GROUNDS BY THE BACHMAN VERSUS WESTVIEW INSTRUMENTS CASE WITH A

17   NINE FACTOR THAT'S SET OUT IN REED, BUT THAT NINE FACTOR

18   ANALYSIS HAS BEEN APPROVED AFTER MARKMAN IN SUCH CASES, SUCH AS

19   ODETICS VERSUS STORAGE TECHNOLOGY, 185 FED. 3RD. 1259 AT 1274

20   FED. CIRCUIT 1999, SO THE COURT WILL USES THOSE -- THAT

21   NINE-POINT ANALYSIS.  AND A LOT OF THIS ISN'T COVERED UNDER THE

22   WILLFULNESS, BUT WHETHER AN INFRINGER DELIBERATELY COPIED THE

23   IDEAS OF ANOTHER, NO EVIDENCE OF THAT.  THAT FACTOR TENDS

24   TOWARD DIRECTV.  WHETHER THE INFRINGER KNEW -- OR WHETHER THE

25   INFRINGER WHEN HE KNEW OF THE OTHER'S PATENT PROTECTION

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

114

1    INVESTIGATED THE SCOPE OF THE PATENT AND FORMED A GOOD FAITH

2    BELIEF THAT IT WAS INVALID OR NOT INFRINGED, AND THIS IS THE

3    SAME ANALYSIS I DID BEFORE IN FACTOR TWO OF WILLFUL ANALYSIS.

4    AND FOR THE SAME REASONS STATED, THIS FACTOR SUPPORTS

5    ENHANCEMENT.   THERE WAS SOME INVESTIGATION OVER A LONG PERIOD

6    OF TIME OR RELATIVELY LONG PERIOD OF TIME OF INFRINGEMENT NOT

7    AN INVALIDITY.

8                THE INFRINGER'S BEHAVIOR AS A PARTY TO

9    LITIGATION, BOTH SIDES WORKED HARD TO REPRESENT THEIR

10   INTERESTS, THE COUNSEL PROFESSIONAL ON BOTH SIDES.   BOTH SIDES

11   AT VARIOUS TIMES ATTEMPTED TO AVOID OR DELAY DISCLOSURE OF

12   EVIDENCE.   BUT THE COURT PERCEIVED THAT NOT AS A BAD FAITH, BUT

13   JUST BASED ON TECHNICAL DECISIONS OF THE LAWYERS, WHICH AS THE

14   COURT MENTIONED IN AN EARLIER RULING IS CONSIDERED IMPORTANT IN

15   PATENT CASES.   AND THAT WAS DEALT WITH BY THE EXCLUSION OF

16   LIMITATION OF EVIDENCE.   AND SO THIS COURT FINDS THAT THAT

17   FACTOR IN THIS CASE DOESN'T SUPPORT ENHANCEMENT.

18                DEFENDANT'S SIZE AND FINANCIAL CONDITION, BOTH

19   COMPANIES IN THIS CASE ARE LARGE AND WELL-FUNDED.   IT'S TRUE

20   DEFENDANTS PROBABLY LARGER THAN FINISAR.   NO SHOWING THAT

21   SOMEHOW HANDICAPPED FINISAR OR THAT SOMEHOW DEFENDANT TOOK

22   UNFAIR ADVANTAGE OF THEIR COMBINED SIZE.   THE FACT THAT THEY

23   HAVE -- MERELY THE FACT THAT THEY'RE BIG AND HAVE A LOT OF

24   MONEY IS REALLY NOT CONSIDERED A REASON TO IMPOSE ADDITIONAL

25   DAMAGES.   AND IT COULD BE, BUT THE AMOUNT OF DAMAGES WE'RE

1    TALKING ABOUT IN THIS CASE, WHAT PEOPLE TALKED ABOUT WAS 79

2    MILLION IS NOT VERY MUCH.  I GUESS AS ONE OF MY PARTNERS USED

3    TO SAY:  A WHOLE LOT BETTER THAN A POKE IN THE EYE OF A SHARP

4    STICK.  WE'RE TALKING ABOUT A LOT OF MONEY HERE; AND YEAH,

5    MAYBE NOT A LOT COMPARED TO 1.6 BILLION.  BUT I THINK IT'S

6    IMPORTANT TO GET DOWN TO REALITY.  THERE'S A LOT OF MONEY

7    INVOLVED HERE, EVEN FOR A LARGE CORPORATION.

8         THE CLOSENESS OF THE CASE, CLOSENESS OF THE --

9    THE CASE WAS CLOSE ON SEVERAL ISSUES.  INFRINGEMENT WASN'T A

10   CLOSE CALL PARTICULARLY IN THE COURT'S VIEW, BUT ANTICIPATION

11   AND OBVIOUSNESS WERE CLOSE.  WILLFULNESS FELL SOMEWHERE IN

12   BETWEEN.  THIS FACTOR DOESN'T STRONGLY SUPPORT AN ENHANCEMENT

13   OR A MAJOR ENHANCEMENT.  THE DURATION OF THE DEFENDANT'S

14   MISCONDUCT, IT'S UNCONTESTED DIRECTV HAS BEEN USING THE METHODS

15   SINCE THE PATENT WAS ISSUED.  BUT WHAT'S MORE IMPORTANT THERE'S

16   NO EVIDENCE OF ANY ATTEMPT TO CHANGE AFTER GETTING THE LETTER

17   IN 2004 OR OF ANY ATTEMPT TO DO A REAL RISK ANALYSIS ON AN

18   INFRINGEMENT CLAIM OR COST BENEFIT ANALYSIS OF THE ALTERNATIVE

19   CONTINUING.  THOSE WERE JUST WENT ON BUSINESS AS USUAL.  NOW,

20   MR. CROOK DID SOME THINGS, BUT NOTHING -- NO DISCUSSION OF

21   MANAGEMENT GETTING TOGETHER AND AGAIN DOING A REAL SOLID

22   ANALYSIS OF WHAT WAS GOING ON.  SO THIS FACTOR DOES SUPPORT

23   SOME ENHANCEMENT.  THE REMEDIAL ACTION BY THE DEFENDANT, AFTER

24   THE 2004 LETTER THERE WAS NONE.  SO, THIS FACTOR WOULD SUPPORT

25   ENHANCEMENT.

1          DEFENDANT'S MOTIVATION FOR HARM, NO EVIDENCE OF

2    A DELIBERATE PLAN TO HARM FINISAR.   DIRECTV WAS OPERATING

3    BEFORE PATENT WAS ISSUED.   THIS FACTOR DOES NOT SUPPORT

4    ENHANCEMENT.   WHETHER DEFENDANT ATTEMPTED TO CONCEAL ITS

5    CONDUCT, NO ATTEMPT BY DIRECTV TO CONCEAL WHAT THEY WERE DOING.

6    SO THAT ONE GOES IN DIRECTV'S FAVOR.

7          NOW THE POLICY OF SECTION 284 IS TO FULLY

8    COMPENSATE PLAINTIFF AND TO REMOVE ANY INCENTIVE TO INFRINGE IN

9    THE HOPE THAT THE ONLY DOWNSIDE IS GOING TO BE A JUDGMENT THAT

10   MERELY IMPOSES A REASONABLE ROYALTY.   THAT POLICY IS DISCUSSED

11   IN A LOT OF THE AUTHORITIES AND IN SOME OF THE CASES.   SO YOU

12   GOT A CASE OF CLEAR WILLFUL -- IN THAT CASE OF A CLEAR, WILLFUL

13   INFRINGEMENT AND THERE IS LOW ACTUAL DAMAGES, AN AWARD UP TO

14   THREE TIMES MIGHT FULLY IMPLEMENT CONGRESS'S POLICY TO DETER

15   INFRINGEMENT TO FULLY COMPENSATE THE INVENTOR.   IT CAN'T

16   REASONABLY BE ARGUED WHERE THERE'S NO COPYING OR STEALING OF

17   IDEAS AND NO ABUSE BY THE INFRINGER THAT WHERE INFRINGERS

18   ARE -- FOR EXAMPLE, $400 MILLION OVER THE TIME OF THE

19   INFRINGEMENT AND THE DAMAGE AWARD, FOR EXAMPLE, THE JURY COME

20   BACK WITH, SAY, A BILLION DOLLARS -- NEITHER OF THOSE NUMBERS

21   ARE WHAT WAS ASKED FOR IN THIS CASE -- IF SOME KIND OF BLIND

22   DOUBLING OR TREBLING WOULD BE ANYTHING BUT AN UNJUSTIFIED

23   TRANSFER OF WEALTH.   SO, THE COURT HAS TO CONSIDER NOT JUST

24   PERCENTAGES OF HOW MUCH ENHANCEMENT THERE WOULD BE, BUT THE

25   ABSOLUTE DOLLARS INVOLVED.   IT'S EASY TO SAY I'LL JUST DOUBLE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
117

1   IT.  WELL, AT THE $100,000 LEVEL, THAT'S ONE THING.  AT THE $79

2   MILLION LEVEL, THAT'S SOMETHING ENTIRELY DIFFERENT.  THERE HAS

3   TO BE SOME CAREFUL ANALYSIS OF THAT.  WE HAVE SUBSTANTIAL

4   DAMAGES AWARD BY THE JURY.  ON THE OTHER HAND, DIRECTV'S

5   METHODS RESULTS IN SUBSTANTIAL REVENUE.  EVEN THOUGH IT HAS

6   SUBSTANTIAL COSTS, WHICH RESULTS IN A HEALTHY PROFIT AND LIKELY

7   GOING TO BE EVEN MORE PROFITABLE IN THE FUTURE.

8            IF YOU HAVE A JURY FINDING OF WILLFULNESS, THE

9   COURT IS SAID BY LEGAL AND SUFFICIENTLY EVIDENCE, YOU HAVE

10  UNEXPLAINED DELAY IN INVESTIGATION OF AND CONSIDERATION OF

11  INFRINGEMENT, AND MORE IMPORTANTLY, INVALIDITY, GREAT DEAL OF

12  INCOME, ALTHOUGH ACCOMPANIED BY A VERY HIGH COST OPERATION.  SO

13  THE COURT IS FACED WITH IMPLEMENTING THE TWIN POLICIES OF

14  DETERRING INFRINGEMENT, ESPECIALLY WILLFUL INFRINGEMENT, FULLY

15  COMPENSATING FINISAR FOR USE OF ITS INVENTION DESCRIBED IN THE

16  SEVEN CLAIMS IN ISSUE.

17           SO, BASED ON ALL OF THAT, THE COURT IS GOING TO

18  ORDER AN ENHANCEMENT AND FIND AN ENHANCEMENT IS REASONABLE IN

19  THIS CASE BASED ON THE FACTORS THAT THE -- THE COURT HAS JUST

20  SET OUT OF $25 MILLION.  AND THAT'S A LITTLE BIT MORE THAN

21  30 PERCENT OF THE DAMAGES FOUND BY THE JURY.  BUT AGAIN, IT'S

22  NOT -- AS I SAID BEFORE, I'M NOT DOING THIS ON JUST A BLIND

23  PERCENTAGE BASIS.  I'M TRYING TO LOOK AT THE TOTAL ABSOLUTE

24  NUMBERS ALSO ON THAT.

25           NOW, THE NEXT QUESTION IS UNDER 35 USC, SECTION

1  285, THE COURT CAN AWARD REASONABLE ATTORNEY'S FEES TO THE

2  PREVAILING PARTY IN AN EXCEPTIONAL CASE.   THIS IS A TWO-STEP

3  PROCESS.   FIRST, THE DISTRICT COURT HAS TO DETERMINE IF THE

4  CASE WAS EXCEPTIONAL.   AND HERE THE PREVAILING PARTY HAS THE

5  BURDEN OF PROOF BY CLEAR AND CONVINCING EVIDENCE.   THAT'S SET

6  OUT IN PERRICONE VERSUS MEDICIS PHARMACEUTICAL COMPANY, 432

7  FED. 3RD. 1368 AT 1380, FIFTH CIRCUIT 2005.

8            AFTER DETERMINING THE CASE IS EXCEPTIONAL,

9  DISTRICT COURT HAS TO DETERMINE WHETHER ATTORNEY'S FEES ARE

10 APPROPRIATE.   WE SEE THAT ALSO IN THE PERRICONE CASE AND IN THE

11 CYBER CORPORATION VERSUS FAX TECHNOLOGIES, 138 FED. 3RD. 1448,

12 PAGE 1460, FIFTH CIRCUIT 1998.   NOW, THAT THEY'RE SERIOUSLY

13 DECLARING A CASE EXCEPTIONAL AND WITH WILLFUL INFRINGEMENT, BAD

14 FAITH, LITIGATION MISCONDUCT, UNPROFESSIONAL BEHAVIOR.   YOU SEE

15 THAT AT NQ VERSUS C CHANGE.   THAT'S AT 436 FED. 3RD 1317-1319,

16 FIFTH CIRCUIT 2006.   AND THEN OTHER CRITERIA INCLUDE THE DEGREE

17 OF CULPABILITY, CLOSEST TO THE QUESTIONS, LITIGATION BEHAVIOR,

18 AND OTHER FACTORS WHERE FEE SIFTING MAY SERVE AS INSTRUMENT OF

19 JUSTICE.   SEE THAT IN NATIONAL PRESTO INDUSTRIES, INC., VERSUS

20 WEST BEND COMPANY, 76 FED. 3RD, 1185, 1197, FIFTH CIRCUIT 1996

21 AND ALSO BROOK TREE VERSUS ADVANCED MICRO DEVICES, INC., 977

22 FED. 2ND. 1555, PAGE 1582, FIFTH CIRCUIT 1992.

23            AND THE COURT LOOKS AT THE S. C. JOHNSON & SON,

24 INC., VERSUS CARTER WALLACE, INC., TALKING ABOUT PAGE 781 FED.

25 2ND. 198, PAGE 201, FIFTH CIRCUIT 1986.   WELL, THAT'S NOW

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

119

1    GOING TO BE AN OLDER CASE.  EVEN AN EXCEPTIONAL CASE DOESN'T

2    REQUIRE IN ALL CIRCUMSTANCES TO BE AWARDED ATTORNEY'S FEES, AND

3    THEY GOING OVER SOME FACTORS THERE.  LOOKING AT FACTORS -- AND

4    ALTHOUGH THEY'RE VERY SIMILAR TO ONES WE'VE ALREADY LOOKED AT

5    ON EXCEPTIONALS.  TAKE A LOOK AT THE CLOSENESS OF THE CASE,

6    AGAIN AS THE COURT HAD SAID, CLOSE ON SEVERAL ISSUES, NOT ON

7    INFRINGEMENT PERHAPS, BUT ON ANTICIPATION OBVIOUS, WILLFULNESS

8    IS SOMEWHERE IN BETWEEN.  THIS FACTOR ISN'T STRONGLY IN SUPPORT

9    OF ATTORNEY'S FEES.  IT'S GENERALLY ACCEPTED IN THE UNITED

10   STATES USING THE AMERICAN RULE, COURTS SHOULDN'T ABROGATE THE

11   AMERICAN RULE AND SHIFT ATTORNEY'S FEES IN CASES WHERE THERE

12   ARE POTENTIALLY VALID AND HARD-FOUGHT ISSUES.  JUST BECAUSE YOU

13   LOSE DOESN'T MEAN YOUR ATTORNEY'S FEES SHOULD GO AGAINST YOU

14   ABSENT A STATUTE.

15           LITIGATION BEHAVIOR, AS I'VE SAID, BOTH SIDES

16   WORKED HARD TO REPRESENT THEIR CLIENT'S INTERESTS.  THE

17   COUNSEL, I THOUGHT, WERE PROFESSIONAL.  AGAIN, THERE WAS DELAYS

18   TRYING TO -- ATTEMPTS TO AVOID DISCLOSURE, AND THE COURT

19   PERCEIVED THAT AS TACTICAL, NOTHING EXCEPTIONAL, ATTORNEYS

20   MAKING TACTICAL CHOICES AND THE PREJUDICE DEALT WITH BY THE

21   COURT'S RULING ON LIMITING OR EXCLUDING EVIDENCE.  THIS DOESN'T

22   SUPPORT SHIFTING THE BURDEN ON ATTORNEY'S FEES.  THE CONDUCT OF

23   THE PARTIES, YOU KNOW, THIS HAS BEEN ANALYZED ABOVE.

24   PREVIOUSLY NO INDICATIONS DELIBERATE COPYING, NO THEFT OF

25   SECRETS, NO INDUCING EMPLOYEES TO COME OVER TO DIRECTV.

1   HANDLING OF THE SUIT WAS NOT PARTICULARLY EXCEPTIONAL IN A

2   COMPLICATED CASE LIKE THIS, ESPECIALLY GIVEN THE AMOUNT OF

3   MONEY INVOLVED.   THIS DOESN'T SUPPORT A FINDING THE CASE WAS

4   EXCEPTIONAL.

5           CULPABILITY OF INFRINGER, YES, DIRECTV INFRINGED

6   ON SEVEN CLAIMS OF THE PATENT.   BUT THEY HAD A GOOD DEFENSE ON

7   INDEFINITENESS ON OTHERS.   OTHER CLAIMS ARE NOT INFRINGED AT

8   ALL.   THEY WERE SLOW TO RESPOND, THE 2004 LETTER FROM FINISAR,

9   BUT AGAIN THE COMPANY WAS IN TURMOIL.   THE LAW FIRM WENT

10  THROUGH A CHANGE.   CONGRESS WENT OUT OF ITS WAY IN SECTION 285

11  TO REQUIRE CASES TO BE EXCEPTIONAL.   SO EVERY INFRINGER IS NOT

12  ENTITLED -- INTENDED TO PAY ATTORNEY'S FEES.   AND SO THIS

13  FACTOR HERE ON THE CULPABILITY OF INFRINGER GIVEN THAT IT'S NOT

14  EXTENSIVE OR NO MORE THAN OTHER PEOPLE FOUND INFRINGING DOESN'T

15  SUPPORT A FINDING OF EXCEPTIONALNESS OR AWARD.

16           WILLFUL INFRINGEMENT, THIS WAS FOUND BY THE

17  JURY.   AND THIS IS A FACTOR THAT WOULD SUPPORT AN AWARD OF

18  ATTORNEY'S FEES, BUT AS NOTED HERE THE WILLFULNESS IS NOT A

19  DELIBERATE COPYING OR POACHING OF EMPLOYEES TALENTS, SUPPORT IS

20  NOT AS STRONG AS IT MIGHT BE IN SOME CASES.   THEN THE COURTS

21  LOOK AT OTHER FACTORS.   FINISAR PREVAILED, NOT ON EVERY CLAIM.

22  ONLY SEVEN CLAIMS WERE FOUND TO BE INFRINGED, MANY HELD TO BE

23  INDEFINITE.   AND WHILE THERE IS OVERLAP IN THE FACTORS USED TO

24  DETERMINE EXCEPTIONALNESS AND ENHANCEMENT, THEY HAVE TO BE

25  ANALYZING BY THE POLICY REASONS BEHIND 284 AND 285.

1  ENHANCEMENT OF 284, COURT IS TRYING TO PUT THE PATENT HOLDER IN

2  POSITION IT WOULD HAVE BEEN ABSENT INFRINGEMENT TO DETER OTHERS

3  FROM INFRINGING.  BUT YOU'VE GOT ENHANCEMENT, YOU'VE GOT

4  PREJUDGMENT INTEREST AND COST TO ACCOMPLISH THIS.

5              CONGRESS WANTED MORE IN DECIDING ATTORNEY'S FEES

6  UNDER 285.  THEY COULD HAVE LEFT OUT THE WORD "EXCEPTIONAL."

7  THEY COULD HAVE HAD A C15 PROVISION LIKE IN THE CIVIL RIGHTS

8  ACT CASES WHERE BASICALLY IT'S PRETTY WELL ASSUMED IF YOU WIN A

9  CIVIL RIGHTS CASE, YOU GET ATTORNEY'S FEES.  WE'VE GOT A PATENT

10 CASE LIKE THIS WORTH MILLIONS, PERHAPS BILLIONS AT STAKE

11 BETWEEN WELL-FUNDED CORPORATIONS.  UNLIKE THE CIVIL RIGHTS

12 CASES WHERE YOU'RE TRYING TO ENCOURAGE PRIVATE ATTORNEYS

13 GENERAL TO TAKE ON UNPOPULAR AND DIFFICULT CASES, PROBABLY NOT

14 MUCH OTHER THAN THE RAW DIFFICULTY OF FLAUNTING THE LAW, NOT

15 REALLY A NEED TO ENCOURAGE ATTORNEYS TO TAKE ON THIS CASE FOR

16 THE SOCIAL GOOD.

17             SO FOR THESE REASONS, THE COURT FINDS THE CASE

18 IS NOT EXCEPTIONAL UNDER SECTION 285.  ATTORNEY'S FEES ARE NOT

19 GOING TO BE AWARDED.  JUDGMENT IS GOING TO BE AS THE JURY

20 AWARDED, $78,720,250 -- I'M SORRY, $78,720,250.25 WITH

21 PREJUDGMENT INTEREST.  AND THEN TAKING A LOOK AT THAT, THE

22 COURT NOTES THAT THE PARTIES HAVE AGREED THAT A SIX PERCENT

23 RATE SET OUT BY THE STATE OF TEXAS IS APPROPRIATE.  OBVIOUSLY,

24 IN A FEDERAL CASE THE COURT IS NOT BOUND BY THAT.  IT COULD

25 HAVE GONE AS HIGH AS -- THE PRIME RATE COULD HAVE BEEN DOWN TO

1    THE T BILL RATE, ALL KINDS OF RATES TO USE.  BUT IT DOES SEEM

2    THAT -- AND IN LIGHT OF THE DECISION, THE COURT -- AND THE

3    EVIDENCE IS GOING TO MAKE IT, IT DOES SEEM THAT THE

4    CALCULATIONS ON A PER SET TOP BOX METHOD AS SET OUT AT THE SIX

5    PERCENT RATE, AND IT ALSO DOES APPEAR SINCE THE IDEA HERE IS TO

6    COMPENSATE THE PLAINTIFF FOR THE LOSS OF THE USE OF THE MONEY,

7    THAT IT SHOULD BE COMPOUNDED ANNUALLY.

8              SO IT WILL BE AT THE SIX PERCENT RATE.  IT WILL

9    BE BASED ON THE AMOUNT AWARDED BY THE JURY AS SHOWN HERE ON

10   THE -- AND I CAN'T QUITE TELL FROM THESE EXHIBITS EXACTLY HOW

11   IT'S WORKING.  BUT WHAT I WANTED IS THAT BASED ON THE SET TOP

12   BOX CALCULATION COMPOUNDED ANNUALLY AS SHOWN IN THESE VARIOUS

13   EXHIBITS THAT BOTH SIDES SEEM TO HAVE ON SHOWING THE AMOUNTS

14   PER YEAR, WHICH IF I'M UNDERSTANDING THIS CORRECT OR CORRECTLY

15   IS GOING TO WORK OUT -- BUT I MAY HAVE TO DO SOME RECALCULATION

16   OF IT.  I THINK IT'S VARIOUS FIGURES ON HERE WAS 11 MILLION, 14

17   MILLION, 13 MILLION.  THERE MAY HAVE TO BE SOME RECALCULATION

18   OF IT, BUT IT WILL BE BASED ON THE -- THE SALES SHOWN EACH

19   PERIOD, BUT THEN COMPOUNDED ANNUALLY.

20             MR. ROBERTS:  YOUR HONOR, JUST TO SEE IF I'M

21   CORRECT, I BELIEVE YOU MISSPOKE WHEN YOU RECITED THE JURY'S

22   VERDICT.  I THINK YOU SAID 720,000 WHEN IT WAS 920,000.

23             THE COURT:  I MAY HAVE DONE THAT.  YOU'RE RIGHT.

24   $78,920,250.25.  THANK YOU.  I FIGURED BY NOW YOU-ALL WOULD BE

25   ASLEEP.  OKAY.  PLUS, THERE'LL BE AN ENHANCEMENT THAT THE COURT

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

123

1   EARLIER STATED OF THE 25 MILLION, AND THEN POST JUDGMENT

2   INTEREST ON ALL OF THAT AT THE STATUTORY RATE UNDER, I BELIEVE,

3   IT'S 28 USC, SECTION 1961.

4           THE NEXT ISSUE WE GET INTO IS WHETHER OR NOT

5   THERE SHOULD BE AN INJUNCTION.  AND THERE WAS SOME INDICATION,

6   DISCUSSION ABOUT ALL THE DIFFICULTIES IN FIGURING OUT THESE

7   DAMAGES AND WHETHER THERE SHOULD BE AN INJUNCTION AND SO FORTH.

8   BUT THE SCHEDULING ORDER MADE IT CLEAR THAT DAMAGES DISCOVERY

9   WAS SUPPOSED TO HAVE BEEN DONE EARLIER.  OBVIOUSLY WHETHER OR

10  NOT THERE SHOULD BE AN INJUNCTION OR A COMPULSORY LICENSE OR

11  WHATEVER IS SOMETHING THE PARTIES KNOW ABOUT IT, AND THE COURT

12  SEES IN THIS CASE GIVEN THE AMOUNT OF EVIDENCE, IT HAS NO

13  REASON TO BELIEVE THAT AT SOME FUTURE DATE -- I THINK I CAN

14  MAKE THAT DECISION NOW.

15          NOW 35 USC, SECTION 283 PROVIDES THAT THE COURTS

16  HAVING JURISDICTION, CAN GRANT INJUNCTION AND, OF COURSE, THE

17  PRINCIPLES OF EQUITY.  AND THE EBAY CASE WITH EBAY, INC.,

18  VERSUS MERCEXCHANGE, 126 SUPREME COURT 1837, THE SUPREME COURT

19  HAS SAID LET'S GO BACK TO THE -- WE WILL GO BACK TO THE

20  STANDARD FACTORS.  IN GOING THROUGH THESE, WE HAVE IRREPARABLE

21  INJURY.  THE EVIDENCE INDICATES TO THIS COURT THAT THERE IS

22  REALLY NO IRREPARABLE INJURY TO THE PLAINTIFF.  THEY HAVE

23  RAISED THIS ARGUMENT OF THE RIGHT TO EXCLUDE EVERYBODY ELSE,

24  AND THAT THAT PERHAPS COULD BE PRICELESS AND SHOULD BE PART OF

25  THE CONSIDERATION.  BUT IT'S ALSO UNCONTESTED THEY NEVER SOLD

1    THE RIGHTS TO THE PATENT, NEVER MADE THE SLIGHTEST EFFORT TO

2    EVER USE THE PATENT.  WITH NO SUCCESS AT ALL IN THE PAST, IT'S

3    A LITTLE FAR FETCHED TO SAY THEY CAN SELL EXCLUSIVE RIGHTS TO

4    COMPETITORS WHO WEREN'T INVOLVED IN THE SUIT.  IT'S EASY -- AND

5    YES, AS A PRACTICAL MATTER HAVING THIS VERDICT IS HELPFUL, BUT

6    THIS JUDGMENT DOESN'T DECLARE -- AND AS FAR AS I KNOW DISTRICT

7    COURTS DON'T DECLARE PATENTS VALID FOR ALL PURPOSES FOR EVEN

8    THE NEXT CASE.  WE KNOW THAT IN THIS CASE, THE PLAINTIFF PROVED

9    BY A PREPONDERANCE OF THE EVIDENCE THAT DIRECTV INFRINGES SEVEN

10   CLAIMS.  AND WE KNOW THAT DIRECTV FAILED TO PROVE INVALIDITY BY

11   CLEAR AND CONVINCING EVIDENCE.  THAT GIVES FINISAR AN ENHANCED

12   BARGAINING POSITION.  BUT IT'S NOT AN AUTOMATIC TICKET TO CASH

13   IN ON THE PATENT WITH OTHERS OR TO EXCLUDE EVERYONE.

14              AND THE COURT HAS TO BE A LITTLE CONCERNED ABOUT

15   THIS IDEA OF EXCLUSION IN A FIELD WHERE THERE ARE TWO

16   COMPETITORS.  AND THEN TAKING IN MIND CONGRESS THROUGH THE

17   ANTI-TRUST LAW HAS INDICATED AN AVERSION TO MONOPOLY,

18   ESPECIALLY A MONOPOLY THAT AFFECTS SO MANY PEOPLE.  AND IF THE

19   COURT WAS TO GRANT AN INJUNCTION, YES, MAYBE SOMETHING COULD BE

20   WORKED OUT; BUT FOR WHATEVER PERIOD THE INJUNCTION WAS IN

21   PLACE, YOU'D HAVE ONE COMPANY AS THE SOLE SATELLITE PROVIDER.

22   AND IT'S ALSO GOT TO BE RECOGNIZED IN ANTI-TRUST LAW, WHICH THE

23   COURT IS FAMILIAR WITH, KIND OF DEPENDS ON WHAT ADMINISTRATION

24   IS PUSHING IT.  SOME ADMINISTRATIONS PUSH HARDER THAN OTHERS.

25   WHO THE ATTORNEY GENERAL OF THE COUNTRY -- WHAT FOCUS THEY WANT

1  TO MAKE ON IT.  BUT CONGRESS HAS THAT ACT IN PLACE.  IT DOES

2  SEEM PERHAPS IMPRUDENT FOR A DISTRICT COURT TO SIMPLY DECIDE

3  THAT IT'S GOING TO ISSUE AN INJUNCTION THAT RESULTS IN A TOTAL

4  MONOPOLY OF SOMETHING LIKE SATELLITE TV FOR THE NATION.

5                 AND IN TERMS OF IRREPARABLE INJURY, GIVEN THE

6  FACT THAT THERE ARE DAMAGES AVAILABLE AND FUTURE DAMAGES

7  AVAILABLE, IT DOESN'T SEEM IRREPARABLE.

8                 REMEDIES AT LAW, FINISAR HAS GOT THE JUDGMENT

9  FOR THE FULL AMOUNT FOUND BY THE JURY, PLUS PREJUDGMENT

10  INTEREST, PLUS A SUBSTANTIAL ENHANCEMENT, PLUS COST OF COURT

11  WHICH THE COURT IS GOING TO AWARD, ALSO.  IT'S HARD TO ARGUE

12  THAT IT'S NOT BEEN FULLY COMPENSATED FOR DAMAGES TO DATE.  AND

13  THEN AS TO FUTURE, THE COURT IS GOING TO FIND A COMPULSORY

14  LICENSE TO ADEQUATELY COMPENSATE FINISAR FOR DIRECTV'S USE OF

15  THE INVENTIONS, ESPECIALLY SINCE FINISAR EVIDENTLY NEVER HAD

16  THE WILL NOR THE MEANS TO IMPLEMENT THE PATENT ITSELF.

17                 SO, HARDSHIP, THE HARDSHIP INVOLVED IN ENJOINING

18  DIRECTV WOULD BE ENORMOUS.  YES, IT'S TRUE THAT YOU CAN'T

19  REALLY CONSIDER YOURSELF TOO MUCH ABOUT PROFITS TO

20  CORPORATIONS.  IF YOU'VE GOT A THOUSAND EMPLOYEES, THOUSANDS OF

21  EMPLOYEES OUT OF WORK, RIPPLE EFFECT ON ALL THE CONTENT

22  PROVIDERS PROBABLY INCALCULABLE.  15 MILLION PEOPLE LOSE THE

23  AVAILABILITY TO VIEW THEIR TV.  SOME WOULD SAY THIS IS A

24  BLESSING, AND ONE OF THE BRIEFS SAID SOMETHING ABOUT THAT.  BUT

25  IT'S NOT A BLESSING TO INVALIDS OR SHUT-INS OR MILLIONS OF

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

126

1    RURAL PEOPLE WHO DEPEND ON TV FOR NEWS AND EVERYTHING ELSE.   ON

2    THE OTHER HAND, FINISAR IS HARD PRESSED TO SHOW A HARDSHIP IN

3    RECEIVING OVER A $100 MILLION FROM A PATENT WHICH HAS BEEN ON A

4    SHELF FOR SOME TEN YEARS WITH NO RETURN AT ALL, ESPECIALLY WHEN

5    THERE HASN'T BEEN A PENNY INVESTED IN ITS DEVELOPMENT OR

6    IMPLEMENTATION AFTER ISSUANCE ACCORDING TO -- ACCORDING TO THE

7    EVIDENCE.   AN APPROPRIATELY WORDED COMPULSORY LICENSE COULD

8    CONTINUE THE FLOW OF INCOME AND STILL ALLOW FINISAR TO MARKET

9    THE PATENT NOW, AND IT HAS THE ANTI-BARGAINING TOOL OF THE JURY

10   VERDICT AND JUDGMENT.

11                AND THEN AS FAR AS PUBLIC INTERESTS, THE COURT

12   CAN'T SEE ANY PUBLIC INTEREST SERVED BY ENJOINING DIRECTV.   THE

13   PUBLIC POLICY OF THE TERM INFRINGEMENT HAS FOR REASONS

14   PREVIOUSLY DISCUSSED AND ADDRESSED BY THE MONEY JUDGMENT.

15   THERE'S NO PUBLIC INTEREST IN ARBITRARILY LIMITING SATELLITE TV

16   TO MILLIONS OF VIEWERS.   THE WHOLE PATENT SYSTEM ITSELF IS A

17   PUBLIC INTEREST IN TECHNOLOGY BEING USED AND IMPROVED UPON.   SO

18   THE COURT DOESN'T SEE THAT THERE'S -- PUBLIC INTEREST WOULD BE

19   SERVED BY AN INJUNCTION.   SO THE REQUEST FOR AN INJUNCTION IS

20   DENIED.

21                THEN WE GET INTO THE COMPULSORY LICENSE, AND

22   WE'VE HAD A LOT OF TESTIMONY ABOUT THAT TODAY.   COMPULSORY

23   LICENSE CAN BE GRANTED TO A PATENTEE WHO'S BEEN UNABLE TO

24   PREVAIL IN A REQUEST FOR INJUNCTIVE RELIEF.   AND FOSTER VERSUS

25   AMERICAN MACHINE AND FOUNDRY COMPANY, 492 FED. 2D. 1317, PAGE

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

127

1   1324, FED. CIRCUIT.  THIS IS -- MAY NOT BE FED. CIRCUIT.  IT'S

2   A 1974 CASE.  AND THE PLAINTIFF IN THEIR BRIEF ASSERTS THAT

3   AFTER REVIEWING THE GEORGIA-PACIFIC FACTOR, THE COURT SHOULD

4   AWARD A REASONABLE ROYALTY OF THREE PERCENT OF REVENUE.

5   DEFENDANTS CONTEND THAT DAMAGES SHOULD BE A $1.32 PER SET TOP

6   BOX.

7             THERE SEEMS TO BE SOME DISCREPANCY.  SOME OF THE

8   EXHIBITS TALK ABOUT 55-MILLION SET TOP BOXES, BUT I THINK

9   MR. DONALDSON TESTIFIED IN HIS MOST RECENT REPORT IT WAS

10  59-MILLION SET TOP BOXES DURING THE DAMAGE PERIOD, AND THERE'S

11  SOME INDICATION THERE'S LIKELY TO BE 15 MILLION COMING UP THIS

12  COMING YEAR.  THE COURT RECOGNIZES THAT THE GEORGIA-PACIFIC

13  FACTORS ARE FREQUENTLY USED IN TERMS OF INSTRUCTING THE JURY ON

14  A REASONABLE ROYALTY IN A HYPOTHETICAL SITUATION IN THE PAST;

15  BUT IT DOESN'T SEE ANY REASON AT ALL WHY THESE SAME FACTORS

16  CAN'T BE USED IN -- TO HELP THE COURT ANALYZING WHAT WOULD BE

17  AN APPROPRIATE ROYALTY AMOUNT.  SO LOOKING AT THAT THE

18  ROYALTIES RECEIVED BY THE PATENTEE FOR LICENSING THE PATENT

19  SUIT, THERE HASN'T BEEN ANY ROYALTIES RECEIVED BY THEM IN THE

20  PAST, NONE AT ALL.  NO ONE'S TAKEN THEM UP ON IT.  THERE WAS

21  SOME TESTIMONY ABOUT UNACCEPTED OFFERS.  TO SELL; UNACCEPTED

22  OFFERS, TO BUY.  IN THE COURT'S MIND, THAT'S REALLY WEAK

23  EVIDENCE.  THE -- WHAT WE HAVE, OF COURSE, IS THE JURY VERDICT,

24  BUT THE JURY DETERMINED WHAT'S IN THE PAST.  IT'S A LITTLE

25  DIFFICULT TO FIGURE OUT WHAT THAT WAS.  IT SEEMS MOST LIKELY IT

1    WAS ON A SET TOP BOX BASIS.  HARD TO BELIEVE THEY WOULD HAVE

2    GONE THROUGH A .14 ROYALTY.  REALLY, THAT'S NOT A BIG CONCERN

3    THERE UNDER THE -- UNDER THE GEORGIA-PACIFIC ANALYSIS.

4            THE COURT WOULD INDICATE THAT ITS OPINION THAT

5    THE GROSS REVENUE MODEL IS SOMEWHAT UNWORKABLE BECAUSE IT

6    DOESN'T CONSIDER COST.  AND YOU'VE GOT -- ESPECIALLY IN

7    INDUSTRY WHERE IT'S NECESSARY TO HAVE A NUMBER OF DIFFERENT

8    PATENTS TO MAKE THE SYSTEM WORK.  YOU'VE GOT THE -- WELL, THE

9    GEM STAR, THE IMPEG, THE DOLBY, WHATEVER GETS INVOLVED IN THE

10   DISH ITSELF, AND THE SET TOP BOX STUFF.  THERE'S A LOT OF

11   PATENTS INVOLVED THERE, AND IF EVERY ONE OF THEM HAD, SAY,

12   THERE'S 10 OR 15 OR MORE, A FEW PERCENT OF REVENUE, DIRECTV

13   COULD NEVER RUN A BUSINESS BECAUSE IT HAS NOTHING TO DO WITH

14   COST.  AND THIS IS AN INDUSTRY WITH HUGE COSTS, AT LEAST THE

15   BIG NUMBERS.

16           BUT I HEARD NO TESTIMONY THAT SHOWED ME HOW THE

17   ECONOMIC WAS WORKABLE BUT BASE IT ON GROSS REVENUE OR THAT

18   ANYBODY ELSE EVER BASED ON GROSS REVENUE.  IT WOULD SEEM TO ME

19   TO BE A VERY FOOLISH BUSINESS DECISION TO DO IT ON THAT WHEN

20   YOU COULD HAVE GROSS REVENUE OF A BILLION DOLLARS A YEAR, BUT

21   COST OF 1.2 BILLION.  AND YOU'RE GOING TO GIVE ANOTHER THREE

22   PERCENT OF THAT UP.  THAT DOESN'T MAKE -- THAT DOESN'T SEEM TO

23   BE GOOD BUSINESS SENSE.  THE COURT HAS TO COME UP WITH

24   SOMETHING ELSE.

25           LOOKING AT FACTOR TWO, THE RATES PAID BY

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06                                        129

1   LICENSEE FOR USE OF OTHER PATENTS, COMPARABLE TO THE PATENT

2   SUIT, WE HAVE A RANGE, IMPEG STARTING AT $4 GOING DOWN TO 2.50

3   BASED ON VOLUME.  STARSIGHT, 3.50 TO 5.50 PER BOX.  THAT'S A

4   GROUP OF SEVEN PATENTS; THE DOLBY, 12 CENTS TO $1.65 PER UNIT

5   BASED ON VOLUME; AND THOMPSON, 2.50 PER BOX; GEM STAR, 20 CENTS

6   PER SUBSCRIBER PER MONTH; MACROVISION, THAT ONE IS NOT REALLY

7   RELATED.  THAT'S BASED ON INCOME FROM A SPECIFIC THING, NAMELY,

8   PAY PER VIEW MOVIES OR PAY PER VIEW THINGS.  SO THAT'S, I

9   THINK, IMPORTANT FACTORS IN THERE LOOKING AT THAT RANGE IN

10  THERE, AND THEN COMPARING THIS PARTICULAR PATENT, WHICH

11  OBVIOUSLY IS IMPORTANT BASED ON THE JURY'S FINDINGS.  AND BASED

12  ON THE COURT'S OWN REVIEW OF THE PATENT ITSELF.  THAT WOULD

13  SUPPORT A COMPULSORY LICENSE BASED ON A ROYALTY PER SET TOP

14  BOX, ESPECIALLY IN LINE WITH WHAT WE SEE IN THE IMPEG LICENSE

15  WHERE THEY'VE TAKEN CARE OF THE PROBLEM.  PLAINTIFFS PROPERLY

16  BROUGHT UP ABOUT WHAT YOU CALL A SET TOP BOX.

17          WELL, EVIDENTLY IT SEEMS THAT THAT WAS BROUGHT

18  UP BEFORE BY OTHER PEOPLE, AND IT DEPENDS ON THE -- I DON'T

19  REMEMBER IF IT WAS ENCODERS OR -- ENCODERS OR TRANSPONDERS.

20  THEY'RE -- I'M SORRY, I'M DRAWING A BLANK ON A WORD, BUT

21  MR. TOUTON BROUGHT THAT UP, AND I ALSO SAW IT IN THE IMPEG

22  LICENSE.  SO THAT MAKES A USEFUL FRAMEWORK.

23          THEN WE LOOK AT THE THIRD FACTOR, NATURE AND

24  SCOPE OF THE LICENSE IS EXCLUSIVE OR NONEXCLUSIVE OR RESTRICTED

25  BY TERRITORY OR WITH RESPECT TO WHERE PRODUCTS MAY BE SOLD.

1    NOT GOING TO BE AN EXCLUSIVE LICENSE.  OBVIOUSLY, THEY CAN SELL

2    IT TO OTHERS.  DOESN'T SEEM TO RESTRICT THEM BY TERRITORY.

3    THAT WOULD INDICATE TO HAVE A LOWER VALUE BECAUSE IT'S NOT

4    EXCLUSIVE, AND IT'S PROBABLY IN VIOLATION OF ANTI-TRUST IF IT'S

5    ACTUALLY COVERED EVERYBODY ELSE TO BE PUTTING RESTRICTIONS ON

6    NOT BEING ABLE TO GO TO ECHOSTAR OR ANYBODY ELSE.  THE LICENSOR

7    ESTABLISHED POLICY IN MARKETING PROGRAMS TO MAINTAIN THIS

8    PATENT MONOPOLY BY NOT LICENSING OTHERS TO USE THE PATENT OR BY

9    IMPOSING SPECIAL CONDITIONS SINCE LICENSOR NEVER HAS LICENSED

10   THIS PARTICULAR PATENT, HAS MADE NO ATTEMPTS TO PRESERVE THE

11   MONOPOLY.  AND, ACTUALLY, THERE IS TESTIMONY THEY WENT OUT AND

12   TRIED AND TRIED AND TRIED TO SELL IT.  NEVER COULD.  BUT THEY

13   WEREN'T TRYING TO MAKE IT EXCLUSIVE, AND THEY WEREN'T DOING IT

14   THEMSELVES.  THEY WEREN'T TRYING TO MAINTAIN THEIR OWN

15   MONOPOLY.  SO THAT FACTOR WOULD TEND TO LOWER THE RATE.

16         THE COMMERCIAL RELATIONSHIP BETWEEN LICENSER AND

17   LICENSEE, ARE THEY COMPETITORS?  NO, THEY'RE NOT COMPETITORS.

18   ARE THEY INVENTOR AND PROMOTER?  NOT EXACTLY, BUT OBVIOUSLY THE

19   MORE THESE BOXES AND THE BETTER BUSINESS THAT DIRECTV DOES, THE

20   BETTER OFF IT'S GOING TO BE FOR FINISAR, SO THAT AGAIN WORKS

21   SOMEWHAT IN FINISAR'S FAVOR.

22         AND GETTING INTO THE TESTIMONY ABOUT VOLUME,

23   LOWERING THE NUMBER, OBVIOUSLY FINISAR IS GOING TO HOPE FOR

24   HIGHER VOLUME.  SO YOU WOULDN'T WANT TO SET THE PRICE SO HIGH

25   THAT YOUR ELASTICITY DEMAND WOULD COME -- WOULD SET IN.  YOU

1  DON'T WANT TO SET IT SO LOW THAT THEY'RE NOT REALIZING FULL

2  VALUE.

3          NUMBER SIX, THE EFFECT OF SELLING THE PATENT

4  SPECIALITY AND PROMOTING SALE OF OTHER PRODUCTS OF LICENSEE.  I

5  DIDN'T SEE ANY EVIDENCE AT ALL THAT USE OR NONUSE OF THE PATENT

6  IS GOING TO HELP THE CABLE BUSINESS FINISAR IS IN, THE KIND OF

7  BUSINESS THEY ALREADY HAVE ALONG WITH THEIR PATENTS THEY HAVE.

8  THE EXISTING VALUE, THE INVENTIONS, THE LICENSOR, THE GENERATOR

9  OF SALES, THE NONPATENTED ITEMS, DOESN'T SEEM -- NO EVIDENCE OF

10  THAT -- OR EVEN THEIR PATENTED ITEMS DOESN'T SEEM TO HELP.  THE

11  EXTENT THAT SUCH DERIVATIVE OR CONVEYED SALES, THAT'S AT ZERO.

12  THAT WOULD TEND TO DRIVE THE VALUE OF THIS DOWN.

13          THE DURATION OF THE PATENT AND THE TERMS OF THE

14  LICENSE, WE'VE TAKEN CARE OF PAST DAMAGES, AND NOW IT GOES UP

15  ANOTHER SIX YEARS.  OBVIOUSLY, FINISAR SHOULD BE ENTITLED TO

16  RECEIVE THE FULL VALUE THAT IT HAS.

17          THE ESTABLISHED PROFITABILITY OF THE PRODUCT

18  MADE UNDER THE PATENT, IT'S A COMMERCIAL SUCCESS IN ITS CURRENT

19  POPULARITY.  OBVIOUSLY, IT'S POPULAR.  WE GOT 15 MILLION

20  VIEWERS.  WE'VE GOT REVENUES DEPENDING ON WHO YOU'RE BELIEVING,

21  VERY, VERY HIGH.  PROFITS AGAIN DEPENDING ON WHICH KIND

22  YOU'RE -- OPERATING PROFITS OR OTHER PROFITS, PROFITS ARE QUITE

23  HIGH.  OBVIOUSLY, DIRECTV WANTS TO MAINTAIN THOSE.  AND IT IS

24  ALSO OBVIOUSLY FINISAR'S -- OR PROFIT IF FINISAR GETS ITS FAIR

25  SHARE.  AND THIS, I GUESS, IS ONE REASON WHY THE REVENUE MODEL

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

132

1    DOESN'T WORK BECAUSE REGARDLESS OF WHAT IT IS PER SET TOP BOX,

2    DIRECTV AND REGARDLESS OF HOW MANY PATENTS DIRECTV HAS TO BUY

3    PER SET TOP BOX, HE CAN ALWAYS DEAL WITH THAT COST IN ITS FEE

4    STRUCTURE.  BUT WHEN YOU'RE DOING IT ON A REVENUE BASIS, IT

5    DOESN'T MATTER HOW YOU RAISE FEES; YOU ALWAYS CREATE MORE

6    PERCENTAGE OF THAT GROSS REVENUE REGARDLESS OF WHAT YOUR COST

7    WERE.  AND THAT'S BEEN A -- THAT'S PROBLEMATIC IN THE COURT'S

8    MIND AS TO WHY -- IT'S GOT TO BE BASED ON SOME -- SOME SUM THAT

9    THEN CAN BE DEALT WITH.  AND GEM STAR DEALS WITH IT ON A

10   MONTHLY BASIS PER SUBSCRIBER.  THAT'S ANOTHER WAY OF DOING IT.

11   AT LEAST YOU'VE GOT A COST THAT'S KNOWN AND THEN CAN BE HANDLED

12   IN YOUR FEE STRUCTURE.  BUT FOR ALL THE OTHER TECHNOLOGY, IT

13   DOES SEEM TO BE PER SET TOP BOX.

14          THIS IS A PROFITABLE BUSINESS.  AND WHATEVER FEE

15   IS SET CAN BE DEALT WITH.  IT DOESN'T -- THERE IS NO INDICATION

16   THAT DEMAND IS INELASTIC BASED ON PRICE OR IN THE RANGE WE'RE

17   TALKING ABOUT HERE.  UTILITY AND ADVANTAGE OF THE PATENT

18   PROPERTY OVER THE OLD MODE OF DEVICES, IF ANY, IT WOULD BE

19   USEFUL LOOKING UP SIMILAR RESULTS.  NOT MUCH TESTIMONY ABOUT

20   THAT AT ALL OTHER THAN MR. EATON TELETEXT BEING SOMEWHAT

21   SIMILAR AND PERHAPS SOME FURTHER INVESTIGATION IT WOULD BE MORE

22   SIMILAR THAN WHAT WAS BROUGHT OUT.  BUT OBVIOUSLY THERE'S SOME

23   UTILITY HERE AS SEEN BY THE SUCCESS OF THE DIRECTV.

24          THE NATURE OF THE PATENT INVENTION, IT'S A

25   METHOD, THE CHARACTER OF THE COMMERCIAL IMBIBEMENT AS OWNED AND

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
133

1   PRODUCED BY THE LICENSOR, NONE, THEY HAVEN'T USED IT.  THE

2   BENEFITS TO THOSE WHO USED HAVE USED INVENTION, ALREADY GOT THE

3   TESTIMONY IN OF THEIR LARGE REVENUES ALONG WITH HIGH COST, OF

4   COURSE, RESULTING IN A HEALTHY PROFIT.

5          ELEVEN, EXTENT TO WHICH THE INFRINGERS MADE USE

6   OF THE INVENTION.  BASED ON THE JURY'S VERDICT, THEY HAVE BEEN

7   USING THAT INVENTION SINCE -- SINCE DAY ONE AND USING IT TO

8   THEIR ADVANTAGE TO GROW A VERY HEALTHY BUSINESS.  ANY EVIDENCE

9   PROBATIVE AS TO VALUE OF THAT USE, WE'VE ALREADY GOT THAT IN.

10  THE COURT HAS ALREADY DISCUSSED THAT IN TERMS OF THE REVENUES

11  AND THE PROFITS.  THE PORTION OF PROFIT OR THE SELLING PRICE

12  MAY BE CUSTOMARY IN A PARTICULAR BUSINESS OR IN COMPARABLE

13  BUSINESSES TO USE -- FOR THE USE OF THE INVENTION OR ANALOGOUS

14  INVENTIONS, VERY LITTLE TESTIMONY ABOUT THAT.  BOTH -- ALL THE

15  EXPERTS WERE BASICALLY SAYING THEY COULDN'T REALLY TELL -- EVEN

16  FINISAR EXPERTS COULDN'T REALLY TELL HOW IMPORTANT THIS WAS.

17  IT WAS IMPORTANT, BUT IS IT MORE IMPORTANT THAN THIS?  IS IT

18  MORE IMPORTANT THAN THE SATELLITE, IS IT MORE IMPORTANT THAN

19  IMPEG, IS IT MORE IMPORTANT THAN GEM STAR OR DOLBY OR ANY OF

20  THESE OTHERS?  BASED ON THE EVIDENCE BEFORE THE COURT, IF YOU

21  REMOVE ANY ONE OF THESE KEY ITEMS, THE SYSTEM BREAKS DOWN.  SO

22  IT'S IMPORTANT, BUT NOT NECESSARILY MORE IMPORTANT THAN THE 200

23  SOME-ODD PATENTS IN THE IMPEG SYSTEM OR THE OTHERS.  SO THAT

24  WOULD AGAIN GO TOWARDS KEEPING THE RATE WITHIN THE RANGE

25  DISCUSSED IN ITEM NUMBER TWO, THE RATES PAID BY THE LICENSEE

1   FOR USE OF OTHER PATENTS.

2           THIRTEEN -- FACTOR 13 IS VERY SIMILAR.  THE

3   COURT IS GOING TO REALIZE THE PROFIT SHOULD BE CREDITED TO THE

4   INVENTION AS DISTINGUISHED FROM NONPATENTED ELEMENT.  THE

5   MANUFACTURING PROCESS, BUSINESS RISK SIGNIFICANT FEATURES OR

6   IMPROVEMENT HEADED BY INFRINGER.  I THINK THIS IS IMPORTANT

7   BECAUSE AS MR. DONALDSON AGREED, VERY HIGH COST OF ENTRY,

8   VARIOUS ENTRY IN THIS CASE.  LITERALLY BILLIONS OF DOLLARS TO

9   GET INTO THIS BUSINESS.  I MEAN, PUTTING UP THREE SATELLITES.

10  THERE WAS A LOT OF TALK ABOUT, WELL, THEY HAVE ON HAND CASH OF

11  SEVERAL BILLION DOLLARS.  DEFENDANT NEVER REALLY CAME BACK AND

12  SPENT MUCH TIME ON THAT, BUT THE COURT HAS -- YOU KNOW, AT

13  LEAST NOT DIRECTLY TO THE JURY.  BUT THE COST AS BROUGHT OUT

14  WERE ALSO VERY, VERY HIGH.  SO HOW MUCH CASH DO THEY HAVE ON

15  TIME AND ONE PARTICULAR TIME IS NOT A KEY HERE, AND NO ONE, I

16  THINK, CAN REASONABLY SAY THAT THIS INVENTION SHOULD BE

17  CREDITED WITH 25 PERCENT OF OR SOME OTHER HUGE PERCENT OF THOSE

18  GROSS REVENUES THAT CAME IN THAT HAVE TO BE INVOLVED IN

19  AMORTIZATION.  YOU GOT A SATELLITE UP THERE THAT'S GOING TO

20  HAVE A DECAYING ORBIT.  IT SOMETIMES IS GOING TO HAVE TO BE

21  REPLACED.  I DON'T KNOW WHAT IT COSTS NOW TO LAUNCH A

22  SATELLITE, BUT IT'S SOMETHING IN A VERY HIGH RANGE.  SO YOU

23  TALK ABOUT YOUR REALIZABLE PROFIT.  YOU CAN'T JUST BE LOOKING

24  AT TOTAL CASH ON HAND.  YOU HAVE TO CONSIDER AMORTIZATION.  YOU

25  HAVE TO BE LOOKING AT ONE OF THE PROFIT MEASURES, WHETHER IT'S

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
135

1   THE 560 MILLION -- YOU CALL IT OPERATING PROFIT OR THE ONE

2   BILLION SOME ODD DEPENDING ON WHICH YOU LOOKED AT.  YOU'RE

3   LOOKING AT THAT.  AND AGAIN THE PROBLEMS OF DOING IT BY

4   REVENUE, I'VE ALREADY EXPLAINED.  BUT SEEING AS THIS -- IS THIS

5   PATENT SEEMS TO BE COMPARABLE TO SOME OF THE OTHERS IN THE

6   RANGE OF THOSE SEEMS -- SEEMS TO BE PRACTICAL AND JUSTIFIABLE.

7            FINALLY GET TO THE OPINION TESTIMONY OF

8   QUALIFIED EXPERTS, AND THE COURT HAS CONSIDERED THAT.  THERE'S

9   OBVIOUSLY A WIDE VARIANCE.  I EXPLAINED WHY I DON'T THINK THE

10  USE OF A FACTOR BASED ON REVENUE IS APPROPRIATE.  ON THE OTHER

11  HAND, GIVEN THE RATES, FACTOR NUMBER TWO, THE 30 CENTS PER BOX

12  OR EVEN THE 60 CENTS PER BOX IS APPROPRIATE EITHER.  BASED ON

13  THE JURY'S VERDICT, THIS IS -- THIS IS INFRINGEMENT, AND BASED

14  ON ALL THE EVIDENCE IT'S AN IMPORTANT PATENT.

15           AND THEN THE LAST FACTOR THAT'S SET OUT IN IN

16  THE GEORGE-PACIFIC CASE IS THE -- WHAT A REASONABLE BUYER WOULD

17  HAVE ACCEPTED IT.  BASICALLY WHAT A REASONABLE BUYER WOULD

18  ACCEPT IT OR REASONABLE SELLER WOULD HAVE SOLD FOR OR WHAT THEY

19  WOULD HAVE AGREED UPON AT THE TIME THE INFRINGEMENT BEGAN.

20  BASICALLY THE REASONABLE BUYER, REASONABLE SELLER TEST.  HAVE

21  TO LOOK AT THAT.  IT'S A LITTLE BIT ARTIFICIAL IN THAT NOW

22  WE'VE ALREADY GOT A JURY VERDICT.  BUT AGAIN LOOKING AT WHAT IS

23  COMMERCIALLY REASONABLE, FACTOR TWO RAISED -- COMES UP PRETTY

24  HEAVILY.

25           BASED ON ALL OF THAT, THE COURT IS GOING TO IN

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06
136

1    LIEU OF ENJOINING DIRECTV FROM OPERATING ENTER JUDGMENT THAT

2    THERE WILL BE A COMPULSORY LICENSE AT THE RATE OF $1.60 PER SET

3    TOP BOX.

4              NOW, TO EXPLAIN, I GUESS, FOR THE HIGHER COURT

5    HOW THE COURT ARRIVES AT THAT, THERE IS EVIDENCE THAT IMPEG,

6    FOR EXAMPLE, IS AT 2.50 NOW BASED ON THE VOLUME BECAUSE IMPEG

7    INVOLVES SOME 200 PATENTS.  THE STARSIGHT IS A HIGHER PER BOX,

8    BUT IT HAD ABOUT SEVEN PATENTS RELATED TO THE PROGRAM.  DOLBY,

9    WHICH THE COURT'S UNDERSTANDING, WAS BASICALLY A SOUND

10   ENHANCEMENT SYSTEM, HAS A LOWER RATE THAN THE 12 CENTS GIVEN

11   CURRENT VOLUME.  BUT THAT'S PROBABLY NOT AS IMPORTANT AS THE

12   METHOD FOR THE ENTIRE SYSTEM.  SO PERCEIVING WHAT THE EVIDENCE

13   IS AND WHAT HAS BEEN DONE IN OTHER PATENTS FOR MULTIPLE GROUPS

14   OF PATENTS WHICH SEEM JUST AS IMPORTANT, AND THEN TAKING A LOOK

15   AT THE TOTAL PROFITS THAT WERE ACTUALLY INVOLVED, THE COURT

16   CONCLUDES THAT A REASONABLE ROYALTY OF $1.60 PER SET TOP BOX

17   GOING INTO THE FUTURE WOULD BE REASONABLE.

18             NOW AN ARGUMENT COULD BE MADE, WELL, THAT SEEMS

19   TO BE MORE THAN WHAT THE JURY DID.  WELL, FIRST OF ALL, WE

20   DON'T KNOW WHAT THE JURY DID.  SECOND, WE'RE NOT -- EVEN IF YOU

21   MULTIPLY OR DIVIDE IT OUT TO COME UP WITH $1.32, THAT'S IN THE

22   PAST.  A DOLLAR BACK IN 1999 OR WHATEVER ISN'T WORTH AS MUCH AS

23   A DOLLAR TODAY.  AND SO THEY'RE LOOKING AT THE PAST; I'VE GOT

24   TO LOOK ON UP TO THE FUTURE.  I WILL STATE RIGHT NOW THAT IT'S

25   THE COURT'S INTENT THAT THIS PROBLEM OF SET TOP BOX,

```
1   ENTERTAINMENT CENTERS AND SO FORTH CONTROLLING MULTIPLE TV'S IS

2   GOING TO BE SUBJECT TO THE SAME KIND OF ACCOUNTING AS IN THE

3   IMPEG LICENSE WHERE IF THAT OCCURS, THEN IT WINDS UP BEING

4   CONSIDERED AS TWO SET TOP BOXES OR THREE SET TOP BOXES.  I'M

5   STATING THAT AS MY INTENT BECAUSE I'M NOT SURE IN TERMS OF THE

6   JUDGMENT I CAN CRAFT OUT THE ENTIRE LICENSE AGREEMENT.  BUT IF

7   A DISAGREEMENT COMES UP, I WANT BOTH SIDES TO UNDERSTAND THAT

8   THAT'S THE KIND OF THING I'M GOING TO BE LOOKING AT.

9   OBVIOUSLY, THE COURT RETAINS JURISDICTION.  IF A PROBLEM COMES

10  UP, I'LL HAVE TO DEAL WITH IT.  I'M HOPING THAT WON'T BE

11  NECESSARY, IF YOU'VE GOT AN IDEA OF WHAT MY INTENT IS AT THAT

12  TIME.

13          AGAIN, THE COURT CONSIDERS THAT FINISAR IS THE

14  PREVAILING PARTY AND IS ENTITLED TO COST.  RECOVERY OF COSTS IN

15  A FEDERAL SUIT IS SET OUT IN FEDERAL STATUTES.  THOSE ARE TO

16  BE, AS ALWAYS, THEY WIND UP BEING SUBMITTED TO THE CLERK OF THE

17  COURT.  I MEAN, THE RULE -- COUNSEL ARE WELL FAMILIAR WITH THE

18  RULES ON THAT.  COSTS DO NOT INCLUDE ATTORNEY'S FEES.  THIS

19  ISN'T A CIVIL RIGHTS CASE.  YES, SIR.

20          MR. ROBERTS:  ONE POINT OF CLARIFICATION.  I

21  KNOW SOME COURTS AWARD EXPERT WITNESS FEES AS PART OF THE COST.

22  OBVIOUSLY THOSE ARE IN PATENT CASE.  THE COURT HAS HEARD

23  TESTIMONY ABOUT THE AMOUNT THAT OUR WITNESSES HAVE CHARGED.  I

24  THINK IT WAS VERY REASONABLE.  WE'D ASK THAT THOSE BE INCLUDED

25  WITHIN THE AWARD OF COST.
```

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

138

1      THE COURT:  YOU CAN SUBMIT THAT AND REQUEST

2   THAT.  I CAN TELL YOU IN THE PAST CASES I'VE HAD, I'VE NOT

3   AWARDED THAT GENERALLY.  PART OF THE ENHANCEMENT IS INTENDED TO

4   PUT PLAINTIFF IN A POSITION IT WOULD HAVE BEEN HAD THERE -- IN

5   OTHER WORDS, HAD INFRINGEMENT NOT OCCURRED OR HAD THE LICENSE

6   BEEN TAKEN.  AND THE AMOUNT THAT'S INVOLVED THERE SHOULD COVER

7   THAT.  IN OTHER WORDS, IT WAS PRETTY OBVIOUS THAT COUNSEL ON

8   BOTH SIDES COULD HAVE CHOSEN TO HIRE EXPERTS AT A COUPLE

9   HUNDRED DOLLARS AN HOUR OR $500 AN HOUR AND LET THEM WORK 100

10  HOURS OR 800 HOURS, AND THAT -- THAT KIND OF DISCREPANCY IS, I

11  THINK, THE REASON THE STATUTE GENERALLY DOESN'T ALLOW THAT.

12      NOW, THERE IS -- BASICALLY WHAT I TEND TO DO IS

13  GO STRICTLY BY THE STATUTE.  THAT COULD ALLOW CERTAIN FEES FOR

14  WITNESSES AND EXPENSES AND THINGS LIKE THAT, BUT NOT

15  NECESSARILY FOR THEIR HOURLY FEE.

16      ANY POINT OF -- AND I'LL HAVE THE WRITTEN

17  JUDGMENT, ALTHOUGH I'M NOT GOING TO TRY TO REDUCE THIS OPINION

18  ON A RECORD FOR -- TO WRITING.  I STATED MY REASONS, AND THE

19  JUDGMENT WILL BE ENTERED BASED ON THAT.  IS THERE SOME ELEMENT

20  OR MOTION -- ALL MOTIONS, OTHER MOTIONS OTHER THAN -- I MISSED

21  ONE ON JMOL, PRECEDING MOTIONS AT THIS TIME WILL BE DENIED.  IF

22  THERE'S SOME -- ONE OF THE JMOL MOTIONS, THERE'S SOME POINT

23  I'VE MISSED COVERING RIGHT NOW FROM PLAINTIFF'S POINT OF VIEW,

24  LET ME KNOW.  IS THERE ANYTHING YOU THINK I'VE MISSED?

25      MR. ROBERTS:  THAT'S ALL WE CAN THINK OF, YOUR

FINISAR CORPORATION VS DIRECTV GROUP, INC., ET AL
07/06/06

139

1   HONOR.

2              THE COURT:   WHAT ABOUT DEFENDANTS?   ANYTHING

3   THAT I'VE MISSED ON ANY OF YOUR JMOL'S OR OTHER MOTIONS, POST

4   TRIAL MOTIONS THAT I'VE MISSED?

5              MR. SAVIKAS:   NO, YOUR HONOR.

6              THE COURT:   ALL RIGHT.   THEN ANY OF THE OTHER

7   PROCEDURAL MOTIONS AND SO FORTH AT THIS TIME ARE DENIED.   AND I

8   WILL GO AHEAD AND GET THE JUDGMENT OUT AS QUICKLY AS WE CAN.

9   AT THIS TIME, THE COURT IS IN RECESS.

10             (COURT IS IN RECESS.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   THE STATE OF TEXAS :

 2   COUNTY OF JEFFERSON:

 3

 4        I, ADA V. CHRISTY, A CERTIFIED SHORTHAND REPORTER IN AND

 5   FOR THE STATE OF TEXAS, DO HEREBY CERTIFY THAT THE FACTS AS

 6   STATED BY ME IN THE CAPTION HERETO ARE TRUE; THAT THE ABOVE AND

 7   FOREGOING CONTAINS A TRUE AND CORRECT TRANSCRIPTION OF ALL

 8   PORTIONS OF EVIDENCE AND OTHER PROCEEDINGS REQUESTED IN WRITING

 9   BY COUNSEL FOR THE PARTIES TO BE INCLUDED AND SAME WERE REDUCED

10   TO TYPEWRITING UNDER MY DIRECTION.

11        I FURTHER CERTIFY THAT I AM NOT, IN ANY

12   CAPACITY, A REGULAR EMPLOYEE OF THE PARTY IN WHOSE BEHALF THIS

13   PROCEEDING IS TAKEN, NOR IN THE REGULAR EMPLOY; AND I CERTIFY

14   THAT I AM NOT INTERESTED IN THE CAUSE, NOR OF KIN OR COUNSEL TO

15   EITHER OF THE PARTIES.

16        GIVEN UNDER MY HAND AND SEAL OF OFFICE, ON THIS, THE 10TH

17   DAY OF JULY, 2006.

18

19                              ADA V. CHRISTY, CSR, RPR, CCR
20                              TEXAS CERTIFICATION NO.:  5141
                                EXPIRATION DATE: 12-31-07
                                8311 EARSEL LANE
21                              ORANGE, TEXAS 77632
                                (409) 745-5228
22

23

24

25
```