# TAB 8

2006 U.S. Dist. LEXIS 64290, *

LEXSEE 2006 U.S. DIST. LEXIS 64290

**TIVO INC., Plaintiff, v. ECHOSTAR COMMUNICATIONS CORP., et al. Defendants.**

**2:04-CV-1-DF**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

*2006 U.S. Dist. LEXIS 64290*

**August 17, 2006, Decided**
**August 17, 2006, Filed**

**COUNSEL:** [*1] Robert W Faulkner, Mediator, Pro se, Dallas, TX.

For TIVO Inc, a Delaware corporation, Plaintiff: Alexander C D Giza, Adam S Hoffman, Perry M Goldberg, Richard E Lyon, Irell & Manella LLP, Los Angeles, CA; Andrei Iancu, Christine W S Byrd, Irell & Manella - Los Angeles, Los Angeles, CA; Morgan Chu, Irell & Manella, Los Angeles, CA; Samuel Franklin Baxter, Attorney at Law, Marshall, TX; Ben Yorks, Brian Jones, Michelle Armond, Irell & Manella - Newport Beach, Newport Beach, CA; R Scott Feldmann, Randall I Erickson, Steven P Rice, Van V Nguyen, Crowell & Moring - Irvine, Irvine, CA; Garret Wesley Chambers, McKool Smith - Dallas, Dallas, TX.

For Echostar Communications Corporation, a Nevada corporation, Echostar DBS Corporation, a Colorado corporation, EchoStar Technologies Corporation, Echosphere Limited Liability Company, Defendants: Alison M Tucher, Jason A Crotty, Robert M Harkins, Jr, Morrison & Foerster LLP San Francisco, San Francisco, CA; Rachel Krevans, Harold J. McElhinny, Morrison & Foerster LLP, San Francisco, CA; Karl J Kramer, Morrison & Foerster - Palo Alto, Palo Alto, CA; Damon Michael Young, Young Pickett & Lee, Texarkana, TX.

For "EchoStar defendants", [*2] Defendant: Emily A Evans, Morrison & Foerster - Palo Alto, Palo Alto, CA; Scott F Llewellyn, Morrison & Foerster, Denver, CO; Kristina Paszek, Alison M Tucher, Robert M Harkins, Jr, Morrison & Foerster LLP San Francisco, San Francisco, CA; Harold J. McElhinny, Rachel Krevans, Morrison & Foerster LLP, San Francisco, CA; John Michael Pickett, Young Pickett & Lee, Texarkana, TX; Karl J Kramer, Morrison & Foerster - Palo Alto, Palo Alto, CA.

For Merchant & Gould, Subpoena recipient, Movant: Charles Conrow Murphy, Jr, Vaughan & Murphy, Atlanta, Ga.

For EchoStar Technologies Corporation, Echosphere Limited Liability Company, Counter Claimants: Alison M Tucher, Jason A Crotty, Robert M Harkins, Jr, Morrison & Foerster LLP San Francisco, San Francisco, CA; Karl J Kramer, Morrison & Foerster - Palo Alto, Palo Alto, CA; Damon Michael Young, Young Pickett & Lee, Texarkana, TX.

For TIVO Inc, a Delaware corporation, Counter Defendant: Adam S Hoffman, Irell & Manella LLP, Los Angeles, CA.

For EchoStar Communications Corporation, a Nevada corporation, EchoStar DBS Corporation a Colorado corporation, Counter Claimants: Alison M Tucher, Jason A Crotty, Robert M Harkins, Jr, Morrison [*3] & Foerster LLP San Francisco, San Francisco, CA; Karl J Kramer, Morrison & Foerster - Palo Alto, Palo Alto, CA.

For Echostar Satellite LLC, Counter Claimant: Karl J Kramer, Morrison & Foerster - Palo Alto, Palo Alto, CA.

**JUDGES:** DAVID FOLSOM, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DAVID FOLSOM

**OPINION:**

### ORDER

Before the Court is Plaintiff TiVo's Motion for Entry of Judgment and Permanent Injunction. Dkt. No. 733. Also before the Court is Defendants' (1) Opposition to TiVo's Motion for Entry of Judgment and Permanent Injunction and (2) Cross-Motion to Stay Any Injunction Pending Appeal, TiVo's (1) Reply Re: Motion for Entry of Judgment and Permanent Injunction and (2) Opposition to EchoStar's Cross-Motion to Stay Injunction, and Defendants' Reply in Support of Cross-Motion to Stay Any

2006 U.S. Dist. LEXIS 64290, *

Injunction Pending Appeal. Dkt. Nos. 737, 747, 754, respectively. On June 28, 2006 the Court heard the parties on these motions. Having considered the motions, all other relevant briefing, and the applicable law, the Court finds that Plaintiff's Motion for Injunction should be **GRANTED** and Defendants' Motion to Stay Any Injunction Pending Appeal should be **DENIED**.

## I. BACKGROUND

In this [*4] patent infringement action, Plaintiff claimed a number of Defendants' digital video recorders n1 ("DVRs") infringe several claims in Plaintiff's *U.S. Patent No. 6,233,389* (the "'389 patent"). In March 2006-April 2006, the case was tried to a jury. The jury found that Defendants' accused DVRs infringed each of the asserted claims and further found that Defendants' infringement was willful. None of the asserted claims was found invalid. The jury awarded Plaintiff $ 73,991,964 million in compensatory damages.

n1 The following of Defendants' DVR receivers were found to infringe: DP-501; DP-508; DP-510; DP-522; DP-625; DP-721; DP-921; and the DP-942.

Plaintiff now moves for entry of a permanent injunction. Defendants oppose any injunction and, alternatively, move to stay any injunction.

## II. LEGAL PRINCIPLES

Recently the Supreme Court revisited the propriety of issuing permanent injunctions as a matter of course after a finding of infringement in patent cases. *eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839-1841, 164 L. Ed. 2d 641 (U.S. 2006)* [*5] (hereinafter "*eBay*"). Observing the existence of a "'general rule,' unique to patent disputes" that mandated the issuance of a permanent injunction once infringement and validity were decided, the Supreme Court explored the origins of this general rule and compared it to other instances in which courts are faced with deciding whether or not to issue equitable relief. *Id.* The Supreme Court determined that equitable relief is not mandatory in patent cases, but instead should be decided in accordance with traditional equitable considerations. *Id.*

To this end, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Further, the Supreme Court held that:

[T]he decision whether to grant or deny injunctive relief [*6] rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

*Id.* It is clear that the Supreme Court by its decision did not intend to part with long-standing decisions in equity. As noted by Chief Justice Roberts, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." *Id. at 1841* (Roberts, C.J. concurring). And, as Justice Kennedy notes in his concurrence, "the existence of a right to exclude does not dictate the remedy for a violation of that right," which aligns equitable decisions in patent cases with other cases. *Id. at 1842* (Kennedy, J. concurring).

"Once a plaintiff has met its burden in showing that an injunction is necessary, no delay in the issuance of that injunction is appropriate absent extraordinary circumstances." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp., 106 F. Supp. 2d 696, 708 (D.N.J. 2000)* (internal quotation and citation omitted). [*7] In determining whether a stay is appropriate, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990).* Each factor is not necessarily entitled to equal weight; a stay is discretionary with the Court.

## III. THE PARTIES' POSITIONS

Plaintiff argues that each of the four equitable factors "overwhelmingly weigh[s] in favor of enjoining EchoStar's continuing infringement." Dkt. No. 733 at 7.

2006 U.S. Dist. LEXIS 64290, *

Regarding the first and second factors, Plaintiff argues that because it is in direct competition with Defendants, their infringement has "direct, severe consequences" on its ability to compete. *Id.* According to TiVo, Defendants specifically target potential TiVo customers and Defendants' competition leads to Plaintiff's loss of critical market share. *Id.* TiVo argues that loss of customers and loss [*8] of market share is irreparable injuries that cannot be recouped though monetary awards. *Id.* at 8. Without an immediate injunction, Plaintiff argues, "new DVR customers on the EchoStar platform will likely adopt EchoStar's competing devices instead of TiVo's." According to TiVo, "[t]hese customers are lost, probably for good." *Id.* at 8. TiVo cites evidence that customers tend to stay with their current DVR service providers, i.e. that they are "sticky customers." *Id.*

Plaintiff also argues that, because the DVR market is in its "formative years and is currently growing at exponential rates," Plaintiff risks being marginalized due to Defendants' infringement by the time the market matures. *Id.* at 9. Such marginalization, Plaintiff argues, has been expressly recognized as a type of irreparable harm. *Id.*

Plaintiff further argues that it suffers irreparable harm from price erosion resulting from Defendants' offering the infringing products and service at "less than full value." *Id.* at 9-10. Plaintiff also argued Defendants' infringement has resulted in "value erosion" as potential business partners are reluctant to enter into agreements for the technology Defendants [*9] utilize for free. *Id.* at 10. Lastly, Plaintiff argues that Defendants' infringement causes irreparable harm insofar as it encumbers Plaintiff's ability to invest in its business and in additional research and development. *Id.* at 10.

Only an injunction, Plaintiff argues, can remedy the irreparable harm caused by Defendants' infringement. Without an injunction, Plaintiff argues it will lose market share, which is particularly important during the formative years of a market. *Id.* at 11. Such harms, Plaintiff argues, cannot be remedied with monetary damages. Plaintiff also argues that, absent an injunction, ongoing harm to its brand, reputation and good will cannot be remedied. *Id.* And, in the absence of an injunction, Plaintiff argues it will be unfairly forced into a compulsory license. Dkt. No. 747 at 6.

Addressing the third factor, Plaintiff argues that the balance of hardships weighs heavily in favor of enjoining Defendants' infringement. *Id.* at 12. Plaintiff argues that, because of its size and its dependence on its DVR technology, it will become extinct if it cannot exploit its technology in the market. *Id.* By contrast, Plaintiff argues that the EchoStar [*10] corporation is a multi-billion-dollar corporation whose primary business is providing satellite television signals. *Id.* Enjoining

EchoStar's infringing DVRs will not affect its satellite transmissions, Plaintiff argues. *Id.* Thus, according to Plaintiff's, "an injunction causes EchoStar no hardship that is properly considered in this balancing." *Id.* Plaintiff further argues that, because Defendants' infringement is willful, it cannot complain of hardship. *Id.*

Regarding the public interest, Plaintiff argues that no interest would be served by allowing Defendants' infringement to continue. *Id.* at 13. To the contrary, Plaintiff argues that the public's interest in patent rights and the patent system would be served by enjoining Defendants' infringement. *Id.*

Plaintiff argues, anticipating Defendants will request a stay of any injunction, that the four factors for determining whether a stay is appropriate each weigh against a stay in this case. *Id.* at 16.

Lastly, Plaintiff addresses the specifics of the injunction they seek. Plaintiff requests that Defendants be immediately enjoined from "making, using, selling, offering for sale, and/or importing into the [*11] United States all of its infringing DVR products . . ." including not only the accused products but also products that are not more than colorably different. 6/28/06 Hr. Tr. at 146:11-18; Dkt. No. 733 at 19 (internal citation omitted). The injunction must extend, Plaintiff argues, to "new placements" (newly sold DVRs) as well as "existing placements" (DVRs already placed with customers). Dkt. No. 733 at 20-21.

In response, Defendants argue Plaintiff faces no irreparable harm absent a permanent injunction. Dkt. No. 737 at 7. According to Defendants, Plaintiff's delay in bringing this lawsuit weighs against an injunction. *Id.* at 8. Defendants also charge that Plaintiff's motive in this lawsuit was only to "give TiVo additional leverage to force EchoStar and TiVo's other prospective business partners to make more favorable deals with TiVo." *Id.* Thus, Defendants argue, it is not reasonable to conclude Plaintiff will be irreparably harmed if Defendants are "allowed to continue providing DVRs to [their] own subscribers." *Id.* at 8.

Defendants cite Plaintiff's "failure to seek a preliminary injunction" as further evidence Plaintiff faces no irreparable harm. *Id.* Defendants [*12] then argue that Plaintiff stands to reap more money for its infringement than Plaintiff would make if Defendants were enjoined because, according to Defendants, Plaintiff could not have provided enough DVRs to its customers to accrue the "windfall" awarded by the jury. *Id.* at 8-9.

Defendants also argue that because the DVR market is not a two-player market, Plaintiff's arguments rest on a fallacy. *Id.* at 9. Defendants also cast Plaintiff's price erosion concerns as "mak[ing] little sense." *Id.* And, De-

Case 1:05-cv-00160-KAJ-MPT    Document 181-8    Filed 09/18/2006    Page 5 of 25

Page 4
2006 U.S. Dist. LEXIS 64290, *

fendants argue, Plaintiff's evidence of commercial success while the infringing products have been on the market demonstrate that Plaintiff will not suffer irreparable harm. *Id.* at 10.

According to Defendants, monetary damages will fully compensate Plaintiff for all of the existing placements of infringing DVRs. *Id.* at 10. Defendants argue that Plaintiff's counsel at trial represented that injunctive relief would only apply to new DVR placements. *Id.* at 11 citing trial transcript. This, according to Defendants, amounted to an admission that monetary relief is an adequate remedy for existing placements. *Id.* Defendants then argue that the same rate of compensation [*13] for the existing placements must also be adequate for any future placements. *Id.* And, based on Plaintiff's counsel's representation, Defendants argue that Plaintiff cannot now seek an injunction on existing placements. *Id.*

Defendants argue that the public interest would not be served by an injunction. *Id.* at 12. According to Defendants, the injunction Plaintiff proposes "would immediately remove DVRs from three million families who are innocent of any wrongdoing . . . [depriving] those families of DVRs and force[ing] them to incur significant disruption and expense in order to replace them." *Id.* at 12. Defendants argue this is contrary to the public interest. *Id.* Denying an injunction, however, does "not harm the public interest in maintaining the integrity of the patent system" and, according to Defendants, will still leave Plaintiff in a better position than if Defendants had not infringed or if Defendants engaged in a business relationship with Plaintiff. *Id.* at 12-13.

Lastly, Defendants argue that the balance of hardships weighs against an injunction. *Id.* at 13. According to Defendants, Plaintiff faces no hardship if an injunction does not issue [*14] because monetary relief provides an adequate remedy at law. *Id.* However, Defendants argue, an injunction will cause them "severe and irremediable" harm. *Id.*

Defendants argue that enjoining their DVR sales will impact its ability to compete in the market for subscribers, leading to a "high risk of losing a significant percentage of existing subscribers, and . . . significantly impair[ing] [their] attracting new subscribers." *Id.* at 14. Defendant argues that small authorized distributors will also be severely impacted. *Id.*

Regarding the form of an injunction, Defendants argue only new placements should be enjoined because, at trial, Plaintiff's counsel represented that Plaintiff would seek only to enjoin new placements. *Id.* at 15-16. Now, Defendant argues, Plaintiff is bound to this limitation on injunctive relief. *Id.* Defendants also argue that because their DVRs have substantial non-infringing uses, Plaintiff's requested injunction is "improperly broad." *Id.* at 16.

And, Defendants argue, the injunction should not extend to DVRs already distributed but not placed because they cannot infringe until the infringing software is downloaded. *Id.* at 17. [*15] Lastly, Defendants argue the injunction should extend only to the specific devices for which the jury found infringement. *Id.* at 17.

Should an injunction issue, Defendants argue a stay is warranted. Defendants argue that it is likely to prevail on its appeal of the infringement verdict. *Id.* at 19. Defendants list a number of claim construction and evidentiary rulings that they plan to appeal. *Id.* at 19-29. Largely reciting the same factors set forth in the discussion of the balance of hardships, Defendants argue they will be irreparably harmed absent a stay but that Plaintiff does not face such harm in the event of a stay. *Id.* at 29-31. Again, reciting many of the arguments set forth above, Defendant argue that the public interest warrants a stay. *Id.* at 32-33.

In reply, Plaintiff defends the form of injunction it requests. Plaintiff points out that Defendant does not dispute that it can turn off the DVR functionality of the already placed infringing DVRs. Dkt. No. 747 at 10. Plaintiff argues that its counsel did not represent that the injunctive relief Plaintiff would seek was as limited as Defendants argue; instead, Plaintiff's counsel represented only that [*16] no injunction would be pursued on the infringing units for which lost profit damages are received. *Id.* at 12.

Plaintiff also argues that a stay is not warranted because of the severe irreparable harm it faces in the interim. *Id.* at 12-13, 22-24. Further, because the jury found that Defendants willfully infringe, their alleged injury absent a stay is the result of their own deliberate doing. *Id.* at 13. Plaintiff addresses Defendants' list of appellate points and disputes that there is any reason to conclude that Defendant has a likelihood of success on any of its points. *Id.* at 13-22. Thus, Plaintiff argues, the present is not an exceptional case wherein a stay of injunctive relief is warranted.

In surreply, Defendants argue that the public interest in maintaining the status quo pending appeal favors entry of a stay. Dkt. No. 754 at 5-6.

## IV. DISCUSSION

### A. Permanent Injunction

Following the traditional four-factor test for equitable relief, the Court concludes that a permanent injunction is warranted.

Plaintiff has demonstrated both that it continues to suffer irreparable harm in the absence of an injunction and that there is no adequate remedy at law. [*17] Defendants compete directly with Plaintiff-Defendants market their infringing products to potential DVR customers as an alternative to purchasing Plaintiff's DVRs. The avail-

2006 U.S. Dist. LEXIS 64290, *

ability of the infringing products leads to loss of market share for Plaintiff's products. Loss of market share in this nascent market is a key consideration in finding that Plaintiff suffers irreparable harm -- Plaintiff is losing market share at a critical time in the market's development, market share that it will not have the same opportunity to capture once the market matures.

One thing the parties agree on is that DVR customers are "sticky customers," that is they tend to remain customers of the company from which they obtain their first DVR. Dkt. No. 737 at 30 (EchoStar); Dkt. No. 747 at 1 (Tivo). Thus, the impact of Defendants' continued infringement is shaping the market to Plaintiff's disadvantage and results in long-term customer loss. This is particularly key where, as is the case here, Plaintiff's primary focus is on growing a customer base specifically around the product with which Defendants' infringing product competes. And, as Plaintiff is a relatively new company with only one primary product, [*18] loss of market share and of customer base as a result of infringement cause severe injury. Thus, the Court concludes that the full impact of Defendants' infringement cannot be remedied by monetary damages.

Plaintiff's "delay" in bringing this lawsuit, which Defendants argue demonstrates there is no irreparable injury, was due to Plaintiff's attempts to enter into a business arrangement with Defendants. See Dkt. No.    , Findings of Fact and Conclusions of Law. It does not demonstrate that there is no irreparable harm. Plaintiff's motives in bringing the lawsuit are irrelevant -- the jury found Plaintiff's patent valid and infringed by Defendants' DVRs. The Court also finds the statement by Plaintiff's counsel cited by Defendants does not amount to an admission that monetary relief is adequate.

The balance of hardships weighs in favor of granting a permanent injunction. As discussed, Plaintiff faces ongoing irreparable injury as Defendants' infringement continues. As a relatively new and small company, every day of Defendants' infringement affects Plaintiff's business. And, as discussed above, Plaintiff's primary product, its DVRs, are those with which Defendants' infringing [*19] products directly compete. The harm caused by such infringement weighs heavily in favor of an injunction.

Enjoining Defendants will likely cause some harm -- but on balance, Defendants will endure less harm than Plaintiff. The infringing products do not form the core of Defendants' satellite transmission business. And the injunction will not interfere with Defendants' satellite transmission.

The hardship of disabling DVR capabilities to Defendants' DVR customers is a consequence of Defendants' infringement and does not weigh against an injunction.

Defendants do not dispute that, with software updates transmitted directly to the infringing products, the DVR capabilities of the infringing products can be disabled. This process, though cumbersome, is not on balance a weighty hardship for Defendants. Similarly, any impact of the injunction on Defendant's authorized distributors is also a consequence of Defendants' infringement and does not weigh against an injunction. Again, distributors' sales of Defendants' core products will not be affected by the injunction.

Lastly, the public interest would not be disserved by a permanent injunction. The public has an interest in maintaining a [*20] strong patent system. This interest is served by enforcing an adequate remedy for patent infringement -- in this case, a permanent injunction. The infringing products are not related to any issue of public health or any other equally key interest; they are used for entertainment. The public does not have a greater interest in allowing Defendants' customers' to continue to use their infringing DVRs.

**B. Stay of a Permanent Injunction**

A stay of the permanent injunction is not warranted.

Defendants' identification of issues and rulings it plans to appeal is lengthy. Upon review, it seems that the Court has previously considered each at length. Although Defendants may prevail on some of the issues, they have not demonstrated a strong likelihood of success on appeal that would overturn the jury's verdict on all infringed claims.

Defendants raise appellate points regarding the Court's claim construction, but identify only one term, "decoder," common to both the hardware and software claims. Defendants' argue the proper construction of the term would "mandate a finding of non-infringement." Dkt. No. 737 at 26; Dkt. No. 754 at 14. In the half-page Defendants devote to this term in [*21] their brief, Defendants do not detail their argument for overturning the construction of this term. Dkt. No. 737 at 25-26.

As far as the exclusion of certain evidence, Defendants do not demonstrate that reversals of either of the rulings they identify for appeal will lead to overturning the infringement verdict on each of the asserted claims. In particular, the exclusion of the Merchant & Gould opinion letters is primarily related to the jury's willfulness determination, and overturning this ruling may amount to a retrial on this issue alone.

Although the injunction will likely result in some degree of customer loss and will impact Defendants' ability to compete in the market, Defendants will not be irreparably harmed. Again, Defendants' core business is not the supply of DVRs. Defendants have not demonstrated that an injunction on the infringing products would

2006 U.S. Dist. LEXIS 64290, *

have a severe financial impact on their core business or will lead to loss of employees. Defendants' authorized retailers will still be able to sell and service Defendants' non-infringing products. Conversely, absent a stay, Plaintiff faces ongoing irreparable injury as detailed above.

Lastly, Defendants' argument that the [*22] public interest in maintaining the status quo -- allowing Defendants' current DVR customers and its retailers to continue business as usual -- is served by granting a stay. Without a stronger showing that the jury's verdict will be overturned in its entirety on appeal, however, allowing the ongoing infringement is not within the public's interest.

### C. Form of the Injunction

The Court will issue an injunction explicitly subject to *28 U.S.C. § 1498* contemporaneously with this order and its final judgment.

### V. CONCLUSION

For all the above reasons, Plaintiff TiVo's Motion for Entry of Judgment and Permanent Injunction, Dkt. No. 733, is hereby **GRANTED** and Defendants' Cross-Motion to Stay Any Injunction Pending Appeal, Dkt. No. 737, is hereby **DENIED.**

**SIGNED this 17th day of August, 2006.**

DAVID FOLSOM

UNITED STATES DISTRICT JUDGE

# TAB 9

Westlaw.

Slip Copy                                                                          Page 1
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,W.D. Oklahoma.
Jan K. **VODA**, M.D., Plaintiff and Counterclaim
Defendant,
v.
**CORDIS** CORPORATION, Defendant and
Counterclaim Plaintiff.
No. CIV-03-1512-L.

Sept. 5, 2006.

Jonathan Keith Waldrop, Mitchell G. Stockwell,
Kilpatrick Stockton LLP, Atlanta, GA, John A.
Kenney, Spencer F. Smith, McAfee & Taft, Oklahoma
City, OK, for Plaintiff and Counterclaim Defendant.
Adam R. Steinert, Diane C. Ragosa, John M. Dimatteo,
Kelsey I. Nix, Willkie Farr & Gallagher LLP, New
York, NY, Amanda Leigh Maxfield, Clyde A.
Muchmore, Crowe & Dunlevy, Mahaffey & Gore PC,
John A. Kenney, Spencer F. Smith, McAfee & Taft,
Oklahoma City, OK, Mitchell G. Stockwell, Jonathan
Keith Waldrop, Kilpatrick Stockton LLP, Atlanta, GA,
for Defendant and Counterclaim Plaintiff.

***ORDER***
TIM LEONARD, District Judge.
**\*1** This action concerns three patents that were issued
by the United States Patent and Trademark Office to
plaintiff, Dr. Jan K. Voda. All of the patents concern
an angioplasty guide catheter. Patent No. 5,445,625
("the 625 patent") reflects the catheter "in a relaxed
state prior to insertion in the cardiovascular system."
The two remaining patents (the 213 and the 195
patents) cover plaintiff's inventive technique for using
the catheter to perform angioplasty. In addition to
method claims, the 195 patent also includes claims
that focus on the catheter as it appears in the aorta.
Plaintiff filed this action on October 30, 2003, seeking
damages for alleged infringement of the three patents
by defendant, Cordis Corporation. Beginning May 15,
2006, the case was tried to a jury, which returned a
verdict in favor of plaintiff on May 25, 2006. The jury
specifically held defendant infringed each of the
patents in suit and that claims 1, 2, and 3 of the 213
patent were not invalid due to anticipation or
obviousness.[FN1] Verdict Form at 1-7. The jury
determined that plaintiff was entitled to a reasonable
royalty of 7.5% of defendant's gross sales of the

infringing catheters. Id at 8. In addition, the jury
found defendant's infringement was willful. Id at 3.

FN1. At the conclusion of the trial, defendant
conceded it was no longer seeking a
declaration as to the validity of the '625
patent, the '195 patent, or claims 4 and 5 of
the '213 patent ("the apparatus claims"). The
court thus granted judgment as a matter of
law in favor of plaintiff on that portion of
defendant's counterclaim.

Although the parties were able to stipulate to the
amount of compensatory damages based on the jury's
verdict,[FN2] they were unable to agree on whether
plaintiff should be awarded prejudgment interest and,
if so, the rate of interest. Likewise, the parties dispute
whether plaintiff is entitled to enhanced damages
based on the jury's willfulness finding. In addition, the
court must decide whether plaintiff is entitled to
injunctive relief and attorney's fees.

FN2.    Joint    Stipulation    Regarding
Compensatory Damages (Doc. No. 341).

*Prejudgment Interest*

As a general rule, prejudgment interest should
ordinarily be awarded in patent infringement actions.
*General Motors Corp. v. Devex Corp.,* 461 U.S. 648,
655 (1983).
In the typical case an award of prejudgment interest is
necessary to ensure that the patent owner is placed in
as good a position as he would have been in had the
infringer entered into a reasonable royalty agreement.
An award of interest from the time that the royalty
payments would have been received merely serves to
make the patent owner whole, since his damages
consist not only of the value of the royalty payments
but also of the forgone use of the money between the
time of infringement and the date of the judgment.

*Id.* at 655-56 (footnote omitted). Although defendant
recognizes this general rule, it argues prejudgment
interest should be denied "[d]ue to Dr. Voda's
eight-year delay in bringing suit, and the resultant
prejudice". Cord is' Opposition to Dr. Voda' Motions
for (1) a Permanent Injunction, (2) Enhanced
Damages and (3) Prejudgment Interest at 19 (Doc.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

Page 2

362). In support of this contention, defendant identifies the same economic and evidentiary prejudice the court found to be insufficient to support its laches defense. [FN3] The court likewise finds the prejudice identified by defendant insufficient to warrant deviating from the general rule regarding prejudgment interest. Plaintiff's request for prejudgment interest is therefore granted.

> FN3. Cord is' Post-Trial Brief Regarding Injunctive Relief, Enhanced Damages and Prejudgment Interest at 23. *See also* Order at 4-5 (Doc. No. 339).

**\*2** The rate of interest and whether to compound it are matters for the court's discretion. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed.Ci.1986), *cert. denied,* 482 U.S. 915 (1987). Plaintiff contends the appropriate rate is the prime rate plus two percent, compounded annually. In contrast, defendant proposes using the three-month or one-year United States Treasury Bill rate. *See* Declaration of Kathleen M. Kedrowski at ¶ 5, Exhibit 30 to Declaration of Kelsey I. Nix in Support of Cord is' Opposition to Dr. Voda's Motions (Doc. No. 359). Defendant argues this rate "is the proper rate ... because the damage award is not subject to any investment risk during the waiting period." *Id.* Defendant's argument is based on a misapprehension of the economic policy for prejudgment interest. It is not, as defendant argues, to compensate plaintiff for the risk of default by defendant; rather, the purpose of prejudgment interest is to make plaintiff whole by compensating him for the loss of use of the money owed him. *Bio-Rad Laboratories, Inc.,* 807 F.2d at 969. The court finds that neither rate suggested by the parties fulfills this purpose; plaintiff's suggested rate is too high and defendant's too low. The court concludes the appropriate rate is the prime rate, compounded annually. This results in a total prejudgment interest award of $489,375.[FN4]

> FN4. This represents the total prejudgment interest for the '213 patent for the period July 4, 2000 through May 15, 2006. The court's calculation of the yearly totals for the '213 patent are: 2000-0; 2001-$19,388.29; 2002-$35,865.66; 2003-$55,085.63; 2004-$89,068.63; 2005-$176,334.73; 2006-$113,631.94. The total prejudgment interest for the '625 patent is $185,323.91 (2002-0; 2003-$11,988.58; 2004-$32,459.54; 2005-$82,440.35; 2006-$58,435.44). The

total prejudgment interest for the '195 patent is $80,477.98 (2003-0; 2004-$3,302.96; 2005-$39,844.47; 2006-$37,330.55).

*Enhanced Damages*

The Patent Act permits the court to award enhanced damages of "up to three times the amount found or assessed." 35 U.S.C. § 284. Whether to award such damages is two-step process. "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996). The jury's determination that defendant's infringement was willful satisfies the first requirement. A finding that infringement was willful does not, however, mandate an award of enhanced damages. *Id.* at 1573. Whether to increase damages, and to what extent, is left to the sound discretion of the court. In exercising that discretion, the court is guided by the factors enunciated by the Federal Circuit in *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992).

Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased. They include: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;" (4) "defendant's size and financial condition;" (5) "closeness of the case;" (6) "duration of defendant's misconduct;" (7) "remedial action by the defendant;" (8) "defendant's motivation for harm;" and (9) "whether defendant attempted to conceal its misconduct."

**\*3** *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed.Cir.2006) (quoting *Read Corp.,* 970 F.2d at 826-27).

Based on the totality of the circumstances, the court concludes plaintiff's damages should be increased, but not trebled. In reaching this conclusion, the court finds factors 1, 2, 4, and 7 weigh in favor of increasing damages. First, plaintiff presented evidence that defendant consciously copied his design and ideas. Although defendant vigorously disputed this notion, a finding of conscious copying is inherent in the jury's finding of willfulness. At trial the jury was specifically

Slip Copy
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Slip Copy)

Page 3

instructed:

Other factors you may consider in determining willfulness are whether, in designing the product accused of infringement, Cordis copies the disclosures of Dr. Voda's patents, or whether Cordis instead tried to "design around" the patents by designing a product that Cordis believed did not infringe the patent claims. Evidence of copying a patent is evidence of willful infringement. On the other hand, evidence that Cordis attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that the infringement was not willful.

Court's Instructions to the Jury at 47 (Doc. No. 335). Also implicit in this finding is a rejection of defendant's argument that it attempted to design around plaintiff's claims. Thus, the court finds defendant did not take any remedial actions; moreover, defendant has indicated it will continue to produce and market the infringing devices without change even after the jury verdict. [FN5] Likewise, in making its willfulness finding, the jury rejected defendant's advice of counsel defense. At trial, defendant presented evidence that it sought and obtained opinion letters from both in-house and outside counsel with respect to the patents-in-suit. Plaintiff countered this evidence by questioning the timing of the requests, the thoroughness of the information defendant provided to counsel, and the independence of counsel. The jury was then instructed:

> FN5. *See* Exhibit PX400 to Consolidated Appendix in Support of Dr. Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest.

In evaluating Cordis' reliance on the advice of a lawyer, you should consider when Cordis obtained the advice, the quality of the information Cordis provided to the lawyer, the competence of the lawyer's opinion, and whether Cordis relied upon the advice. Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity, enforceability and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

*Id.* Defendant's lengthy post-trial argument that it did in fact rely on competent legal advice is misplaced, as it asks the court to reweigh an issue decided by the jury. The court, however, does not have discretion to

do so at this time; it may not disregard the jury's willfulness finding and the findings implicit therein. *See Jurgens,* 80 F.3d at 1572. Finally, the fact that defendant is "a large company with extensive financial means" [FN6] is another factor that justifies increasing the damages award.

> FN6. *Metabolite Laboratories, Inc. v. Laboratory Corp. of America Holdings,* 370 F.3d 1354, 1371 (Fed.Cir.2004).

*4 On the other hand, the other *Read* factors are either neutral or do not support an award of enhanced damages. For example, factor 6, the duration of defendant's misconduct, cuts both ways. Although defendant has been manufacturing infringing devices for years, plaintiff also waited years to challenge defendant's infringement. While the court found plaintiff's delay was not sufficient to establish laches or to prevent plaintiff from receiving prejudgment interest, it is a factor the court considers in determining the amount any enhancement. Factor 5 also is neutral. Although the jury's relatively quick deliberation might indicate the issues that remained for decision were not close, other issues-including literal infringement-were decided adversely to plaintiff prior to trial. Contrary to plaintiff's assertions, factors 3, 8, and 9 do not support enhancement. The court finds there is no evidence of litigation misconduct by defendant, nor has plaintiff demonstrated any intent by defendant to harm him. Hyperbole in marketing documents does not indicate intent to harm; moreover, any harm would have been directed at plaintiff's licensee, Scimed, not plaintiff. Also, there is no evidence defendant sought to conceal its activities. These factors, however, do not outweigh defendant's conscious copying, lack of good-faith belief that it was not infringing, and failure to take remedial action.

Based on the totality of the circumstances, the court finds trebling plaintiff's damages is not warranted. The court, however, exercises its discretion to double the infringement damages. Plaintiff is thus awarded compensatory damages of $3,803,094 through May 15, 2006,[FN7] together with prejudgment interest in the amount of $489,375, and enhanced damages of $3,803,094, for a total award of $8,095,563.

> FN7. *See* Joint Stipulation Regarding Compensatory Damages at 1.

*Attorney's Fees*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 4
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

Section 285 provides the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As with enhanced damages, the decision to award attorney's fees involves two steps. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998). First, the court must determine whether the action constitutes an exceptional case. "As a general rule, attorneys fees under section 285 may be justified by any valid basis for awarding increased damages under section 284." *Jurgens,* 80 F.3d at 1573 n. 4. Based on the analysis enunciated above, the court finds this is an exceptional case warranting an award of attorney's fees. Specifically, the jury's implicit findings that defendant consciously copied plaintiff's design and did not have a good faith belief as to infringement and validity provide the requisite degree of bad faith necessary to support finding this case exceptional.[FN8]

> FN8. "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement...." *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005).

Having concluded the case is exceptional, the court also determines that an award of fees is appropriate. Defendant does not dispute the hours expended by plaintiff's attorneys or the reasonableness of the rates charged by plaintiff's attorneys. Defendant does, however, ask the court to impose two limits on any fee award. First, it argues plaintiff's contingent fee contract with his attorneys "sets the maximum amount the court can award." Cordis' Opposition to Voda's Motion for Attorneys' Fees at 15 (Doc. No. 380). Second, it contends local attorney billing rates should be used to calculate the lodestar figure. *Id.* at 17-18.

**\*5** Defendant's first argument is not only without merit, given the court's award of enhanced damages, it is moot.[FN9] The cases cited by defendant in support of this contention are inapposite as they concern fees sought pursuant to Florida's fee-shifting statute. The court also rejects defendant's second argument. Although local hourly rates should be used to calculate fees in the normal case, patent litigation is a specialized practice with a national bar. Defendant does not contest that "the rates usually charged by Voda's national counsel may be reasonable for the Atlanta market". Cord is' Opposition to Voda's Motion for Attorneys' Fees at 17. The court's independent

examination of those rates confirms they are objectively reasonable for the national patent bar. Therefore, the court calculates the lodestar figure by multiplying the rates normally charged by plaintiff's Atlanta and Oklahoma City attorneys by the hours expended. This results in an attorney's fee award of $2,133,086.25. [FN10] The court finds no reason to increase this award based on any of the factors enunciated in *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983). As defendant does not contest plaintiff's request for litigation expenses, the court awards plaintiff litigation expenses of $68,053.21, making the total fee award $2,201,139.46.

> FN9. In response to Cordis' Motion to Compel Dr. Voda to Produce his Contingency Fee Agreement (Doc. No. 367), plaintiff provided a copy of the contingency fee contract for the court to review *in camera.* The court denied defendant's motion to compel, finding the contract was not relevant since defendant did not challenge the reasonableness of either the rates charged by plaintiff's attorneys or the hours expended. Order at 2 (Doc. No. 377). Nonetheless, in the interest of full disclosure, the court notes plaintiff's contingent fee contract provided plaintiff would pay 45 percent of the recovery received after trial or after the filing of a notice of appeal. Forty-five percent of the damages awarded by the court, including prejudgment interest, equals $3,643,003.35, a sum that is significantly larger than the amount sought by plaintiff in his Motion for Attorneys' Fees.

> FN10. Plaintiff's motion sought an award of $2,133,086.20. The supporting documentation, however, reflects a fee request of $2,133,086.25 ($1,708,842.25 $424,244.00). Exhibits PX 427 and PX 428 to Supplemental Appendix to Dr. Voda's (1) Brief in Support of Plaintiff's Motion for Enhanced Damages (2) Brief in Support of Plaintiff's Request for Permanent Injunction (3) Brief in Support of Plaintiff's Request for Prejudgment Interest (4) Plaintiff's Motion for Attorneys' Fees (Doc. No. 366).

*Injunctive Relief*

Plaintiff requests a permanent injunction barring defendant, "its officers, agents servants, directors, employees and all those in active concert or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
(Cite as: Slip Copy)

Page 5

participation with them ... from infringing, inducing the infringement of, and contributorily infringing any one or more claims" of the patents-in-suit. Attachment to Brief in Support of Plaintiff's Request for Permanent Injunction at 1 (Doc. No. 350). The Patent Act permits the court to "grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The United States Supreme Court recently confirmed that permanent injunctions in patent cases should not automatically follow a finding of infringement; rather, requests for permanent injunctions in such cases are governed by the same four-factor test that applies to injunctive relief in general. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839-40 (2006).

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 1839.

As plaintiff has failed to demonstrate either irreparable injury or that monetary damages are inadequate, the court denies his request for a permanent injunction.[FN11] Plaintiff argues irreparable harm is presumed whenever validity and continuing infringement have been established. Brief in Support of Plaintiff's Request for Permanent Injunction at 5 (Doc. No. 350). This argument, however, runs afoul of the court's reasoning in *eBay* where the Court clearly held the right to exclude does not, standing alone, justify a general rule in favor of injunctive relief. *eBay Inc.*, 126 S.Ct. at 1840. Moreover, other than the presumption of irreparable harm, plaintiff identifies no harm to himself; rather, he relies on alleged harm to a non-party, Scimed.[FN12] *See* Brief in Support of Plaintiff's Request for Permanent Injunction at 6-12. The court concurs with defendant that such harm is irrelevant because Scimed elected not to sue to enforce the patent rights. As patents have "the attributes of personal property"[FN13], the person seeking a permanent injunction must demonstrate harm from infringement of those rights that is personal as well.

FN11. The court therefore need not address defendant's assertions that plaintiff did not timely seek injunctive relief or that the relief requested is not sufficiently limited or specific to comply with Fed.R.Civ.P. 65(d).

FN12. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Brief (Doc. No. 363) is denied. In accordance with defendant's request, the court reserved the issue of injunctive relief until after the jury returned its verdict. Order at 3 (Doc. No. 311). Plaintiff's post-trial submission of the Lundeen Declaration is in accord with that ruling.

FN13. *eBay Inc.*, 126 S.Ct. at 1840.

*6 The court also finds plaintiff has not established that monetary damages are inadequate to compensate him. Plaintiff argues he granted Scimed an exclusive license to his patented inventions and defendant's continuing infringement will damage his relationship with Scimed. This argument, however, is simply the other side of the right-to-exclude coin and is not sufficient to justify granting injunctive relief. Plaintiff's request for a permanent injunction is therefore denied.

*Post-Verdict Infringement*

As the court has declined to issue a permanent injunction and defendant has indicated it will continue to infringe the patents-in-suit, the court must fashion a remedy for the continuing harm to plaintiff. Plaintiff suggests severing his action for monetary damages for post-verdict infringement. In addition, plaintiff asks the court to order defendant to file quarterly reports of sales and to establish an interest-bearing escrow account into which defendant would pay the royalty rate assessed by the jury. The court sees no reason for severance of a cause of action for the post-verdict damages as there would be no issues for decision except simple mathematical calculations based on defendant's sales. The court therefore denies plaintiff's motion for severance. The court, however, concludes that quarterly reporting by defendant is reasonable. The reports shall be filed beginning September 15, 2006 and every three months thereafter until final resolution of this action. Defendant may file the reports under seal without seeking leave of court to do so. Given defendant's size and financial stability, the court will not order defendant to pay the royalty funds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 6
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

into an interest-bearing escrow account. Defendant is cautioned, however, that absent establishment of an escrow account, prejudgment interest will accrue on any post-verdict infringement damages.

*Conclusion*

In sum, plaintiff's requests for prejudgment interest and enhanced damages are GRANTED to the extent noted above. Plaintiff's request for a permanent injunction is DENIED. Plaintiff's Motion for Entry of Judgment, Severance of Continuing Causes of Action for Post-Verdict Infringement, and Establishment of Reporting and Escrow Requirement (Doc. No. 353) is GRANTED in part and DENIED in part. Cordis' Motion to Strike the Lundeen Declaration and Dr. Voda's Arguments Relying on that Declaration in his Post-trial Briefs (Doc. No. 363) is DENIED. Plaintiff's Motion for Attorneys' Fees (Doc. No. 365) is GRANTED. Judgment in accordance with this Order, the parties' stipulation, and the jury's verdict will issue according.

It is so ordered this 5th day of September, 2006.

W.D.Okla.,2006.
Voda v. Cordis Corp.
Slip Copy, 2006 WL 2570614 (W.D.Okla.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1749477 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Motion for Judgment As a Matter of Law Regarding the Doctrine of Laches (May 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1749478 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response in Opposition to Cordis' Motion for Judgment as a Matter of Law Regarding Non-Infringement Under the Doctrine of Equivalents (May 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1749475 (Trial Motion, Memorandum and Affidavit) Cordis' Motion for Judgment as a Matter of Law Regarding the Doctrine of Laches, and Memorandum of Law in Support Thereof (May 22, 2006) Original Image of this Document (PDF)
• 2006 WL 1749476 (Trial Motion, Memorandum and Affidavit) Cordis' Motion for Judgment as a Matter of Law Regarding Non-Infringement Under the Doctrine of Equivalents (May 22, 2006) Original Image of this Document (PDF)
• 2006 WL 1749474 (Trial Motion, Memorandum and Affidavit) Cordis' Opposition to Plaintiff's Motion in

Limine to Preclude the Testimony of George Gerstman, Esq. (May 21, 2006) Original Image of this Document (PDF)
• 2006 WL 1749473 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion in Limine to Preclude the Testimony of George Gerstman, Esq. and Brief in Support (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1880019 () (Partial Testimony) (May 11, 2006) Original Image of this Document (PDF)
• 2006 WL 1749466 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Cordis' Motion in limine to Preclude Dr. Voda from Referring to the Presumption of Validity in the Presence of the Jury (May 2, 2006) Original Image of this Document (PDF)
• 2006 WL 1749467 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Cordis' Motion Inlimine to Preclude Dr. Voda from Calling William Kingston, Marty Lundeen, Tracy Rosecrans, Dale Spencer or Henry Pepin as Trial Witnesses (May 2, 2006) Original Image of this Document (PDF)
• 2006 WL 1749468 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Cordis' Motion in Limine to Preclude Dr. Voda from Referring to His Counterpart Patents or to Injunctive Relief During the Trial (May 2, 2006) Original Image of this Document (PDF)
• 2006 WL 1749463 (Trial Motion, Memorandum and Affidavit) Cordis' Trial Brief (May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1749464 (Trial Motion, Memorandum and Affidavit) Plaintiff's Trial Brief (May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1494919 (Trial Motion, Memorandum and Affidavit) Cordis' Opposition to Plaintiff's Motion to Enforce 35 U.S.C. s 282 and to Exclude Cordis' ""Undisclosed Alleged Prior Art" (Apr. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 1494916 (Trial Motion, Memorandum and Affidavit) Cordis' Motion in Limine to (1) Set the Order of Proofs at Trial and (2) Bifurcate the Willful Infringement Issue, and Brief in Support of its Motion (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1494917 (Trial Motion, Memorandum and Affidavit) Cordis' Motion in Limine to Preclude Dr. Voda from Referring to the Presumption of Validity in the Presence of the Jury, and Brief in Support of its Motion (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1494918 (Trial Motion, Memorandum and Affidavit) Cordis' Motion in Limine to Preclude Dr. Voda from Calling William Kingston, Marty Lundeen, Tracy Rosecrans, Dale Spencer or Henry Pepin as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 7
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

Trial Witnesses, and Brief in Support of its Motion (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1749459 (Trial Motion, Memorandum and Affidavit) Cordis' Motion in Limine to (1) Set the Order of Proofs at Trial and (2) Bifurcate the Willful Infringement Issue, and Brief in Support of its Motion (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1749458 (Trial Motion, Memorandum and Affidavit) Dr. Voda's Opposition to Cordis' Motion to Strike and Motion in Limine Concerning Voda's Exhibits 66 67 and 68 (Mar. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 814387 (Trial Motion, Memorandum and Affidavit) Consolidated Reply in Support of Dr. Voda's (1) Daubert Motion and (2) Motion for Partial Summary Judgment (Feb. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 814386 (Trial Motion, Memorandum and Affidavit) Dr. Voda's Opposition to Cordis' Motion to Exclude and Strike Voda Production Nos. 1402-1403, 1427-1444 (Feb. 22, 2006) Original Image of this Document (PDF)
• 2006 WL 497441 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiff's Motion to Strike and Motion in Limine Concerning Defendant's Exhibits 12, 23, 24, 27 and 29 Submitted in Support of Defendant's Motion for Summary Judgment (Jan. 31, 2006) Original Image of this Document (PDF)
• 2005 WL 2897736 (Trial Motion, Memorandum and Affidavit) Plaintiff's Supplemental Claim Construction Brief (Aug. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 2897737 (Trial Motion, Memorandum and Affidavit) Update to Cordis' Markman Brief (Aug. 23, 2005) Original Image of this Document (PDF)
• 2004 WL 3138567 (Trial Motion, Memorandum and Affidavit) Cordis' Responsive Markman Brief (Dec. 13, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3138722 (Trial Motion, Memorandum and Affidavit) Cordis' Responsive Markman Brief (Dec. 13, 2004)
• 2004 WL 3138548 (Trial Motion, Memorandum and Affidavit) Cordis' Reply Brief in Support of its Motion to Preclude Dr. Voda from Continuing to Contact Current and Former Employees of Cordis (Dec. 8, 2004) Original Image of this Document (PDF)
• 2004 WL 3138707 (Trial Motion, Memorandum and Affidavit) Cordis' Reply Brief in Support of its Motion to Preclude Dr. Voda from Continuing to Contact Current and Former Employees of Cordis (Dec. 8, 2004)
• 2004 WL 3138574 (Trial Motion, Memorandum and

Affidavit) Cordis' Opening Markman Brief (Nov. 16, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 4025336 (Trial Motion, Memorandum and Affidavit) Cordis' Motion for Protective Order to Preclude Dr. Voda from Continuing to Contact Current and Former Employees of Cordis (Nov. 16, 2004) Original Image of this Document (PDF)
• 2004 WL 3138529 (Trial Motion, Memorandum and Affidavit) Surreply Brief in Opposition to Dr. Voda's Motion to Compel (Sep. 21, 2004) Original Image of this Document (PDF)
• 2004 WL 3138692 (Trial Motion, Memorandum and Affidavit) Surreply Brief in Opposition to Dr. Voda's Motion to Compel (Sep. 21, 2004)
• 2004 WL 3138513 (Trial Motion, Memorandum and Affidavit) Cordis' Opposition to Dr. Voda's Motion to Compel Discovery Materials (Aug. 24, 2004) Original Image of this Document (PDF)
• 2004 WL 3138681 (Trial Motion, Memorandum and Affidavit) Cordis' Opposition to Dr. Voda's Motion to Compel Discovery Materials (Aug. 24, 2004)
• 2004 WL 3138491 (Trial Motion, Memorandum and Affidavit) Reply to Defendant Cordis Corporation's Counterclaim (Jan. 22, 2004) Original Image of this Document (PDF)
• 2004 WL 3138669 (Trial Motion, Memorandum and Affidavit) Reply to Defendant Cordis Corporation's Counterclaim (Jan. 22, 2004)
• 2003 WL 23996744 (Trial Pleading) Complaint (Oct. 30, 2003) Original Image of this Document (PDF)
• 2003 WL 23996782 (Trial Pleading) Complaint (Oct. 30, 2003)
• 5:03cv01512 (Docket) (Oct. 30, 2003)
• 2003 WL 23996752 (Trial Pleading) Answer and Counterclaim for Declaratory Relief (2003) Original Image of this Document (PDF)
• 2003 WL 23996758 (Trial Motion, Memorandum and Affidavit) Demand for Jury Trial (2003) Original Image of this Document (PDF)
• 2003 WL 23996760 (Trial Pleading) First Amended Complaint (2003) Original Image of this Document (PDF)
• 2003 WL 23996762 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opening Claim Construction Bref (2003) Original Image of this Document (PDF)
• 2003 WL 23996765 (Trial Motion, Memorandum and Affidavit) Demand for Jury Trial (2003) Original Image of this Document (PDF)
• 2003 WL 23996769 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Response to Defendant's Opening Markman Brief (2003) Original Image of this Document (PDF)
• 2003 WL 23996773 (Trial Motion, Memorandum and Affidavit) Surreply of Jan K. Voda, M.D. in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2570614 (W.D.Okla.)
**(Cite as: Slip Copy)**

Opposition to Cordis' Motion for Protective Order
(2003) Original Image of this Document (PDF)
• 2003 WL 23996867 (Trial Motion, Memorandum
and Affidavit) Reply Brief in Support of Plaintiff's
Motion to Compel Discovery Materials (2003)
Original Image of this Document (PDF)
• 2003 WL 23996870 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Plaintiff's
Motion for Sanctions (2003) Original Image of this
Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 10

Westlaw.

Slip Copy                                                                                      Page 1
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,W.D. Oklahoma.
H. Lester WALD, et al., Plaintiffs,
v.
**MUDHOPPER** OILFIELD SERVICES, INC., et al.,
Defendants.
**No. CIV-04-1693-C.**

July 27, 2006.

Gary S. Peterson, Oklahoma City, OK, for Plaintiffs.
Julia C. Rieman, Gungoll Jackson Collins Box &
Devoll, Enid, OK, for Defendants.

### *MEMORANDUM OPINION & ORDER*
ROBIN J. CAUTHRON, District Judge.
**\*1** On April 12, 2006, the jury in this case returned a
verdict that Defendants infringed Plaintiffs' patent (the
Wald patent) based on Defendants' sales of Poly Drill
Sticks and awarded Plaintiffs damages based on those
sales and Defendants' sales of another product, Hole
Sweep Sticks, which the parties stipulated infringed
the Wald patent. (Dkt. No. 70.) The jury also found, by
special interrogatory, that there was clear and
convincing evidence that Defendants' infringement
was willful. (Dkt. No. 69.) At the close of evidence,
Defendants' counsel moved for judgment as a matter
of law (JMOL) on the issue of infringement under the
doctrine of equivalents because "no reasonable jury
would find that the equivalent container is present [in
the Poly Drill Sticks]." (Tr. at 276.) After the verdict
was announced, Defendants again moved for
"judgment notwithstanding the verdict as being
unsupported by the evidence." (Tr. at 304.)
Defendants were instructed to file that motion in
writing. (*Id.*)

Defendants have since filed their written post-verdict
motion for JMOL, which is presently before the Court.
Plaintiffs have responded, and Defendants have filed a
reply. For the reasons explained below, Defendants'
motion is denied.

### STANDARD

Federal Rule of Civil Procedure 50(a) allows motions
for JMOL to be made "[I]f during a trial by jury a

party has been fully heard on an issue and there is no
legally sufficient evidentiary basis for a reasonable
jury to find for that party on that issue" and at any time
before submission of the case to the jury. A Rule 50(a)
motion must "specify the judgment sought and the law
and the facts on which the moving party is entitled to
the judgment." According to Rule 50(b), "[i]f, for any
reason, the court does not grant a motion for [JMOL]
made at the close of all the evidence, the court is
considered to have submitted the action to the jury
subject to the court's later deciding the legal questions
raised by the motion." The movants may renew their
pre-verdict motion no later than ten days after the
entry of judgment. *Id.*

JMOL is appropriate "only 'if the jury's factual
findings are not supported by substantial evidence or if
the legal conclusions implied from the jury's verdict
cannot in law be supported by those findings.'
" *Junker v. Eddings,* 396 F.3d 1359, 1364
(Fed.Cir.2005), *cert. denied,* --- U.S. ----, 125 S.Ct.
2937 (2005) (quoting *Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc)). Thus,
the Court must first "determine what facts are
supported by substantial evidence" and second
"determine whether those facts support the legal
conclusion necessarily drawn by the jury en route to
its verdict." *Railroad Dynamics, Inc. v. A. Stucki Co.,*
727 F.2d 1506, 1513 (Fed.Cir.1984).

The Federal Circuit reviews the decision on a motion
for JMOL de novo, applying the standard applicable in
the regional circuit where the district court sits. *Old
Town Canoe Co. v. Confluence Holdings Corp.,* 448
F.3d 1309, 1314 (Fed.Cir.2006); *Markman v.
Westview Instruments, Inc.,* 52 F.3d 967, 975
(Fed.Cir.1995). Law in the Tenth Circuit requires this
Court to make all reasonable inferences in favor of the
non-moving party and to refrain from weighing the
evidence or making credibility determinations.
*Loughridge v. Chiles Power Supply Co., Inc.,* 431
F.3d 1268, 1280 (10th Cir.2005). The Court will grant
such a motion for JMOL " 'only if the evidence points
but one way and is susceptible to no reasonable
inferences which may support the opposing party's
position.' " *Id. (quoting Finley v. United States,* 82
F.3d 966, 968 (10th Cir.1996)).

### DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

Page 2

**\*2** Defendants argue that the Court should enter JMOL in their favor because: (1) no reasonable jury could have found that the Poly Drill Stick satisfied the function/way/result test to infringe the Wald patent under the doctrine of equivalents; (2) the infringement verdict violates the "all limitations" rule; and (3) the infringement verdict impermissibly allowed Plaintiffs to exclude a product that was obvious, based on prior art, at the time the Wald patent issued. Alternatively, Defendants contend that they are entitled to JMOL with respect to the finding of willfulness, which they contend was against the substantial weight of evidence presented at trial. These arguments are addressed below.

1. Infringement Under the Doctrine of Equivalents

The jury was instructed that if they found that the Poly Drill Stick includes the equivalent of a "container" under the doctrine of equivalents, then Defendants would be liable for infringing the Wald patent based on their sales activities relating to the Poly Drill Sticks. (Dkt. No. 68, Jury Instruction No. 6.) The jury was further instructed:
The Court has construed the term "container" to mean any thing, somehow distinguishable from the well treatment composition it is intended to enclose, that is inert to the composition and of suitable size, shape, and substance to deliver the composition. Something is equivalent to a "container," as defined, if:
1. it performs substantially the same function,
2. in substantially the same way,
3. to produce the same result.
In deciding whether the Poly-Drill stick contains the equivalent of a "container," as defined, you should review the evidence from the perspective of a person of ordinary skill in the art. The test is objective, that is, whether at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial. You should consider the context of the entire claim, including the Wald patent drawings, written descriptions, application and history as well as prior art and all of the circumstances of the case.

(*Id.,* Jury Instruction No. 7.)

Defendants contend that the Poly Drill Stick does not contain the equivalent of a container because it does not perform "the function of allowing the well treatment composition of polymer to dissolve below the surface" in substantially the same way as a "patented stick" or achieve the same result "in performing the function of allowing the well treatment

composition to dissolve below the surface." (Defs.' Br. at 6-7.) In support of their argument, Defendants identify testimony that the Poly Drill Stick dissolves at a different rate than a product sold by one of the Plaintiffs and covered by the Wald patent.

"The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002). "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial. The analysis focuses on whether the element in the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Aquatex Indus., Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382 (Fed.Cir.2005) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950)).

**\*3** Accepting that Defendants have articulated a proper function of the Wald patent's container (i.e., of allowing the well treatment composition of polymer to dissolve below the surface), the Court cannot find that there was insubstantial evidence to support the jury's infringement verdict. With respect to Defendants' "way" argument, Defendants have not identified evidence that a difference in the dissolution rates would, when viewed from the perspective of one of ordinary skill in the art, preclude the Poly Drill's container equivalent from performing the container function in substantially the same way. As an initial matter, the jury was not required to accept that there was a difference in dissolution rates. Specifically, the jury was entitled to credit Defendant Brook's deposition testimony that the Poly Drill Stick dissolves "pretty quickly" over his in-trial testimony and other evidence that the Poly Drill Stick dissolved slowly or incompletely before "eventually" being dissolved at the drill bit. (Tr. at 156; 252-53; 266.) Further, even if the jury believed that there was a difference in rates, it need not have found that the difference would be considered a "substantial difference" to one of ordinary skill in the applicable art. There was evidence, unquestioned at trial or in the present motion, that the polymer contained in a Poly Drill Stick was released below surface. (Tr. at 93; 253-54.) There also was testimony offered regarding the value of polymer after the polymer/drilling fluid mix exits the drill bit. (Tr. at 59-67.) Therefore, the jury could have reasonably concluded that whatever difference there was between the dissolution rates of the Wald patent's partially soluble container and the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

Page 3

Poly Drill Stick, both dissolved below surface and completely by the time the drill bit was reached.

Considering the "way" the polymer is released, as a bubble or gradually, as opposed to the rate of dissolution, does not change the analysis or ruling. (*See* Defs.' Reply at 2 (complaining that Plaintiffs' response misses the point).) First, the Wald patent discloses a partially soluble container that encloses a well treatment composition in either a powdered or liquid form. Defendants did not produce evidence of when the Wald container would be "compromised" (as it dissolves) or that the result necessarily would produce a true pocket or bubble of treatment composition in the drilling fluid. (*See* Defs.' Br. at 5 ("Logic dictates that in any ... embodiment within the scope of the patented claim of a container ... as soon as the integrity of the container is compromised by the solvent, its entire content of well treatment composition will rapidly be exposed to the drilling mud, thereby creating a 'bubble,' if you will, of polymer (or other concentrated treatment composition) in the drilling mud at whatever depth the integrity of the container is compromised by dissolution.")) The Court declines to draw inferences against the non-movant, especially when Defendants failed to present their "bubble" theory to the jury but would instead have the Court upset the verdict as illogical.

**\*4** Second, there was simply no evidence that a person of ordinary skill in the applicable art would necessarily consider the difference in a bubble versus "slow" release substantial in how the Poly Drill Stick performs the function of introducing polymer below surface. The Court recognizes the need to not confuse the overall function of the Poly Drill Stick (accused device) with the function of a container equivalent. Still, given the purpose of the invention and evidence about the industry need for a method of introducing polymer below-surface, which is a container function, the jury could have found that whatever difference there may be in the manner in which polymer is introduced below surface is not a substantial difference. Accordingly, for the reasons set out above, the jury was entitled to find that elements of the Poly Drill Stick performed the dissolution-below-surface function of the Wald patent's container and in substantially the same way.

Defendants' "result" argument also fails. There was evidence at trial that the Poly Drill Stick delivered a well treatment composition of polymer below surface. Thus, the jury could have reasonably found that the Poly Drill Stick achieved substantially the same result as would have been achieved through the use of a literal container. Specifically, based on the evidence, it would have been reasonable to conclude that the solid-stick structure and soap additives of the Poly Drill Stick allowed for a safer and more cost-effective means of introducing polymer than previously existed. (Tr. at 67-72.) Defendant Brooks testified that the Poly Drill Sticks are a *better* product than what is disclosed in the Wald patent in terms of accidental breakage (on the rig floor) and "blowback." (Tr. at 243-45.) However, the jury need not have considered those differences significant because Brooks did not quantify the advantage and the Poly Drill Stick did not eliminate problems associated with above-surface breakage and blowback. Moreover, the jury was entitled to credit other evidence that the Wald patent does show an improvement over prior methods of introducing polymer and that the Poly Drill Stick's solid structure and soap additives allow it to accomplish the same end, namely, through easy transport and below-surface dissolution. Because there was evidence that elements of the Poly Drill Stick performed the function of the Wald patent container in substantially the same way to achieve the same result, Defendants' motion for JMOL on the infringement verdict is denied.

2. "All Limitations" Rule

Defendants also argue that because the entire Poly Drill Stick is a treatment composition corresponding to the treatment composition element of the Wald patent, the infringement verdict vitiates the Wald patent requirement that the treatment composition be "in" or "enclosed in" a container. (Defs.' Br. at 10.) Thus, Defendants contend that the jury's verdict conflicts with the "all limitations" rule, which prohibits application of the doctrine of equivalents if the result would be to " 'effectively eliminate [an] element in its entirety.' " (Defs.' Br. at 8 (*quoting Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997)* (emphasis omitted))).

**\*5** As an initial matter, Plaintiffs complain that this argument was not raised earlier, including in Defendants' pre-verdict motion for JMOL, and was therefore waived. Rule 50 requires that the law and facts on which a movant relies be specified, at least with " 'sufficient certainty to apprise the court and opposing counsel of the movant's position.' " *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1229 (10th Cir.2000)* (*quoting* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 2533 (1995)*, 310). "The requirement for specificity is not simply the rule-drafter's choice of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 4
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

phrasing. In view of a litigant's Seventh Amendment rights, it would be constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in the pre-verdict JMOL." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed.Cir.2003).

Here, counsel referred to the insufficiency of the evidence with respect to any potential container-equivalent, but in no way alluded to the legal contention described above. The Court had the authority to take the issue of infringement away from the jury based on this limitation, if warranted. *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 763 (Fed.Cir.1988) ( "[T]here is no question that the court may take the issue from the jury on a directed verdict or JNOV motion at least in the same circumstances where it could have granted summary judgment."); *Warner-Jenkinson Co.*, 520 U.S. at 39 n. 8 ("[U]nder the particular facts of a case, ... if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve."). However, Defendants failed to identify their argument in the pre-verdict motion for JMOL. *See Newell*, 862 F.2d at 764 n. 6 (emphasizing that a litigant is responsible for seeking a ruling on a legal issue and the court is not obligated to act *sua sponte*).

Nor did Defendants raise this issue at summary judgment or in the pretrial report or assert it as a basis for an objection to the jury instructions or verdict form. Defendants did not simply omit this argument from their pre-verdict motion for JMOL; they failed to raise the issue *at all* before the case went to the jury. Although a question of law need not be raised in a pre-verdict motion for JMOL to be preserved, it does need to be identified at some point before the case goes to the jury. *See Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841 (10th Cir.1994) (explaining that question of law raised before the case goes to the jury need not be included as an issue in a motion for a directed verdict); *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1249 n. 37 (10th Cir.1999) (objecting to verdict form preserved question of law omitted from pre-verdict JMOL for appeal). Thus, the Court agrees that Defendants failed to advance a legal argument that is not appropriately raised, for the first time, in a post-verdict motion for JMOL.

**\*6** However, even if Defendants' argument were properly before the Court, it is flawed in two critical respects. First, there was sufficient evidence that the polymer was held together or bound by the

soap/surfactant in the Poly Drill Stick. There was testimony that a Poly Drill Stick is formed by adding a fine-powdered polymer to melted surfactant, poured into a stick form, and allowed to harden (Tr. at 224-25, 228, 232-234), and that a stick is comprised of 40 % polymer and 60% surfactant (Tr. at 232). Plaintiffs' expert testified that the polymer (PHPA) molecules are effectively "held in place by the soap, so the soap ... [is] actually acting as a container for the PHPA. Otherwise, we would have powder [rather than a stick]." (Tr. at 155.) Based on this evidence, the jury could have reasonably found that the polymer was contained by the surfactant, even if it was not within the confines of a literal container.

Second, the surfactant could be part of the treatment composition and a binding agent without effectively eliminating any limitation of the Wald patent container. "Every limitation of the claim must have an equivalent within the accused device, although it need not necessarily have a corresponding component. A single structure in the accused device may perform the functions of two or more claim limitations. Thus, there need not be a one-to-one correspondence of components." *Judin v. United States*, 27 Fed. Cl. 759, 786 (1993) (citations omitted). Instead, "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed.Cir.2005), *cert. denied*, 126 S.Ct. 1167 (2006).

Based on the testimony that the surfactant keeps otherwise loose, powdered polymer together, allowing easy transport, the jury could have reasonably found that the surfactant performed, in an insubstantially different way, the enclosing function of a literal container. That the surfactant also serves some additional treatment purpose does not vitiate a claim limitation. Therefore, even if Defendants' argument that the infringement verdict effectively and entirely eliminates a claim limitation was not waived, it is without merit. Their motion for JMOL on that ground is denied.

### 3. Obvious Combination of Prior Art

Based on evidence that polymer had been added to drilling mud, through other methods, and that soap or drill bit sticks were in use at the time the Wald patent issued, Defendants contend that Mr. Wald could not have secured a patent that would have covered the

Slip Copy
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
(Cite as: Slip Copy)

Page 5

Poly Drill Sticks. A patent may not be obtained "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art...." 35 U.S.C. § 103(a). Thus, Defendants cite the legal limitation on the doctrine of equivalents that there cannot be infringement " 'if the asserted scope of equivalency of what is literally claimed would encompass the prior art.' " (Defs.' Br. at 11 (quoting _Wilson Sporting Goods Co. v. David Geoffrey & Assocs._, 904 F.2d 677, 683 (Fed.Cir.1990).) [FN1]

> FN1. _Wilson Sporting Goods_ has been overruled in part on other grounds in _Cardinal Chem. Co. v. Morton Int'l_, 508 U.S. 83 (1993).

*7 However, again, Defendants did not identify this legal limitation in their pre-verdict motion for JMOL. Defendants noted in their seven-page brief in support of a motion for partial summary judgment that "a patent owner cannot use the doctrine to cover subject matter that could not have been patented because of [ ] prior art," but they did not develop that argument. (Dkt. No. 45 at 4.) Nor did they identify this contention as an issue in the pretrial report or object to the instructions given to the jury. Passing references to relevant facts at trial (i.e., the use of soap sticks and polymer in wells) and an instruction that the jury could consider prior art, among other things, in determining whether a person of ordinary skill in the art would find the Poly Drill Stick to possess a container equivalent did not meaningfully identify or articulate the argument Defendants now advance. Defendants simply did not assert this legal limitation, in a coherent and cogent fashion, at any time before the case went to the jury. Thus, the Court agrees that the argument is not appropriately raised, for the first time, in a post-verdict motion for JMOL.

In any event, Defendants' argument fails. The purpose of the limitation that prior art restricts the scope of equivalency is to prevent a party from obtaining coverage that could not lawfully have been obtained by the literal claims. _Conroy v. Reebok Int'l, Ltd._, 14 F.3d 1570, 1576-77 (Fed.Cir.1994) (overturning grant of summary judgment that was based on conclusion that disclosure of equivalent element in prior art precluded plaintiff from asserting a range of equivalents that would encompass that equivalent).[FN2] However, "the mere existence of an element in the prior art [does not] automatically preclude[ ]

[Plaintiffs] from asserting a scope of equivalency sufficient to encompass the corresponding element in the accused devise." _Id_ at 1577. Thus, the fact that soapsticks (the container equivalent) have been used for years does not, as a matter of law, preclude Plaintiff's infringement argument under the doctrine of equivalents.

> FN2. _Wilson Sporting Goods_ established an analytical framework, hypothetical claim analysis, to determine the extent to which prior art restricts the application of the doctrine of equivalents.
> Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to _literally_ encompass the accused product or process. If that claim would have been allowed by the [Patent and Trademark Office] over the prior art, then the prior art does not bar the application of the doctrine of equivalents. Conversely, if that claim would not have been allowed, the prior art bars application of the doctrine of equivalents and infringement by equivalence may not be found.
> _Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co._, 204 F.3d 1360, 1364-65 (Fed.Cir.2000) (citations omitted).

To the extent that Defendants argue that the Poly Drill Stick would have been unpatentable at the time the Wald patent issued because _it_ was obvious [FN3], the need to have identified that argument earlier is evident because the legal conclusion of obviousness rests on underlying factual considerations, _see Graham v. John Deere Co._, 383 U.S. 1, 17 (1966), which were not before the jury.[FN4] Moreover, at a minimum, there was sufficient evidence in the record that there was no motivation in the prior art to make a polymer-soapstick (in this case, objective evidence of nonobviousness).

> FN3. "Accordingly, it would have been obvious to anyone skilled in the art to add polymer as an ingredient to a soap stick since were [sic] both well treatment compositions that performed related functions." (Defs.' Br. at 13-14.)

> FN4. These underlying findings of fact are: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 6
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

art; and (4) objective evidence of
nonobviousness." _Riverwood Int'l Corp. v._
_Mead Corp., 212 F.3d 1365, 1366_
_(Fed.Cir.2000)._

Even if all the limitations could be found in prior art
references, an invention is not obvious absent "a
demonstration of the existence of a motivation to
combine those references at the time of the invention.
This requirement prevents a court from labeling as
obvious in hindsight a solution that was not obvious to
one of ordinary skill at the time of the invention."
_Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357_
_F.3d 1319, 1337 (Fed.Cir .2004)_ (citation omitted).
"The presence or absence of a motivation to combine
references in an obviousness determination ... [is a]
question[ ] of fact." _In re Thomas,_ 151 Fed. Appx. 930,
933 (Fed.Cir.2005).

**\*8** Plaintiffs introduced evidence that the very idea of
containing polymer to allow a below-surface
introduction was met with skepticism. (Tr. at 177).
Thus, for this reason alone, the Court cannot now,
based on the evidence identified by Defendants, find
that there was substantial evidence of motivation that
the jury would not have been entitled to disregard.
Therefore, Defendants' motion for JMOL on the basis
of obviousness/prior art is denied.


### 4. Willfulness

Finally, Defendants argue that there was not clear and
convincing evidence that Defendants' infringement
was willful because the Poly Drill Stick did not
literally infringe the Wald patent, Defendants had a
good faith belief that the Wald patent was invalid or
not infringed, and conduct occurring before the patent
issued is not relevant. Defendants cannot prevail.

Defendants cannot now challenge the sufficiency of
the evidence supporting the willfulness finding. They
neglected to include that challenge in their pre-verdict
motion for JMOL. Their assertion that by arguing that
no reasonable jury would find that the equivalent
container is present they necessarily challenged the
sufficiency of the evidence with respect to willfulness
is without merit. The Federal Circuit has rejected the
contention that a pre-verdict motion for JMOL on
infringement encompasses a challenge to the
sufficiency of the evidence with respect to willfulness.
_See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,_
_806 F.2d 1565, 1579 (Fed.Cir.1986)_ (addressing
content of a motion for directed verdict).
"Infringement and willful infringement are not the

same thing, and Rules 50(a) and 50(b) mandate
specificity." _Id._ Thus, the Defendants' challenge was
waived.

However, even so, the Court does not agree with
Defendants' assessment of the evidence. The jury
heard testimony that suggested Defendant Brooks was
aware of Plaintiff Wald's idea before he developed the
Hole Sweep and Poly Drill Stick products, a fact he
denied at trial. The jury also heard testimony that
Defendants continued to sell the Poly Drill Sticks after
learning of the Wald patent. Although Defendant
Brooks might harbor the personal belief that the Wald
patent is invalid, an idea he shared with the jury (Tr. at
258), the jury was not required to believe that his
belief was reasonable or that the continued marketing
and sales of the Poly Drill Sticks were taken in good
faith. Defendants also elected not to present evidence
of a reliance on the advice of counsel at trial.
Therefore, regardless of whether the letter Defendants
attach to their motion (indicating that the counsel
believed the Wald patent was not valid) would have
been admissible or whether Plaintiffs' withdrawn
motion in limine to exclude such evidence would have
been sustained, that evidence was not before the jury.
9A Charles Alan Wright & Arthur R. Miller, _Federal_
_Practice and Procedure § 2537 (2d ed.2006)_
(explaining that the moving party may not introduce
new evidence post-trial as support for a renewed
motion). Considering the evidence that was available
to the jury, the Court cannot find that the jury was not
entitled to find clear and convincing evidence of
willfulness. Thus, Defendants' motion is denied with
respect to the willfulness finding.


### CONCLUSION

**\*9** Accordingly, Defendants' Motion for Judgment as
a Matter of Law Pursuant to Fed.R.Civ.P. 50 (b) (Dkt.
No. 79) is DENIED.

IT IS SO ORDERED this 27th day of July, 2006.

W.D.Okla.,2006.
Wald v. Mudhopper Oilfield Services, Inc.
Slip Copy, 2006 WL 2128835 (W.D.Okla.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1506580 () Declaration (May 3, 2006)
Original Image of this Document (PDF)
• 2006 WL 814376 (Trial Motion, Memorandum and
Affidavit) Brief in Support of Defendants' Motion for
Partial Summary Judgment (Feb. 15, 2006) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7
Slip Copy, 2006 WL 2128835 (W.D.Okla.)
**(Cite as: Slip Copy)**

Image of this Document (PDF)
• 2006 WL 497655 (Trial Pleading) Answer to Second
Amended Complaint (Jan. 13, 2006) Original Image
of this Document (PDF)
• 2005 WL 176533 (Trial Pleading) Answer (Jan. 5,
2005) Original Image of this Document (PDF)
• 5:04cv01693 (Docket) (Dec. 14, 2004)
• 2004 WL 3139204 (Trial Pleading) Complaint (2004)
Original Image of this Document (PDF)
• 2004 WL 3139216 (Trial Pleading) Amended
Complaint (2004) Original Image of this Document
(PDF)
• 2004 WL 3778215 (Trial Motion, Memorandum and
Affidavit) Plaintiffs' Brief in Opposition to Motion for
Partial Summary Judgment (2004) Original Image of
this Document (PDF)
• 2004 WL 3778216 (Trial Motion, Memorandum and
Affidavit) Plaintiffs' Trial Brief (2004) Original Image
of this Document (PDF)
• 2004 WL 3804383 () Declaration (2004) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Donald E. Reid, hereby certify that on the 18th day of September, 2006, the

Defendants' Compendium Of Unpublished Cases Cited In Opposition To Novozymes A/S'

Motion For Permanent Injunction was served by e-mail upon counsel of record:

> Andrew A. Lundgren, Esquire (alundgren@ycst.com)
> Young Conaway Stargatt & Taylor LLP
> 1000 West Street
> Wilmington, DE  19801
>
> Samuel S. Woodley, Esquire (swoodley@darbylaw.com)
> Robert C. Sullivan, Jr., Esquire (rsullivan@darbylaw.com)
> Darby & Darby P.C.
> 805 Third Avenue, 27th Floor
> New York, NY 10022
>
> David K. Tellekson, Esquire (dtellekson@darbylaw.com)
> Darby & Darby P.C.
> 1191 Second Avenue
> Seattle, WA 98101
>
> George Hykal, Esquire (ghykal@darbylaw.com)
> Darby & Darby P.C.
> 803 3[rd] Avenue
> New York, NY 10022

Donald E. Reid (#1058)