**REDACTED – PUBLIC VERSION**
**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION**
**UNDER PROTECTIVE ORDER**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

NOVOZYMES A/S,

                Plaintiff,

    v.

                                   C.A. No. 05-160-KAJ

GENENCOR INTERNATIONAL, INC., and
ENZYME DEVELOPMENT CORPORATION,

                Defendants.

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
## FOR PERMANENT INJUNCTION

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

OF COUNSEL:

Joseph R. Robinson
Steven E. Lipman
Robert C. Sullivan, Jr.
David K. Tellekson
Samuel S. Woodley
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700

*Attorneys for Plaintiff*
*Novozymes A/S*

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF THE ARGUMENT ................................................. 1

NATURE AND STAGE OF PROCEEDING ........................................................ 4

FACTS ......................................................................................... 6

ARGUMENT ...................................................................................... 9

1. Novozymes Can Establish Irreparable Harm, Both Because It Is Entitled To A Presumption Of Such Harm, And Because Its Loss Of Market Share, Forced Price Reduction, Erosion Of Good Will and Reputation, And Loss Of "Convoyed Sales" All Reflect Such Irreparable Harm .................................................... 10

    a. Defendants' Infringing Activities Are Causing A Permanent And Irrevocable Change To A Market That Novozymes Once Dominated ..................................... 12

    b. Defendants' Infringing Activities Are Causing Permanent And Irrevocable Harm To Novozymes' Reputation And Goodwill .............................................. 15

    c. Defendants' Infringing Activities Are Causing Permanent And Irrevocable Harm To Novozymes' Sales Of Convoyed Products ........................................... 16

    d. Defendants' Claim That They Will Voluntarily Take Spezyme® Ethyl Off The Market Is No Substitute For A Permanent Injunction ...................................... 17

2. Novozymes Can Establish Lack of Adequate Legal Remedies, Because There Is No Monetary Remedy For Novozymes' Loss Of Convoyed Products, No Monetary Remedy For Long-Term Price Erosion, Or Loss Of Market Share, No Monetary Remedy For Loss Of Good Will And Reputation, And No Monetary Remedy For Future Infringement .............................................................................. 18

3. The Balance Of Hardships Tilts In Novozymes' Favor, Because Genencor Engaged In The Brinksmanship Of Continued Infringement, Even After Learning That Novozymes' Patent Had Been Allowed ..................................................................... 21

4. The Most Salient Public Policy At Issue In This Case Is The Need For Patent Rights To Be Protected And Enforced, So The Constitutional Mandate Of Fostering Innovation Will Be Effectuated ......................................................................... 23

5. In The Alternative, Novozymes Moves For A Preliminary Injunction Until The Second Phase Of Trial, When The Court Can Hear Testimony On The Issue Of Whether To Grant A Permanent Injunction ................................................................. 24

CONCLUSION ................................................................................... 25

i

064080.1001

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

**TABLE OF CASES AND AUTHORITIES**

Page

**Federal Cases**

*Abbott Labs. v. Andrx Pharm. Inc.,*
    452 F.3d 1331 (Fed. Cir. 2006)..................................................................................... 12

*Bio-Tech. Gen. Corp. v. Genentech, Inc.,*
    80 F.3d 1553 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 911 (1996).................................... 15

*Christiana Indus. Inc. v. Empire Electronics, Inc.,*
    No. 06-12568, 2006 U.S. Dist. LEXIS 54210 (*5 E.D. Mich. Aug. 4, 2006)................. 12

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
    1993 U.S. Dist. LEXIS 19959 (28 U.S.P.Q.2d 1362 )..................................................... 15

*eBay Inc. v. Mercexchange, L.L.C.,*
    126 S. Ct. 1837 (2006)............................................................... 2, 3, 9, 10, 11, 17, 18, 21

*eSpeed, Inc. v. BrokerTec USA LLC,*
    2004 U.S. Dist. LEXIS 385 (D. Del. 2004) .................................................................. 23

*Fisher-Price, Inc. v. Safety 1st, Inc.,*
    279 F. Supp. 2d 526 (D. Del. 2003) .............................................................................. 15

*H.H. Robertson v. United Steel Deck, Inc.,*
    820 F.2d 384 (Fed. Cir. 1987)................................................................................ 11, 23

*Hybritech Inc. v. Abbott Labs.,*
    849 F.2d 1446 (Fed. Cir. 1988)............................................................................. 18, 23

*eBay Inc. v. Mercexchange, L.L.C.,*
    126 S. Ct. 1837 (2006)............................................................... 2, 3, 9, 10, 11, 17, 18, 21

*International Rectifier Corp. v. Ixys Corp.,*
    No. 06-1296, 2006 WL 2036676 (Fed. Cir. July 14, 2006).............................................. 12

*Lifescan Inc. v. Polymer Tech. Int'l Corp.,*
    1995 U.S. Dist. LEXIS 4916 (35 U.S.P.Q.2d 1225 ).................................................. 16, 21

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)............................................ 11, 23

*Motorola Inc. v. Alexander Mfg. Co.,*
    786 F. Supp. 808 (N. D. Iowa 1991)........................................................................ 15, 21

DB01:2181011.1

064080.1001

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

*Nikko Materials USA, Inc. v. R.E. Serv. Co.,*
    No. C 03-2549, 2006 U.S. Dist. LEXIS 3700 (N.D. Cal. Jan. 12, 2006) .......................... 10

*Pfizer, Inc. v. Teva Pharm. USA, Inc.,*
    429 F.3d 1364 (Fed. Cir. 2005) ................................................................................. 10

*Polymer Techs., Inc. v. Bridwell,*
    103 F.3d 970 (Fed. Cir. 1996) ................................................................................... 13

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,*
    237 F.3d 1359 (Fed. Cir. 2001) ............................................................................ 12, 24

*Reebok Int'l Ltd. v. J. Baker, Inc.,*
    32 F.3d 1552 (Fed. Cir. 1994) .............................................................................. 11, 24

*Richardson v. Suzuki Motor Co.,*
    868 F.2d 1226 (Fed. Cir. 1989) ............................................................................ 10, 11

*Rite-Hite Corp. v. Kelley Co.,*
    56 F.3d 1538 (Fed. Cir. 1995) ................................................................................... 14

*Solarex Corp. v. Advanced Photovoltaic Sys. Inc.,*
    34 U.S.P.Q.2d 1234 (D. Del. 1995) ...................................................................... 20, 23

*Spalding & Evenflo Cos. Inc. v. Acushnet Co.,*
    1986 U.S. Dist. LEXIS 17129 (2 U.S.P.Q.2d 1070 ) ................................................... 20

*Technologies, Inc. v. Microsoft Corp.,*
    434 F. Supp. 2d 437 (E.D. Tex. 2006) ........................................................................ 12

*W.L. Gore & Associates, Inc. v. Garlock, Inc.,*
    842 F.2d 1275 (Fed. Cir. 1988) .................................................................................. 17

*Windsurfing Int'l, Inc. v. AMF, Inc.,*
    782 F.2d 995 (Fed. Cir. 1986) ................................................................................... 22

### Federal Statutes & Administrative Codes

35 U.S.C. § 283 ........................................................................................... 9, 15, 19

35 U.S.C. § 284 ................................................................................................ 14, 17

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiff Novozymes A/S, on behalf of itself and its wholly-owned subsidiary Novozymes of North America, Inc. (collectively, "Novozymes"), respectfully submits this Memorandum of Law in Support of its Motion for a Permanent Injunction against Defendants Genencor International, Inc. ("Genencor") and Enzyme Development Corporation ("EDC"). Novozymes brings this motion because money damages, while an essential part of remedying the harms caused by Defendants' infringement, cannot address the very real risk of Defendants' continued or later resumed infringing activities. Genencor claims it is pulling its infringing Spezyme$^®$ Ethyl product off the market. Yet, infringing activities continue. Genencor claims that it will replace the infringing product with a non-infringing alternative. Yet, it refuses to agree to a permanent injunction against future infringement. And its replacement product does not work nearly as well as the infringing Spezyme$^®$ Ethyl product, making "relapse" a constant danger for which a permanent injunction is the only realistic and effective remedy.

At the March 2006 liability phase of the trial in this case, the Court learned how difficult it was to positively identify an infringing protein, as the parties argued for hours about the sequence of the G997 alpha-amylase and whether Novozymes had analyzed the proper sample. Imagine, then, the difficulty of ensuring future compliance with this Court's rulings in the absence of a permanent injunction. Suppose that after this case Defendants begin selling a "new product" (say, Spezyme Little Ricky or Spezyme Desi) with remarkable similarities to the infringing Spezyme$^®$ Ethyl product. Will Novozymes be required to bring another infringement action to stop this sort of unfair and illegal competition every few years? No. Decades of precedent offer the permanent injunction as the sane alternative.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

In June of 2005, Novozymes actually sought a preliminary injunction barring Defendants from continuing to infringe U.S. Patent No. 6,867,031 (the "'031 patent") during the pendency of this lawsuit. At that early stage of the proceedings, the Court denied Novozymes' motion out of concern that Defendants had "raised a substantial question concerning validity of the '031 patent" and thus Plaintiff's "likelihood of success on the merits." (Order of 10/24/05, D.I. # 68). That concern has now been resolved.

On August 24, 2006, the Court issued an opinion addressing all issues raised during the liability and claim construction portion of a bifurcated trial. (*See* generally Findings of Fact and Conclusions of Law of 8/24/06 ("Infringement Opinion"), D.I. # 161). In that recently-issued Infringement Opinion, the Court found the '031 patent to be valid, enforceable, and infringed by the Spezyme® Ethyl product. (*Id.* at 64). In resolving and rejecting Defendants' invalidity arguments, the Court also resolved the concern that had prevented it from granting Novozymes' Motion for a Preliminary Injunction last year. With the harms set forth in that motion continuing, with Genencor refusing to accede to even a reasonably-worded injunction, and with no alternative means for policing Defendants' conduct available, Novozymes was compelled to renew its request for injunctive relief and now asks this Court to permanently enjoin the Defendants from continuing to infringe the '031 patent.

In the recent case of *eBay Inc. v. Mercexchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006), the Supreme Court of the United States delineated four familiar factors a district court should analyze in deciding to issue a permanent injunction:

1.    Irreparable harm;

2.    Inadequacy of legal, as opposed to equitable, remedies;

3.    The balance of hardships between plaintiff and defendant; and

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

4.    The absence of an important public interest that might be "disserved" by issuing an injunction.

The evidence of record comfortably satisfies each of these factors.

In light of this Court's favorable ruling on issues of validity, enforceability, and infringement, the law rightfully grants Novozymes a **presumption of irreparable harm**, which satisfies the first factor. Nevertheless, Novozymes can affirmatively show significant irreparable harm, because Defendants' infringing activities have caused long-term diminishment of its market share, depression of its product prices, corrosion of its good will and reputation, and loss of related or "convoyed" product sales, all of which are irreparable, in whole or in part. The first factor is plainly met – at least twice.

Relatedly, Novozymes can establish the lack of an adequate legal remedy. There is no adequate legal remedy for Novozymes' loss of related or convoyed product sales, no adequate remedy for long-term price erosion or loss of market share, no adequate remedy for corrosion of its good will and reputation as a innovative company, and no adequate remedy if Defendants are again tempted to grasp for illegal infringement profits. The second factor is met.

Similarly, the balance of harms tilts in Novozymes' favor. Novozymes' products were well established before Defendants began infringing. Novozymes was the clear market leader, with about 85% (by sales) of the U.S. fuel ethanol alpha-amylase market. Within about a year of Genencor's introduction of its infringing Spezyme Ethyl product, sales of Novozymes' competing Liquozyme SC product were cut in half, Novozymes was forced to slash prices on that product by nearly a third, and Novozymes faced increasing customer resistance to pricing that might allow Novozymes to reap some benefit from the innovations that Defendants have misappropriated at no cost to them. In contrast, the only harm that Defendants might suffer is

- 3 -

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

the harm attending their forced compliance with the law, about which the Federal Circuit has said, "they cannot be heard to complain." The third factor is met.

Finally, issuing a permanent injunction would not disserve any important public interest. Defendants are free to compete, but they must do so legally, rather than by misappropriating Novozymes' patented technology. Indeed, far from disserving any public interest, issuing an injunction in this case would foster and support the constitutionally-enshrined interest of promoting "the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. CONST. art. I, § 8, cl. 8. That is the only important public interest at stake here – the enforcement of lawfully-obtained intellectual property rights, and it argues in favor of issuing a permanent injunction.

## NATURE AND STAGE OF PROCEEDING

As the Court is well aware, this is a patent infringement case. Plaintiff Novozymes has sued Defendants Genencor and EDC for infringement of the '031 patent, seeking both damages and injunctive relief. (Complaint, D.I. # 1; Updated Final Pretrial Order of 3/5/06, D.I. # 101 at 2). The parties do not dispute this Court's jurisdiction over the subject matter of the case or over their persons. (*See* generally Infringement Opinion).

In June of 2005, Novozymes moved the Court for a Preliminary Injunction to halt sales and distribution of Genencor's infringing product because of ongoing harm to Novozymes' market share, goodwill, customer base, and related "convoyed sales."[1]  (Plaintiff's Motion for Prel. Injunction and Exhibits, D.I. ## 16-18). The Court ultimately denied the motion, reasoning that Defendants had "raised a substantial question concerning validity of the '031 patent" and

---

[1] Convoyed sales are sales of related products that a purchaser might buy along with the main product. (*See* June 22, 2005 Declaration of Gregory LeFebvre at ¶¶ 17-19).

- 4 -

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

thus Plaintiff's "likelihood of success on the merits." (Order of 10/24/05, D.I. # 68). However, the Court observed that while Defendants' evidence succeeded in raising some doubt as to Novozymes' likelihood of success on the merits at that stage of the proceedings, "a trial may eventually show that this evidence is not sufficient to prove obviousness by clear and convincing evidence." (*Id.*).

The trial of this matter has been bifurcated. From March 6 to March 9, 2006, the Court conducted a bench trial on issues of the infringement, validity, and enforceability of the '031 patent. (Infringement Opinion at 1). To expedite resolution of this case, the Court combined the standard *Markman* claim construction hearing with the first or "liability" phase of the case. (*Id.* at 26). On August 24, 2006, the Court issued its "Infringement Opinion" – a thorough decision addressing issues tried before the Court in March. (*Id.* at 1). In that Infringement Opinion, the Court concluded as follows:

> Defendants' Spezyme Ethyl infringes claims 1, 3, and 5 of the '031 patent; those claims are not invalid for obviousness or lack of enablement; and the '031 patent is not unenforceable due to inequitable conduct or prosecution laches.

(Infringement Opinion at 64). The Court thus did ultimately find that Defendants' evidence fell short of the clear and convincing standard necessary to invalidate a patent. A second bench trial, this one on damages, final injunctive relief, willfulness, and related issues, is scheduled for October 10-12, 2006.

With issues concerning the validity, enforceability, and infringement of the '031 patent now resolved, the barrier to this Court's earlier grant of injunctive relief has been removed. Plainly, there is no longer "a substantial question [or indeed any question] concerning validity of the '031 patent," which might dissuade the Court from issuing an injunction now. And

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

Novozymes now respectfully renews its request for injunctive relief to help restore what has been taken from it in a way that damages alone cannot.

## FACTS

Because the Court already has a detailed grasp of the facts of this patent infringement case, only a brief summary is warranted. Plaintiff Novozymes A/S is Danish corporation. It owns all right, title, and interest in the '031 patent. (Infringement Opinion at 1-2). In the U.S. fuel ethanol liquefaction market, where the majority of the harm from Defendants' infringement takes effect, Novozymes A/S manufactures, markets, and distributes its products through its wholly-owned American subsidiary, Novozymes of North America, Inc., which is the sole U.S. licensee of the '031 patent.[2] Currently pending before this Court is Novozymes' Motion for Leave to Add Novozymes of North America as a Co-Plaintiff, so the pleadings in this case will reflect the reality: namely, that Novozymes A/S and Novozymes of North America act as one in the U.S. distribution of products that compete with Defendants' infringing Spezyme® Ethyl product.[3] For purposes of this motion, which is not intended to recapitulate the Motion for Leave to Add Novozymes North America, both entities are collectively referred to as "Novozymes."

Novozymes is an international leader in the research, development, and marketing of commercial enzymes. Its facility in Franklinton, N.C., opened in 1979, is the largest

---

[2] The interrelationships between Novozymes A/S and Novozymes of North American, and their respective relationships to the '031 patent, are discussed in detail in Novozymes A/S's Motion for Leave to Add Novozymes North America as Co-Plaintiff and supporting documents. (*See* D.I. ## 145, 147, 165). Given these interrelationships, Novozymes A/S is plainly injured when Novozymes of North American is injured. An injunction would protect them both. Injunctions sound in equity, and equity demands that the real consequences of infringement be addressed.

[3] For purposes of the brief, and any resulting injunction, the term Spezyme® Ethyl refers to all Defendants' products that contain the alpha-amylase found by the Court to have infringed the '031 patent, regardless of the product names, trademarks, trade names, or packaging in which they are, or may later be, sold.

064080.1001

REDACTED

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION UNDER PROTECTIVE ORDER**

manufacturing plant for industrial enzymes in the U.S. Since 1990, Novozymes has spent over

on plant expansions at that facility. (Declaration of Gregory LeFebvre, at A-6,[4]

¶ 21).[5] The Franklinton facility includes a research laboratory and a pilot plant, where new

enzymes, and new uses for enzymes, are discovered. Much of this research is directed at solving

problems brought to Novozymes by customers. (*Id.* at ¶ 22).

Novozymes has built a reputation through innovation and has protected its innovations

through patents. If Novozymes could not have protected its proprietary technology in the U.S.

through patents, it would not have invested so heavily in its U.S. facilities. (*Id.* at ¶ 23).

Novozymes produces and sells several enzyme products in the United States that are important to

the fuel ethanol industry. Novozymes' line of products sold under the Liquozyme® and

Termamyl® trademarks (collectively "Liquozyme® S.C.") are *alpha-amylase* products that

reduce starch viscosity by breaking complex starches into smaller molecules. (Infringement

Opinion at 2-4). Novozymes' Spirizyme® Fuel products are *gluco-amylases*, which convert the

less viscous, smaller liquefied starches to even smaller glucose molecules. (*Id.*). Those glucose

molecules can then be fermented into ethanol by yeast. Novozymes' alpha-amylase products do

not fall within the claims of the '031 Patent.

Although the '031 Patent was filed in December of 2001, it was based on continuations

of other patent applications claiming a priority date going back to March of 1995. (*Id.* at 7-8).

The prosecution history of the family tree of various applications, of which the '031 patent is but

a branch, is partially set forth in this Court's Infringement Opinion. (*Id.*). Novozymes' alpha-

---

[4] A citation to "A-#" refers to the appendix of exhibits submitted concurrently herewith as Appendix A.

[5] The "LeFebvre Declaration" was originally submitted June 22, 2005 in connection with Novozymes' Motion for a Preliminary Injunction. Because it remains relevant, and because nearly all of the harms predicted by Mr. LeFebvre have since taken place, Novozymes continues to rely on it, along with other materials, on this Motion for a Permanent Injunction.

DB01:2181011.1                                                                                  064080.1001

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

amylase products fall under a division of an earlier patent application – they are of a different branch of the same family tree. In other words, Novozymes practices a very closely-related patent discovered while performing the same basic research that resulted in the '031 Patent.

Because of the superior performance of Liquozyme® S.C., Novozymes dominated the fuel ethanol liquefaction market before Genencor introduced its infringing "Johnny-come-lately" Spezyme Ethyl product in 2004. That dominance was quickly eroded in a zero-sum manner, as each new customer of Genencor's infringing product represented the loss of that customer to Novozymes. The Declaration of Gregory LeFebvre, former Senior Marketing Manager of Ethanol Industries at Novozymes, tells the story in relevant detail:

> Before Genencor entered the market in April 2004, Novozymes had about _____ of the United States fuel ethanol alpha-amylase market. Since Genencor entered the market, [as of mid-2005], the market share for Liqu------- SC has essentially
>
> _____ because of Genencor's infringing activities.
>
>     *   *   *   *   *   *
>
> Novozymes has been forced to reduce the price of its Liquozyme SC alpha-amylase product line in 2005 by an average of about ___ to compete with Genencor's infringing product . . . . Damages resulting from this price erosion are incalculable because their effects could last for decades, especially where Novozymes' customers are resistant to any subsequent rise in the price of the alpha-amylase product.
>
>     *   *   *   *   *   *
>
> Every day that Genencor is allowed to offer its infringing product, Novozymes suffers irreparable harm that undermines these [core] product lines.

(LeFebvre Declaration, at A-4 to A-6, ¶¶ 11-19).        REDACTED

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

In its recent Infringement Opinion, this Court confirmed that the '031 Patent is valid and enforceable and that "Defendants' Spezyme Ethyl infringes claims 1, 3, and 5" of that patent. (Infringement Opinion at 64). In October, the second phase of the bifurcated trial in this case begins. Novozymes has every reason to believe that many of the damages it has suffered can and will be recovered from the infringing Defendants, Genencor, and EDC, Genencor's distributor. Yet, other injuries – and perhaps the more profound injuries – can never be recovered through money damages, including injuries such as customer hostility and loss of good will, post-judgment price erosion, loss of sales of related or "convoyed" products, and transformation of the market. Those losses can only be addressed, albeit not fully remedied, through issuance of a permanent injunction.

## ARGUMENT

The Patent Act expressly authorizes district courts to grant injunctions "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. In the recent case of *eBay v. Mercexchange*, the Supreme Court emphasized that the traditional four-factor test for permanent injunctions applies to cases under the Patent Act. *eBay Inc. v. Mercexchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006). The Court stated that test succinctly:

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered **irreparable injury**; (2) that **remedies available at law**, such as monetary damages, **are inadequate** to compensate for that injury; (3) that, considering the **balance of hardships** between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the **public interest** would not be disserved by a permanent injunction.

*eBay*, 126 S. Ct. at 1839 (emphasis added). Whether to grant or deny a motion for permanent injunction is left to the sound discretion of the trial court and is reviewed under the deferential

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

abuse of discretion standard. *Id.* Considered in the light of this Court's recent Infringement Opinion, as well as other evidence of record, Novozymes handily meets all four factors and is entitled to a permanent injunction.

1.    **Novozymes Can Establish Irreparable Harm, Both Because It Is Entitled To A Presumption Of Such Harm, And Because Its Loss Of Market Share, Forced Price Reduction, Erosion Of Good Will and Reputation, And Loss Of "Convoyed Sales" All Reflect Such Irreparable Harm.**

The first factor of the *eBay* four-factor test is irreparable harm. *eBay*, 126 S. Ct. at 1839. To establish its right to a permanent injunction, Novozymes must show that Defendants' infringement of the '031 Patent is causing irreparable harm. *Id.* However, in light of this Court's August 24 Infringement Opinion, Novozymes is entitled to a "presumption of irreparable harm." Under well-settled Federal Circuit law, "once a clear showing has been made of patent validity and infringement," irreparable harm is presumed. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989)(reversing district court's denial of permanent injunction); *accord Nikko Materials USA, Inc. v. R.E. Serv. Co.*, No. C 03-2549, 2006 U.S. Dist. LEXIS 3700, at *19 (N.D. Cal. Jan. 12, 2006)(invoking presumption and granting permanent injunction). As the Federal Circuit said in *Pfizer*, "[w]e have consistently held that a district court should presume that a patent owner will be irreparably harmed when . . . a patent owner establishes a strong showing of likely infringement of a valid and enforceable patent." *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Suzuki*, 868 F.2d at 1247 (citing *H.H. Robertson v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987), *overruled on*

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

*other grounds, Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995)(*en banc*),

*aff'd,* 517 U.S. 370 (1996)).[7]

Here the showing of patent validity and infringement is not just strong; it is now a legal

certainty.   In its Infringement Opinion of August 24, 2006, this Court fully resolved any

outstanding issues of validity and enforceability and infringement in an exhaustive opinion that

concludes as follows:

> Defendants' Spezyme Ethyl infringes claims 1, 3, and 5 of the '031 patent;
> those claims are not invalid for obviousness or lack of enablement; and the
> '031 patent is not unenforceable due to inequitable conduct or prosecution
> laches.

(Infringement Opinion at 64).  As this Court has now resolved all issues concerning the validity,

enforceability, and infringement of the '031 Patent, Novozymes is plainly entitled to the

presumption of irreparable harm that attaches upon a clear showing of validity and infringement.

*Suzuki,* 868 F.2d at 1247.   Unless Defendants can rebut that presumption, the first prong

(irreparable injury) is thus established as a matter of law.

Importantly, the recent *eBay* case does not address the presumption of irreparable harm

that descends upon a strong showing of patent validity and infringement. *See eBay Inc. v.*

*Mercexchange, L.L.C.,* 126 S. Ct. 1837 (2006). Instead, the Supreme Court considered and

rejected the Federal Circuit's general rule that a permanent injunction automatically issues,

without analysis of the elements of the four-factor test, once infringement and validity have been

established. *Id.* at 1841; *see also Abbott Labs. v. Andrx Pharm. Inc.,* 452 F.3d 1331, 1333 (Fed.

Cir. 2006)(applying presumption analysis despite citing *eBay*); *Christiana Indus. Inc. v. Empire*

*Electronics, Inc.,* Case No. 06-12568, 2006 U.S. Dist. LEXIS 54210, *5 (E.D. Mich. Aug. 4,

---

[7] The same presumption applies on motions for a preliminary injunction. *See, e.g., Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1556 (Fed. Cir. 1994).

DB01:2181011.1                                                           064080.1001

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

2006)(rejecting argument that *eBay* "eliminated the presumption of irreparable harm"); *but see International Rectifier Corp. v. Ixys Corp.,* No. 06-1296, 2006 WL 2036676, at *1 (Fed. Cir. July 14, 2006)(remanding case to district court to determine if issuance of permanent injunction needed "to be revisited"); *z4 Technologies, Inc. v. Microsoft Corp.,* 434 F. Supp. 2d 437 (E.D. Tex. 2006)(arguing *eBay* does support elimination of presumption).

Anticipating an effort to either rebut the presumption or deny its existence based on the *z4 Technologies* case (and other recent Eastern District of Texas precedents), Novozymes underscores the powerful evidence, already of record, showing the irreparable harm it continues to suffer as a result of Defendants' infringement. That record evidence falls into roughly three categories: (a) permanent and irrevocable alteration of the enzyme market, (b) permanent and irrevocable erosion of Novozymes' reputation and good will, and (c) permanent and irrevocable loss of "convoyed sales." Each of these types of harm is irreparable under the law.

      **a.    Defendants' Infringing Activities Are Causing A Permanent And Irrevocable Change To A Market That Novozymes Once Dominated.**

Despite this Court's conclusion that the '031 Patent is valid and infringed, (Infringement Opinion at 64), this case presents a sad example of victory through infringement. Defendants' introduction of the infringing Spezyme Ethyl product in 2004 has transformed the market and undermined the value of the '031 Patent. (*See* LeFebvre Declaration, at A-4 to A-6, ¶¶ 11-19). Irreparable harm is readily established when an infringer, by entering the marketplace, reduces prices, erodes market share, or otherwise alters the market in ways that will be hard to reverse. *See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001)(testimony of price erosion and loss of market position shows irreparable harm); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970 (Fed. Cir. 1996). In *Polymer Techs.,* the Federal Circuit

- 12 -

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

enunciated precisely how an infringer's entry into the market causes irreparable harm to the

patent holder:

> Competitors change the marketplace. Years after infringement has
> begun, it may be impossible to restore a patentee's . . . exclusive
> position by an award of damages and a permanent injunction.
> Customers may have established relationships with infringers. The
> market is rarely the same when a market of multiple sellers is
> suddenly converted to one with a single seller by legal fiat.
> Requiring purchasers to pay higher prices after years of paying
> lower prices to infringers is not a reliable business option.

*Id.* at 975-6.

The Federal Circuit in *Polymer* describes the precise situation here. Genencor established

itself as the supplier of a competing alpha-amylase enzyme only by infringing Novozymes' '031

patent, and that infringement has corroded Novozymes' market position and price structure, as

set forth in the LeFebvre Declaration:

- "Novozymes has been forced to reduce the price of its Liquozyme SC alpha-
  amylase product line in 2005 by an average of about⸱    ⸳ to compete with
  Genencor's infringing product. Novozymes remains under constant price
  pressure from its customers who have been offered the infringing Spezyme Ethyl
  alpha-amylase product."

- "Before Genencor entered the market in April 2004, Novozymes had about
   ⸴    `the United States fuel ethanol alpha-amylase market. Since
  Genencor entered the market, the market for Liquozyme SC has essentially been
                                                            ⸳⸳ ⸳, ⸳ ⸳⸳, even
  thought Novozymes reduced its price by              because of Genencor's
  infringing activities."

- "Price pressure from Genencor has translated into non-compensable lost market
  share where Novozymes' customers have opted to purchase the infringing
  Genencor product instead of the product offered by Novozymes."

(LeFebvre Declaration, at A-4 to A-5, ¶¶ 12-14).

Such testimony bespeaks a market transformed by unlawful competition – by

infringement. Instead of being allowed to enjoy its hard-won position as the clear market leader,

REDACTED

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER



This is precisely the sort of situation that a permanent injunction is intended to redress.

Defendants will undoubtedly seek refuge in the fact that Novozymes' competing products are covered by a different but related patent, and not the '031 Patent. They will argue that this means Novozymes cannot suffer irreparable harm. The argument has already been tested and rejected by the Federal Circuit. In *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-49 (Fed. Cir. 1995)(*en banc*), the infringer claimed that the patentee was not entitled to recover lost profits, because the patentee's own competing products did not practice the infringed patent. The Federal Circuit, sitting *en banc*, rejected this argument, reasoning that "[b]eing responsible for lost sales of a competitive product is surely foreseeable," and "[t]hus, to refuse to award reasonably foreseeable damages necessary to make [the plaintiff] whole would be inconsistent with the meaning of 35 U.S.C. § 284." *Id.* at 1546-47. That holding applies by compelling logical analogy to the issue of irreparable harm in this case. To paraphrase the Federal Circuit, "being responsible for irreparable harm caused by an infringing product wrongly competing with a patentee's product that does not fall within the scope of the patent is surely foreseeable." Thus, to refuse a permanent injunction under 35 U.S.C. § 283 would be inconsistent with the meaning of that provision.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

    b.    **Defendants' Infringing Activities Are Causing Permanent And Irrevocable Harm To Novozymes' Reputation And Goodwill.**

    Novozymes is also suffering the progressive corrosion of its good will and reputation for innovation. Courts routinely consider injury to such "intangibles" in finding irreparable harm. *See Bio-Tech. Gen. Corp. v. Genentech, Inc.* 80 F.3d 1553, 1566 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 911 (1996)(patentee would be harmed, in part, because it would lose goodwill); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 1993 U.S. Dist. LEXIS 19959, at *29-30, 28 U.S.P.Q.2d 1362, 1370 (D. Del. July 16, 1993)(irreparable harm arising from loss of dominant market share and harm to good will and reputation as market innovator); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003) (permanent injunction warranted in view of harm to marketplace reputation); *Motorola Inc. v. Alexander Mfg. Co.*, 786 F. Supp. 808, 815 (N. D. Iowa 1991) ("money cannot adequately compensate for injury to reputation"). These cases apply here.

    Having not discovered or invented the alpha-amylase found in the Spezyme® Ethyl product, Genencor was able to enter the market more easily and cheaply.

REDACTED

    This loss of reputation and good will is precisely the sort of harm that courts regard as "irreparable." *See, e.g., Lifescan Inc. v. Polymer Tech. Int'l Corp.*, 1995 U.S. Dist. LEXIS 4916 at *60, 35 U.S.P.Q.2d 1225, 1240 (W.D.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

Wash. Jan. 3, 1995) (finding irreparable harm where patentee likely to lose goodwill, because of

pricing difference).

> **c.     Defendants' Infringing Activities Are Causing Permanent And
> Irrevocable Harm To Novozymes' Sales Of Convoyed Products.**

Additionally, Defendants' introduction and sale of the infringing product has caused

incalculable and irreparable harm in lost sales of related or "convoyed" products. Here is how

Mr. LeFebvre explains the concept:

> It is common in the relevant market here that, when a customer shifts its
> purchases of one enzyme product from one supplier to another, **the
> purchaser will also seek to shift its purchases of other enzyme products
> to that new supplier. Therefore, loss of sales and market share by
> Novozymes here will spread beyond alpha-amylase enzymes and will
> affect other Novozymes' products (such as its gluco-amylase enzyme
> line),** unless defendants' infringing activities are stopped immediately and
> the previous *status quo* is maintained.
>
> *     *     *     *     *     *
>
> Because of Genencor's infringing sales of Spezyme® Ethyl, Novozymes
> has suffered a loss in market share, not just of its Liquozyme SC and
> Termamyl alpha-amylase enzyme products, but also for its convoyed gluco-
> amylase enzyme sales.

(LeFebvre Declaration, at A-5 to A-6, ¶¶ 17-19)(emphasis added).  Although Novozymes has

elected not to pursue monetary damages for this ongoing hemorrhaging of convoyed product

sales, in part because of the difficulty of establishing them to a reasonable degree of probability,

those losses are both irreparable and ongoing.[8]  If such harms are to be addressed at all, it must

through a permanent injunction.

---

[8] Novozymes wants to be clear that not all damages in this case are obscure.  Some types of
damages, such as damages for some lost sales, will be relatively easy to prove at the second phase of trial.
But other types of damages, such as future damages or damages for injury to Novozymes' reputation, will
almost certainly not be recovered at trial.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

    d.    **Defendants' Claim That They Will Voluntarily Take Spezyme® Ethyl Off
The Market Is No Substitute For A Permanent Injunction.**

Defendant Genencor has offered to take the infringing Spezyme® Ethyl product off the
market. (*See* Press Release of 8/25/06, at A-16; *see also* E-mail from Tharan G. Lanier of
8/28/06, at A-17 to A-19). That offer, made principally to forestall the issuance of an injunction,
must be viewed as a tactical decision and fails to reassure. "The fact that the defendant had
stopped infringing is generally not a reason for denying an injunction against future infringement
unless the evidence is very persuasive that further infringement will not take place." 7 Ernest
Bainbridge Lipscomb III, Lipscomb's Walker on Patents § 25:35 (3d ed. 1988). "The argument
in such circumstances is very simple. If the defendant be honest in his protestations [that he will
not infringe again], an injunction will do him no harm; if he be dishonest, the court should place
a strong hand upon him." *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1282
(Fed. Cir. 1988). The law thus does not require Novozymes to take Defendants' word that they
will not infringe again. And there are some facts that give one pause.

Although Genencor indicates it will pull its product, it perversely refuses to agree to a
suitably-worded permanent injunction, even though such injunctions are common, indeed
standard, in "the vast majority of patent cases." *See eBay Inc. v. Mercexchange, L.L.C.,* 126 S.
Ct. 1837, 1841-42 (2006)(Roberts, C.J., *concurring*)(noting and embracing the historical fact that
courts have granted permanent injunctions "in the vast majority of patent cases"). If Genencor
stops voluntarily, it can resume voluntarily. Moreover, given the difficulty, well known to the
Court, of reliably establishing the precise nature and identity of an accused protein product, (*see
generally* Infringement Opinion at 23-26)(discussing the sequence of G997), it would entail
considerable effort and expense for Novozyme to police whether any particular product,
packaged under a new name or different label, was the same or a similarly-infringing product.

              

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

And this is a company that continued to infringe even after Novozymes delivered a copy of the allowed claims of what would become the '031 patent, giving Genencor clear notice of its imminent infringement. (LeFebvre Declaration, at A-8, ¶ 28; Deposition of Douglas Crabb, 8/29/06, at A-33).

Novozymes is thus not reassured by Genencor's protests that it will pull its best-selling product. The temptation to boost sales by selectively reintroducing Spezyme® Ethyl, or a similarly infringing product, will be too great, particularly since the non-infringing alternative will lack the performance capabilities of the Spezyme® Ethyl product. (*See* Deposition of Douglas Crabb, 8/29/06, at A-27, A-29, A-32, A-34 to A-36, A-39, A-42). For all these reasons, Novozymes must insist on its "right to exclude," which is supposed to be the defining feature of the patent grant.

> **2.** **Novozymes Can Establish Lack of Adequate Legal Remedies, Because There Is No Monetary Remedy For Novozymes' Loss Of Related Or Convoyed Products, No Monetary Remedy For Long-Term Price Erosion Or Loss of Market Share, No Monetary Remedy For Loss of Good Will And Reputation, And No Monetary Remedy For Future Infringement.**

The second *eBay* factor is the lack of adequate legal remedies, such as money damages. *eBay*, 126 S. Ct. at 1839. This factor is closely related to the first factor of irreparable harm. *See id.* at 1141 (Roberts, C.J., concurring). While Novozymes expects to establish significant monetary damages at trial, much of the harm done by Defendants' infringement cannot be remedied by money damages. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446 (Fed. Cir. 1988)(because principal value of a patent is right to exclude, money damages are not sufficient to make patentee whole). There are several examples.

First, as discussed above, Novozymes has lost a significant volume of related or convoyed sales, such as sales of its gluco-amylase enzyme line. (Lefebvre Declaration, at A-5 to

- 18 -

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

A-6, ¶¶ 17-19). In other words, once Genencor got its foot in the door using the infringing Spezyme® Ethyl product, it has been able to sell the customers additional, related products. (*Id.*). Because of the difficulty of establishing that these lost sales are the direct and proximate result of sales of the infringing product "with reasonable probability," Novozymes decided not to pursue monetary damages for those particular lost sales at trial.

Second, even the scope of infringement damages that Novozymes will prove at trial will not extend beyond the close of trial. Genencor claims that it will stop selling the infringing Spezyme® Ethyl product. (*See* Press Release of 8/25/06, at A-16; *see also* E-mail from Tharan G. Lanier of 8/28/06, at A-17 to A-19). But what is Novozymes' legal remedy if Genencor resumes sales of the same or similar product in the future? Genencor is resisting entry of a permanent injunction, which does little to allay suspicions in Novozymes' halls. What is Novozymes supposed to do if greed or market pressures induce Genencor to creep stealthily back into the market?

During the liability phase of the trial in this matter, the Court learned how difficult, elaborate, and expensive it is to reliably establish that a defendant's alpha-amylase protein product infringes the claims of the '031 patent. (*See generally* Infringement Opinion 23-26, grappling with various evidence bearing on the sequence of G997). This is not like policing a patent covering a five-legged stool. In that hypothetical example, one could assess infringement at a glance. Not here. No, with this technology, detecting infringement is a major scientific exercise. Does Novozymes have to file a multimillion dollar lawsuit every few years for the life of the patent to police Genencor? That is precisely the sort of absurdity injunctive relief is mean to forestall. This is the reason 35 U.S.C. § 283 exists; so the parties do not have to litigate, and the Court does not have to preside, over a continuing tort action. Novozymes should be able to

- 19 -

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION UNDER PROTECTIVE ORDER**

police Genencor's future conduct through the simpler, more direct, and less expensive remedy of a contempt action for violation of a permanent injunction, rather than having regularly-scheduled infringement actions.

Third, there is no legal remedy for the ongoing depression of the market prices for Novozymes' own products. *See Solarex Corp. v. Advanced Photovoltaic Sys. Inc.,* 34 U.S.P.Q.2d 1234, 1240 (D. Del. 1995); *Spalding & Evenflo Cos. Inc. v. Acushnet Co.*, 1986 U.S. Dist. LEXIS 17129 at *5, 2 U.S.P.Q.2d 1070, 1071 (D. Mass. Nov. 28, 1986)(market effects not fully compensable by money). The evidence is uncontested that introduction of Genencor's Spezyme® Ethyl product forced down the prices of Novozymes' competing products and drastically reduced Novozymes' market share. (*See* LeFebvre Declaration, at A-4 to A-6, ¶¶ 12-14; Deposition of Jeffrey Faller, Novozymes' Industry Sales Manager, of 8/15/06, at A-13 to A-14). For example, the price of Novozymes' Liquozyme SC alpha-amylase product line went down     in the approximately one year following introduction of Genencor's infringing product. (*Id.*).



None. There is no effective legal remedy for those losses.

Finally, there is no legal remedy for the progressive corrosion of Novozymes' good will and reputation among consumers. *See Motorola Inc. v. Alexander Mfg. Co.*, 786 F. Supp. 808,

DB01:2181011.1                                                                    064080.1001

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

815 (N.D. Iowa 1991) ("money cannot adequately compensate for injury to reputation"). For years, Novozymes had the reputation of being an innovative and reliable supplier of enzymes. (LeFebvre Declaration, at A-3 to A-4, ¶ 9).

REDACTED

This loss of reputation and good will is precisely the sort of harm that courts regard as both irreparable and non-compensable through money damages. *See, e.g., Lifescan Inc. v. Polymer Tech. Int'l Corp.*, 1995 U.S. Dist. LEXIS 4916 at *60, 35 U.S.P.Q.2d 1225, 1240 (W.D. Wash. Jan. 3, 1995). What is the legal remedy for Novozymes' diminished reputation and goodwill? The answer presents itself: none. Money alone cannot cure it. And money alone cannot prevent it from happening again. For that Novozymes needs an injunction.

>       3.      **The Balance Of Hardships Tilts In Novozymes' Favor, Because Genencor Engaged In The Brinksmanship Of Continued Infringement, Even After Learning That Novozymes' Patent Had Been Allowed.**

The third *eBay* factor the Court must consider is "the balance of hardships" between the plaintiff and defendant." *eBay*, 126 S. Ct. at 1839. This factor also tilts in Novozymes' favor. Both of Novozymes' alpha-amylase enzyme product lines, Liquozyme SC and Termamyl, were established product lines well before Genencor began infringing. Every day that Genencor is allowed to offer its infringing products, Novozymes suffers irreparable harm that undermines these established product lines. In contrast, Novozymes cannot perceive any harm to Genencor from ceasing its activities other than that which accrues to all infringers – they must stop breaking the law. (LeFebvre Declaration, at A-6, ¶¶ 19-20). *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)("One who elects to build a business on a product found to infringe cannot complain . . . .").

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

It is worth remembering that Genencor chose to remain in the market, selling its infringing product, even after it learned that Novozymes' patent application had been allowed, and would soon issue as the '031 patent. (LeFebvre Declaration, at A-8, ¶ 28). The Court's recent Infringement Opinion shows what kind of risky behavior Genencor engaged in merely to have a few more months of stolen profits. If it loses those profits now, it has only itself to blame. *See Windsurfing,* 782 F.2d at 1003 n.12. Either way, it would be grossly hypocritical for Genencor to argue now that the "equities" tip in its favor. It is a little late in the day for Genencor to find its concern for business equities. If it waited until now to test the winds of business ethics, its weathervane is broken.

Finally, if Genencor is not permanently enjoined from continuing to infringe the '031 patent, Novozymes will likely continue to suffer irreversible price reductions and loss of market share, not just for its Liquozymes SC *alpha-amylase* enzyme product, but also for its convoyed sales of <u>related</u> *gluco-amylase enzyme* products as well. The reduced demand caused by the attendant loss of all such sales could dramatically hurt Novozymes' bottom line, hindering research efforts for years. (*Id.*). Moreover, Novozymes will have to "live on the edge of the knife" for the duration of the '031 patent, wondering whether market pressures or greed have once again driven Genencor to resume the reckless game of infringement, which it has played since March of 2005. Even now, while it claims to have removed the Spezyme® Ethyl product from the market, infringement continues. For all these reasons, the balance of the hardships factor militates in Novozymes' favor.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

4.    **The Most Salient Public Policy At Issue In This Case Is The Need For Patent Rights To Be Protected And Enforced, So The Constitutional Mandate Of Fostering Innovation Will Be Effectuated.**

The Patent and Copyright laws are intended to further the Constitutional mandate of promoting "the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." U.S. CONST. art. I, § 8, cl. 8. When patent rights are "flagrantly violated," the public interest is best served by the protecting those rights. *H.H. Robertson v. United Steel Deck, Inc.*, 820 F.2d 384, 391 (Fed. Cir. 1987), *overruled on other grounds, Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)(*en banc*), *aff'd*, 517 U.S. 370 (1996); *accord Solarex Corp. v. Advanced Photovoltaic Sys., Inc.*, 34 U.S.P.Q.2d 1234, 1241 (D. Del. 1995)("public has an interest in upholding and preserving patent rights"). This is the public interest Novozymes perceives, and that interest is best served by issuing an injunction forbidding additional infringement.

There are cases where some critical public interest, such as need for a vaccine, strongly militates in favor of allowing the infringer the freedom to pay for additional, future infringement. For that reason, "the focus of a district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *eSpeed, Inc. v. BrokerTec USA LLC*, 2004 U.S. Dist. LEXIS 385, at *7-9, 69 U.S.P.Q.2d at 1469 (quoting *Hybritech*, 849 F.2d at 1458). But there is no such interest here. Accordingly, the public policy factor does not save Defendants from the injunction they have earned through their conduct.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

**5.    In The Alternative, Novozymes Moves For A Preliminary Injunction Until The Second Phase Of Trial, When The Court Can Hear Testimony On The Issue Of Whether To Grant A Permanent Injunction.**

Finally, if the Court declines to enter a permanent injunction now, then Novozymes asks the Court to grant a preliminary or temporary injunction until the parties are before the Court during the second or "damages phase" of the bifurcated trial in this case, currently set to begin on October 10, 2006. (Infringement Opinion at 1). The Court could then receive testimony on any issue still gives it pause. The analysis the Court would use to issue a temporary injunction is quite similar to the four-factor test enunciated in *eBay*.

To win a preliminary (or temporary) injunction against continued patent infringement, the movant must establish each of the following four elements: (1) a reasonable likelihood of success on the merits of its case; (2) irreparable harm if it is not granted an injunction; (3) a balance of hardships tipping in its favor; and (4) the injunction's non-adverse impact on the public interest. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001); *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994). The analysis would thus be analogous to that set forth above, except that there is no obligation to show "inadequacy of available legal remedies," and the Court's Infringement Opinion would, of course, completely trump the "reasonable likelihood of success" element. As with the permanent injunction analysis, a presumption of irreparable harm attends a strong showing of "likelihood of success on the merits." *Reebok*, 32 F.2d at 1556. So, as with the Motion for Permanent Injunction, irreparable harm is established twice: once by presumption and once by the evidence.

With the first and second factors resolved by its own recent Infringement Opinion, the Court could grant a temporary injunction simply by assessing the "balance of hardships" and "public interest." For this reason, Novozymes asks that the Court grant at least a temporary

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

injunction now, followed by a permanent injunction after receiving any necessary supportive

testimony in October.   Understandably, Novozymes would prefer to have the permanent

injunction immediately, and Novozymes respectfully submits that the evidence uniquely justifies

such a remedy under the facts of this case.

## CONCLUSION

Novozymes' Motion for a Permanent Injunction is built on a solid foundation of

evidence.  Sound and sufficient evidence confirms that (1) Novozymes is suffering irreparable

harm, (2) available legal remedies are powerless to redress that harm, (3) the balance of harms

tilts in Novozymes' favor, and (4) no serious public interest is disserved, or even implicated, by

Novozymes' motion.  For all these reasons, and the reasons set forth in its other supporting

materials, Plaintiff Novozymes respectfully requests the Court to grant its motion and issue a

permanent injunction against Defendants' continued infringement of the '031 patent.


OF COUNSEL:

Joseph R. Robinson
Steven E. Lipman
Robert C. Sullivan, Jr.
David K. Tellekson
Samuel S. Woodley
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700


**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

_Andrew A. Lundgren_

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com


*Attorneys for Plaintiff
Novozymes A/S*

DB01:2181011.1                                                                           064080.1001

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on September 20, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Donald E. Reid, Esquire
> MORRIS NICHOLS ARSHT & TUNNELL
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE  19899-1347

I further certify that on September 20, 2006,  I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

> Tharan Gregory Lanier, Esquire
> Jane Froyd, Esquire
> JONES DAY
> 2822 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Novozymes A/S*