# PUBLIC VERSION – REDACTED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **NOVOZYMES A/S,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 05-160-KAJ** |
| **GENENCOR INTERNATIONAL, INC. and ENZYME DEVELOPMENT CORPORATION,** | |
| **Defendants.** | |

### DEFENDANTS' OPPOSITION TO NOVOZYMES A/S' MOTION FOR PERMANENT INJUNCTION

MORRIS, NICHOLS, ARSHT & TUNNELL
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Telephone:    302.658.9200
Facsimile:    302.658.3989

Attorneys for Defendants
Genencor International, Inc. and
Enzyme Development Corporation

OF COUNSEL:

JONES DAY

Kenneth R. Adamo
Tharan Gregory Lanier
Jane L. Froyd
2882 Sand Hill Road, Suite 240
Menlo Park, CA  94025
Telephone:    650.739.3939
Facsimile:    650.739.3900

Thomas E. Friebel
Margaret B. Brivanlou
222 East 41st Street
New York, NY  10017-6702
Telephone:    212.326.3939
Facsimile:    212.755.7306

Original Filing Date:  September 18, 2006
Redacted Filing Date:  September 25, 2006

# PUBLIC VERSION – REDACTED

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION AND SUMMARY OF OPPOSITION ARGUMENT ...................................... 1

II.   STATEMENT OF (CURRENT) FACTS .................................................................................... 2

    A.    Novozymes Ignores Its Choices Not to Practice the '031 Patent or Compete in the U.S ........................................................................................................................ 3

    B.    Novozymes Relies on Outdated, Discredited and/or Irrelevant Facts ............................... 3

    C.    Novozymes Fails to Address Discovery in 2006 ................................................................ 4

III.  SUMMARY OF LAW GOVERNING MOTIONS FOR PERMANENT INJUNCTION ............ 6

IV.   NOVOZYMES' MOTION SHOULD BE DENIED BECAUSE NOVOZYMES HAS NOT PROVEN IRREPARABLE HARM ........................................................................................ 7

    A.    Irreparable Harm May Not Be Presumed ......................................................................... 7

    B.    Novozymes' Own Choices Require Denial of the Motion, Because The "Right to Exclude" Alone Does Not Give Rise to a Finding of Irreparable Harm ............................ 8

    C.    Without the Presumption, Novozymes Cannot Show Irreparable Harm .......................... 10

        (1)    Novozymes must show harm attributable to the alleged infringement ............... 10

        (2)    Novozymes cannot show its harm was cause by SPEZYME® Ethyl ................ 10

        (3)    Novozymes cannot show its alleged harm is irreparable ................................... 12

V.    AN AWARD OF DAMAGES WILL ADEQUATELY REMEDY ANY ACTIONABLE HARM SUFFERED BY NOVOZYMES ................................................................................... 12

VI.   THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF DEFENDANTS ............................... 14

VII.  NOVOZYMES' PLAN TO RAISE ENZYME PRICES WILL RESULT IN HARM TO THE PUBLIC IF A PERMANENT INJUNCTION ISSUES ...................................................... 14

VIII. ABSENT THE IMPROPER PRESUMPTION OF IRREPARABLE HARM, THERE IS EVEN NO ARGUABLE BASIS TO ISSUE A TEMPORARY INJUNCTION ........................ 18

IX.   CONCLUSION ........................................................................................................................ 20

# PUBLIC VERSION – REDACTED

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Abbott Labs. v. Andrx Pharms., Inc.*,
  452 F.3d 1331 (Fed. Cir. 2006) ................................................................................................ 7, 8

*Amoco Prod. Co. v. Village of Gambell, Alaska*,
  480 U.S. 531 (1987) ........................................................................................................................ 7

*Belknap v. Leary*,
  427 F.2d 496 (2d Cir. 1970) ......................................................................................................... 19

*Christiana Indus. Inc. v. Empire Elecs., Inc.*,
  No. 06-12568, 2006 U.S. Dist. LEXIS 54210 (E.D. Mich. Aug. 16, 2006)............................ 7

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
  Nos. 04-1446, 04-1450, 122 Fed. Appx. 502 (Fed. Cir. 2005)................................................ 19

*eBay Inc. v. MercExchange, L.L.C.*,
  126 S. Ct. 1837 (2006) ........................................................................................................... *passim*

*Finisar Corp. v. DirecTV Group, Inc.*,
  Civ. Act. No. 1:05-CV-00264 (E.D. Tex. July 6, 2006).............................................. *passim*

*Helifix Ltd. v. Blok-Lok, Ltd.*,
  208 F.3d 1339 (Fed. Cir. 2000) .................................................................................................. 19

*International Rectifier Corp. v. IXYS Corp.*,
  No. 06-1296, 2006 WL 2036676 (Fed. Cir. July 14, 2006) .................................................. 7, 8

*Litecubes, L.L.C. v. Northern Light Prods.*,
  No. 4:04CV00485 ERW, 2006 U.S. Dist. LEXIS 60575 (E.D. Mo. Aug. 25, 2006) ............. 9

*Paice LLC v. Toyota Motor Corp.*,
  No. 2:04-CV-211-DF, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006) .......................... *passim*

*Polymer Techs., Inc. v. Bridwell*,
  103 F.3d 930 (Fed. Cir. 1998) ................................................................................................... 11

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ...................................................................................................... 8

*Romer v. Green Point Savings Bank*,
  27 F.3d 12 (2d Cir. 1994) ............................................................................................................ 19

*Swint v. Chambers County Comm'n*,
  514 U.S. 35 (1995) ....................................................................................................................... 19

# PUBLIC VERSION – REDACTED

### TABLE OF AUTHORITIES
#### (continued)

Page(s)

*Tivo Inc. v. Echostar Commc'ns Corp.*,
    No. 2:04-CV-1-DF, 2006 U.S. Dist. LEXIS 64290 (E.D. Tex. Aug. 17, 2006).......................9

*Voda v. Cordis Corp.*,
    No. CIV-03-1512-L, 2006 WL 2570614 (W.D. Okla., Sept. 5, 2006)...........................*passim*

*Wald v. Mudhopper Oilfield Servs.*,
    No. Civ-04-1693-C, 2006 U.S. Dist. LEXIS 51669 (W.D. Okla. July 27, 2006) ...................9

*z4 Techs., Inc. v. Microsoft Corp.*,
    434 F. Supp. 2d 437 (E.D. Tex. June 14, 2006) ...........................................................*passim*

**Statutes**

28 U.S.C. § 1292(a)(1)..............................................................................................................19

Federal Rules of Civil Procedure 30(b)(6)................................................................................4

Federal Rules of Civil Procedure 45 .........................................................................................3

Federal Rules of Civil Procedure 65 .......................................................................................19

Federal Rules of Evidence 802 ..................................................................................................3

Federal Rules of Evidence 803 ..................................................................................................3

Federal Rules of Evidence 804 ..................................................................................................3

# PUBLIC VERSION – REDACTED

## I.     INTRODUCTION AND SUMMARY OF OPPOSITION ARGUMENT

Novozymes A/S ("Novozymes") relies on a year-old declaration in asking the Court to permanently remove SPEZYME® Ethyl from the fight against U.S. dependence on foreign oil. Novozymes assumes that the Court will automatically issue a permanent injunction, but ignores the United States Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).

The Supreme Court has ruled – permanent injunctions are *not* automatic and irreparable harm is *not* presumed. The courts have listened – numerous requests for permanent injunctions have been denied since *eBay*. This case fits squarely with those decisions, because:

● ███████████████████████████████████████
███████████████████████████████████████

● █████████████████████████

● Novozymes does not compete in the U.S. fuel ethanol market.

Judge Clark of the Eastern District of Texas addressed a similar situation in *Finisar Corp. v. DirecTV Group, Inc.*, Civ. Act. No. 1:05-CV-00264 (E.D. Tex. July 6, 2006) (Hearing Tr. at 123:21–124:16), one of the first permanent injunction rulings after *eBay*:

> *The evidence indicates to this Court that there is really no irreparable injury to the plaintiff. They have raised this argument of the right to exclude everybody else, and that that perhaps could be priceless and should be part of the consideration. But it's also uncontested they never sold the rights to the patent, never made the slightest effort to ever use the patent.* With no success at all in the past, it's a little far fetched to say they can sell exclusive rights to competitors who weren't involved in the suit. It's easy – and yes, as a practical matter having this verdict is helpful, but this judgment doesn't declare – and as far as I know district courts don't declare patents valid for all purposes for even the next case. We know that in this case, the plaintiff proved by a preponderance of the evidence that DirecTV infringes seven claims. And we know that DirecTV failed to prove invalidity by clear and convincing evidence. That gives Finisar an enhanced bargaining position. *But it's not an automatic ticket to cash in on the patent with others or to exclude everyone.* [¶] *And the Court has to be a little concerned about this idea of exclusion in a field where there are two competitors.*

The same result should obtain here: "[T]he request for an injunction is denied." *Id.* at 126:19-20.

# PUBLIC VERSION – REDACTED

The Supreme Court also made it clear that the patentee bears the burden of proof on all four factors of the test for a permanent injunction. Novozymes cannot meet its burden to prove any, much less all, of them:

- Novozymes has not suffered legally relevant "irreparable harm" (why else would Novozymes rely on a year old declaration), and its alleged harm is attributable to either regular business pressures or Novozymes' own conduct, but not to Genencor.

- Any actionable harm Novozymes has suffered can be compensated by an appropriate award of damages, leaving Novozymes with an adequate remedy at law ████████████████ ████████████████████████████████

- The balance of hardships tips against Novozymes because the '031 Patent issued long after SPEZYME® Ethyl entered the market.

- The public would be prejudiced if an injunction is issued, ████████████████ ████████████████████████████████

In deference to the Court's ruling on liability, Defendants have pulled SPEZYME® Ethyl from the market. Yet, as with so many other cases involving patent owners who do not use their patents except as a toll on competition, this is not an appropriate case for the exercise of the Court's equitable power. Novozymes' motion for permanent injunction should be denied.[1]

## II.     STATEMENT OF (CURRENT) FACTS

Novozymes' presentation of the "facts" is curious: Novozymes ignores its own conduct, relies almost exclusively on the elderly LeFebvre Declaration, and ignores the current market and evidence.

---

[1] Novozymes' alternate request for a temporary injunction should be denied because it relies on the presumption of irreparable harm rejected by *eBay* and numerous subsequent cases, and because there is no need for a temporary decision when trial and a final decision are only weeks away.

# PUBLIC VERSION – REDACTED

**A.**    **Novozymes Ignores Its Choices Not to Practice the '031 Patent or Compete in the U.S.**

Novozymes fails to mention three key facts that are virtually outcome determinative on the issue of irreparable harm (*see* § IV.B., *infra*). First, ███████████████████████████ ███████████████ (*see* Expert Report of Julie Davis ("Davis Expert Report") at 10; App. 201; Olofson Dep. at 190:11–25; App. 89), and there is no evidence that Novozymes ever intended to practice the '031 Patent. Second, ███████████████████████████████████ ██████ *See* Olofson Dep. at 138:13–140:2; App. 86-88. Third, Novozymes does not manufacture or sell any products that compete in the U.S. fuel ethanol market. *See* Faller Dep. 19:23–20:1; App. 16–17; 22:9–15; App. 18.[2]

**B.**    **Novozymes Relies on Outdated, Discredited and/or Irrelevant Facts**

Novozymes relies on the outdated LeFebvre Declaration in Support of Novozymes' Motion for a Preliminary Injunction ("LeFebvre Declaration"). Even if it can be considered,[3] this declaration was amply discredited when offered in support of Novozymes' motion for preliminary injunction. *See* Defendants' Opposition to Novozymes' Motion For Preliminary Injunction, § VI, D.I. 40.

Novozymes claims "irreparable harm" from lost sales, price erosion, and lost convoyed sales for products sold by NZNA.[4] The LeFebvre Declaration discusses these issues but does not provide any basis for believing that there is any "*irreversible*[5] alteration of market conditions" without an injunction.

---

[2] While Novozymes pretends that its belated (and now denied) motion to add Novozymes North America ("NZNA") as a party is a trivial or merely technical matter, it is not so easy – no NZNA, no injunction. *See* § IV.B., *infra*; *see also, e.g., Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 WL 2570614 (W.D. Okla. Sept. 5, 2006) (denying permanent injunction where alleged irreparable harm was suffered by non-party licensee).

[3] Defendants will object to Novozymes' use of the LeFebvre Declaration at trial. It is unreliable hearsay and does not fall within any exceptions. *See* Fed. R. Evid. 802, 803, 804. Mr. LeFebvre will not be available at trial, as he is not employed by Novozymes (and recently left NZNA to join a competitor) and is not located within subpoena range of this Court. *See* Plaintiff's Brief in Support of its Motion for Permanent Injunction at 8; Fed. R. Civ. P. 45. Nor did Novozymes include Mr. LeFebvre on its witness list. *See* Proposed Final Pretrial Order (DE 167) at 5–6.

[4] For all the reasons discussed in their Opposition to Plaintiff's Motion to Modify the Scheduling Order (DI 157), now denied, and described in § IV.B., *infra*, injury to non-party NZNA's sales is not

# PUBLIC VERSION – REDACTED

Mr. LeFebvre also discusses purported loss of good will, but offers neither specific evidence of alleged harm to reputation or good will, nor any evidence that Novozymes had a good reputation to begin with. In fact, there is (and was a year ago) substantial evidence to the contrary. *See, e.g.,* LeFebvre Dep. Ex. 28; App. 184–185 (customer decided to switch to SPEZYME® Ethyl, in part, because it was ███ ████████████████████████████████████████████████████████████ ████████████████████████████ SPEZYME® Ethyl did not taint Novozymes' reputation; the fault lies with Novozymes' itself, and the problem started well before SPEZYME® Ethyl was launched. LeFebvre Dep. Ex. 29; App. 186–189 (customer stated in early 2005, before the '031 Patent issued, that ██████████████████████████████████████████████ (emphasis added).

## C.     Novozymes Fails to Address Discovery in 2006

Novozymes also ignores new information learned over the course of the year since the LeFebvre Declaration. For example, Novozymes' 30(b)(6) witness on sales and pricing topics, NZNA employee Jeff Faller,[6] testified at length in August about pricing pressure on NZNA's Liquozyme and Termamyl products. Among other things, he confirmed that prices for alpha-amylase enzymes used in the production of fuel ethanol have trended downward by ███ since 1999, starting long before SPEZYME® Ethyl was on the market. (Faller Dep. at 28:19–34:19; App. 19–25; 36:3–23; App. 26.) These price changes occur as a regular part of business, Mr. Faller admitted, Faller Dep. at 40:17–18; App. 29, for many reasons aside from competition by SPEZYME® Ethyl. (Faller Dep. at 40:19–41:22; App. 29–30; 44:5–11; App. 31; 126:4–24; App. 64.) Powerful bargaining collectives can force lower prices, for

---

(continued...)
relevant irreparable harm. Defendants here point out that in addition to being irrelevant, the allegations in the LeFebvre Declaration are simply wrong. Defendants would have made the legal argument more than a year ago, had Novozymes not concealed the relevant documents and information.

[5] Novozymes apparently intends "irreversible" to mean "irreparable." As shown in §§ IV.B., C., *infra*, neither is true.

[6] The fact that Novozymes chose to designate an NZNA employee as its witness on various topics does not change the legal status of NZNA, a non-exclusive licensee with no standing. Fed. R. Civ. P. 30(b)(6) does not require Novozymes' designees to be its employees, only that they be persons who consent to testify on its behalf.

# PUBLIC VERSION – REDACTED

example.  (Faller Dep. at 37:14–23; App. 27; 149:2–23; App. 72.)  And, customers may simply choose to purchase fewer enzymes or demand lower pricing in order to improve their own profitability.  (Faller Dep. 69:7–70:20; App. 40–41; Faller Dep. Ex. 513; App. 90–94.)

Mr. Faller also explained that Liquozyme sales were lost for reasons other than competition with SPEZYME® Ethyl.  Liquozyme has competed with products other than SPEZYME® Ethyl, including SPEZYME® Fred, SPEZYME® Fred L, and SPEZYME® HPA.  (Faller Dep. at 44:12–46:17; App. 31–33; 113:21–114:13; App. 58–59.)[7]  In fact, Novozymes believes ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (Faller Dep. at 100:8–106:6; App. 51–57; Faller Dep. Ex. 516; App. 151–172; *see* Beto Dep. at 74:25–75:22; App. 5–6.)

Mr. Faller's testimony further clarified that alleged lost sales and loss of "good will" regarding Liquozyme are not irreversible or irreparable.  For example, the UBE buying group purchased Liquozyme in 2006, even though many members had used SPEZYME® Ethyl in 2005.  (Faller Dep. at 38:4-25; App. 28.) ████████████████████████████████████████████ Faller Dep. at 57: 11–13; App. 37.)

████████████████████████████████████████████████████████
████████████████████████████████████████████████

- ████████████████████████████████████████████ (Faller Dep. at 66:15–67:10; App. 38–39; Faller Dep. Ex. 513; App. 90–94.)

- ██████████████████████████████████████████████████████████ (Faller Dep. at 78:17–80:3; App. 42–44; 137:19–139:4; App. 65–67; Faller Dep. Exs. 514 and 521; App. 95–145 and 178–179.)

---

[7] There is no dispute these products do not infringe the '031 Patent.  (*See* Crabb Dep. at 85:24–86:5; App. 10–11.)

# PUBLIC VERSION – REDACTED

- ████████████████████████████████████████████

  ████████████████████████ (Faller Dep. at 80:4–81:15; App. 44–45;

  Faller Dep. Ex. 514; App. 95–145.)

  Novozymes' incomplete presentation of the facts becomes even more significant when the current

  law on permanent injunctions is applied to the whole story.

## III.    SUMMARY OF LAW GOVERNING MOTIONS FOR PERMANENT INJUNCTION

As with its Statement of Facts, Novozymes' description of the governing law looks to the past,

ignoring the cases implementing the Supreme Court's ruling in *eBay*.  The Supreme Court has made it

clear that courts may not automatically grant permanent injunctions following a finding of infringement;

rather, each case must be analyzed in accordance with traditional equitable considerations.  *See eBay,* 126

S. Ct. at 1839–41.  The Supreme Court rejected the Federal Circuit's position that the "statutory right to

exclude alone justifies its general rule in favor of permanent injunction," *id.* at 1840, stating that "the

creation of a right is distinct from the provision of remedies for violations of that right.  Indeed, the Patent

Act itself indicates that patents shall have the attributes of personal property '[s]ubject to the provision of

this title,' including presumably, the provision that injunctive relief 'may' issue *only* 'in accordance with

the principles of equity.'"  *Id.* (emphasis added) (citation omitted).

Thus, Novozymes has the burden to prove:  "(1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Id.* at 1839.

*See also Voda*, 2006 WL 2570614, at *5; *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006

WL 2385139, at *1 (E.D. Tex. Aug. 16, 2006); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437

(E.D. Tex. June 14, 2006).

## PUBLIC VERSION – REDACTED

**IV.  NOVOZYMES' MOTION SHOULD BE DENIED BECAUSE NOVOZYMES HAS NOT PROVEN IRREPARABLE HARM.**

Novozymes cannot meet its burden to show irreparable harm, for many reasons. Novozymes improperly presumes irreparable harm, contrary to *eBay*. Novozymes conveniently forgets that the actual competitor in the relevant market is a non-party, non-exclusive licensee to a patent not practiced. And, by relying on last year's inaccurate, overwrought declaration, Novozymes effectively admits it cannot prove irreparable harm on the complete record, considering the facts and discovery up to today.

**A.    Irreparable Harm May Not Be Presumed.**

Novozymes argues (Motion at 10–12) that irreparable harm is presumed whenever there has been a finding of validity and infringement. This is clearly wrong in light of *eBay*, which "demonstrates that no presumption of irreparable harm should automatically follow from a finding of infringement." *Paice*, 2006 WL 2385139, at *4. *See also z4 Techs.*, 434 F. Supp. 2d at 440. To argue otherwise, "runs afoul of the court's reasoning in *eBay* where the Court clearly held the right to exclude does not, standing alone, justify a general rule in favor of injunctive relief." *Voda*, 2006 WL 2570614, at *5 (citing *eBay* 126 S. Ct. at 1840). *See also International Rectifier Corp. v. IXYS Corp.*, No. 06-1296, 2006 WL 2036676, at *1 (Fed. Cir. July 14, 2006). The Supreme Court has held that "applying a presumption of irreparable harm in the context of an injunction 'is contrary to traditional equitable principles.'" *z4 Techs.*, 434 F. Supp. 2d at 440 (quoting *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987)). In *eBay* the Supreme Court expressly warned against the application of categorical rules when applying traditional principles of equity; a presumption of irreparable harm is simply "not in line with the Supreme Court's holding, which mandates that courts balance the traditional principles of equity when considering the remedy of a permanent injunction in patent cases." *Id.* (citing *eBay*, 126 S. Ct. at 1840-41).

The cases cited by Novozymes (Motion at 11) are of no help to it. Two involve preliminary injunctions, and one of them even specifically <u>distinguishes</u> *eBay* on that basis. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1347 (Fed. Cir. 2006); *Christiana Indus. Inc. v. Empire Elecs., Inc.*, No. 06-12568, 2006 U.S. Dist. LEXIS 54210, at *5 (E.D. Mich. Aug. 16, 2006) (distinguishing *eBay*). And,

# PUBLIC VERSION – REDACTED

ironically, *Abbott* specifically finds that competition and loss of sales does *not* establish irreparable harm. *Abbott*, 452 F.3d at 1348.  The other cases cited by Novozymes either leave the issue open, *International Rectifier Corp.*, 2006 WL 2036676, or expressly hold that there is no presumption of irreparable harm applicable to a motion for permanent injunction.  *See z4 Techs.*, 434 F. Supp. 2d at 437.  Thus, all of the cases cited by both parties make it clear that Novozymes may not rely on any presumption of irreparable harm.

### B. Novozymes' Own Choices Require Denial of the Motion, Because The "Right to Exclude" Alone Does Not Give Rise to a Finding of Irreparable Harm.

Novozymes' motion also fails ████████████████████████████████ or compete with Defendants in the U.S. fuel ethanol market.  Since the Supreme Court's ruling in *eBay*, courts considering cases where, as here, █████████████████████████████████████████████████████ ██████████████████████████████████████████████████████, found no irreparable harm and denied a permanent injunction, because the only possible "irreparable" harm suffered by such plaintiffs was the loss of their right to exclude others from making, using, and/or selling inventions protected by their patents.  *See Voda*, 2006 WL 2570614, at *5-6; *Paice*, 2006 WL 2385139, at *4-5; *Finisar* (Hearing Tr. at 123–26); *z4 Techs.*, 434 F. Supp. 2d at 440-41.[8]  The *eBay* Court, however, found that the right to exclude alone is not sufficient to support a finding of injunctive relief.  *eBay*, 126 S. Ct. at 1840.  "Accordingly, a violation of the right to exclude does not inevitably lead to the conclusion that a patent holder cannot be adequately compensated by remedies at law such as monetary damages without first applying the principles of equity."  *z4 Techs.*, 434 F. Supp. 2d at 441.  Applying this rationale, the courts in each of these cases held that there was no irreparable harm because money

---

[8] Novozymes cites to *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995), for the proposition that ██████████████████ should be irrelevant to consideration of its motion for a permanent injunction.  *Rite-Hite* only involved consideration of proper remedies *at law*, not remedies *in equity*, for patent infringement.  The multiple cases cited by Defendants, in contrast, make it clear ██████████████ is relevant to consideration of an injunction post-*eBay*.  Further, the Court in *Rite-Hite* specifically noted that Rite-Hite was simply "seeking adequate compensation for [the] infringement. ... [i]f a patentee's failure to practice a patented invention frustrates an important public need for the invention, a court need not enjoin infringement of the patent."  *Id.*

# PUBLIC VERSION – REDACTED

damages (such as through a compulsory license) would adequately compensate the plaintiffs for any harm. *See Voda*, 2006 WL 2570614, at *5-6 (finding no irreparable harm where only harm alleged was to licensee); *Paice*, 2006 WL 2385139, at *4-5; *z4 Techs.*, 434 F. Supp. 2d at 440-41; *Finisar* (Hearing Tr. at 123-26) (finding that patent owner who did not practice the patent or license it for profit could adequately be compensated through a compulsory license). These newer holdings flow directly from the ruling in *eBay*; there, the Supreme Court noted that past cases in which courts routinely granted permanent injunctions were unlike cases now arising in which patent owners do not practice or license the technology of the patent. *See also eBay*, 126 S. Ct. at 1842 (Kennedy, J. concurring).

No injunction should issue because 

. [9]  And, because NZNA is not properly a party, the fact that no party to this case competes in the relevant market seals the issue – Novozymes is not entitled to a permanent injunction. [10] *See Voda*, 2006 WL 2570614, at *5-6. No one forced Novozymes

; that choice has consequences. No one forced Novozymes to

; that choice has consequences. No one forced Novozymes to conceal the contracts and licenses which bar its damages claim and limit equitable relief; that choice, now revealed, has consequences, too.

---

[9] Whether or not NZNA is a party does not matter to this point, because

[10] Even decisions granting permanent injunctions confirm the importance of the plaintiff patentee must compete in the relevant market and practice the patented technology. *See Litecubes, L.L.C. v. Northern Light Prods.*, No. 4:04CV00485 ERW, 2006 U.S. Dist. LEXIS 60575, at *31-32 (E.D. Mo. Aug. 25, 2006) (referring to "products sold by plaintiffs," "Plaintiff Vandershuit went through the time and experience of developing the patented device"); *Tivo Inc. v. Echostar Commc'ns Corp.*, No. 2:04-CV-1-DF, 2006 U.S. Dist. LEXIS 64290, at *16-17 (E.D. Tex. Aug. 17, 2006) (noting that the parties directly competed in the nascent market for digital video recorders and the harm if plaintiff "cannot exploit its technology in the market" (*Id.* at *9)); *Wald v. Mudhopper Oilfield Servs.*, No. Civ-04-1693-C, 2006 U.S. Dist. LEXIS 51669, at *15-16 (W.D. Okla. July 27, 2006) (referring to direct competition).

# PUBLIC VERSION – REDACTED

**C.    Without the Presumption, Novozymes Cannot Show Irreparable Harm.**

**(1)    Novozymes must show harm attributable to the alleged infringement.**

Novozymes relies on a presumption of irreparable harm (*see* Motion at 10–12) because without that presumption it cannot prove it has been irreparably harmed by sales of SPEZYME® Ethyl. Yet, it must do so: "As patents have the attributes of personal property, the person seeking a permanent injunction must demonstrate *harm from infringement of those rights* that is personal as well." *Voda*, 2006 WL 2570614, at \*5 (citation omitted) (emphasis added).

A recent example illustrates the point. In *Paice*, the plaintiff was unable to "demonstrate[] *Defendants' infringement is to blame*" for plaintiff's failed licensing program. *Paice*, 2006 WL 2385139, at \*5 (emphasis added). The court did not find irreparable harm because the evidence demonstrated "*other reasons* Plaintiff may not have succeeded in licensing its technology." *Id.* (emphasis added). As a result, the motion for permanent injunction was denied.

**(2)    Novozymes cannot show its harm was cause by SPEZYME® Ethyl.**

As in *Paice*, Novozymes[11] cannot make the required showing that its alleged irreparable harm was caused by infringing sales of SPEZYME® Ethyl. Its loss of good will, loss of sales, and price erosion began *years* before SPEZYME® Ethyl was launched, based on competition with Genencor's other products that Novozymes now dismisses. Novozymes' customers were also critical drivers of price declines; these typical business pressures, and the use of buying groups, contributed to Novozymes' woes. In June of 2005, Novozymes identified the primary *customer need* in the alpha-amylase, or "liquefaction" market, to be ███████████████████ (Faller Dep. Ex. 514 at NV–0015327 (emphasis added); App. 117.) Even before SPEZYME® Ethyl entered the market, buyers assembled themselves █████ ████████████████████████████████████████████████ (Faller Dep. at

---

[11] Throughout its motion, Novozymes treats itself and NZNA as one entity. Defendants address the alleged harm Novozymes claims to have suffered, but in doing so do not concede that Novozymes itself has suffered <u>any</u> harm. In fact, all of the harm of which Novozymes complains is harm to non-party NZNA, not Novozymes. Thus, <u>Novozymes</u> cannot demonstrate irreparable harm attributable to infringement, and no injunction should issue for that reason alone. *See Voda*, 2006 WL 2570614, at \*5-6.

-10-

# PUBLIC VERSION – REDACTED

149:14–150:3; App. 72–73.)  NZNA itself recognized that ████████████████████

████████████████████████████████████████████████████████████████████

████████████████ (Faller Dep. Ex. 515 at NV–0015225; App. 147.)

Novozymes has also not proved that all the sales it lost to SPEZYME® Ethyl were due to the

technology of the '031 Patent.  (Faller Dep. at 80:4–81:15; App. 44–45; Faller Dep. Ex. 514; App. 95–

145.)  Many customers also chose SPEZYME® Ethyl due to Defendants' superior customer service and

related issues.  (*See* Expert Report of David J. Teece Report ("Teece Expert Report"), ¶¶ 48–54; App.

238–239.)  For example, Novozymes has recognized that many customers were ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ (Faller

Dep. Ex. 515 at NV–0015224; App. 146.)  Some customers have specifically told NZNA that ████████

████████████████ (*Id.* at NV0015225; App. 147.)  NZNA does not offer a comparable

service.  (Faller Dep. Ex. 515 at NV0015226; App. 148; Faller Dep. at 87:19–88:14; App. 46–47.)

Of course, another major cause of Novozymes' alleged "irreparable" harm was its own arrogance.

Novozymes itself has noted that its actions ████████████████████████████████████

████████████████████ (Faller Dep. Ex. 515 at NV0015225; App. 147.) ████████████

████████████████████████████████████████████████████████████████████

████████████████ (Faller Dep. Ex. 521 at NV–0096787; App. 179; *see also* Faller Dep. Ex.

522 at NV–0029239; App. 180; Faller Dep. Ex. 519 at NV–0001060; App. 173; Faller Dep. Ex. 520 at

NV–D–0092172; App. 176.)  Novozymes caused its alleged irreparable harm, not Genencor.[12]

---

[12] Given these facts (which Novozymes omitted from its motion), Novozymes unsurprisingly (but improperly) relies on a presumption of irreparable harm.  Novozymes cites *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 930 (Fed. Cir. 1998), as finding that the fact of loss of sales and market share is enough to get a permanent injunction.  However, in that case, decided ten years before *eBay*, the Federal Circuit specifically addressed *rebuttal of a presumption* of irreparable harm in a preliminary injunction, not a permanent injunction, where the lack of any presumption as a matter of law is now clear.

## PUBLIC VERSION – REDACTED

     **(3)**     <u>Novozymes cannot show its alleged harm is irreparable.</u>

     After failing to show Genencor caused its harms, Novozymes also fails to show the harms are irreparable. It cites "snippets" from several cases for the proposition that harm to reputation and good will are "irreparable." (Motion at 15–16.) But, Novozymes ignores the <u>facts</u> in this case. For example, despite claiming irreparable lost sales, ███████████████████████████ ████████████████████████████ The facts, not presumptions, are what govern after *eBay*, and the facts disprove the claim of irreparable harm.

     Novozymes' last effort to show irreparable harm is utterly baseless. Novozymes relies on the year-old LeFebvre Declaration to complain of loss of convoyed sales, even though the evidence then, and now, is directly to the contrary. (*See* § IV.C., *supra*) Novozymes alleges that customers who chose to buy alpha-amylases, such as Liquozyme, from NZNA will simply buy NZNA's glucoamylases as well, because they are already buying enzymes from NZNA. ████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████ (Brewer Dep. at 36:10–15; App. 8.)

     Novozymes sensibly did not pursue its convoyed sales claim, its expert provided no supporting opinion, and it has no place in this motion. Novozymes cannot simply blame Genencor and seek an injunction because proving a lost profit claim is too much trouble.

     For all these reasons, Novozymes cannot prove <u>it</u> suffered irreparable harm at all, much less attributable to SPEZYME® Ethyl. The motion for permanent injunction should therefore be denied.

**V.**     <u>AN AWARD OF DAMAGES WILL ADEQUATELY REMEDY ANY ACTIONABLE HARM SUFFERED BY NOVOZYMES</u>

     Novozymes has not established that monetary damages are inadequate to compensate it for its alleged harm. Again, ████████████████████████████████████ ██████████████████, and does not sell products that compete with SPEZYME® Ethyl. Thus, all that

# PUBLIC VERSION – REDACTED

is at issue is Novozymes' right to exclude others from manufacturing, selling, or otherwise using the technology protected by the '031 Patent.

The Supreme Court clearly indicated in *eBay* that the "right to exclude" alone is not sufficient to support a finding of injunctive relief. *See eBay*, 126 S. Ct. at 1840. District Courts in cases since *eBay* that have analyzed "right to exclude" factual situations have uniformly found that monetary relief is an adequate remedy at law. *See Voda*, 2006 WL 2570614, at *5-6; *Paice*, 2006 WL 2385139, at *5; (stating that "infringing one's right to exclude alone, however, is insufficient to warrant injunctive relief" and denying permanent injunction); *Finisar* (Hearing Tr. at 125:1–24) (finding that compulsory license will adequately compensate patent owner for future harm); *z4 Techs.*, 434 F. Supp. 2d at 441-42.

Further, even if the Court were to consider the factors on which Novozymes relies to argue "irreparable harm" and "no adequate legal remedy," as presented by Novozymes here they are standard elements of a patent damages analysis, and there are well-established methodologies that economists employ to quantify these types of harms. (*See* Declaration of David J. Teece ("Teece Decl."), ¶¶ 17–22; App. 253–254.) ██████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
130:9–134:22; App. 80–84.) Novozymes' own expert agrees; she states in her expert report, and confirmed in her deposition, that she is ████████████████████████████████████
███████████████ should an injunction issue. (*See* Davis Expert Report at 12; App. 203; Davis Dep. at 58:1–59:20; App. 13–14 (emphasis added).)[13]

---

[13] Conceding that an <u>appropriate</u> award of money damages is a remedy at law potentially available to Novozymes is not to concede that Novozymes' overstated damage claims have merit.

# PUBLIC VERSION – REDACTED

## VI.    THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF DEFENDANTS.

Novozymes is unable to meet its burden of showing the balance of hardships warrants a remedy in equity. As explained above (§ IV.B.), even if there is no injunction, Novozymes will not lose any rights that it has chosen to exercise, because ███████████████████████████ or manufacture or sell any product that competes with Defendants' SPEZYME® Ethyl, and has not licensed the '031 Patent for profit. The balance of hardships tips away from the plaintiff who will not lose sales or licensing revenue attributable to the patent. *See Paice*, 2006 WL 2385139, at * 6 (finding "the balance of hardships tips decidedly in favor of Defendants" where enjoining Defendant would interrupt Defendants' business and related businesses and where Plaintiff does not sell product competing with Defendants); *z4 Techs.*, 434 F. Supp. 2d at 442-43; *Finisar* (Hearing Tr. at 125:17–126:10). By contrast, Defendants launched SPEZYME® Ethyl in April 2004, after investing substantial time and money developing and launching before the '031 Patent issued, and before claims that arguably cover SPEZYME® Ethyl were even pending before the Patent Office.[14]

Thus, the only "hardship" to Novozymes if no injunction is entered is that it is left to its possible damages remedy. If SPEZYME® Ethyl is enjoined, however, Defendants will lose the benefit of their substantial investment in a product they sold legally for more than a year. The balance thus tips against an injunction.

## VII.    NOVOZYMES' PLAN TO RAISE ENZYME PRICES WILL RESULT IN HARM TO THE PUBLIC IF A PERMANENT INJUNCTION ISSUES.

Novozymes has not met its burden of showing the public interest would not be disserved by enjoining SPEZYME® Ethyl. Novozymes seeks to apply the pre-*eBay* (and *preliminary* injunction) standard that public interest is only relevant to consideration of an injunction if "some critical public interest ... would be injured by the grant of preliminary relief." (Motion at 23.) However, the Supreme

---

[14] Evidence has already been introduced during the liability trial that even before Genencor learned of the '031 Patent's claims, it had a good faith belief that such claims were invalid based on the Suzuki reference. (*See, e.g.,* Liability Hearing Tr. at 40:22-41:7.)

# PUBLIC VERSION – REDACTED

Court rejected this approach in *eBay*. *eBay*, 126 S. Ct. at 1841. Under the *eBay* standard, "[a] plaintiff must demonstrate ... that the public interest would not be disserved by a permanent injunction." *Id.* at 1839. Novozymes has not, and cannot demonstrate this because the public interest in this case would be injured if SPEZYME® Ethyl is permanently taken off the market.[15]

SPEZYME® Ethyl is one of few commercially available alpha-amylase enzymes that perform a crucial function in the production of fuel ethanol. If SPEZYME® Ethyl is forced off the market, the only other large U.S. producer of alpha-amylases, NZNA, has a strong economic incentive to raise the price of its competing product, Liquozymes SC, which would adversely impact price competition in the market. (Teece Decl., ¶¶ 42–43; App. 258–259.)[16] In fact, this has been NZNA's intent all along. (Teece Expert Report, ¶ 72; App. 245 (citing Winning against SPEZYME® Ethyl Strategy (NV–0004753); 2005 SRI Ethanol Industry, September 22, 2004 (NV–0099752); and Email re: FW ACTION ITEMS: SPEZYME Ethyl/ICM/Broin Conference Call Sept 24, 2004 (NV–0013489–90)); Teece Decl., ¶ 42; App. 258.) Jeff Faller, NZNA's Industry Sales Manager, recently testified that he and NZNA ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (Faller Dep. at 140:25–141:9; App. 68–69; Faller Dep. Ex. 522; App. 180–183; *see also* Faller Dep. at 150:15–18; App. 73; Faller Dep. at 142:22–143:19; App. 70–71 ██████████████████████████████████████████

---

[15] Novozymes' reliance on the public policy protecting patents must be meant as ironic, in view of its conduct in prosecution of targeting a better-performing product. Novozymes' conduct before the PTO did not benefit the public, only Novozymes.

[16] Defendants cite to the September 14, 2005 Teece Declaration to point out some of the errors in the June 22, 2005 LeFebvre Declaration upon which Novozymes relies, errors of which Novozymes is aware. However, unlike Novozymes, Defendants also include references to more current evidence.

# PUBLIC VERSION – REDACTED

████████████████████████████████████████████████████████████

██████████████████████████; Faller Dep. at 124:10–15; App. 63.)[17]

Enjoining sales of Genencor's SPEZYME® Ethyl product would also deprive fuel ethanol producers of a supplier (and better product and service performance) that would otherwise be available to them. (Teece Expert Report, ¶¶ 49–54; App. 238–240; Teece Decl., ¶ 45; App. 259.) Importantly, an injunction would remove a technical option from ethanol producers ████████████████████████

████████████████████████████████████████████████████████████

████████████████████. This is important in this field where, according to Novozymes, "[c]ustomer[s] are choosing the products and supplier that are best for them." (Faller Dep. at 121:5–20; App. 62; Faller Dep. Ex. 516 at NV–D–0126390; App. 166). These customers should not be denied their preferred product and supplier, nor their choice of multiple supplies and product to accommodate their different manufacturing conditions. (Faller Dep. at 119:20–120:18; App. 60–61.)

The court in *Finisar* cautioned against "exclusion in a field where there are two competitors." *Finisar* (Hearing Tr. at 124:14–16.) The *Finisar* court noted that it would be "imprudent for a district court to simply decide that it's going to issue an injunction that results in a total monopoly of something like satellite TV for the nation." Yet a near total monopoly over a critical component of the fuel ethanol process is exactly what Novozymes is asking this Court to create.

In fact, only three days after Novozymes served its motion for preliminary injunction, President Bush used his Labor Day address to emphasis the importance of the fuel ethanol industry. He noted that "dependence on foreign oil jeopardizes our capacity to grow . . . the problem is we get oil from some

---

[17] Novozymes will likely argue that it is not certain that prices will rise. Beyond the fact that the overwhelming evidence is to the contrary, the likelihood of price increases above is enough to tip the balance against Novozymes where, as here, there is no countervailing public interest to be served by issuing an injunction. *See z4 Techs.*, 434 F. Supp. 2d at 444 (finding "the public interest is likely to be disserved if a permanent injunction were entered against" Defendant because some users and manufacturers of computer software "*might* suffer some negative effects," whereas "the Court is unaware of any negative effects that might befall the public in the absence of an injunction" (emphasis added)); *Finisar* (Hearing Tr. at 126:11–126:20) ("the Court can't see any public interest served by enjoining DirectTV… there is no public interest in arbitrarily limiting satellite TV to millions of viewers. The whole patent system itself is a public interest in technology being used and improved upon").

# PUBLIC VERSION – REDACTED

parts of the world and they simply don't like us," and offered fuel ethanol as a potential solution, suggesting that "in order to become less dependent on foreign oil why don't we become more reliant upon America's farmers to produce energy for our automobiles?" (President Bush Honors American Work Force on Labor Day at 2; App. 266.) These remarks reiterate the importance of fuel ethanol, which the President has emphasized multiple times.[18] Similarly, in April of 2005, a coalition representing 30 state governors declared it "believes that increasing dependence on foreign oil is a major risk to the nation's energy, economic, and environmental security," and proposed specific goals for fuel ethanol as part of the solution. (April 12, 2005 Letter from the Governors' Ethanol Coalition; App. 282.)

Novozymes itself emphasizes the important benefits of fuel ethanol for protecting our environment. On its web site, Novozymes notes that "[r]educing the use of fossil fuels that add to the greenhouse effect is a hot issue . . . . By using a 10% ethanol-blend added to ordinary gasoline, 3 to 6% less $CO_2$ is emitted when burned." (Novozymes web site excerpt; App. 284.) It further notes that "[f]uel ethanol is not only a renewable resource of energy; it also burns cleaner than gasoline and produces fewer harmful exhaust emissions." (*Id.*) In addition to protecting the earth's atmosphere, fuel ethanol also helps protect U.S. drinking water. (*Id.*) Novozymes asserts that fuel ethanol "offers a chance to phase out the gasoline additive MTBE (methyl tertiary butyl ether) – a contaminant which has been found in drinking water in many parts of the USA." (*Id.*)

The inevitable effect of granting Novozymes' motion would be an increase in the price of fuel ethanol. (*See* Teece Decl., ¶¶ 44–47; App. 259–260.) Where such an important public interest is at stake, the Court should weigh the harm to the public that would occur should the injunction be granted. *See z4 Techs.*, 434 F. Supp. 2d at 444; *Finisar* (Hearing Tr. at 126:11–126:20). The motion for permanent injunction should be denied.

---

[18] *See* President Bush Delivers State of the Union Address at 8; App. 275 (proposing fuel ethanol as a solution to a "serious problem" in the January 2006 State of the Union address); email titled "FW: Transcript of President Bush speech at Dakota Ethanol; " App. 280 (stating that fuel ethanol is "an important part of making sure we become less reliant on foreign sources of energy").

-17-

# PUBLIC VERSION – REDACTED

## VIII.  ABSENT THE IMPROPER PRESUMPTION OF IRREPARABLE HARM, THERE IS EVEN NO ARGUABLE BASIS TO ISSUE A TEMPORARY INJUNCTION.

Novozymes also requests that the Court grant a "preliminary or temporary injunction until the parties are before the Court during the second or 'damages phase' of the bifurcated trial." Motion at 24. Novozymes is plainly trying to "end-run" *eBay's* rejection of the presumption of irreparable harm and injunctive relief by bootstrapping into this phase of the case <u>preliminary</u> injunction cases and standards, contrary to the ruling of *eBay*.

Novozymes offers no evidence whatsoever regarding irreparable harm should this Court decline to issue a temporary injunction. Absent the presumption of irreparable harm, Novozymes' failure to actually prove irreparable harm if a permanent injunction is not granted is fatal to its request for a temporary injunction.

Moreover, there remain factual disputes central to the determination of whether an injunction is necessary or appropriate. Novozymes recognizes that *eBay* necessitates a thorough analysis of the four prongs of the traditional injunction test, but still brazenly asks this Court to grant a preliminary injunction even if there still exist issues which "give[] [the Court] pause." These issues require an evidentiary hearing – which, as Novozymes notes, is set to begin in only three weeks, on October 10, 2006.

There is also no practical need for a temporary injunction. There has been no U.S. manufacturing or sales of SPEZYME® Ethyl since before the Court's liability decision, and it has been publicly announced that the product will be pulled from the market. (9/13/06 Email from G. Lanier to D. Tellekson; App. 263.) Any lingering use of the remaining inventory of SPEZYME® Ethyl by customers who want to avoid plant shut downs in order to switch to a new product can be easily determined and compensated by an appropriate award of damages.[19]

---

[19] Novozymes speculates that Genencor will creep back into infringement because it has no alternative to SPEZYME® Ethyl. (Motion at 17–18.) This speculation ignores the evidence, from both parties, that Genencor will keep a material portion of its sales even without a new product. (Faller Dep. at 100:12–106:20; App. 51–57; Beto Dep. at 66:12–68:11; App. 2–4.) Novozymes' speculation also ignores testimony that for many customers, XTRA is an acceptable alternative to Ethyl (or Liquozyme). (Crabb Dep. at 85:24–86:7; App. 10–11.)

# PUBLIC VERSION – REDACTED

And, Novozymes' requested "temporary injunction"[20] would waste judicial resources and serve

only to delay the ultimate resolution of the current dispute because any such injunction (however it is

characterized), would be subject to immediate appeal. 28 U.S.C. § 1292(a)(1).[21]  The Federal Circuit

would then have jurisdiction to review both this Court's injunction ruling and the Court's prior decision

on liability; the two rulings are "inextricably intertwined" since the liability ruling would be the predicate

for any injunction. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995); *see also Helifix Ltd.*

*v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345 (Fed. Cir. 2000) (granting interlocutory review of both the

decision to grant preliminary injunction and summary judgment of invalidity because the summary

judgment decision was "closely interrelated factually to the preliminary injunction" (citation omitted)).[22]

---

[20] Novozymes' ambiguous request for a "temporary injunction" has no basis in the Federal Rules of Civil Procedure.  Rule 65 authorizes two types of injunctive relief:  preliminary injunctions and temporary restraining orders.  Fed. R. Civ. P. 65.  A temporary restraining order expires in 10 days.  Fed. R. Civ. P. 65(b).  Because Novozymes seeks an injunction lasting well beyond 10 days, the order it seeks is not a temporary restraining order, and by its own request, Novozymes is not seeking a preliminary injunction.  Thus, the relief Novozymes seeks is not authorized by the Rules.

[21] The grant or denial of a preliminary injunction is automatically entitled to an appeal.  28 U.S.C. § 1292(a)(1).  And, while temporary restraining orders are usually not appealed because of their short duration, they are properly appealed where they could result in serious or irreparable harm to the enjoined party.  *See, e.g, Romer v. Green Point Savings Bank*, 27 F.3d 12, 15 (2d Cir. 1994) ("[W]hen a grant or denial of a TRO might have a serious, perhaps irreparable, consequence, and can be effectually challenged only by immediate appeal, we may exercise appellate jurisdiction." (internal quotations omitted)); *Belknap v. Leary*, 427 F.2d 496, 498 (2d Cir. 1970) ("Unlike most temporary restraining orders, the one here under appeal [ordering the police to protect participants in upcoming political demonstration] is essentially affirmative.  We regard it as a mandatory injunction, appealable under 28 U.S.C. § 1292(a)(1), even though it is of short duration.")  In this case, the injunction sought by Novozymes would affirmatively changes the status quo by requiring Genencor to remove its products from the marketplace.

[22] In a case very similar to this one, the Federal Circuit allowed interlocutory review of both the district court's entry of a permanent injunction (after a jury determination of infringement and validity, but before the damages phase of the case) and the jury's finding of liability.  *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, Nos. 04-1446, 04-1450, 122 Fed. Appx. 502 (Fed. Cir. 2005).  There, the court explained the basis for exercising jurisdiction:

> It is clear that Ventana has the right to appeal from the entry of the injunction against it.  Because the injunction is based on the finding of infringement, that matter and validity are necessarily also before the court for review.  Those issues are inextricably intertwined with the propriety of the injunction.  *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 131 L. Ed. 60 (1995).

*Id.* at 503.

# PUBLIC VERSION – REDACTED

Accordingly, entry of the requested injunction would lead to an immediate appeal of the already-completed proceedings in this case, even though the damages trial is less than a month away.  Rather than proceed in a way sure to piecemeal review of this case, this Court should defer deciding Novozymes' request for injunctive relief until after the October 10 damages trial is completed.

There is no basis nor any need for a temporary injunction.  The request should be denied.

## IX.    <u>CONCLUSION</u>

Novozymes' motion for a permanent injunction flies in the face of the Supreme Court's guidance.  Novozymes simply has not met its burden on any of the showings required to issue a permanent injunction, much less all of them.  Issuing the requested injunction would harm the innocent public beyond pocketbook matters, risking national security by making it more costly to reduce dependence on foreign oil.  Novozymes' motion for a permanent injunction should be denied.

# PUBLIC VERSION – REDACTED

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Telephone:     302.658.9200
Facsimile:      302.658.3989
   Attorneys for Defendants
   Genencor International, Inc. and
   Enzyme Development Corporation

OF COUNSEL:

JONES DAY

Kenneth R. Adamo
Tharan Gregory Lanier
Jane L. Froyd
2882 Sand Hill Road, Suite 240
Menlo Park, CA  94025
Telephone:     650.739.3939
Facsimile:      650.739.3900

Thomas E. Friebel
Margaret B. Brivanlou
222 East 41st Street
New York, NY  10017-6702
Telephone:     212.326.3939
Facsimile:      212.755.7306

## <u>CERTIFICATE OF SERVICE</u>

I, Donald E. Reid, hereby certify that on the 25th day of September, 2006, a Public Version of Defendants' Opposition To Novozymes A/S' Motion For Permanent Injunction was served by e-mail upon counsel of record:

> Andrew A. Lundgren, Esquire (alundgren@ycst.com)
> Young Conaway Stargatt & Taylor LLP
> 1000 West Street
> Wilmington, DE  19801
>
> Samuel S. Woodley, Esquire (swoodley@darbylaw.com)
> Robert C. Sullivan, Jr., Esquire (rsullivan@darbylaw.com)
> Darby & Darby P.C.
> 805 Third Avenue, 27[th] Floor
> New York, NY 10022
>
> David K. Tellekson, Esquire (dtellekson@darbylaw.com)
> Darby & Darby P.C.
> 1191 Second Avenue
> Seattle, WA 98101
>
> George Hykal, Esquire (ghykal@darbylaw.com)
> Darby & Darby P.C.
> 803 3[rd] Avenue
> New York, NY 10022

Donald E. Reid (#1058)