<u>REDACTED – PUBLIC VERSION</u>
**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

NOVOZYMES A/S,

      Plaintiff

v.                                                                          C.A. No. 05-160-KAJ

GENENCOR INTERNATIONAL, INC., and

ENZYME DEVELOPMENT CORPORATION

      Defendants

---

### PLAINTIFF'S REPLY BRIEF
### <u>IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION</u>

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

OF COUNSEL:

Joseph R. Robinson
Steven E. Lipman
Robert C. Sullivan, Jr.
David K. Tellekson
Samuel S. Woodley
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700

Dated: September 25, 2006      *Attorneys for Plaintiff*

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................1

II.     ARGUMENT ........................................................................................2

     A.     Novozymes Will Continue To Suffer Irreparable Harm
        Absent The Entry Of A Permanent Injunction ................................2

          1.     Novozymes Is Entitled To a Presumption of Irreparable Harm ........2

          2.     Novozymes Need Not Manufacture And Sell A
              Product Covered By The '031 Patent To Suffer Irreparable Harm ...6

          3.     Novozymes Will Continue To Suffer Irreparable
              Harm If Defendants Are Not Enjoined From
              Continuing To Infringe The '031 Patent ...................................11

     B.     Monetary Damages Are Not Enough .............................................13

     C.     The Balance Of Hardships Tips In Favor Of Novozymes ..................16

     D.     The Public Interest Is Served By Enforcing Patents ........................17

III.    CONCLUSION .....................................................................................20

DB01:2199924.1

064080.1001

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

## TABLE OF CASES AND AUTHORITIES

Page

**Federal Cases**

*Abbott Labs. v. Andrx Pharms., Inc.,*
   452 F.3d 1331 (Fed. Cir. 2006)..................................................................................... 3, 4

*Apple Computer, Inc. v. Franklin Computer Corp.,*
   714 F.2d 1240 (3d Cir. 1983) ....................................................................................... 3

*Continental Paper Bag Co. v. Eastern Paper Bag Co.,*
   210 U.S. 405, 28 S. Ct. 748, 52 L. Ed. 1122 (1908)................................................. 6

*eBay Inc. v. Mercexchange, L.L.C.,*
   126 S. Ct. 1837 (2006).......................................................................................2-6, 17, 18

*Finisar Corp. v. DirecTV Group, Inc.,*
   Civ. Act. No. 1:05-CV-00264 (E.D. Tex. July 6, 2006)................................. 10, 13-14

*Int'l Rectifier Corp. v. IXYS Corp.,*
   2006 U.S. App. LEXIS 18693 (Fed. Cir. July 14, 2006)........................................... 5

*National Football League v. McBee & Bruno's, Inc.,*
   792 F.2d 726 (8th Cir. 1986) ....................................................................................... 4

*Paice LLC v. Toyota Motor Corp.,*
   No. 2:04-CV-211-DF, 2006 U.S. Dist. LEXIS 61600 (E.D. Tex. Aug. 16, 2006)........... 5, 9, 13

*Polymer Technologies, Inc. v. Bridwell,*
   103 F.3d 970, 973 (Fed. Cir. 1996) .......................................................................... 3

*Richardson v. Suzuki Motor Co.,*
   868 F.2d 1226 (Fed. Cir. 1989)............................................................................... 3, 4

*Rite-Hite Corp. v. Kelley Co.,*
   56 F.3d 1538 (Fed. Cir. 1995).................................................................................... 18

*Smith In'l, Inc. v. Hughes Tool Co.,*
   718 F.2d 1573 (Fed. Cir. 1983).................................................................................. 18

*z4 Techs., Inc. v. Microsoft Corp.,*
   434 F. Supp. 2d 437 (E.D. Tex. 2006)............................................................ 5, 9-10, 13

*TiVo Inc. v. EchoStar Communs. Corp.,*
   No. 2:04-CV-1-DF, 2006 U.S. Dist. LEXIS 64290 (16-*20 E.D. Tex. Aug. 17, 2006) .......... 11

*Voda v. Cordis Corp.,*
   2006 U.S. Dist. LEXIS 63623 (W.D. Okla. Sept. 5, 2006)................................. 5, 8-9

DB01:2199924.1                                                       064080.1001

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986)........................................................................................... 16

**Federal Statutes & Administrative Codes**

    35 U.S.C. § 271 ................................................................................................................. 18

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

## I.     INTRODUCTION

Defendants have already had two and a half years to exploit Novozymes' proprietary technology and get a foot-hold in a market that essentially had belonged to Novozymes. They have gained unjust advantages in this time, including: forging relationships with customers in the market; building ill-gotten market share; and enjoying the ability commercialize an attempted design around product. They should not be allowed another moment to take advantage of Novozymes' property.

Not surprisingly, Defendants are attempting to reserve their right to continue infringement at their leisure. Defendants argue that that the Supreme Court's opinion in *eBay* allows them to ignore Novozymes' patent, and the statutory right to exclude it provides. Rather, Defendants read *eBay* as a call for a compulsory license from Novozymes to its main competitor. Defendants' interpretation of *eBay* is wrong. In *eBay*, the Supreme Court simply called for district courts to use the traditional four factor test to guide their determinations on whether to grant permanent injunctions. It did not permit the absurd situation Defendants envision, where a manufacturer, such as Novozymes, would be forced to license its patented technology to its only competitor in the market.

Amazingly, Defendants also argue that Novozymes is not entitled to a permanent injunction because Novozymes -- their only competitor in the fuel ethanol market-- somehow does not compete in the fuel ethanol market! Defendants make this argument despite the fact that Novozymes retained more than half the market even after Defendants' assault with an infringing product. Defendants' interpretation of the facts is wrong. In addition to twisting the holding in

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

*eBay* to serve their purpose, Defendants seek to bend reality into a scenario where they have erased the largest manufacturer and supplier from the fuel ethanol market.

Defendants' call to maintain their ability to infringe the '031 Patent at their own discretion should be rejected. A balancing of the equities using the traditional four factor test, which is all that the Supreme Court called for in *eBay*, mandates that Defendants should be permanently enjoined from further infringement of the '031 Patent.

## II.    ARGUMENT

### A.    Novozymes Will Continue To Suffer Irreparable Harm Absent The Entry Of A Permanent Injunction

#### 1.    Novozymes Is Entitled To a Presumption of Irreparable Harm

Contrary to the argument set forth by the Defendants on pages 7-8 of their Opposition, the Supreme Court did not eliminate the presumption of irreparable harm in *eBay*. In *eBay*, the Supreme Court did not even address the presumption of irreparable harm; rather, it vacated the permanent injunction and remanded the case to the district court without applying the four factor balancing test. *See eBay Inc. v. Mercexchange, L.L.C.*, 126 S. Ct. 1837, 1841 (2006).

The Court's holding in *eBay* was simple and limited in context:

> We hold *only*[1] that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

---

[1] Unless otherwise noted, all emphasis in quotations has been added.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

*Id.* The Court vacated and remanded the permanent injunction issue because "[n]either the District Court nor the Court of Appeals below fairly applied these traditional equitable principles in deciding respondent's motion for a permanent injunction." *Id.* at 1840. The district court in *eBay* erred by improperly adopting a general rule that would preclude patentees, which do not manufacture a patented product but instead only seek to license their patent, from obtaining a permanent injunction. *See id.* The Federal Circuit erred "in the opposite direction" by "articulat[ing] a 'general rule,' unique to patent disputes, 'that a permanent injunction will issue once infringement and validity have been adjudged.'" *Id.* at 1841. The presumption of irreparable harm never factored into the Court's holding, nor did the Court address the presumption in *dicta*.

Accordingly, the presumption of irreparable remains the law when considering the traditional four factor test on a patentee's motion for a permanent injunction. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006); *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996); *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989). In fact, the Supreme Court implicitly affirmed the continuing applicability of the presumption by analogizing the permanent injunction analysis in a patent infringement case to the same analysis in a copyright infringement case. *See eBay*, 126 S. Ct. at 1840 ("This approach is consistent with our treatment of injunctions under the Copyright Act. Like a patent owner, a copyright holder possesses 'the right to exclude others from using his property.'"). Under the Copyright Act, the copyright holder is entitled to a presumption of irreparable harm upon a judgment of infringement. *See, e.g.*, Apple *Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (citing 3 Nimmer on Copyright § 14.06[A], at 14-50, 14-51 &

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

n.16) ("A copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm."); *National Football League v. McBee & Bruno's, Inc.*, 792 F.2d 726, 729 (8th Cir. 1986) ("Copyright law has long held that irreparable injury is presumed when the exclusive rights of the holder are infringed.").

    *eBay*'s instruction to district courts was to exercise their discretion in a manner "consistent with traditional principles of equity." *eBay*, 126 S. Ct. at 1840. Traditionally, courts have regularly applied the presumption of irreparable harm in both patent and copyright infringement cases upon a judgment of infringement. *See, e.g., Richardson*, 868 F.2d at 1247 (patent); *National Football League*, 792 F.2d at 729 (copyright). Here, Federal Circuit precedent calls for the application of the presumption of irreparable harm, and doing otherwise would be inconsistent with both *eBay* and traditional principles of equity. *See eBay*, 126 S. Ct. at 1842 (Roberts, C.J., concurring) ("When it comes to discerning and applying those standards, in this area as others, 'a page of history is worth a volume of logic.'").

    Furthermore, the Federal Circuit has continued to recognize the applicability of the presumption of irreparable harm in the preliminary injunction context after the *eBay* decision. *See Abbott Labs.*, 452 F.3d at 1348. Defendants' response is that this decision is confined to preliminary injunctions. (Opposition, at 7). In *Abbott Labs.*, however, the Federal Circuit made no effort to distinguish *eBay* as a permanent injunction case, and actually cited *eBay* as support for the use of the four factor test to determine a motion for preliminary injunction. *Id.* The Federal Circuit did not have to distinguish *eBay* on the issue of the irreparable harm presumption because *eBay* is consistent with the application of this presumption. In patent and copyright infringement cases, both preliminary injunctions and permanent injunctions are equitable

4

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

remedies that are dispensed at the discretion of the district court judge and guided by the traditional four factor test. There exists no logic for providing a presumption for a preliminary injunction motion while prohibiting such a presumption for a permanent injunction.

Defendants cite a handful of non-precedential cases in support of their argument that no presumption of irreparable harm applies in light of the Supreme Court's holding in *eBay*. (*See* Opposition, at 7-8, citing *Int'l Rectifier Corp. v. IXYS Corp.*, 2006 U.S. App. LEXIS 18693 (Fed. Cir. July 14, 2006); *Voda v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 63623 (W.D. Okla. Sept. 5, 2006); *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 U.S. Dist. LEXIS 61600 (E.D. Tex. Aug. 16, 2006); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437 (E.D. Tex. 2006)). These cases, none of which is binding on this Court, are of no significance to the applicability of the presumption. In *Int'l Rectifier*, the Federal Circuit did not address the presumption of irreparable harm; it simply vacated the automatic grant of a permanent injunction and remanded for analysis in accordance with the four factor test in light of *eBay*. The rejections of the presumption in the three district court opinions cited by Defendants greatly exceed the explicitly limited scope of the Supreme Court's holding in *eBay* and ignore the cautionary remarks in both concurrences to *eBay*. The better view is that the presumption continues to apply in accordance with the traditional application of the four factor test.

For all the reasons stated herein and in Novzoymes' opening brief, the presumption of irreparable harm should apply in this case. As Defendants have not affirmatively rebutted this presumption, the first factor of the four factor test favors the grant of a permanent injunction. Furthermore, as described below, Novozymes will suffer actual irreparable harm if an injunction is not granted.

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

2.    Novozymes Need Not Manufacture And Sell A Product
      Covered By The '031 Patent To Suffer Irreparable Harm

Defendants mistakenly argue that Novozymes cannot suffer irreparable harm "because neither it (nor NZNA) practice the '031 Patent or compete with Defendants in the U.S. fuel ethanol market." (Opposition, at 8). This arguments fails both on the facts and the law. At its root, this is just another attempt by the Defendants to hide behind Novozymes' corporate structure to avoid the consequences of their unlawful actions.

First, the law does not require a patentee to practice a patent in order to obtain a permanent injunction. In *eBay* itself, the Supreme Court addressed this issue, holding that the district court's categorical denial of permanent injunctions to a certain class of patentees constituted clear and reversible error:

> Although the District Court recited the traditional four-factor test, 275 F. Supp. 2d, at 711, it appeared to adopt certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases. Most notably, it concluded that a "plaintiff's willingness to license its patents" and "its lack of commercial activity in practicing the patents" would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue. Id., at 712. *But traditional equitable principles do not permit such broad classifications.* For example, some patent holders, such as university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves. Such patent holders may be able to satisfy the traditional four-factor test, and we see no basis for categorically denying them the opportunity to do so. To the extent that the District Court adopted such a categorical rule, then, its analysis cannot be squared with the principles of equity adopted by Congress. The court's categorical rule is also in tension with *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 422-430, 28 S. Ct. 748, 52 L. Ed. 1122 (1908), which rejected the contention that a court of equity has no jurisdiction to grant injunctive relief to a patent holder who has unreasonably declined to use the patent.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

*eBay*, 126 S. Ct. at 1840-41. Defendants urge this Court to adopt the very same categorical rule

that the Supreme Court explicitly rejected in *eBay* as a rule that "cannot be squared with the

principles of equity adopted by Congress." *Id.* Accordingly, the fact that Novozymes' competing

products are covered by a different but related patent, and not the '031 Patent, does not pose a bar

to Novozymes' entitlement to a permanent injunction.

Second, contrary to Defendants' claim, Novozymes clearly competes in the fuel ethanol

market; Novozymes actually dominated the relevant portion of that market until Defendants began

to infringe with Spezyme® Ethyl. (*See* Teece Decl.[2], at B-10, ¶ 41). The fact that Novozymes

chooses to compete in the U.S. fuel ethanol market through its wholly owned U.S. subsidiary

simply cannot lead to the conclusion that Novozymes does not suffer irreparable harm when

Defendants infringe its '031 Patent. The Defendants have used an infringing product to

unlawfully abscond with a large portion of Novozymes' share in the market, causing Novozymes

to lose exposure, revenue, profits, market leverage, and product differentiation advantages in what

is essentially a two supplier market. (*See* Teece Decl., at B-10, ¶¶ 39-42; LeFebvre Decl.[3], at A-4

---

[2] "Teece Decl." refers to the Declaration of David J. Teece, dated September 14, 2005, a copy of
which is submitted herewith in Appendix B at pages B-1 to B-13.

[3] "LeFebvre Decl." refers to the Declaration of Gregory K. LeFebvre, dated June 22, 2005, a
copy of which was submitted with Novozymes' opening brief in Appendix A at pages A-1 to
A-8. In their Opposition, Defendants focus a great deal of effort in attacking the reliance by
Novozymes on the LeFebvre Decl. (*See* Opposition, at 3-4). Novozymes relies on this
declaration because the facts asserted therein are accurate. At his recent deposition on August
15, 2006, Mr. Faller confirmed many of the fact asserted in the Lefebvre Decl. (*See* Faller Tr.,
at B-40:14 to B-45:20). Furthermore, Defendants had a fair opportunity to cross examine Mr.
LeFebvre on the statements he made in the LeFebvre Decl. during Mr. LeFebvre's deposition
on August 19, 2005. Mr. LeFebvre continued to be an employee of Novozymes well into 2006
(cont...)

7

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

to A-6, ¶¶ 12-19; LeFebvre Rebuttal Decl.[4], at B-15 to B-20, ¶¶ 5-8, 11-13; Faller Tr.[5], at B39:5-11, B-46:24 to B-47:6, B-48:14-23, B-49:14 to B50:19; B-51:6-22). The fact that Novozymes operates through one of its wholly owned subsidiaries does not change the reality of the harm that is being suffered by Novozymes. A permanent injunction is an equitable remedy, and the equities of this situation are that (i) Novozymes competes in the U.S. fuel ethanol market, regardless of the corporate label, and (ii) Novozymes directly suffers the harm felt by the Defendants' infringement. (*See* Olofson Decl.[6], at B-25 to B-26, ¶¶ 4-8).

Third, the cases cited by Defendants in support of their argument -- that Novozymes cannot suffer irreparable harm "because neither it (nor NZNA) practice the '031 Patent or compete with Defendants in the U.S. fuel ethanol market" -- are readily distinguishable.

(i)     In *Voda v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 63623, at *18-*19 (W.D. Okla. Sept. 5, 2006), the district court found no irreparable harm because the patentee alleged no harm to itself, only to its third-party exclusive licensee. Here, Novozymes suffers the irreparable harm itself, as any harm suffered by its U.S. subsidiary results in direct corresponding harm to Novozymes as its 100% controlling owner. That kind of relationship simply did not exist in *Voda*, where the licensee was not related to the patentee.

---

and was available to Defendants at the liability trial and thereafter. Novozymes' reliance on both LeFebvre declarations is entirely proper.

[4] "LeFebvre Rebuttal Decl." refers to the Rebuttal Declaration of Gregory K. LeFebvre, dated October 4, 2005, a copy of which is submitted herewith in Appendix B at pages B-14 to B-23.

[5] "Faller Tr." refers to the deposition transcript of Jeffrey Faller, dated August 15, 2006, of which a copy of the relevant pages is submitted herewith in Appendix B at pages B-35 to B-51.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

(ii)    In *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 U.S. Dist.

LEXIS 61600, at *14 (E.D. Tex. Aug. 16, 2006), the court held that it "should also be noted that

because Plaintiff does not compete for market share with the accused vehicles, concerns regarding

loss of brand name recognition and market share similarly are not implicated." Here, Novozymes

competes directly for market share with the infringing Spezyme® Ethyl, and concerns regarding

loss of brand name recognition and market share are not only implicated but have been ongoing

for more than two years.

(iii)    In *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006),

the infringer, Microsoft, did not market or sell the infringing product activation code, it simply

used the infringing code as a small part of its software packages. The court explained that there

was no irreparable harm because the infringer was not competing with the patentee for sales of or

licenses to the patented technology:

> In the absence of a permanent injunction against Microsoft, z4 will
> not suffer *lost profits, the loss of brand name recognition or the
> loss of market share* because of Microsoft's continued sale of the
> infringing products. *These are the type of injuries that are often
> incalculable and irreparable.* The only entity z4 is possibly
> prevented from marketing, selling or licensing its technology to
> absent an injunction is Microsoft. As discussed in the next section,
> z4 can be compensated for any harm it suffers in the way of future
> infringement at the hands of Microsoft by calculating a reasonable
> royalty for Microsoft's continued use of the product activation
> technology. Accordingly, z4 has not demonstrated that it will
> suffer irreparable harm absent a permanent injunction.

---

[6] "Olofson Decl." refers to the Declaration of Richard H. Olofson, dated July 25, 2006, a copy of
which is submitted herewith in Appendix B at pages B-24 to B-27.

DB01:2199924.1                                                                    064080.1001

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

*Id.* at 440-41. In contrast, Defendants have not simply misappropriated a minor element of a larger product; they have introduced a complete infringing product, competing head-on with Novozymes and stealing sales dollar for dollar. Novozymes has suffered the same type of injuries that the *z4* Court identified as being "often incalculable and irreparable": lost profits, the loss of brand name recognition, and the loss of market share.

      (iv)    In *Finisar Corp. v. DirecTV Group, Inc.*, Civ. Act. No. 1:05-CV-00264 (E.D. Tex. July 6, 2006), the patentee did not have a product on the market that competed with the infringing product. *See Finisar* (Hearing Tr. at 7). The patentee was just a holding company looking for a better negotiating position from which to reach a settlement with the infringer. *See id.* (Hearing Tr. at 7). In fact, the patentee had kept this patent on the shelf for ten plus years without attempting to commercialize any product. *See id.* (Hearing Tr. at 126). The court found that a monetary award would suffice in that situation. Here, Novozymes is not a holding company, but the world's largest manufacturer of industrial enzymes and Defendants' direct competitor. The market forces that change with the availability of a competing product in this case strike a dramatic contrast with the facts in *Finisar* where the patentee was only interested in gaining a stronger negotiating position with the licensee.

      (v)    Defendants also attempt to analogize the facts of this case with the scenario described by Justice Kennedy in his concurrence to the *eBay* case. (*See* Opposition, at 9). The Defendants illogically compare Novozymes, a manufacturer selling a competitive product and simply looking to protect its place in the market, to the holding company / patent troll patentee described by Justice Kennedy. Such trolls lie in wait for another company to develop a product and then ambush them with a patent they have kept idle in their portfolio. This analogy stretches

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

beyond logic and reasoning and falls flat when applied to a company like Novozymes which has

invested large sums in research and development, is a major manufacturer and competitor, and

unlike the Defendants has played by the rules of the patent system.

None of these cases supports Defendants' position that Novozymes cannot suffer

irreparable harm whether because of its corporate structure or because its product is covered by a

related but separate patent. The differences between the facts of these cases and the facts at hand

only serve to emphasize why a permanent injunction truly is essential here. *See* TiVo Inc. v.

EchoStar Communs. Corp., No. 2:04-CV-1-DF, 2006 U.S. Dist. LEXIS 64290, at *16-*20 (E.D.

Tex. Aug. 17, 2006) (finding a permanent injunction to be warranted where the patentee and the

infringer were direct competitors).

> 3.    Novozymes Will Continue To Suffer Irreparable Harm If Defendants
>       Are Not Enjoined From Continuing To Infringe The '031 Patent

Novozymes competes in the U.S. fuel ethanol market for alpha amylases with its line of

Liquozyme products -- Liquozyme® SC, Liquozyme® DS, and Liquozyme® NX (collectively,

"Liquozyme® SC"). (*See* Teece Decl., at B-10, ¶¶ 39-42). Before Defendants entered the market

with their infringing Spezyme® Ethyl product, Novozymes had garnered ▮▮▮▮▮▮ of the market.

(*See id.*). With this dominant position, fuel ethanol plants looked to Novozymes as the clear

market leader. (*See* LeFebvre Rebuttal Decl., at B-18 to B-19, ¶ 11). ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

As long as Defendants have the ability to provide their infringing product to the market, Novozymes' ability to regain the advantage of its rightful and lawful position in the market is diminished. Defendants have already bought enough time to introduce an attempted design around product -- Spezyme® Xtra -- in June of this year. (*See* Beto Tr.[7], at B-32:4-14). While both parties believe this new product to be an inferior alternative, the promise of the continued (or resumed) availability of the infringing Spezyme® Ethyl enzyme may keep customers around long enough for Defendants to develop and commercialize a more desirable noninfringing alternative. Having Spezyme® Ethyl on the shelf allows Defendants to keep their foot in the door while they attempt to develop new products without rifling through Novozymes' patent portfolio. Novozymes has been and will continue to be irreparably harmed if the Court does not enjoin the Defendants from further infringement of the '031 Patent.

Defendants argue that the cause of Novozymes' harm is not their infringing alpha amylase, but a number of other factors ranging from Defendants' vender-owned inventory plan, to the collective buying groups in the market, to Novozymes' alleged arrogance. (*See* Opposition, at 10-11). The evidence, however, plainly contradicts Defendants' claims:

> (i) Novozymes had a dominant market share prior to the introduction of Spezyme® Ethyl, but then essentially split the market after entry of Spezyme® Ethyl. (*See* Teece Decl., at B-10, ¶ 41).

---

[7] "Beto Tr." refers to the deposition transcript of Maurie G. Beto, dated August 4, 2006, of which a copy of the relevant pages is submitted herewith in Appendix B at pages B-28 to B-34.

12

FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER

(ii) Defendants continued to manufacture, market, and distribute the infringing alpha amylase throughout the course of the litigation, risking trebled damages, when they had other alpha amylases that they claimed to be competitive with Liquozyme® SC. (Opposition, at 5).

(iii) 

While Defendants speculate that other factors played a significant role in their ability to compete with Novozymes in the fuel ethanol market, the evidence makes it clear that Genencor would have failed to compete without resort to its infringing alpha amylase.

For the reasons stated herein and in Novozymes' opening brief, Novozymes has suffered irreparable harm even absent the presumption to which it is entitled. The first factor in the four part balancing test weighs heavily in Novozymes' favor.

B.    Monetary Damages Are Not Enough

The very cases cited by Defendants identify the harm suffered by Novozymes in this case and the "incalculable and irreparable" harm which Novozymes would continue to suffer if Defendants were allowed to keep their infringing product on the market. *z4*, 434 F. Supp. 2d at 440 (specifically identifying cases where a patentee would "suffer lost profits, the loss of brand name recognition or the loss of market share" as cases where a patentee would suffer irreparable and incalculable damages); *see also Paice*, 2006 U.S. Dist. LEXIS 61600 at *14 (". . .because Plaintiff does not compete for market share with the accused vehicles, concerns regarding loss of brand name recognition and market share similarly are not implicated."); *Finisar* (Hearing Tr. at 123-26) (relying on the fact that the patentee did not compete in the market and that the patent

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

was on the shelf for ten years as significant factors in denying a permanent injunction). From these cases, it is clear that courts are likely to find harm to the patentee to be irreparable and incalculable where the patentee is actively engaged in competition in the relevant market and losing market share and position to an infringing competitor. *See id.*

Here, Novozymes and the Defendants are competing in what is essentially a two supplier market. (*See* Teece Decl., at B-10, ¶¶ 39-40). If this Court denies Novozymes a permanent injunction, then Defendants would essentially be foisted on Novozymes as its compulsory licensee, and Novozymes will continue to suffer irreparable and incalculable harm. Novozymes' main (and currently only) competitor in the market will be allowed to compete with Novozymes using Novozymes' very own proprietary technology. ████████████████████████████

Only the entry of a permanent injunction can prevent further irreparable and incalculable harm to Novozymes and permit Novozymes to take advantage of its patent rights.

14

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

While Defendants have said that they are voluntarily withdrawing their infringing product for now, it is easy to envision a scenario in which Defendants' attempted design around product, Spezyme® Xtra, does not catch on with its customers. Under such a scenario, only a permanent injunction would stand in the way of Defendants reentering the market with their infringing product. Defendants' refusal to stipulate to a permanent injunction makes such a scenario a very real concern for Novozymes.

Defendants argue that the future loss of the "right to exclude" can be adequately valued by a monetary award and proceed to explain their belief of how simple it would be to calculate damages for lost market share, price erosion, and future damages. (*See* Opposition, at 12-13). Defendants cannot explain how to compensate Novozymes for its continued loss of market position while Defendants maintain a foot hold in the market long enough to introduce a new design around product. Defendants address past price erosion, but do not address the effect of continued erosion of prices well into the future. Defendants cannot explain how monetary damages could compensate for their improper use of an infringing product to maintain relationships with customers in the fuel ethanol market long enough to win alpha amylase and gluco amylase business.

For the reasons stated herein and in Novozymes' opening brief, much of the harm suffered by Novozymes is incalculable and not subject to remedy by an award of monetary damages. The second factor in the four part balancing test also weighs heavily in favor of Novozymes.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

**C.    The Balance Of Hardships Tips In Favor Of Novozymes**

As the Federal Circuit stated in *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003

n.12 (Fed. Cir. 1986), "[o]ne who elects to build a business on a product found to infringe cannot

complain if an injunction against continuing infringement destroys the business so elected."

Defendants argue that the balance of hardships tips in their favor solely because a permanent

injunction would require them to stop infringing the patent. As the Federal Circuit has made

clear, this argument holds no water. Defendants will suffer no legally cognizable hardship. In

fact, the Defendants have already made great use of their seventeen month window of

infringement to establish a major position in the market and commercialize an attempted design

around product.

Furthermore, the Defendants have already stated their intention to withdraw Spezyme®

Ethyl from the market. (*See* Danisco Press Release, 8/25/06, at A-16). In this press release,

Danisco (Defendant Genencor International, Inc.'s parent) stated (in response to this Court's

ruling on liability) that:

> Overall, this court ruling will not materially affect Danisco's
> enzyme business including the ethanol segment. The product
> withdrawn is just one of a full product range for the ethanol
> segment, which covers both the traditional ethanol production
> process and the 'no-cook' process, for which Genencor launched
> the STARGEN® 001 PRODUCT IN 2005.

(*Id.*). Having already withdrawn the product and having stated their belief that such withdrawal

will not "materially affect" them, it appears quite clear that the entry of an injunction will impose

no hardship on the Defendants.

On the other hand, the hardship to Novozymes is manifest. Absent a permanent

injunction, Novozymes face the possibility of continued competition in a two supplier market,

16

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

where Novozymes' main competitor will be competing against Novozymes by manufacturing, marketing, and distributing an infringing product using Novozymes' patented proprietary technology. Defendants' claim that Novozymes will not suffer any hardship "because Novozymes does not practice the '031 Patent or manufacture or sell any product that competes with Defendants' SPEZYME® Ethyl, and has not license the '031 Patent for profit" is wrong as explained in detail in Section II.A.2. above.

For the reasons stated herein and in Novozymes' opening brief, the balance of hardships tips in favor of Novozymes. The third factor in the four part balancing test also weighs heavily in favor of Novozymes.

**D.     The Public Interest Is Served By Enforcing Patents**

Contrary to Defendants' assertions, the Supreme Court did not change the standard for the public interest factor in *eBay*. The Court did not directly address any of the four factors in *eBay*; it simply explained that the traditional four factor test for permanent injunctions must guide the district court's discretion and remanded the case to the district court for analysis pursuant to this test. *See eBay*, 126 S. Ct. at 1840-41. Defendants argue that the Court's restatement of the traditional four factor test in *eBay*, alone, supports Defendants' theory that the Court has rejected the then existing standard for the public interest factor in favor of a more strict requirement. (*See* Opposition, at 14-15). Defendants' interpretation goes too far by extracting a holding that the Court simply did not make. *See eBay*, 126 S. Ct. at 1841 ("We hold *only* that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.").

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

Because *eBay* did not change the legal standard for analyzing the public interest factor,
existing Federal Circuit precedent controls. The Federal Circuit has made it clear that the public
interest is almost always served by vindicating the patentee's rights and removing the infringing
product from the market. *See Smith In'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir.
1983)[8]. The Federal Circuit has explained that courts have rarely exercised their discretion to
deny injunctive relief to protect the public interest; and in the majority of those instances, the
public health was at stake. See *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1547-48 (Fed. Cir.
1995).

Defendants have identified no public health issues at stake here, nor any other compelling
public interest that would call for this Court to exercise this rarely invoked discretion. Rather,
boiled down to its essence, Genencor's argument is that fuel ethanol producers would prefer lower
prices and a choice of suppliers. While this truism applies to all parties in all markets for all
products, the underlying public policy question has been answered by the Constitutional and
statutory rights granted to patentees to exclude others, for a limited time, from practicing their
claimed inventions. *See* 35 U.S.C. § 271. As infringement has been determined in this case and
Novozymes' limited patent term is a wasting asset, the public interest would be best served by
vindicating Novozymes' patent rights and removing the infringing product, Spezyme® Ethyl, from
the market.

---

[8] In their Opposition, Defendants attempt to distinguish Federal Circuit precedent on the public
interest factor by pointing to the fact that the cited cases were in the context of a preliminary
injunction motion. The Defendants, however, do not explain why a public interest analysis
would be any different for a permanent injunction. This distinction is not material and does
not affect the weight to be given to the Federal Circuit's opinions on this issue.

DB01:2199924.1                    064080.1001

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

For the reasons stated herein and in Novozymes' opening brief, the public interest is best served by the entry of an injunction against Defendants.  The fourth factor in the four part balancing test also weighs heavily in favor of Novozymes.

**FILED UNDER SEAL - CONTAINS HIGHLY CONFIDENTIAL INFORMATION
UNDER PROTECTIVE ORDER**

## III.    CONCLUSION

For all the reasons stated herein, all four factors of the traditional balancing test weigh

heavily in favor of Novozymes' request for a permanent injunction, and thus Novozymes' motion

for permanent injunction should be granted.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Dated:    September 25, 2006

Josy W. Ingersoll (No. 1088)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

Joseph R. Robinson
David Tellekson
Robert C. Sullivan, Jr.
**DARBY & DARBY P.C.**
805 Third Avenue
New York, New York 10022
(212) 527-7700

*Attorneys for Plaintiff
Novozymes A/S*

DB01:2199924.1                                                                                    064080.1001

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on October 6, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Donald E. Reid, Esquire
> MORRIS NICHOLS ARSHT & TUNNELL
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE  19899-1347

I further certify that on October 6, 2006,  I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

> Tharan Gregory Lanier, Esquire
> Jane Froyd, Esquire
> JONES DAY
> 2822 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Novozymes A/S*