IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVOZYMES A/S,<br><br>      Plaintiff,<br><br>      v.<br><br>GENENCOR INTERNATIONAL, INC. and<br>ENZYME DEVELOPMENT CORPORATION,<br><br>      Defendants. | C.A. No. 05-160-KAJ |

## MOTION IN LIMINE TO PRECLUDE NOVOZYMES A/S FROM RENEWING ITS MOTION TO ADD NOVOZYMES NORTH AMERICA AS A CO-PLAINTIFF

OF COUNSEL:

JONES DAY

Kenneth R. Adamo
Tharan Gregory Lanier
Jane L. Froyd
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone:  650.739.3939
Facsimile:  650.739.3900

Thomas E. Friebel
Margaret B. Brivanlou
222 East 41st Street
New York, NY 10017-6702
Telephone:  212.326.3939
Facsimile:  212.755.7306

October 10, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
Telephone:  302.658.9200
Facsimile:  302.658.3989

Attorneys for Defendants
Genencor International, Inc. and
Enzyme Development Corporation

MPI-40255v2

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Novozymes A/S ("NZAS") has already offered two diametrically opposed arguments for why it should be allowed to add Novozymes North America ("NZNA") as a co-plaintiff. In its opening brief NZAS argued that NZNA is a ***non-exclusive licensee*** under the '031 Patent. After Defendants' Opposition pointed out conclusive authority that non-exclusive licensees do not have standing to sue as co-plaintiffs, NZAS then took the opposite position and argued that, actually, NZNA is an ***implied exclusive licensee***. Regardless of what new theory Defendants may present next, recent discovery has revealed undisputed facts demonstrating that NZNA is merely a non-exclusive licensee of the '031 Patent, lacking standing to join this suit:

- NZAS retains the right to license the '031 Patent to others, and has licensed other "core technology" in cross-licenses when it found such cross-licenses beneficial;

- A written agreement evidences an explicit non-exclusive license of the '031 Patent to NZNA;

- NZNA does not practice the '031 Patent; and

- The Technology License Agreement at issue was structured for tax reasons to benefit NZAS, and NZAS cannot now deny the burdens of the agreement.

In light of the undisputed facts demonstrating that NZNA is a non-exclusive licensee, NZAS should be precluded from renewing its motion to add NZNA as a co-plaintiff.[1]

---

[1] Defendants continue to believe this issue could be decided as a matter of law, and, while the facts uncovered in recent discovery have proved very instructive, NZAS appears to agree. It asserted in interrogatory answers that all of the facts supporting the addition of NZNA were disclosed in its prior motion, which was denied. (*See* Novozymes A/S' Response to Defendants' Fifth Set of Interrogatories, "9/28/06 Response to Interrogatories," Responses to Interrogatory Nos. 25-27, at pp. 3-5, Exh. 1.)

MPI-40255v2                                1

## II. ARGUMENT

### A. NZAS Admits That NZAS Retains the Right to License the '031 Patent to Entities Other Than NZNA.

Henrik Meyer, the Vice President for Marketing at NZAS and one of the individuals whom NZAS identified as "most knowledgeable" regarding NZAS' "contention that NZNA may be joined as a co-plaintiff, (9/28/06 Response to Interrogatories, Responses to Interrogatory No. 29, at p. 6, Exh. 1), agreed that "Novozymes A/S retain[s] the right to license [technology including technology of the '031 Patent] to some entity other than Novozymes North America," and even "to some entity outside of the Novozymes family if it were to choose to do that." (Meyer Deposition, 33:22 – 34:8, Exh. 2.)

This right is not theoretical. Even though NZAS has claimed it would never have licensed the '031 Patent outside of the Novozymes' family because it was "core technology," Mr. Meyer admits that NZAS has actually licensed "core technology" in the past on a cross-license in a settlement agreement. (Meyer Deposition 48: 15-25, Exh. 2.) This admission is crucial, because the Federal Circuit has found that "[i]t is undisputed that [a license] was nonexclusive inasmuch as [the patentee] had the right to license others." *Ortho Pharmaceutical Corp. v. Genetics Inst.*, 52 F.3d 1026, 1033 (Fed. Cir. 1995). Likewise, as NZAS has retained the right to license to others, the license to NZNA can only be *non*-exclusive.

### B. There Is an Written, Express Non-Exclusive License Agreement.

NZAS "admits that among other transfers of rights, the January 1, 1996 Technology License Agreement conveys a non-exclusive, nontransferable right and license to use the Technology described in the agreement." (Novozymes A/S' Response to Defendants' First Request for Admissions ("9/28/06 Response to RFAs"), Response to Request No. 26, at p. 9, Exh. 3; *see also*, Meyer Deposition 29: 23 – 32:5, Exh. 2 (the relevant license agreement is

"stated as a non-exclusive license.")) An exclusive license cannot be implied where a non-exclusive one is explicitly stated. In fact, both of the cases on which Novozymes relies so heavily, *Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir. 1990) and *Ricoh Co. v. Nashua Corp.*, 947 F. Supp. 21 (D.N.H. 1996),[2] involved an ambiguous license agreement, not an express non-exclusive license.

### C.    NZNA Does Not Practice the '031 Patent.

NZAS "admits that NZNA does not manufacture or sell any products that would be encompassed by any of the claims of the '031 patent." (9/28/06 Response to RFAs, Response to Request No. 21, at p. 8, Exh. 3.) Such an admission is virtually dispositive here, because both of the implied exclusive licensee cases NZAS cites held that an implied exclusive license had been granted precisely *because* the implied exclusive licensee practiced that patent. Specifically, in *Kalman*, the Federal Circuit emphasized the importance of manufacturing embodiments of the patented products multiple times in finding an implied exclusive license. *Kalman*, 914 F.2d. at 1480 (it was "clear to all parties that the Autoscreen device, manufactured and marketed solely by [the implied exclusive licensee], *is an embodiment of the device claimed in the '017 patent*") (emphasis added); *see also id.* at 1475; *id.* at 1481. Similarly, in *Ricoh*, the implied exclusive

---

[2] In *Kalman*, the Court gave no indication of the existence of a written license and thus examined whether "any alleged 'tacit exclusive' license existed." *See, Kalman*, 914 F.2d at 1480. In *Ricoh*, a written license existed, for which "plaintiffs presented no direct evidence of the strictly exclusive nature of the license," and thus "all of the evidence presented at trial, taken together" demonstrated an implied exclusive licensee. *Ricoh*, 947 F. Supp. at 21.

NZAS also cites *WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999). However, *WMS* does not address the question of standing. Rather, in *WMS*, "[s]everal competitors [had] licensed the patent from [patentee] and paid substantial royalties." *Id.* at 1343-44. The Court held only that a district court did not abuse its discretion in refusing a motion to withdraw a stipulation that a patentee did not manufacture product. While it also noted in *dicta* that, had the district court allowed the withdrawal of the stipulation, it would have had to have given the patentee "the opportunity" to join the subsidiary, an "opportunity" does not equate to a decision that standing would have been granted had the patentee explored its "opportunity."

licensee manufactured "products subject to the [asserted] patent," and the Court noted as one of the main requirements for finding an implied exclusive license that the implied exclusive licensee "is the sole *manufacturer* of the toner cartridges at issue in this infringement action." *Ricoh*, 947 F. Supp. at 24 (emphasis added).

### D. NZNA Was Not Formed for the Purpose of Manufacturing and/or Selling Products Embodying the '031 Patent.

NZAS "admits that NZNA was not created for the sole purpose of manufacturing and/or selling products that practice the '031 patent." (9/28/06 Response to RFAs, Response to Request No. 6, at p. 4, Exh. 3.) This is not surprising given that NZAS does not manufacture or sell products which embody the '031 Patent. (9/28/06 Response to RFAs, Response to Request No. 21, at p. 8, Exh. 3.) Likewise, one of the individuals "who was part of the decision" about "the creation and founding" of the entity that became NZNA, (Loft Deposition, 12: 19-23, Exh. 4), and who was identified as "most knowledgeable" regarding NZAS's "contention that NZNA may be joined as a co-plaintiff," (9/28/06 Response to Interrogatories, Responses to Interrogatory Nos. 29, at p. 6, Exh. 1), admitted that he is not "familiar at all with the '031 patent" and does not "know anything about what technology it covers or the claims or anything like that." (Loft Deposition, 23: 10-16, Exh. 4). This is very different from the cases NZAS cites, in which the Federal Circuit found an implied exclusive license existed in part because the entity had been created by a solo inventor and his brother for the very purpose of marketing patented products. *See Kalman*, 914 F.2d at 1475.

### E. The Governing License Agreement Was Structured for Tax Reasons to Benefit NZAS.

NZAS witness Benny Loft testified that the royalty rate in the relevant license was selected because tax authorities agreed that 40% was a fair charge for NZNA using NZAS' "Technology". (Loft Deposition 51: 8-15, Exh. 4.) Mr. Loft further testified that not having

approval of the tax authorities "would create a risk when we are reporting to the stock market in Copenhagen that the taxes of NZAS group can change." (Loft Deposition 58: 3-15, Exh. 4.) Corporations who make licensing decisions for self-serving reasons, such as taxes, may not ignore corporate structure when such licensing decisions become inconvenient. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 305 F. Supp. 2d 939, 950 (E.D. Wis. 2004) (Fed. Cir. affirmed this point but overturned the case on other grounds in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005)); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004). NZAS may not seek to claim the benefits of its chosen license agreement, such as certainty about taxation, while escaping the legal consequences of that agreement.

NZNA was created for tax reasons, not to practice the '031 Patent. For that additional reason, non-exclusive licensee NZNA does not have standing to join this case.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court preclude NZAS from renewing its motion to add NZNA as a co-plaintiff.

## **CERTIFICATE OF SERVICE**

I, Donald E. Reid, hereby certify that on the 10th day of October, 2006, a Motion *In Limine* To Preclude Novozymes A/S' From Renewing Its Motion To Add Novozymes North America As A Co-Plaintiff was served by hand delivery upon counsel of record:

    Andrew A. Lundgren, Esquire (alundgren@ycst.com)
    Young Conaway Stargatt & Taylor LLP
    1000 West Street
    Wilmington, DE 19801

    Samuel S. Woodley, Esquire (swoodley@darbylaw.com)
    Robert C. Sullivan, Jr., Esquire (rsullivan@darbylaw.com)
    Darby & Darby P.C.
    805 Third Avenue, 27th Floor
    New York, NY 10022

    David K. Tellekson, Esquire (dtellekson@darbylaw.com)
    Darby & Darby P.C.
    1191 Second Avenue
    Seattle, WA 98101

    George Hykal, Esquire (ghykal@darbylaw.com)
    Darby & Darby P.C.
    803 3rd Avenue
    New York, NY 10022

                               /s/ Donald E. Reid
                               Donald E. Reid (#1058)