# EXHIBIT A

**Post-Trial Demonstrative A: Acceptability of Genencor's Non-Infringing Alternative Alpha-Amylase Products**

Actions of the 29 Former SPEZYME® Ethyl Customers Following Removal of SPEZYME® Ethyl from the Market:



Source Beto, Tr. (D) 424:12-425:17



# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

►

Briefs and Other Related Documents
3M Innovative Properties Co. v. Avery Dennison
Corp.D.Minn.,2002.Only the Westlaw citation is
currently available.
United States District Court,D. Minnesota.
3M INNOVATIVE PROPERTIES COMPANY and
Minnesota Mining and Manufacturing Company,
Plaintiffs,
v.
AVERY DENNISON CORPORATION, Defendant.
**No. Civ.01-1781(DSD/FLN).**

Oct. 19, 2002.

Carolyn V. Peters, 3M Company, St. Paul, MN, Frank
P. Porcelli, Kurt L. Glitzenstein, and Fish &
Richardson, Boston, MA, John C. Adkisson, R.J.
Zayed, and Fish & Richardson, Minneapolis, MN, for
plaintiffs.
David P. Pearson, and Winthrop & Weinstine, St. Paul,
MN, Jay R. Campbell, and Renner, Otto, Boisselle &
Sklar, Cleveland, OH, Roderick G. Dorman,
Lawrence M. Hadley, and Hennigan, Bennett &
Dorman, Los Angeles, for defendant.

ORDER
DOTY, J.
*1 This matter is before the court upon defendant
Avery-Dennison Corporation's motion for summary
judgment. Based upon a review of the file, record and
proceedings herein, and for the reasons stated, the
court grants that motion.

BACKGROUND

This action involves the alleged infringement of a
patent relating to advanced commercial adhesive
products. Plaintiff 3M Innovative Properties Company
("3M") produces, develops and markets
adhesive-based products for the commercial graphics
industry. Defendant Avery-Dennison Corporation
("Avery") is a leading competitor in this market. 3M
asserts that Avery's "EZ Series Fleet Marketing
Films" ("EZ Films") infringe upon 3M's Comply
product, specifically United States Patent No.
5,897,930 (the " '930 patent").

Commercial graphic materials are used for advertising,

logos and signs on the exterior of trucks, buses and
other large vehicles. Instead of traditionally painting
the advertisements onto the vehicles, computer
generated logos and murals are created and generated
onto a layer of film. Similar to a bumper sticker, the
film has a "release liner" that when stripped off
exposes a pressure-sensitive adhesive. The large sheet
of film is then placed onto the vehicle, essentially
"wrapping" the vehicle in the adhesive graphic. The
task of "wrapping" a vehicle with the film is one that
poses two problems: (1) positionability and (2) air
entrapment.

A. Positionability

The problem of positionability occurs when the film is
not correctly situated initially. There is a risk that the
product will wrinkle, tear, or stretch when it is
repositioned. In 1993, 3M addressed this problem with
its Controltac products. Conventionally, the surfaces
on both the release liner and the adhesive film are
smooth. Controltac products, on the other hand, have a
shaped release liner that imparts a special contour to
the surface of the adhesive. The surface of the
Controltac adhesive is covered with bumps or
protrusions that are made of glass beads and a small
amount of adhesive. These bumps, naked to the human
eye, are only a few microns high.[FN1]

> FN1. The bumps on the adhesive surface are
> created with a special release liner that has
> micron-scale depressions. Each depression in
> the release liner will form one of the bumps
> on the adhesive film. By spreading the
> mixture of both glass and adhesive across the
> release liner, molds of glass beads are formed.
> A screen of aggressive adhesive is then
> layered over these beads. In the final step of
> the application process, when the release
> liner is peeled off, the glass bumps remain
> stuck to the adhesive layer.

Because these bumps project out from the surface of
the aggressive adhesive, they are the first to come into
contact with the application surface. Instead of
immediately adhering to the surface, because of the
glass beads, the adhesive film can be slid over the
surface until it is in the desired location. Once in place,
the installer simply presses firmly down on the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

adhesive film, allowing the aggressive adhesive surrounding the beads to come into contact with the surface to form a permanent bond.

### B. Air Entrapment

Installers of large scale commercial graphics also face the problem of air entrapment. When air becomes trapped beneath the film, the graphic's appearance may become blemished by blisters or bubbles. To address this issue, 3M modified the adhesive surface by adding micron-scale channels to the release liner to allow air to "bleed" out of the edges of the adhesive film. The surface area of the release liner above the depressions are called "lands." A high spot on the release liner creates a low spot on the adhesive film. The release liner is disclosed and claimed in the '930 patent.

### C. 3M's Patent

**\*2** 3M marketed products with these two features, glass beads to better position the film and air channels to combat air entrapment, as "Controltac Plus Graphic Films with Comply Performance Adhesive Technology" ("the Comply products"). 3M received a patent for the technology included in the Comply products, patent '930. The language of claim 1 of 3M's '930 patent, a relevant claim in this action, states:
A carrier web, comprising:
at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern, wherein the first embossed pattern forms an array of depressions, wherein the depressions of the first embossed pattern in the second embossed pattern, wherein the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to 45 microns.

Claim 6, also relevant to this dispute, requires a first embossed pattern of depressions.

### D. EZ Films

3M asserts that Avery's EZ Films infringe upon the '930 patent. Specifically relevant to this motion, 3M contends that Avery's EZ Films contain a "multiple embossed pattern" with a "first embossed pattern" creating an array of "depressions."

To make its EZ Films, Avery deposits raised liquid PU

ink dots on the surface of a liner in a process know as flexographic printing. (McHugh Decl. at ¶ 17.) The raised ink dots are hardened on the liner through a UV curing process. The liner then goes through the embossing process. The printed liner first passes over a number of guide rolls and heating elements prior to reaching the embossing roll. 3M explains that Avery's liner then is embossed twice, first prior to the embossing roll at the squeegee roll and then at the embossing roll. (See, e.g., Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at 8, 14-15.) Avery, however, alleges that the liner is embossed only once and describes the embossing process as follows:
At the contact area or "nip" formed between the bed roll and the embossing roll, two events occur simultaneously: the inverse of the hexagonal pattern on the embossing roll is impressed into and then removed from the PE layer of the liner (thus "embossing" the liner with a hexagonal pattern), and the softened PU ink material is pressed into the softened liner and displaces the PE material in the liner, forming a composite polymer liner material with a flush surface.

(Def.'s Mem. in. Supp. of Mot. Summ. J. at 7.) The parties also dispute whether Avery's EZ Films contain "depressions," as required by the '930 patent.

Because Avery claims that it does not infringe upon the '930 patent, Avery now brings a motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion for summary judgment.

### DISCUSSION

#### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

**\*3** On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex, 477 U.S. at 324.* Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment may be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322-23.

## II. Infringement Analysis

An infringement analysis requires two steps. The first is to construe the meaning and the scope of the patent claims, a step commonly referred to as claim construction. *Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed.Cir.1995).* The second is to determine whether the accused invention infringes the patent claim as construed. *Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.Cir.1995).* A product infringes a patent if it contains every limitation of any one claim or an equivalent of each limitation not literally met. *Dolly, Inc. v. Spaulding & Evenflo Cos., Inc., 16 F.3d 394, 397 (Fed.Cir.1994); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed.Cir.1990).* While the first step is solely a question of law to be determined by the court, the second step is one for the trier of fact. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1363 (Fed.Cir.2001); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-55 (Fed.Cir.1998)* (en banc).

After the claims are construed as a matter of law, the court must consider whether "a reasonable trier of fact could find that every limitation in any construed claim at issue" may be found in the accused device. *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd., 157 F.3d 1311, 1316-17 (Fed.Cir.1998).* While the determination of whether an accused device infringes a claim literally or under the doctrine of equivalents is normally a question of fact, *Caterpillar Inc. v. Deere & Co., 224 F.3d 1374, 1379 (Fed.Cir.2000),* a district court may grant summary judgment "when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant." *Voice Tech. Group Inc. v. VMC Sys.,*

*Inc., 164 F.3d 605, 612 (Fed.Cir.1999); see also Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 1335-36 (Fed.Cir.2000)* ("Summary Judgment of noninfringement under the doctrine of equivalents is proper if no reasonable jury could determine that a claim limitation is met in the accused device by an equivalent."). Because the court previously construed the relevant disputed claim terms,[FN2] the court now must compare the claims as construed to the allegedly infringing device.

> FN2. In *3M Innovative Properties Co. v. Avery Dennison Corp., 185 F.Supp.2d 1031 (D.Minn.2002),* the court engaged in the first step of an infringement analysis by construing the relevant disputed claim terms in its preliminary injunction order.

### A. Infringement of the '930 Patent

**\*4** The court finds that Avery's EZ Films do not infringe upon 3M's '930 patent literally or under the doctrine of equivalents because they do not have a "multiple embossed pattern" with a "first embossing step" as required under claims 1 and 6.[FN3]

> FN3. While Avery also claims that its EZ Films do not infringe upon the '930 patent because they do not have a first embossed pattern of "depressions," the court does not address that argument because the court finds that Avery's EZ Films do not have a "multiple embossed pattern."

#### 1. No literal infringement.

In its preliminary injunction order, the court defined the term "multiple embossed pattern" to mean "sequential embossing patterns" and the term "embossed" to mean "a topography created on material by impressing a corresponding inverse topography on its surface." [FN4] *3M Innovative Properties Co., 185 F.Supp.2d 1031, 1040 (D.Minn.2002).* Based upon those definitions, Avery argues that its liner does not literally infringe upon the '930 patent because, in part, its liner does not contain a "multiple embossed pattern" or a "first embossing step." 3M, however, argues that Avery pre-imbeds ink dots, which constitutes a first embossed pattern and thus that its liner contains a "multiple embossed pattern." After careful review, the court finds that, even assuming pre-imbedding occurs, which the parties dispute, pre-imbedded ink dots do not

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

constitute a first embossed pattern under the court's definition of "embossed." Thus, Avery's EZ Films do not contain a "multiple embossed pattern" or a "first embossing step" because there are no sequential embossing steps.

> FN4. Avery requests that the court clarify its earlier claim construction by amending the court's construction of the term "emboss." The court finds that such a clarification is unnecessary.

> a. Embedding is not embossing.

Ink dots pre-embedded in a liner do not constitute a "first embossed pattern" because embedding is not embossing. (McHugh Decl. at ¶ 20.) As persons skilled in the art recognize, embedding is "[the] complete encasement or encapsulation, creating a composite structure," while embossing is "the use of an embossing roll or tool to impress a corresponding, inverse topography in a material." (*Id.*) Technical dictionaries do not equate the two terms. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 n.6 (Fed.Cir.1996) ("Judges are free to ... rely on dictionary definitions when construing claim terms ..."). For instance, the Encyclopedia of Polymer Science and Technology describes embedding as often synonymous with "casting ..., potting, molding, impregnation, and encapsulation." (McHugh Decl., Ex. 2 at 792-93.) It does not equate embedding with embossing. (*Id.; see also* McHugh Decl., Ex. 2 at 620.)

Nontechnical dictionaries also distinguish between embedding and embossing. *See* Merriam-Webster's Collegiate Dictionary at 376-77 (10th ed.1998) (defining "emboss" as "to raise the surface of into bosses ...; to raise in relief from a surface ..." and defining "embed" as "to enclose closely in ..."); The American Heritage Dictionary at 447-48 (2d College ed.1985) (defining "emboss" as "[t]o mold or carve in relief ...; raise the surface of in relief" and defining "embed" as "to fix firmly in a surrounding mass ... To enclose in a matrix ... To enclose snugly or firmly ... To make an integral part of."). Thus, because pre-embedding is not embossing, pre-embedded ink dots do not create a first embossing step.

> b. No Evidence of embossed inverse topography

**\*5** Moreover, contrary to 3M's assertion, the Avery's liner does not undergo a first embossment at the squeegee stage or at the embossing nip, (McHugh Decl. at ¶ 22), when the ink dot is allegedly pre-imbedded, because an imbedded ink dot does not create an embossed inverse topography on a liner's surface. Instead, an embedded ink dot displaces a portion of the PE liner material, forming a composite PE/PU liner material with a flush surface.[FN5] (McHugh Decl. at ¶ 16.) The molten PE liner material encasing the softened, embedded PU ink dot is not the inverse topography of the hardened PU ink dot earlier flexographically printed on the liner. (McHugh Decl. at ¶ ¶ 17-18.) Therefore, the ink dot does not act as an embossing tool by creating an inverse embossed pattern and thus Avery's liner does not literally infringe upon the '930 patent because it does not have a "multiple embossed pattern" with a "first embossing step."

> FN5. While 3M presents expert testimony to support its contention that embossing occurs at the squeegee roll, (Strong Decl., Ex. 1), that testimony does not create a genuine issue of material fact.

> 2. No infringement under doctrine of equivalents

Further, Avery's EZ Films do not infringe upon the '930 Patent under the doctrine of equivalents. Under that doctrine, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997). The doctrine applies objectively to the individual elements of a claim, not to the invention as a whole. *Id.* at 21. Consequently, a claim is infringed only if each limitation in the claim is found in the accused devise, either literally or by a substantial equivalent. *Wooster Brush Co. v. Newell Operating Co.,* 46 F.Supp.2d 713, 721 (N.D.Ohio 1999).

The key question in evaluating patent infringement under the doctrine of equivalents is "whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Warner-Jenkinson Co.,* 520 U.S. at 40; *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 122 S.Ct. 1831, 1838 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

be created through trivial changes."); *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed.Cir.1991)* ( "infringement may be found if an accused device performs substantially the same function in substantially the same way to achieve substantially the same result."). One way to determine if substantial differences exist is to apply the "function-way-result" test. Under that test, the fact-finder considers whether the disputed element of the accused device performs substantially the same function in substantially the same way to achieve substantially the same result as the limitation at issue in the patent. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998); *Wooster Brush Co.,* 46 F.Supp.2d at 721.

*6 The Supreme Court and Federal Circuit have cautioned against a broad application of the doctrine of equivalents. *Warner-Jenkinson Co.,* 520 U.S. at 29 (emphasizing that "the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement"); *London,* 946 F.2d at 1538; *K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed.Cir.1999); *Ethicon Endo-Surgery,* 149 F.3d at 1316. The doctrine of equivalents cannot be employed in a manner that vitiates a claim limitation. *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys.,* 242 F.3d 1337, 1347 (Fed.Cir.2001); *K-2 Corp.,* 191 F.3d at 1367.

In *Wooster Brush,* the Northern District of Ohio granted summary judgment of non-infringement, finding that an accused device using only a single application of a bonding material did not meet the equivalents test where the patent called for two distinct, sequential applications of the bonding material. *Wooster Brush,* 46 F.Supp.2d at 722. Because the court's comprehensive analysis is directly on point, it is set out in full:

Plaintiff Wooster's process for producing paint rollers is accomplished in one step. Defendant Newell argues that Wooster's one-step process effectively collapses the '242 patent's two-step process and is therefore not significantly different from the '242 process....

[T]he '242 process as construed by this Court contains separate elements which produce the final product.... Under the terms of the patent claims, this process must occur in sequence.

In the New Wooster process, the formation of the core and the adhesion of the cover to the core occur simultaneously, facilitated by one application of liquid thermoplastic material. Wooster's one-step process is not a combination of the '242 patent's elements; it does not represent a more efficient way of applying two strips of liquid thermoplastic material. Rather, it

represents a new method by which one of the two steps of the '242 patent-the second application of the adhesive material and relevant cooling period-is eliminated. To interpret Wooster's process as equivalent to the '242 patent's elements would thus fly in the face of the Supreme Court's admonition that equivalence does not exist when a finding of equivalence would eliminate an element in the patented process.

*Id.* at 721.

Similar to the accused device in *Wooster Brush,* Avery's printed and single embossed liner is not a combination of the '930 patent elements. Rather, it represents a new method by which one of the steps of the '930 patent-the "first embossed pattern" forming an array of depressions-is removed. It is a process that produces positionability and air egress without the claimed, sequential, multiple embossed pattern. Because the doctrine of equivalents cannot be used to vitiate a claim limitation, the doctrine of equivalents cannot be used to bring Avery's EZ Films within the scope of the '930 patent claims. Thus, the court grants Avery's motion for summary judgment because Avery's EZ Films do not infringe upon the '930 patent either literally or under the doctrine of equivalents.[FN6]

> FN6. Both independent claims 1 and 6 of the '930 patent require a first embossed pattern of depressions. Because these claims are not infringed, none of the dependent claims can be infringed. *Wahpeton Canvas Co. v. Frontier Inc.,* 870 F.2d 1546, 1553 (Fed.Cir.1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").

CONCLUSION

*7 Accordingly, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

D.Minn.,2002.
3M Innovative Properties Co. v. Avery Dennison Corp.
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 422644 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Opposition

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

to 3M's Request for Immediate Entry of a Permanent Injunction (Jan. 20, 2006) Original Image of this Document (PDF)
• 2005 WL 3024532 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Objections to Magistrate Judge's Order Granting in Part 3m's Motion Ot Strike Supplemental and Revised Expert Report of Dr. Anthony J. Mchugh (Sep. 12, 2005) Original Image of this Document (PDF)
• 2004 WL 3558899 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant Avery Dennison Corporation's Motion for Review of April 21, 2004 Order Disallowing Supplementation of Expert Reports and Further Dispositive Motions (May 7, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3558900 (Trial Motion, Memorandum and Affidavit) Notice of Motion and Motion of Defendant Avery Dennison Corporation for Review of April 21, 2004 Order Disallowing Supplementation of Expert Reports and Further Dispositive Motions (May 7, 2004) Original Image of this Document with Appendix (PDF)
• 2003 WL 24174317 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Reply Memorandum in Support of Motion for a Declaration of Exceptional Case Warranting an Award of Attorneys' Fees Pursuant to 35 U.S.C | 285 (Feb. 18, 2003) Original Image of this Document (PDF)
• 2003 WL 24174318 (Trial Motion, Memorandum and Affidavit) 3M's Memorandum in Opposition to Avery's Motion for Declaration of Exceptional Case Under 35 U.S.C. | 285 (Feb. 7, 2003) Original Image of this Document (PDF)
• 2003 WL 24174319 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Support of its Motion for a Declaration of Exceptional Case Warranting an Award of Attorneys' Fees Pursuant to 35 U.S.C. | 295 (Jan. 24, 2003) Original Image of this Document (PDF)
• 2002 WL 32903135 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to 3M's Motion for Leave to File Motion Requesting Construction of the Claims of the United States Patent No. 5,897,930 (Aug. 8, 2002) Original Image of this Document (PDF)
• 2002 WL 32903136 (Trial Motion, Memorandum and Affidavit) Memorandum In Support Of Defendant's Motion to Compel Production Of Entry Nos. 22, 25, 70 & 90 in Plaintiffs' Supplemental Privilege Log (Aug. 7, 2002) Original Image of this Document (PDF)
• 2002 WL 32903614 () Declaration of Jeffrey J. Payne (Jul. 31, 2002) Original Image of this Document (PDF)

• 2002 WL 32903615 () Declaration of Dr. Anthony J. Mchugh IN Support of Avery Dennison's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5, 897,930 (Jul. 31, 2002) Original Image of this Document (PDF)
• 2002 WL 32903141 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Avery Dennison Corporation's Motion to Strike Expert Report and Preclude Testimony (Jul. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32915676 () (Report or Affidavit of Dr. A. Brent Strong) (Jul. 23, 2002) Original Image of this Document (PDF)
• 2002 WL 32915849 () (Report or Affidavit of Dr. A Brent Strong) (Jul. 23, 2002)
• 2002 WL 32903133 (Trial Motion, Memorandum and Affidavit) Motion and Supporting Memorandum for Clarification of the Court's Pretrial Scheduling Order or, in the Alternative, to Strike Portions of the Expert Testimony of Dr. Anthony McHugh (Jul. 18, 2002) Original Image of this Document (PDF)
• 2002 WL 32903138 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Memorandum of Law in Support of Motion to Strike Expert Report and Preclude Testimony (Jul. 18, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32903613 () Rebuttal Expert Report of Donald K. Cohen, Ph.D. (Jul. 7, 2002) Original Image of this Document (PDF)
• 2002 WL 32903134 (Trial Motion, Memorandum and Affidavit) Avery Dennison's Memorandum in Support of Its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,897,930 (Jul. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 32903611 () (Partial Testimony) (Jul. 1, 2002) Original Image of this Document (PDF)
• 2002 WL 32903616 () Expert Report of Dr. Anthony J. McHugh Regarding Invalidity of U.S. Patent No. 5, 897. 930 Pursuant to Fed. R. Civ. P. 26(a)(2)(B) (May 6, 2002) Original Image of this Document (PDF)
• 2002 WL 32915675 () (Report or Affidavit of A. Brent Strong, Ph.D.) (May 6, 2002) Original Image of this Document (PDF)
• 2002 WL 32915677 () Declaration Of (May 6, 2002) Original Image of this Document (PDF)
• 2002 WL 32915848 () (Report or Affidavit of A.brent Strong, Ph.D.) (May 6, 2002)
• 2002 WL 32915850 () Declaration Of (May. 06, 2002)
• 2002 WL 32903617 () Expert Report of Hon. Gerald J. Mossinghoff (May 3, 2002) Original Image of this Document (PDF)
• 2002 WL 32903139 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31628395 (D.Minn.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

and Affidavit) Plaintiffs' Motion to Compel Production of Defendant's Opinions of Counsel (Mar. 18, 2002) Original Image of this Document with Appendix (PDF)

• 2002 WL 32903140 (Trial Motion, Memorandum and Affidavit) Avery Dennison's Memorandum in Support of Its Motion for a Partial Stay of Discovery Pending Decision on Summary Judgment, or, Alternatively for Modification of Scheduling Order (Mar. 18, 2002) Original Image of this Document (PDF)

• 2002 WL 32903120 (Trial Pleading) Plaintiffs' Reply to Amended Counterclaim (Jan. 22, 2002) Original Image of this Document (PDF)

• 2002 WL 32903121 (Trial Pleading) Defendant Avery Dennison Corporation's Amended Answer, Affirmative Defenses, and Counterclaims to Complaint (Jan. 9, 2002) Original Image of this Document (PDF)

• 2001 WL 34818407 (Trial Motion, Memorandum and Affidavit) Defendant Avery Dennison Corporation's Opposition to Motion to Strike Inequitable Conduct Defense and Inequitable Conduct Counterclaim (Dec. 10, 2001) Original Image of this Document (PDF)

• 2001 WL 34818408 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Responses to Avery's Evidentiary Objections (Dec. 4, 2001) Original Image of this Document (PDF)

• 2001 WL 34828226 () (Report or Affidavit of Anthony J. McHugh, Ph.d.) (Dec. 4, 2001) Original Image of this Document (PDF)

• 2001 WL 34828320 () (Report or Affidavit of Anthony J. Mchugh, Ph.d.) (Dec. 4, 2001)

• 2001 WL 34818395 (Trial Pleading) Plaintiffs' Reply to Counterclaims (Nov. 27, 2001) Original Image of this Document (PDF)

• 2001 WL 34818403 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Strike Defendant's Inequitable Conduct Defense and Inequitable Conduct Counterclaim (Nov. 27, 2001) Original Image of this Document (PDF)

• 2001 WL 34818404 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction (Evidentiary Hearing and Oral Argument Requested) (Nov. 19, 2001) Original Image of this Document (PDF)

• 2001 WL 34818394 (Trial Pleading) Avery's Evidentiary Objections to 3M's Declaration Testimony (Nov. 13, 2001) Original Image of this Document with Appendix (PDF)

• 2001 WL 34818406 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction (Evidentiary Hearing and Oral Argument Requested) (Nov. 13, 2001) Original Image of this Document (PDF)

• 2001 WL 34819261 () Declaration of Anthony J. Mchugh, Ph.D. (Nov. 9, 2001) Original Image of this Document (PDF)

• 2001 WL 34819262 () Declaration of A. Brent Strong, Ph.D. (Nov. 9, 2001) Original Image of this Document (PDF)

• 2001 WL 34828223 () Declaration of A. Brent Strong, Ph.D. (Nov. 9, 2001) Original Image of this Document (PDF)

• 2001 WL 34828224 () (Report or Affidavit of Anthony J. Mchugh, Ph.D.) (Nov. 9, 2001) Original Image of this Document (PDF)

• 2001 WL 34828225 () Amended Declaration of Dr. Michael R. Kesti (Nov. 9, 2001) Original Image of this Document (PDF)

• 2001 WL 34828317 () Declaration of A. Brent Strong, Ph.D. (Nov. 09, 2001)

• 2001 WL 34828318 () (Report or Affidavit of Anthony J. McHugh, Ph.D.) (Nov. 9, 2001)

• 2001 WL 34828319 () Amended Declaration of Dr. Michael R. Kesti (Nov. 09, 2001)

• 2001 WL 34818393 (Trial Pleading) Defendant Avery Dennison Corporation's Answer, Affirmative Defenses, and Counterclaims to Complaint (Nov. 7, 2001) Original Image of this Document (PDF)

• 2001 WL 34818405 (Trial Motion, Memorandum and Affidavit) Avery Dennison's Opposition to 3M's Motion for a Preliminary Injunction (Nov. 2, 2001) Original Image of this Document (PDF)

• 2001 WL 34828227 () (Partial Testimony) (Oct. 24, 2001) Original Image of this Document (PDF)

• 2001 WL 34828321 () (Partial Testimony) (Oct. 24, 2001)

• 2001 WL 34818392 (Trial Pleading) Complaint (Sep. 27, 2001) Original Image of this Document with Appendix (PDF)

• 2001 WL 34826951 (Trial Pleading) Complaint (Sep. 27, 2001) Original Image of this Document (PDF)

• 0:01cv01781 (Docket) (Sep. 27, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Slip Copy                                                                                                                    Page 1
Slip Copy, 2006 WL 2735499 (D.Minn.)
**(Cite as: Slip Copy)**

H
Briefs and Other Related Documents
3M Innovative Properties Co. v. Avery Dennison
Corp.D.Minn.,2006.Only the Westlaw citation is
currently available.
United States District Court,D. Minnesota.
3M INNOVATIVE PROPERTIES COMPANY and
Minnesota Mining and Manufacturing Company,
Plaintiffs,
v.
AVERY DENNISON CORPORATION, Defendant.
**Civil No. 01-1781 (JRT/FLN).**

Sept. 25, 2006.

Katherine A. Moerke, Jonathan E. Singer, and John C.
Adkisson, Fish & Richardson PC, PA-MN,
Minneapolis, MN; Juanita R. Brooks, Fish &
Richardson-San Diego, San Diego, CA; Kevin H.
Rhodes, 3M COMPANY, St. Paul, MN; for plaintiffs.
Lawrence M. Hadley & Roderick G. Dorman,
Hennigan Bennett & Dorman, Los Angeles, CA;
David P. Pearson, Winthrop & Weinstine, PA,
Minneapolis, MN; for defendant.

**ORDER**
JOHN R. TUNHEIM, District Judge.
**\*1** This matter is before the Court on a motion by 3M
Innovative Properties Company and Minnesota
Mining and Manufacturing Company (collectively
"3M") for a permanent injunction. On December 22,
2005, the jury in this case found that defendant Avery
Dennison Corporation infringes claims 1 through 5 of
3M's U.S. Patent No. 5,897,930 ("the 930 patent") by
making and selling its EZ Series Fleet Marketing Film.
Specifically, the jury found that Avery infringed the
930 patent literally, under the doctrine of equivalents,
and by inducing others to infringe. The jury rejected
all of Avery's invalidity defenses. Based on this
verdict, the Court entered judgment in favor of
plaintiffs on December 23, 2005.

On March 17, 2006, the Court granted 3M's motion for
a permanent injunction. The injunction enjoins Avery
from by making, using, selling, offering for sale or
importing into the United States Avery's EZ Series
Fleet Marketing Film, or any other product no more
than colorably different from that product. On April
25, 2006, the Court modified the permanent injunction
to cover distributors of Avery's EZ Film. On May 18,

2006, Avery requested leave to file a motion to
reconsider portions of the March 17, 2006 Order.
Concurrent with the issuance of this Order, the Court
grants the motion to reconsider. As explained below,
the Court vacates the orders dated March 17, 2006 and
April 25, 2006, and again grants 3M's motion for a
permanent injunction.

According to well-established principles of equity, a
plaintiff seeking a permanent injunction must satisfy a
four-factor test before a court may grant such relief.
*eBay Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837,
1839 (2006). A plaintiff must demonstrate: (1) that it
has suffered an irreparable injury; (2) that remedies
available at law, such as monetary damages, are
inadequate to compensate for that injury; (3) that,
considering the balance of hardships between the
plaintiff and defendant, a remedy in equity is
warranted; and (4) that the public interest would not be
disserved by a permanent injunction. *Id.* These
familiar principles apply with equal force to patent
disputes. *Id.*

Avery asserts that a damage award to 3M would fully
compensate 3M, but the Court cannot agree. 3M has
spent nearly five years litigating to protect its interest
in this patent and has consistently refused to execute a
licensing agreement with Avery. Having lost at trial,
Avery wants to force 3M to grant a license that 3M
refused to grant before trial. The Court will not disturb
3M's determination that its business interests will not
be served by the licensing of this product. *See
Schneider (Europe) AG v. Scimed Life Sys., Inc.,* 852
F.Supp. 813, 861 (D.Minn.1994) ("In a patent
infringement case, where the infringing device will
continue to infringe and thus damage Plaintiffs in the
future, monetary damages are generally considered to
be inadequate."). As such, the Court finds that 3M has
suffered an irreparable injury and that monetary
damages are inadequate to compensate for that injury.

**\*2** The Court also finds that the balance of hardships
faced by 3M and Avery warrant issuance of a
permanent injunction. Avery asserts that it would be
severely prejudiced by an injunction because it may
not be able to restart operations or reacquire its
customers, but 3M has suffered great harm and will
continue to suffer if an injunction is not entered.
Specifically, 3M has been barred from exercising its
right to exclude conveyed by the 930 patent for more
than 20 percent of the limited lifetime of this patent.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2
Slip Copy, 2006 WL 2735499 (D.Minn.)
**(Cite as: Slip Copy)**

The balance of harms favors entry of an injunction. *See Windsurfing Int'l v. AMF, Inc.,* 782 F.2d 995, 1003 (Fed.Cir.1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.")

Finally, the Court concludes that the public interest would not be disserved by a permanent injunction. This is a case about commercial graphics used for advertising, so concerns about public health or safety that could warrant denial of injunctive relief are not present. *See Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1547 (Fed.Cir.1995) (summarizing cases where courts exercised their discretion to deny injunctive relief in order to protect the public interest).

After applying the four-factor test, the Court concludes that it must enter the injunction to prevent further irreparable harm to 3M. Furthermore, the Court cannot allow Avery to sell its existing inventory of EZ Series Fleet Marketing Film. Now that the jury has found that this product infringes 3M's 930 patent, Avery must negotiate the sale of this inventory with 3M.

An injunction may enjoin parties as well as "persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d). The Court finds that Avery's distributors are aiding and abetting Avery in its efforts to avoid the impact of the injunction. Therefore, the permanent injunction also extends to Avery products purchased by independent distributors.

Although Avery does not make a formal motion, Avery asks this Court to stay enforcement of the injunction pending appeal. The Court must consider four factors in exercising its discretion whether to stay the injunction: (1) whether Avery has made a "strong showing" that it will likely succeed on the merits; (2) whether Avery will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Standard Havens Prod., Inc. v. Gencore Indus., Inc.,* 897 F.2d 511, 512 (Fed.Cir.1990). Upon considering the four factors and balancing the equities of this case, the Court determines that no stay should issue.

## ORDER

Based on the foregoing, all the records and files herein,

**IT IS HEREBY ORDERED** that:

1. The Court's Memorandum Opinion and Order dated March 17, 2006 [Docket No. 368] and the Court's Memorandum Opinion and Order dated April 25, 2006 [Docket No. 373] are **VACATED.**

**\*3** 2. Plaintiffs' Motion for Permanent Injunction [Docket No. 337] is **GRANTED.** A permanent injunction is hereby entered against defendant Avery as follows:

Until further order of this Court, absent explicit written permission from plaintiffs, defendant Avery and all persons in active concert with Avery, including without limit its distributors, who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from infringing claims 1 through 5 of the United States Patent No. 5,897,930 by making, using, selling, offering for sale or importing into the United States Avery's EZ Series Fleet Marketing Film, or any other product no more than colorably different from that product.

D.Minn.,2006.
3M Innovative Properties Co. v. Avery Dennison Corp.
Slip Copy, 2006 WL 2735499 (D.Minn.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 422644 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Opposition to 3M's Request for Immediate Entry of a Permanent Injunction (Jan. 20, 2006) Original Image of this Document (PDF)
• 2005 WL 3024533 (Trial Motion, Memorandum and Affidavit) 3m's Response to Avery's Dennison Corporation's Objections to Magistrate Judge's Order Granting in Part 3m's Motion to Strike Supplemental and Revised Expert Report of Dr. Anthony Mchugh (Sep. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 3024532 (Trial Motion, Memorandum and Affidavit) Avery Dennison Corporation's Objections to Magistrate Judge's Order Granting in Part 3m's Motion Ot Strike Supplemental and Revised Expert Report of Dr. Anthony J. Mchugh (Sep. 12, 2005) Original Image of this Document (PDF)
• 2004 WL 3558899 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant Avery Dennison Corporation's Motion for Review of April 21, 2004 Order Disallowing Supplementation of Expert Reports and Further Dispositive Motions (May 7, 2004) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2735499 (D.Minn.)
**(Cite as: Slip Copy)**

Page 3

Image of this Document with Appendix (PDF)
• 2004 WL 3558900 (Trial Motion, Memorandum and
Affidavit) Notice of Motion and Motion of Defendant
Avery Dennison Corporation for Review of April 21,
2004 Order Disallowing Supplementation of Expert
Reports and Further Dispositive Motions (May 7,
2004) Original Image of this Document with
Appendix (PDF)
• 2003 WL 24174317 (Trial Motion, Memorandum
and Affidavit) Avery Dennison Corporation's Reply
Memorandum in Support of Motion for a Declaration
of Exceptional Case Warranting an Award of
Attorneys' Fees Pursuant to 35 U.S.C | 285 (Feb. 18,
2003) Original Image of this Document (PDF)
• 2003 WL 24174318 (Trial Motion, Memorandum
and Affidavit) 3M's Memorandum in Opposition to
Avery's Motion for Declaration of Exceptional Case
Under 35 U.S.C. | 285 (Feb. 7, 2003) Original Image
of this Document (PDF)
• 2003 WL 24174319 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum in Support
of its Motion for a Declaration of Exceptional Case
Warranting an Award of Attorneys' Fees Pursuant to
35 U.S.C. | 295 (Jan. 24, 2003) Original Image of this
Document (PDF)
• 2002 WL 32903135 (Trial Motion, Memorandum
and Affidavit) Defendant's Memorandum in
Opposition to 3M's Motion for Leave to File Motion
Requesting Construction of the Claims of the United
States Patent No. 5,897,930 (Aug. 8, 2002) Original
Image of this Document (PDF)
• 2002 WL 32903136 (Trial Motion, Memorandum
and Affidavit) Memorandum In Support Of
Defendant's Motion to Compel Production Of Entry
Nos. 22, 25, 70 & 90 in Plaintiffs' Supplemental
Privilege Log (Aug. 7, 2002) Original Image of this
Document (PDF)
• 2002 WL 32903614 () Declaration of Jeffrey J.
Payne (Jul. 31, 2002) Original Image of this
Document (PDF)
• 2002 WL 32903615 () Declaration of Dr. Anthony J.
Mchugh IN Support of Avery Dennison's Motion for
Summary Judgment of Non-Infringement of U.S.
Patent No. 5, 897,930 (Jul. 31, 2002) Original Image
of this Document (PDF)
• 2002 WL 32903141 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Opposition to Avery
Dennison Corporation's Motion to Strike Expert
Report and Preclude Testimony (Jul. 25, 2002)
Original Image of this Document (PDF)
• 2002 WL 32915676 () (Report or Affidavit of Dr. A.
Brent Strong) (Jul. 23, 2002) Original Image of this
Document (PDF)
• 2002 WL 32915849 () (Report or Affidavit of Dr. A
Brent Strong) (Jul. 23, 2002)

• 2002 WL 32903133 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Motion and Supporting
Memorandum for Clarification of the Court's Pretrial
Scheduling Order or, in the Alternative, to Strike
Portions of the Expert Testimony of Dr. Anthony
McHugh (Jul. 18, 2002) Original Image of this
Document (PDF)
• 2002 WL 32903138 (Trial Motion, Memorandum
and Affidavit) Avery Dennison Corporation's
Memorandum of Law in Support of Motion to Strike
Expert Report and Preclude Testimony (Jul. 18, 2002)
Original Image of this Document with Appendix
(PDF)
• 2002 WL 32903613 () Rebuttal Expert Report of
Donald K. Cohen, Ph.D. (Jul. 7, 2002) Original Image
of this Document (PDF)
• 2002 WL 32903134 (Trial Motion, Memorandum
and Affidavit) Avery Dennison's Memorandum in
Support of Its Motion for Summary Judgment of
Non-Infringement of U.S. Patent No. 5,897,930 (Jul. 2,
2002) Original Image of this Document (PDF)
• 2002 WL 32903611 () (Partial Testimony) (Jul. 1,
2002) Original Image of this Document (PDF)
• 2002 WL 32903616 () Expert Report of Dr. Anthony
J. McHugh Regarding Invalidity of U.S. Patent No. 5,
897. 930 Pursuant to Fed. R. Civ. P. 26(a)(2)(B) (May
6, 2002) Original Image of this Document (PDF)
• 2002 WL 32915675 () (Report or Affidavit of A.
Brent Strong, Ph.D.) (May 6, 2002) Original Image of
this Document (PDF)
• 2002 WL 32915677 () Declaration Of (May 6, 2002)
Original Image of this Document (PDF)
• 2002 WL 32915848 () (Report or Affidavit of
A.brent Strong, Ph.D.) (May 6, 2002)
• 2002 WL 32915850 () Declaration Of (May 6, 2002)
• 2002 WL 32903617 () Expert Report of Hon. Gerald
J. Mossinghoff (May 3, 2002) Original Image of this
Document (PDF)
• 2002 WL 32903139 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Motion to Compel
Production of Defendant's Opinions of Counsel (Mar.
18, 2002) Original Image of this Document with
Appendix (PDF)
• 2002 WL 32903140 (Trial Motion, Memorandum
and Affidavit) Avery Dennison's Memorandum in
Support of Its Motion for a Partial Stay of Discovery
Pending Decision on Summary Judgment, or,
Alternatively for Modification of Scheduling Order
(Mar. 18, 2002) Original Image of this Document
(PDF)
• 2002 WL 32903120 (Trial Pleading) Plaintiffs'
Reply to Amended Counterclaim (Jan. 22, 2002)
Original Image of this Document (PDF)
• 2002 WL 32903121 (Trial Pleading) Defendant
Avery Dennison Corporation's Amended Answer,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 4
Slip Copy, 2006 WL 2735499 (D.Minn.)
**(Cite as: Slip Copy)**

Affirmative Defenses, and Counterclaims to
Complaint (Jan. 9, 2002) Original Image of this
Document (PDF)
• 2001 WL 34818407 (Trial Motion, Memorandum
and Affidavit) Defendant Avery Dennison
Corporation's Opposition to Motion to Strike
Inequitable Conduct Defense and Inequitable Conduct
Counterclaim (Dec. 10, 2001) Original Image of this
Document (PDF)
• 2001 WL 34818408 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Responses to Avery's
Evidentiary Objections (Dec. 4, 2001) Original Image
of this Document (PDF)
• 2001 WL 34828226 () (Report or Affidavit of
Anthony J. McHugh, Ph.d.) (Dec. 4, 2001) Original
Image of this Document (PDF)
• 2001 WL 34828320 () (Report or Affidavit of
Anthony J. Mchugh, Ph.d.) (Dec. 4, 2001)
• 2001 WL 34818395 (Trial Pleading) Plaintiffs'
Reply to Counterclaims (Nov. 27, 2001) Original
Image of this Document (PDF)
• 2001 WL 34818403 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Motion to Strike Defendant's
Inequitable Conduct Defense and Inequitable Conduct
Counterclaim (Nov. 27, 2001) Original Image of this
Document (PDF)
• 2001 WL 34818404 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply Memorandum in
Support of Motion for Preliminary Injunction
(Evidentiary Hearing and Oral Argument Requested)
(Nov. 19, 2001) Original Image of this Document
(PDF)
• 2001 WL 34818394 (Trial Pleading) Avery's
Evidentiary Objections to 3M's Declaration
Testimony (Nov. 13, 2001) Original Image of this
Document with Appendix (PDF)
• 2001 WL 34818406 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply Memorandum in
Support of Motion for Preliminary Injunction
(Evidentiary Hearing and Oral Argument Requested)
(Nov. 13, 2001) Original Image of this Document
(PDF)
• 2001 WL 34819261 () Declaration of Anthony J.
Mchugh, Ph.D. (Nov. 9, 2001) Original Image of this
Document (PDF)
• 2001 WL 34819262 () Declaration of A. Brent
Strong, Ph.D. (Nov. 9, 2001) Original Image of this
Document (PDF)
• 2001 WL 34828223 () Declaration of A. Brent
Strong, Ph.D. (Nov. 9, 2001) Original Image of this
Document (PDF)
• 2001 WL 34828224 () (Report or Affidavit of
Anthony J. Mchugh, Ph.D.) (Nov. 9, 2001) Original
Image of this Document (PDF)
• 2001 WL 34828225 () Amended Declaration of Dr.

Michael R. Kesti (Nov. 9, 2001) Original Image of
this Document (PDF)
• 2001 WL 34828317 () Declaration of A. Brent
Strong, Ph.D. (Nov. 9, 2001)
• 2001 WL 34828318 () (Report or Affidavit of
Anthony J. McHugh, Ph.D.) (Nov. 9, 2001)
• 2001 WL 34828319 () Amended Declaration of Dr.
Michael R. Kesti (Nov. 9, 2001)
• 2001 WL 34818393 (Trial Pleading) Defendant
Avery Dennison Corporation's Answer, Affirmative
Defenses, and Counterclaims to Complaint (Nov. 7,
2001) Original Image of this Document (PDF)
• 2001 WL 34818405 (Trial Motion, Memorandum
and Affidavit) Avery Dennison's Opposition to 3M's
Motion for a Preliminary Injunction (Nov. 2, 2001)
Original Image of this Document (PDF)
• 2001 WL 34828227 () (Partial Testimony) (Oct. 24,
2001) Original Image of this Document (PDF)
• 2001 WL 34828321 () (Partial Testimony) (Oct. 24,
2001)
• 2001 WL 34818392 (Trial Pleading) Complaint (Sep.
27, 2001) Original Image of this Document with
Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Slip Copy                                                                              Page 1
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Black & Decker Inc. v. Robert Bosch Tool
Corp.N.D.Ill.,2006.Only the Westlaw citation is
currently available.
United States District Court,N.D. Illinois, Eastern
Division.
BLACK & DECKER INC. and Black & Decker (U.S.)
Inc., Plaintiffs,
v.
ROBERT BOSCH TOOL CORPORATION,
Defendant.
**No. 04 C 7955.**

Oct. 24, 2006.

Raymond P. Niro, Dean D. Niro, Paul C. Gibbons,
David J. Mahalek, Christopher J. Lee, Niro, Scavone,
Haller & Niro, Chicago, Illinois, for the plaintiffs.
Eric G. Swenson, Jon R. Trembath, Kirstin L.
Stoll-Debell, Allen W. Hinderacker, Albert L.
Underhill, Douglas J. Williams, Peter A. Gergley,
Elizabeth J. Reagan, Kristine M. Boylan, Gregory
McAllister, Rachel C. Hughey, Tadd F. Wilson,
Rebecca A. Bortolotti, Merchant & Gould P.C.,
Minneapolis, MN and Thomas E. Sarikas, Merlo,
Kanofsky, Brinkmeier & Gregg, Chicago, IL, for the
defendant, Robert Bosch Tool Corporation.

*MEMORANDUM OPINION AND ORDER*
ST. EVE, J.
*1 Plaintiffs Black & Decker Inc. and Black & Decker
(U.S.) Inc. (collectively "Black & Decker") brought
this lawsuit against Defendant Robert Bosch Tool
Corporation ("Bosch") alleging infringement of
various claims of U.S. Patent Nos. 6,308,059 (the
" '059 patent") and 6,788,925 (the " '925 patent").
Specifically, Black & Decker accused Bosch's Power
Box radio of infringing each of the patents-in-suit that
relate to rugged jobsite radios. On September 22, 2006,
a jury returned a verdict finding that the Bosch Power
Box radio chargers at issue infringed certain claims of
both patents-in-suit. The jury also found the
infringement to be willful. After the jury trial, the
Court conducted a bench trial on Bosch's defense that
the '059 and '925 patents are unenforceable due to
inequitable conduct. For the following reasons, the
Court denies Bosch's inequitable conduct claim.

*BACKGROUND*

I. Patents-in-Suit-The Domes Patents

Joseph Domes ("Domes") is the inventor of both the
'059 and '925 patents. On December 12, 1997, Domes
filed a patent application, serial number 60/069,372
("Domes I"). The '059 patent claims priority over the
Domes I patent application and was filed on December
11, 1998. The '059 patent entitled "Ruggedized
Tradesworker Radio" issued on October 23, 2001. The
'925 patent entitled "Ruggedized Tradesworker
Radio" was filed on August 10, 2002 and issued on
September 7, 2004. The '925 patent is a continuation
of the '059 patent.

II. The Smith Patents

On September 15, 1998, Black & Decker filed the first
patent application relating to the DeWalt jobsite radio
with named inventor Roger Q. Smith that had serial
number 09/153,621 ("Smith I"). The patent
application that ultimately issued as U.S. Patent No.
6,427,070 ("Smith II" or the " '070 patent"), is a
continuation of the Smith I application. Smith II was
filed on March 4, 1999 and issued on July 30, 2002.
The patent application that ultimately issued as U.S.
Patent No. 6,496,688 ("Smith III" or the " '688 patent")
is a continuation of the Smith II application, which
was filed on May 6, 2002 and issued on December 17,
2002. Last, United States Patent No. 6,977,481
("Smith IV" or the " '481 patent") is a continuation of
the Smith III application, which was filed on October
15, 2002 and issued on December 20, 2005.

III. Prosecution of the Domes Patents

During the prosecution of the '059 patent-the first
Domes patents-in-suit-no one associated with the
prosecution of the patent disclosed the Smith I patent
application, the patent application that ultimately
issued as the '070 patent, or the '070 patent to the
Patent and Trademark Office ("PTO"). Further, during
the prosecution of the second Domes
patent-in-suit,-the '925 patent-no one associated with
the prosecution of the patent disclosed the Smith I
patent application, the Smith II patent application, the
'070 patent, or the patent application that ultimately

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 2

issued as the '688 patent to the PTO.

**\*2** Meanwhile, in 1999 Domes contacted Black & Decker and accused the DeWalt jobsite radio-based on the Smith patents-of infringing his Ruggedized Tradesworker Radio patents after which Black & Decker agreed to acquire a license to use the technology from Domes. In July 2003, Black & Decker acquired all rights under both Domes patents.

*ANALYSIS*

1. Duty of Candor and Good Faith

Bosch contends that the '059 and '925 patents are unenforceable because Black & Decker's patent attorney, Adan Ayala, breached his duty to disclose the Smith patents and Black & Decker's development documents (collectively the "Smith patents") during the prosecution of the Domes patents. Due to the *ex parte* nature of the patent application process, applicants have an express "duty of candor and good faith" that governs their dealings with the PTO. *See* 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO]"); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335, 1339 (Fed.Cir.2006) ("Patent applicants and those substantively involved in the preparation or prosecution of a patent application owe a 'duty of candor and good faith' to the PTO") (citation omitted). The duty of candor and good faith requires that the applicant disclose to the PTO all information "material to patentability." *See* 37 C.F.R. § 1.56(a). "A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose information material to patentability, coupled with an intent to deceive the PTO." *M. Eagles Tool Warehouse,* 439 F.3d at 1339. If the alleged infringer establishes inequitable conduct, the patent is rendered unenforceable. *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1226 (Fed.Cir.2006) (citation omitted); *see also Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1182 (Fed.Cir.1995).

II. Two-Step Analysis

The Court undertakes a two-step analysis when determining inequitable conduct. *See Purdue Pharma L.P. v. Endo Pharms., Inc.,* 438 F.3d 1123, 1128 (Fed.Cir.2006). First, where the inequitable conduct alleged is the failure to disclose material information, the alleged infringer must make the following threshold showings by clear and convincing evidence: (1) the information was material to patentability; and (2) the applicant failed to disclose the information with an intent to mislead the PTO. *Id.; Liquid Dynamics Corp.,* 449 F.3d at 1226. Once the alleged infringer establishes the threshold findings of materiality and intent, the Court "must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Purdue Pharma,* 438 F.3d at 1128. On the other hand, if the alleged infringer fails to establish these threshold findings, the Court need not weigh materiality and intent to determine if the applicant's conduct is so culpable that the patent should be unenforceable. *Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 744-45 (Fed.Cir.2002).

III. Intent to Deceive

**\*3** The Court focuses on the "intent to deceive" element of inequitable conduct because it is dispositive. *See Kingsdown Med. Consultant, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872 n. 5 (Fed.Cir.1988) (court need not address materiality if intent not established). Assuming, *arguendo,* that Bosch has met the threshold finding of materiality, the Court's inquiry is whether Ayala failed to disclose the Smith patents during the prosecution of the Domes patents with the intent to mislead the PTO.[FN] *See M. Eagles Tool Warehouse,* 439 F.3d at 1339 (citing 37 C.F.R. § 1.56(a)). As the Federal Circuit recently reiterated, "[i]ntent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Id.* at 1340 (citation omitted). The element of "intent to deceive," however, need not be proven by direct evidence. *Id.* at 1341; *see also Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed.Cir.1997) ("direct evidence of intent or proof of deliberate scheming is rarely available in instances of inequitable conduct."). Instead, absent a credible explanation, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F.3d 1348, 1354 (Fed.Cir.2005); *see also M. Eagles Tool Warehouse,* 439 F.3d at 1341 ("Intent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially where there is no good faith explanation for a nondisclosure.").

Slip Copy                                                                                    Page 3
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

FN1. Because Bosch fails to demonstrate that Domes and his attorney were aware of the Smith patents at the time they prosecuted the first Domes applications in 1997-99, Bosch cannot establish that Domes or his attorney had the intent to deceive the PTO. *See Frazier v. Roessel Cine Photo Tech, Inc.,* 417 F.3d 1230, 1238 (Fed.Cir.2005) (patent applicant has no duty to conduct prior art search or disclose prior art of which he is not aware); *see also Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F.3d 1348, 1351 n. 4 (Fed.Cir.2005) (same); *Nordberg, Inc. v. Telsmith, Inc.,* 82 F.3d 394, 397 (Fed.Cir.1996) (same).

A. Credible, Good Faith Explanation

Here, Black & Decker has given a credible, good faith explanation for why its patent attorney Ayala-who was associated with the prosecution of the Domes patents applications-did not disclose the Smith patents to the PTO. In short, Ayala believed Domes was the first inventor of the claimed subject matter, and thus he concluded that the Domes patents and applications were prior art to the Smith patents, not the other way around. Accordingly, Ayala did not believe that the Smith patents were material to the Domes patent applications. *See Allied Colloids, Inc. v. American Cyanamid Co.,* 64 F.3d 1570, 1578 (Fed.Cir.1995) ("It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability.").

Ayala's trial testimony reveals that he prosecuted the Smith patents and was also associated with the prosecution of the Domes patent applications before Black & Decker acquired all the rights to them. (Tr. at 1910-11.) After Black & Decker acquired the Domes patents in July 2003, Ayala became the attorney responsible for prosecuting the patent application of the '925 patent that issued in September 2004. (*Id.* at 1913.) While the patent application for the '925 was pending, Ayala testified that he did not disclose the Smith I patent, the Smith II patent, or the application for the Smith III patent to the PTO. (*Id.* at 1913-14; DFX001, PTX002.) Ayala explained that he did not disclose the Smith patents during the prosecution of the Domes patents "[b]ecause I believe Domes to be the first inventor of the claimed subject matter, and that it was prior art to the Smith case, not the other way around; and thus, Smith was not material to Domes." (Tr. at 1917.)

*4 At trial, Ayala further testified that Domes contacted Black & Decker in 1999 after which Ayala and Domes' attorney-Alfred Walker-discussed Domes' accusations that the DeWalt radio charger infringed the first Domes application. (*Id.* at 1918-19.) Thereafter, Walker sent the Domes patent application to Ayala. (*Id.* at 1920.) Ayala also testified at trial that the first Domes application was a provisional application filed in December 1997 and that the second application was a regular or utility application filed in December 1998. (*Id.* at 1921; PTX001, PTX002.) Ayala testified that the utility application claimed priority from the provisional application, and thus the regular application received the earliest filing date, which was December 12, 1997. (Tr. at 1921-22.) These applications issued as the patents-in-suit-first as the '059 patent and then as the '925 patent which is a continuation of the '059 patent. (*Id.* at 1922.)

After Walker sent the Domes application to Ayala, Ayala testified that he examined the Smith applications regarding their filing dates. (*Id.*) He also conducted invalidity searches and testified that he did not find any prior art that would render these claims unpatentable.[FN2] (*Id.*) Ayala also reviewed the Smith applications and other documents concerning Black & Decker's conception and reduction-to-practice of the jobsite radio. (Tr. at 1927-30; Ayala Dep. at 81-82.) After his investigation, Ayala testified that he had concluded that Domes was the first inventor because he believed that Domes' constructive reduction-to-practice date was before the prototype of the DeWalt radio's actual reduction-to-practice date. (Tr. at 1931.)

FN2. At the bench trial, Bosch objected to Ayala's prior art testimony claiming Ayala did not discuss this issue in his deposition. At his deposition, Bosch's attorney asked Ayala if he were aware of any prior art that would invalidate the Domes patents, to which he answer "No." (Ex. I, Ayala Dep. at 105.) At his deposition, Bosch also asked Ayala if he were aware of any grounds of invalidity for the Domes patents, to which Ayala answered "I'm not aware of any grounds of invalidity." (Ayala Dep. at 108.) Because Ayala discussed his prior art and invalidity conclusions in his deposition, the Court overrules Bosch's objections to Ayala's trial testimony on these issues.

Ayala further testified that after his investigation into the Domes applications he sent a memorandum to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
(Cite as: Slip Copy)

Page 4

Black & Decker's chief patent counsel recommending that Black & Decker purchase the Domes' patent portfolio. (*Id.* at 1932.) In January 2001, Ayala negotiated a license agreement with Domes and testified that he did so because he believed that Domes was the first inventor and that Black & Decker needed access to Domes patent portfolio. (*Id.* at 1932-34.) In the license agreement, Black & Decker agreed to cite the Domes application in the pending Smith applications. (*Id.* at 1934; DFX004.) To that end, Ayala testified that on March 10, 2001, he called the patent examiner and informed him of Domes' application, and he filed a disclosure statement that the Domes application had similar subject matter to the pending Smith application a few days later. (Tr. at 1935; DFX004.) In the disclosure statement, Ayala filed the copy of the file history and the names of the inventors. (Tr. at 1938-39.) When asked why he filed the Rule 604 disclosure this way, Ayala answered: "I wanted to inform the examiner of the substantially similar subject matter in the specifications of the Domes cases and the Smith cases. I thought it was the proper way to do this." (*Id.* at 1940.)

*5 After Black & Decker purchased the rights to the Domes patents in 2003, the '059 patent had already issued, but the second patent-in-suit, the '925 patent application, was still pending. (*Id.* at 1941-42; PTX001, PTX002.) Also after Black & Decker purchased the rights to the Domes patents, Ayala testified that he learned that Domes earliest conception date was at least January 1997. (Tr. at 1943.) Ayala testified that this confirmed his prior belief that Domes was the first inventor of the subject matter. (*Id.* at 1944.) In sum, Ayala testified that he did not disclose the Smith patents during the pending Domes II application because "Mr. Domes was the first inventor ... that the Domes applications was [sic] prior art to the Smith applications, but not the other way around. Smith was not prior art to Domes and, thus, not material to the Domes applications." (*Id.* at 1945.)

After carefully observing Ayala's demeanor during the bench trial, the Court concludes that his testimony is credible and reliable. Ayala was candid when he testified when he believed Domes was the first inventor, and thus he thought that the Smith patents were material to the Domes application and not the other way around. His trial testimony indicates that he was deliberative in evaluating the Smith and Domes applications and that he honestly thought that disclosing the Domes application during the Smith prosecution was the proper way to handle the situation. Whether the Smith application was material to the

Domes prosecution or whether Ayala handled the situation properly is not dispositive. Instead, the Court's determination of Ayala's intent turns on his good faith belief that Domes was the first inventor and that he thought he properly informed the PTO about the Domes application during the prosecution of the Smith patents. *See Allied Colloids,* 64 F.3d at 1578 ("It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability.").

### B. Other Evidence in Trial Record

In addition, Ayala's belief that the Domes application was prior art to the Smith patents is supported by other evidence in the record. Specifically, Bosch's expert witness, Ernest Lipscomb, testified at his deposition that based on the priority dates of the '059 patent and '070 patent (Smith II), Domes was prior art to the Smith patents. (R. 526-1, Black & Decker Resp., Ex. B, Lipscomb Dep. at 126.)

### C. Agreements Between Domes and Black & Decker

Based on the evidence of Ayala's conduct during the prosecution of the Smith and Domes patents coupled with his good faith explanation for not disclosing the Smith patents, Bosch has not established by clear and convincing evidence that Ayala intended to deceive the PTO. *See M. Eagles Tool Warehouse,* 439 F.3d at 1341. Nevertheless, Bosch contends that this is "one of those rare cases where documents exist that expressly show an intent to deceive." (R. 494-1, Bosch's Closing Argument Brief, at 11.) More specifically, Bosch argues that the License and Assignment Agreements between Black & Decker and Domes establish that Ayala did not disclose the Smith patents because he wanted to avoid an interference between the patent families so Black & Decker could keep both patent families alive.

*6 Section I of the License Agreement between Black & Decker and Domes provides:
A. B & D currently sells a radio charger (the "Radio Charger") and has pending patent applications disclosing and claiming Radio Charger.
B. DOMES has a pending patent application with claims that DOMES has asserted cover the Radio Charger.
C. B & D and DOMES desire to avoid a possible interference.
D. B & D and DOMES have entered into the agreement to settle such assertion and such possible

Slip Copy
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Page 5

interference.

(DFX 004, at 1.) The Assignment Agreement between Black & Decker and Domes dated July 24, 2003, provides in pertinent part:B & D currently sells a radio charger (the "Radio Charger") and has patents and pending patent applications disclosing and claiming Radio Charger.

Previously, DOMES alleged that his patent portfolio would cover the Radio Charger. In order to settle such allegations, B & D and DOMES entered into a non-exclusive license agreement (the "License Agreement").

Since then, B & D and DOMES have filed patent applications covering the Radio Charger that could ultimately result in the declaration of an interference and/or the invalidation of at least one patent of either B & D or DOMES. In order to avoid a possible interference, and to settle and resolve issues regarding the parties' portfolios, B & D desires to purchase DOMES' patent portfolio, and DOMES desires to sell his patent portfolio to B & D.

(DFX 001, at 1.)

Black & Decker's concern about a possible interference between the patent families and its acknowledgment of such in the License and Assignment Agreements does not establish that the agreements expressly show Black & Decker's intent to deceive the PTO to avoid an interference. As discussed, Ayala was deliberative in evaluating the Smith and Domes applications when he concluded that Domes was the first inventor. At the bench trial, Ayala further addressed Black & Decker's and his concerns about a possible interference:

Well, while I believed Mr. Domes to be the first inventor of the subject matter, I was concerned that the Patent Office could provoke an interference and that they would-when they were crafting the patent, that they would-bring in subject matter from the Smith applications that was not supported by the Domes applications.

And since I knew Mr. Domes would win the interference, then Black & Decker would lose subject matter that we shouldn't have because it wasn't supported by Mr. Domes' specifications.

(Tr. at 1946.) Again, Ayala based his conduct and reasoning on his belief that Domes was the first inventor of the subject matter.

Ultimately, the PTO did not declare an interference. (Tr. at 1948 .) At his deposition, Bosch's expert testified about Ayala's disclosure of the Domes application during the Smith patent prosecution:

Q: And as a result of that disclosure the examiner did not declare Smith unpatentable in light of Domes, correct?
A: That's correct.
*7 Q: He did not declare an interference, correct?
A: Correct.
Q: Did the examiner do anything to impact the prosecution of Smith based upon the disclosure of Domes?
A: No.
Q: And the priority dates between the Domes and the Smith applications were too far apart to declare an interference, correct?
A: That's correct.

(Ex. B, Lipscomb Dep. at 114.)

In sum, Bosch's argument that the License and Assignment Agreements expressly establish the intent element fails because the agreements are not clear and convincing evidence that Black & Decker intended to deceive the PTO. In other words, the agreements do not support a conclusion that Ayala's intent to deceive the PTO was "highly probable." *See Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed.Cir.1988) ("Although not susceptible to precise definition, 'clear and convincing' evidence has been described as evidence which produces in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" ' (quoting *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437-38, 81 L.Ed.2d 247 (1984)); *see also United States v. Boos,* 329 F.3d 907, 911 (7th Cir.2003) ("highly probable" is Supreme Court's definition of clear and convincing standard of proof). In fact, although the agreements refer to a possible interference, they do not support the conclusion that Ayala intended to deceive the PTO to avoid an interference by any standard of proof.

Other than the agreements-which on their face do not expressly establish that Ayala intended to deceive the PTO-Bosch provides the Court with bits and pieces of information that do not meet the "highly probable" standard. For example, Bosch relies on the trial testimony of Black & Decker's Federal Rule of Civil Procedure 30(b)(6) witness, Christine Potter, to support the conclusion that Ayala was under pressure to make sure Black & Decker maintained market exclusivity for the DeWalt radio charger. (Tr. at 246, C. Potter Testimony.) In her trial testimony, Christine

Slip Copy                                                                                                          Page 6
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Potter stated that Black & Decker valued the exclusivity of the radio charger and that it "was a new category for us; it was very important; and, our customers gave us great feedback on the product. We had spent a lot of money to develop the product and needed the exclusivity to recover those costs." (Tr. at 246.) The testimony about the DeWalt radio's exclusivity is too attenuated for the Court to make the inferential leap that Ayala was under pressure to deceive the PTO to avoid a possible interference, especially because Potter's testimony does not indicate how Black & Decker's need of exclusivity influenced Ayala's decisions during the prosecution of the Smith or Domes patents.

Despite Bosch's contention that this is "one of those rare cases where documents exist that expressly show an intent to deceive," Bosch nonetheless asks the Court to make many "inferential leaps" to come to the conclusion that Ayala intended to deceive the PTO. The Court, however, cannot determine Ayala's intent in a vacuum. "Intent to deceive should be determined in light of the realities of patent practice, and not as a matter of strict liability whatever the nature of the action before the PTO." *M. Eagles Tool Warehouse,* 439 F.3d at 1373 (quoting *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 939 (Fed.Cir.1990)). Instead, the Court must look to the facts and circumstances surrounding a patent applicant's failure to disclose information to the PTO. *See Bruno Indep. Living Aids,* 394 F.3d at 1354; *Northern Telecom,* 908 F.2d at 939 ("the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.")

*8 In the context of the facts and circumstances surrounding Ayala's decision not to disclose the Smith patents during the prosecution of the Domes patents, including Ayala's good faith belief that the Smith patents were not material to the Domes applications, the Court concludes that Bosch has failed to establish-by clear and convincing evidence-that Ayala had the requisite intent to deceive the PTO. Simply put, Bosch has failed to provide a factual basis for a finding of deceptive intent by clear and convincing evidence. *See M. Eagles Tool Warehouse,* 439 F.3d at 1340.

Because Bosch has failed to establish the intent element by clear and convincing evidence, the Court need not address the second step of the inequitable conduct analysis. *See Juicy Whip,* 292 F.3d at 744-45. Bosch's claim of inequitable conduct fails.

*CONCLUSION*

For these reasons, the Court denies Bosch's inequitable conduct claim.

N.D.Ill.,2006.
Black & Decker Inc. v. Robert Bosch Tool Corp.
Slip Copy, 2006 WL 3069544 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3054103 (Trial Motion, Memorandum and Affidavit) Black & Decker's Memorandum in Opposition to Bosch's Motion for Judgment as a Matter of Law (Sep. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 3054104 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Bench Memorandum on the Law of Public Use Under 35 U.S.C. |102(b) (Sep. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 3054105 (Trial Motion, Memorandum and Affidavit) Black & Decker's Bench Memorandum Regarding Prior Art (Sep. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 3054102 (Trial Motion, Memorandum and Affidavit) Bosch's Motion for Judgment as a Matter of Law (Sep. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 3054098 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply to Black & decker's Bench Memorandum Regarding Bosch's USE of A Grundig Radio at Trial (Sep. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 3054100 (Trial Motion, Memorandum and Affidavit) Bosch's Bench Brief Re: Federal Rules of Evidence 701 and 702 in Anticipation of the Testimony of Thompson Cheung (Sep. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 3054101 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Bench Brief Re: Federal Rules of Evidence 701 And 702 in Anticipation of the Testimony of Thompson Cheung (Sep. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 3054097 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply in Support of Its Motion to Strike Trial Testimony of Christine Potter Relating to Comparisons of the Bosch Power BoxTM with the DeWalt Radio and Motion to Instruct the Jury to Disregard Such Testimony (Sep. 15, 2006) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 7
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

• 2006 WL 3054099 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Motion to Strike Trial Testimony of Christine Potter Relating to Comparisons of the Bosch Power BoxTM with the DeWalt Radio and Motion to Instruct the Jury to Disregard Such Testimony (Sep. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 3054096 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's ""bench Brief on Inventor Admissions on Claim Construction" (Sep. 13, 2006) Original Image of this Document (PDF)

• 2006 WL 3054095 (Trial Motion, Memorandum and Affidavit) Bench Memorandum Regarding the Admissibility of Financial Testimony from Christine Potter (Sep. 12, 2006) Original Image of this Document (PDF)

• 2006 WL 3054094 (Trial Motion, Memorandum and Affidavit) Black & Decker's Opposition to Robert Bosch Tool Corp.'s Supplement to its Motion in Limine to Preclude in Part the Testimony of Dr. Andrew Neuhalfen (Sep. 8, 2006) Original Image of this Document (PDF)

• 2006 WL 3054092 (Trial Motion, Memorandum and Affidavit) Black & Decker's Objections to Bosch's Proposed Jury Instruction No. 77A (Sep. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2737923 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of Its Motion in Limine to Bar Evidence, Argument and Proposed Jury Instructions on Bosch's Previously Stricken |102(f) Defense (Aug. 24, 2006) Original Image of this Document (PDF)

• 2006 WL 2737922 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Response to Plaintiff Black & Decker, Inc.'s Motion in Limine to Bar Evidence, Argument and Proposed Jury Instructions on Bosch's 102(f) Defense (Aug. 22, 2006) Original Image of this Document (PDF)

• 2006 WL 2737917 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of Its Motion in Limine to Exclude Bosch's Damages Expert (Frances M. McCloskey) from Offering Testimony at Trial Regarding or Referring to (A) Ex Parte Communications with Bosch's Employees Conducted after the Close of Discovery; (B) Bosch's Alleged License with Milwaukee; (C) Third-Party Compilations of Patent Royalties; and (D) Bosch's Patent No. 5,631,542 (Aug. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 2737918 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply in Support of Its Motion in Limine to Preclude Black & Decker, Inc. from Raising New Accused Products at Trial (Aug. 18, 2006)

Original Image of this Document (PDF)

• 2006 WL 2737919 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Reply in Support of Its Motion in Limine to Preclude Black & Decker, Inc. from Raising Contributory or Inducing Infringement Claims at Trial (Aug. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 2737920 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Reply to Black & Decker's Opposition to Its Motion in Limine to Preclude in Part the Testimony of Dr. Andrew Neuhalfen (Aug. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 2737921 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Reply in Support of Its Motion in Limine to Preclude the Admission into Evidence of Plaintiffs Black & Decker, Inc.'s Exhibits PTX 226 & 227 and All Testimony Related Thereto (Aug. 18, 2006) Original Image of this Document (PDF)

• 2006 WL 2737916 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion in Limine to Bar Evidence, Argument and Proposed Jury Instructions on Bosch's Previously Stricken |102(f) Defense (Aug. 16, 2006) Original Image of this Document (PDF)

• 2006 WL 2580280 (Trial Motion, Memorandum and Affidavit) Black & Decker, Inc.'s Response to Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude the Admission into Evidence of Plaintiff Black& Decker, Inc.'s Exhibits PTX 226 and 227 and All Testimony Related Thereto (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580281 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Response to Plaintiffs Black & Decker, Inc.'s Motion in Limine to Exclude the Horowitz Radio and the Wilson Experiment at Trial (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580282 (Trial Motion, Memorandum and Affidavit) Black & Decker's Opposition to Bosch's Motion in Limine to Preclude Black & Decker from Raising Contributory and Inducing Infringement Claims (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580283 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Response to Plaintiff Black & Decker, Inc.'s Motion in Limine to Bar Improper Reliance on Hindsight in Bosch's Testimony About Obviousness (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580284 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Opposition to Black & Decker's Motion in Limine to Exclude Bosch from Relying Upon Certain Documents Not Addressed or Pleaded During

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 8
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Discovery in Support of A 35 U.S.C. | 103 Defense (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580285 (Trial Motion, Memorandum and Affidavit) Black & Decker's Opposition to Bosch's Motion in Limine to Preclude in Part the Testimony of Dr. Andrew Neuhalfen (Aug. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2580274 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion in Limine to Exclude the Horowitz Radio and the Wilson Experiment at Trial (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2580275 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion in Limine to Bar Improper Reliance on Hindsight in Bosch's Testimony about Obviousness (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2580276 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion in Limine to Exclude Bosch from Relying Upon Certain Documents Not Addressed or Pleaded During Discovery in Support of A 35 U.S.C. | 103 Defense (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2580277 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion in Limine to Exclude Bosch's Damages Expert (Frances M. McCloskey) from Offering Testimony at Trial Regarding or Referring to (A) Exparte Communications with Bosch's Employees Conducted after the Close of Discovery; (B) Bosch' s Alleged License with Milwaukee; (C) Third-Party Compilations of Patent Royalties; and (D) Bosch's Patent No. 5,631,542 (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2580278 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude Black & Decker from Raising New Accused Products at Trial (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2580279 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude the Admission into Evidence of Plaintiffs Black & Decker, Inc.'s Exhibits PTX 226 & 227 and All Testimony Related Thereto (Aug. 7, 2006) Original Image of this Document (PDF)

• 2006 WL 2445409 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion to Lift the Stay as to the Opinions of Counsel (Jul. 26, 2006) Original Image of this Document (PDF)

• 2006 WL 1755828 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool

Corporation's Reply Memorandum in Support of its Motion to Strike Black & Decker Inc.'s Response to Bosch's Statement of Material Facts in Support of Bosch's Motions for Summary Judgment of Noninfringement and to Strike Bl ack & Decker's Statement of Additional Facts Precluding Summary Judgment (May 19, 2006) Original Image of this Document (PDF)

• 2006 WL 1755829 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply Memorandum in Support of its Motion to Strike Black & Decker Inc.'s Response to Bosch's Statement of Material Facts in Support of Bosch's Motions for Summary Judgment of Patent Invalidity (May 19, 2006) Original Image of this Document (PDF)

• 2006 WL 1755830 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply to Black & Decker's Responses to Bosch's Motions to Strike New Opinions of B&D's Expert Andrew J. Neuhalfen Filed on 4/28/06 and 5/5/06 (May 19, 2006) Original Image of this Document (PDF)

• 2006 WL 1755825 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion to Strike New Opinions of Plaintiff's Expert Andrew J. Neuhalfen Filed on 4/28/06 (May 12, 2006) Original Image of this Document (PDF)

• 2006 WL 1755826 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion to Strike New Opinions of Plaintiff's Expert Andrew J. Neuhalfen Filed 5/5/06 (May 12, 2006) Original Image of this Document (PDF)

• 2006 WL 1755827 (Trial Motion, Memorandum and Affidavit) Black & Decker's Opposition to Defendant's Motion to Strike Black & Decker's Response to Bosch's Invalidity Facts (May 12, 2006) Original Image of this Document (PDF)

• 2006 WL 1755822 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Corrected Response to Local Rule 56.1 Statement of Undisputed Material Facts in Support of Black & Decker's Motion for Summary Judgment on Bosch's Claim of Inequitable Conduct (May 9, 2006) Original Image of this Document (PDF)

• 2006 WL 1755823 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Corrected Reply to Plaintiff's Additional Facts Precluding Summary Judgment in Support of its Motion for Summary Judgment of Patent Invalidity of U.S. Patent No. 6,788,925 (May 9, 2006) Original Image of this Document (PDF)

• 2006 WL 1755824 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Corrected Reply to Plaintiff's

Slip Copy                                                                                      Page 9
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Additional Facts Precluding Summary Judgment in Support of its Motion for Summary Judgment of Patent Invalidity for U. S. Patent No. 6,308,059 (Public Version) (May 9, 2006) Original Image of this Document (PDF)
• 2006 WL 1755821 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of its Motion to Strike the Declaration of Tadd Wilson and Portions of the Declaration of Paul Horowitz in Support of Bosch's Summary Judgment Motions (May 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1755817 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Motion to Strike New Opinions of Plaintiff's Expert Andrew J. Neuhalfen for Patent Noninfringement (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1755818 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Motion to Strike Black & Decker Inc.'s Response to Bosch's Statement of Material Facts in Support of Bosch's Motions for Summary Judgment of Noninfringement and to Strike Black & Decker's Statement of Additio nal Facts Precluding Summary Judgment (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1755819 (Trial Motion, Memorandum and Affidavit) Reply in Support of Robert Bosch Tool Corporation's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,788,925 (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1755820 (Trial Motion, Memorandum and Affidavit) Reply in Support of Robert Bosch Tool Corporation's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,308,059 (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1782764 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply to Plaintiff Black & Decker's Statement of Additional Facts Precluding Summary Judgment in Support of its Motion for Summary Judgment of Patent Noninfringement of U.S. Patent No. 6,788,925 (Public Versi on) (May 5, 2006) Original Image of this Document (PDF)
• 2006 WL 1792721 () Declaration of Paul Horowitz in Support of Defendant Robert Bosch Tool Corporation's Reply in Support of Its Motion for Summary Judgment of Noninfringement (May 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1755816 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Supplemental Opposition to Black & Decker's Motion to Strike The Declaration of Tadd Wilson and Portions of The Declaration of Paul Horowitz and Request for Hearing on this Motion

(May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1416154 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Motion to Strike Black & Decker Inc's Response to Bosch's Statement of Material Facts in Support of Bosch's Motions for Summary Judgment of Patent Invalidity (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1416155 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Motion to Strike New Opinions of Plaintiff's Expert Andrew J. Neuhalfen (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1416156 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply to Plaintiff's Additional Facts Precluding Summary Judgment in Support of its Motion for Summary Judgment of Patent Invalidity for U.S. Patent No. 6,308,059 (Public Version) (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1416157 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Invalidity for U.S. Patent No. 6,788,925 (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1416158 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Reply to Plaintiff's Additional Facts Precluding Summary Judgment in Support of its Motion for Summary Judgment of Patent Invalidity of U.S. Patent No. 6,788,925 (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1436902 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Invalidity for U.S. Patent No. 6,308,059 (Apr. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 1416153 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of its Motion for Summary Judgment Denying Bosch's Claim of Inequitable Conduct (Apr. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1416152 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Opposition to Black & Decker's Motion to Strike the Declaration of Tadd Wilson and Portions of the Declaration of Paul Horowitz Filed in Support of Bosch's Summary Judgment Motions (Apr. 18, 2006) Original Image of this Document (PDF)
• 2006 WL 1416146 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion for Summary Judgment of Invalidity for U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                     Page 10
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

Patent No. 6,308,059 (Apr. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 1416147 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion for Summary Judgment of Patent Noninfringement for U.S. Patent No. 6,788,925 (Apr. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 1416148 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion for Summary Judgment of Patent Noninfringement for U.S. Patent No. 6,308,059 (Redacted - Public Version) (Apr. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 1416149 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Motion for Summary Judgment of Invalidity for U.S. Patent No. 6,788,925 (Apr. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 1416151 (Trial Motion, Memorandum and Affidavit) Motion to Strike the Declaration of Tadd Wilson and Portions of the Declaration of Paul Horowitz Filed in Support of Bosch's Summary Judgment Motions (Apr. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 1416145 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Opposition to Black & Decker's Motion for Summary Judgment on Bosch's Claim of Inequitable Conduct (Apr. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1039028 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion for Summary Judgment on Bosch's Claim of Inequitable Conduct (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1039029 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Invalidity for U.S. Patent No. 6,308,059 (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1045613 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Invalidity for U.S. Patent No. 6,788.925 (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1045614 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Noninfringement of United States Patent No. 6,308,059 (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1045615 (Trial Motion, Memorandum and

Affidavit) Memorandum of Points and Authorities in Support of Robert Bosch Tool Corporation's Motion for Summary Judgment of Noninfringement of United States Patent No. 6,788.925 (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1642196 () Expert Report of Dr. Andrew J. Neuhalfen (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 1651401 () Rebuttal Expert Report of Paul Horowitz on Non-Infringement of U.S. Patents No. 6,308,059 and 6,788,925 (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 2525248 () Declaration of Paul Horowitz in Support of Defendant Robert Bosch Tool Corporation's Motion for Summary Judgment of Noninfringement (Mar. 6, 2006) Original Image of this Document (PDF)

• 2006 WL 740503 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of its Motion to Strike New Prior Art, New Defenses, and New Witnesses (Feb. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 740504 (Trial Motion, Memorandum and Affidavit) Black & Decker's Corrected Reply in Support of Its Motion to Strike New Prior Art, New Defenses, and New Witnesses (Feb. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 740502 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion to Strike New Prior Art, New Defenses, New Witnesses and to Limit Expert Witnesses to the Opinions Specifically Provided in Their Expert Reports (Feb. 21, 2006) Original Image of this Document (PDF)

• 2006 WL 740501 (Trial Motion, Memorandum and Affidavit) Black & Decker's Reply in Support of its Motion to Strike Bosch's Untimely Production of Non-Infringement Documents (Feb. 16, 2006) Original Image of this Document (PDF)

• 2006 WL 740500 (Trial Motion, Memorandum and Affidavit) Black & Decker's Motion to Strike Untimely Prior Art (Feb. 14, 2006) Original Image of this Document (PDF)

• 2006 WL 2525249 () Videotaped Deposition of Expert Andrew J. Neuhalfen, Ph.D., P.E. (Jan. 27, 2006) Original Image of this Document (PDF)

• 2006 WL 1733787 () Videotaped Deposition of Expert Andrew J. Neuhalfen, Ph.D., P.E. Volume 1 (Jan. 26, 2006) Original Image of this Document (PDF)

• 2005 WL 4113897 () Rule 26(a)(2)(B) Rebuttal Report of J. William Wigert (Dec. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 4147364 () Rebuttal Report of Andrew J. Neuhalfen, Ph.D., P.E. (Dec. 22, 2005) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 11
Slip Copy, 2006 WL 3069544 (N.D.Ill.)
**(Cite as: Slip Copy)**

• 2005 WL 4701573 () Rebuttal Report of Andrew J. Neuhalfen, Ph.D., P.E. (Dec. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 4701572 () Expert Report of Dr. Andrew J. Neuhalfen (Dec. 1, 2005) Original Image of this Document (PDF)

• 2005 WL 3286890 (Trial Motion, Memorandum and Affidavit) Bosch's Reply to Black & Decker's Opposition to Bosch's Motion to Compel (Redacted Version) (Oct. 14, 2005) Original Image of this Document (PDF)

• 2005 WL 3286887 (Trial Motion, Memorandum and Affidavit) Black & Decker's Opposition to Bosch's Motion to Compel Documents and Testimony (Oct. 11, 2005) Original Image of this Document (PDF)

• 2005 WL 2869625 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Bosch's Post-Hearing Brief (Sep. 28, 2005) Original Image of this Document (PDF)

• 2005 WL 2869618 (Trial Motion, Memorandum and Affidavit) Black & Decker's Amended Memorandum in Response to Boschis Claim Construction Brimf (Aug. 30, 2005) Original Image of this Document with Appendix (PDF)

• 2005 WL 2611583 (Trial Motion, Memorandum and Affidavit) Black & Decker'S Memorandum in Response to Bosch'S Claim Construction Brief Public, Redacted Version (Aug. 24, 2005) Original Image of this Document (PDF)

• 2005 WL 2611574 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Revised Opening Markman Brief (Aug. 11, 2005) Original Image of this Document with Appendix (PDF)

• 2005 WL 2611561 (Trial Motion, Memorandum and Affidavit) Defendant's Opening Markman Brief (Jul. 29, 2005) Original Image of this Document (PDF)

• 2005 WL 3881844 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corporation's Opposition to Black & Decker's Motion to Strike (Feb. 15, 2005) Original Image of this Document (PDF)

• 1:04cv07955 (Docket) (Dec. 8, 2004)

• 2004 WL 3050326 (Trial Pleading) Complaint for Patent Infringement (2004) Original Image of this Document (PDF)

• 2004 WL 4020234 () (Report or Affidavit) (2004) Original Image of this Document with Appendix (PDF)

• 2004 WL 4020235 () Expert Report of Dr. Andrew J. Neuhalfen (2004) Original Image of this Document (PDF)

• 2004 WL 4054980 () Expert Report Of Dr. Andrew J. Neuhalfen (2004) Original Image of this Document (PDF)

• 2004 WL 4961361 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude in Part the Testimony of Dr. Andrew Neuhalfen (2004) Original Image of this Document (PDF)

• 2004 WL 4961362 (Trial Motion, Memorandum and Affidavit) Defendant Robert Bosch Tool Corp.'s Motion in Limine to Preclude Black & Decker, Inc. from Raising Contributory or Inducing Infringement Claims at Trial (2004) Original Image of this Document (PDF)

• 2004 WL 4961363 (Trial Motion, Memorandum and Affidavit) Bosch's Opposition to Black & Decker's Motion in Limine to Exclude Bosch's Damages Expert from Offering Testimony (2004) Original Image of this Document (PDF)

• 2004 WL 5010099 () Expert Report of Dr. Andrew J. Neuhalfen (2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.