# EXHIBIT J

Westlaw.

Slip Copy                                                        Page 1
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall
Division.
**PAICE LLC, Plaintiff,**
v.
**TOYOTA MOTOR CORP., et al., Defendants.**
**No. 2:04-CV-211-DF.**

Aug. 16, 2006.

Samuel Franklin Baxter, Attorney at Law, Marshall,
TX, Ahmed J. Davis, Ahmed J. Davis, Ruffin B.
Cordell, Fish & Richardson, Washington, DC, for
Plaintiff.
Fred Grasso, Jeffrey Gerchick, T. CY Walker, Kenyon
& Kenyon, Washington, DC, Nicholas H. Patton,
Justin Kurt Truelove, Patton & Tidwell, Texarkana,
TX, Thomas R. Makin, George E. Badenoch, John
Flock, Kenyon & Kenyon, New York, NY, for
Defendants.

*ORDER*
DAVID FOLSOM, District Judge.
*1 Before the Court is Plaintiff Paice LLC's ("Paice")
Motion for Entry of an Injunction. Dkt. No. 207. Also
before the Court is Defendants' Combined (1)
Opposition to Paice LLC's Motion for Entry of an
Injunction and (2) In the Alternative, Motion for a
Stay of Any Injunction Entered and Plaintiff's
Combined Response to Toyota's Motion for Stay and
Reply in Support of Its Motion for Injunction. Dkt.
Nos. 212 and 219, respectively. On April 25, 2006 the
Court heard the parties on these motions. Subsequent
to the hearing, the parties submitted letter briefing to
the Court. 6/23/06 Letter from G. Badenoch, 6/30/06
Letter from R. Cordell, and 7/13/06 Letter from G.
Badenoch. Having considered the motions, all other
relevant briefing, and the applicable law, the Court
finds that Plaintiff's Motion for Injunction should be
**DENIED.**

**I. BACKGROUND**

In this patent infringement action, Plaintiff claimed
three of Defendants' hybrid vehicles infringe three of
Plaintiff's patents, U .S. Patent Nos. 5,343,970 ("the
970 patent"), 6,209,672 ("the 672 patent"), and

6,554,088 ("the 088 patent") (collectively, the
"patents-in-suit"). [FN1] Plaintiff alleged that nine claims
among three patents were literally infringed by
Defendants' accused vehicles and that ten claims were
infringed under the doctrine of equivalents. Plaintiff
also argued that Defendants' alleged infringement was
willful.

> FN1. A detailed explanation of each of the
> asserted patents and the underlying
> technology can be found in the Court's Claim
> Construction Order. Dkt. No. 91. The present
> Order assumes familiarity with the
> patents-in-suit.

In December 2005, the case was tried to a jury. The
jury found that Defendants' accused vehicles infringed
claims 11 and 39 of the 970 patent under the doctrine
of equivalents, but found no further infringement. The
jury did not find Defendants' infringement was willful.

Plaintiff now moves for entry of a permanent
injunction.

**II. LEGAL PRINCIPLES**
051 Extra cent-Y found within cent-Y markup.
Recently the Supreme Court revisited the propriety of
issuing permanent injunctions as a matter of course
after a finding of infringement in patent cases. *eBay
Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837,
1839-1841 (U.S.2006) (hereinafter "*eBay*").
Observing the existence of a " 'general rule,' unique to
patent disputes" that mandated the issuance of a
permanent injunction once infringement and validity
were decided, the Supreme Court explored the origins
of this general rule and compared it to other instances
in which courts are faced with deciding whether or not
to issue equitable relief. *Id.* The Supreme Court
determined that equitable relief is not mandatory in
patent cases, but instead should be decided in
accordance with traditional equitable considerations.
*Id.*

To this end, a plaintiff seeking a permanent injunction
must satisfy a four-factor test before a court may grant
such relief:
A plaintiff must demonstrate: (1) that it has suffered
an irreparable injury; (2) that remedies available at law,
such as monetary damages, are inadequate to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 2
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
(Cite as: Slip Copy)

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*2 *Id.* Further, the Supreme Court held that:[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.

*Id.* It is clear that the Supreme Court by its decision did not intend to part with long-standing decisions in equity. As noted by Chief Justice Roberts, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate." *Id.* at 1841 (Roberts, C.J.concurring). And, as Justice Kennedy notes in his concurrence, "the existence of a right to exclude does not dictate the remedy for a violation of that right," which aligns equitable decisions in patent cases with other cases. *Id.* at 1842 (Kennedy, J. concurring).

*III. THE PARTIES' POSITIONS*

Plaintiff, seeking entry of a permanent injunction, principally argued that it is entitled to an injunction pursuant to 35 U.S.C. § 283 because the Defendants are adjudged infringers of its valid patent claims. Dkt. No. 207 at 2. Plaintiff additionally argued that no exceptional circumstances exist for which an injunction should be denied. *Id.* Defendants responded in opposition to Plaintiff's motion but spent the majority of their pre-hearing brief arguing that any injunction that issues should be stayed pending the outcome of an appeal or the issuance of a decision in *eBay.* Dkt. No. 212. Less than a month after the hearing, the *eBay* opinion issued.

Following the traditional four-factor test for equitable relief, Defendants argue no injunction should issue as Plaintiff cannot meet its burden of demonstrating each of the factors, let alone any of the factors. Dkt. No. 222. According to Defendants, Plaintiff failed to demonstrate irreparable harm. *Id.* at 3. Defendants argue that, following from the Supreme Court's decision, irreparable harm cannot be presumed. Further, citing a decision in *z4 Technologies, Inc. v. Microsoft Corporation,* Defendants argue that the inability to license Plaintiff's patents to others without an injunction in hand is not a viable reason for issuing

an injunction. Dkt. No. 222 at 3, *citing z4 Technologies, Inc. v. Microsoft Corp .,* 6:06-cv-142, Dkt. No. 394 (E.D. Tex. June 14, 2006). Defendants also point to evidence demonstrating that there are reasons unrelated to Defendants' conduct that explain why Plaintiff's efforts to license its patents have been refused. *Id.* citing evidence at Dkt. No. 212, 5-6. Defendants argue there is no evidence supporting Plaintiff's contention that Defendants' sales of the accused vehicles have resulted in the harm Plaintiff alleges as Plaintiff does not sell vehicles. Dkt. No. 222 at 3-4.

Defendants argue that monetary damages are sufficient to compensate Plaintiff. Because Plaintiff does not manufacture competing vehicles, but rather is geared toward licensing its technology, Defendants argue that there is "no question" that monetary damages are sufficient. Dkt. No. 222 at 4. Defendants further argue that the claims found to be infringed make up only a "small component" of the overall accused vehicles. *Id.*

*3 The two claims found to be infringed by equivalents are not to the entirety of the hybrid transmission, let alone the entire car. For there to be an entire working vehicle that meets [Defendants'] standards, there are many tens of thousands of separate parts that make up the various essential parts of the car ... Any contribution of [Plaintiff's] technology to the accused vehicles is relatively minor when compared to the value of the overall vehicles sought to be enjoined....

Dkt. No. 222 at 4. Defendants further cite the jury's reasonable royalty verdict as demonstrative of the relatively small contribution of that Plaintiff's invention to the accused vehicles as a whole:Any contribution of [Plaintiff's] technology to the accused vehicles is relatively minor when compared to the value of the overall vehicle sought to be enjoined, as confirmed by the jury's verdict awarding reasonable royalty damages of only $25 per vehicle-or 1/8th of one percent of the $20,000 price of a Prius and even less of a percentage of the price of the Highlander ($33,000) and the RX400h ($42,000).

*Id.*

Defendants argue that the third and fourth factors weigh against issuing a permanent injunction. According to Defendants, implementation of an injunction would cause substantial economic injury to it, its dealers, and its suppliers. An injunction would also severely damages its "reputation as the industry leader in bringing hybrid and other vehicles to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
**(Cite as: Slip Copy)**

market," argue Defendants. *Id.* at 4. And, Defendants argue, significant time and money have been invested in designing the accused devices while a redesign would be "extraordinarily expensive and a great hardship." *Id.* Defendants argue that there is "no discernable hardship" to Plaintiff in the absence of an injunction because Plaintiff seeks only licensing fees for the use of its patents. *Id.* Defendants also argue that an injunction would be contrary to the public interest as hybrid vehicles play an important role in "reducing harmful automobile emissions and American reliance on foreign oil." *Id.*

Lastly, Defendants remind the Court that, although accused, the jury did not find that Defendants' infringement was willful. Nor were they found to literally infringe Plaintiff's patents-only two of ten asserted claims from one of three patents were found infringed under the doctrine of equivalents. Defendants argue that these facts should also be considered in determining whether an injunction should issue. Dkt. No. 222 at 4-5.

In response, Plaintiff argues that, even under the traditional four-factor test for equitable relief, they are entitled to a permanent injunction. Plaintiff argues it has proved it will suffer irreparable harm because, unless Defendants are enjoined from selling the infringing vehicles, it cannot succeed in its efforts to license its technology. Dkt. No. 223 at 2. Plaintiff argues that Defendants' infringement has had a "devastating effect" on its business resulting in great harm. Dkt. No. 207 at 6. During the hearing on this motion, Plaintiff's counsel related that Plaintiff was recently "sidelined" as potential parties to a joint venture chose to put the deal on hold while they await the outcome of this motion. 4/25/06 Hr. Tr. at 99. Plaintiff also cites testimony from Dr. Severinsky, the inventor of the 970 patent and Paice employee, that potential licensees have refused to license Plaintiff's patents pending the outcome of this case. *Id.* at 2-3. Plaintiff argues that even if potential licensees refused licenses in the past for reasons unrelated to the current lawsuit, they are today refusing to license as they await the outcome of this suit. *Id.* at 3. Thus, Plaintiff argues, it is suffering harm from what amounts to a *de facto* stop work injunction. 4/25/06 Hr. Tr. at 106.

**\*4** Addressing the second factor, Plaintiff argues that although it does not manufacture products utilizing the patented invention, this alone does not end the inquiry as to whether there is an adequate remedy at law for Defendants' infringement. Dkt. No. 223 at 3. Instead, Plaintiff argues, because it suffers irreparable harm, there is no adequate remedy at law. According to

Plaintiff, without an injunction, Plaintiff will continue to loose licensing opportunities to other potential licensees. Dkt. No. 223 at 3. Further, regarding the relative import of the infringed claims to the accused vehicles, Plaintiff argues that the infringed claims "cover ... the heart of what the Prius is all about." 4/25/06 Hr. Tr. at 105; *see also* Dkt. No. 223 at 4.

Plaintiff argues that the balance of hardships tips in favor of an injunction. According to Plaintiff, the infringing products that would be enjoined can be sold in other parts of the world. Further, Plaintiff argues, the infringing vehicles account for less than 2% of Defendants' worldwide revenue. *Id.*; *see also* 4/25/06 Hr. Tr. at 108. On the other hand, without an injunction, Plaintiff argues that it faces extinction. Dkt. No. 223 at 4.

Regarding the public interest, Plaintiff argues the that public interest in strong patent rights is better served by enforcing those rights through an injunction, particularly where a small company's patents are infringed. 4/25/06 Hr. Tr. at 111; Dkt. No. 223 at 5. Plaintiff also argues that enjoining sales of the accused vehicles would not leave the public without options-in fact, there are other hybrid alternatives on the market as well as vehicles that are more fuel efficient than the accused vehicles. 4/25/06 Hr. Tr. at 110.

### IV. DISCUSSION

Following the traditional four-factor test for equitable relief, the Court concludes that no injunction is warranted in this case.[FN2]

> [FN2] As Plaintiff's motion for an injunction is denied, Defendant's cross-motion for a stay is moot and will not be addressed herein.

Plaintiff fails to establish that it will be irreparably harmed absent an injunction. The *eBay* decision demonstrates that no presumption of irreparable harm should automatically follow from a finding of infringement. *See, e.g.,* 126 S.Ct. at 1840; *see also* 6:06-CV-142, Docket No. 394, at 4. Plaintiff argues that, because no injunction has issued, it has been unsuccessful in its efforts to license its technology. Plaintiff's evidence, however, does not prove that the current litigation or the absence of an injunction have resulted in its inability to successfully license its technology.

Dr. Severinsky's testimony, cited by Plaintiff,

Slip Copy
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
**(Cite as: Slip Copy)**

Page 4

addressed only his belief as to why potential licensees were reluctant to take licensees. Plaintiff's counsel's statements that the company was "sidelined" pending the outcome of this litigation are not evidence. There is evidence in the record, however, that potential licensees may have declined business deals because of Plaintiff's misrepresentations and improper business tactics. *See* 12/7/05 PM Trial Tr. at 46:25-49:1; DTX 745.

**\*5** Irreparable harm lies only where injury cannot be undone by monetary damages. *See Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981). Plaintiff's losses from Defendant's sales of infringing products can be remedied via monetary damages in accordance with the reasonable royalty set by the jury. As for Plaintiff's allegations of irreparable harm in the form of a failed licensing program, Plaintiff has not demonstrated Defendants' infringement is to blame for this failure. As the evidence demonstrates, there were other reasons Plaintiff may not have succeeded in licensing its technology.

Additionally, Plaintiff has not demonstrated that monetary relief will not aid its licensing efforts. As is discussed below, the entry of a judgment for monetary relief in conjunction with the jury's infringement and validity findings will affirm Plaintiff's patent rights, as would the issuance of an injunction. Although potential licensees will likely consider the outcome of this case in their licensing decisions, Plaintiff has not been prevented from continuing its licensing efforts. It is should also be noted that because Plaintiff does not compete for market share with the accused vehicles, concerns regarding loss of brand name recognition and market share similarly are not implicated.

For these reasons, Plaintiff has not demonstrated that it will suffer irreparable harm in the absence of an injunction.

Second, Plaintiff has not demonstrated that monetary damages are inadequate. According to Plaintiff, monetary damages paid by Defendants will not prevent further lost opportunities to license its technology to potential licensees. Plaintiff further argues that the infringed claims form the "heart" of the accused products. Infringing one's right to exclude alone, however, is insufficient to warrant injunctive relief. 126 S.Ct. at 1840. Plaintiff does not demonstrate why other potential licensees would be less likely to take a license if this case ends with monetary damages instead of equitable relief. [FN3] In either case, the Plaintiff's patent rights are vindicated.

The appropriateness of an injunction is determined after considering the traditional four factors addressed here.

> FN3. The Court notes that monetary relief could result in lower licensing rates than Plaintiff would desire. The Court also recognizes that, if an injunction were to issue, Plaintiff would have a more impressive bargaining tool. This consideration, however, doe not replace the four-factor test that must be satisfied for equitable relief.

Further, the Court disagrees with Plaintiff regarding the import of the two claims found infringed to the accused vehicles as a whole. The infringed claims relate to the hybrid transmissions of the accused vehicles, but form only a small aspect of the overall vehicles. The jury's damages award also indicates that the infringed claims constitute a very small part of the value of the overall vehicles. The jury, based on the entire record, determined an appropriate reasonable royalty rate that can be easily calculated on future sales of the accused devices thereby removing uncertainty from future damages calculations.

It is also of note that Plaintiff, throughout post-trial motions, has extended Defendants an offer to license its technology. 4/25/06 Hr. Tr. at 108. This offer further demonstrates the adequacy of monetary relief from Plaintiff's point of view. Thus, the Court finds that Plaintiff has not demonstrated monetary damages are an inadequate remedy to compensate for Defendants' infringement.

**\*6** Third, the Court finds that the hardships balance against enjoining Defendants. Plaintiff again argues that this factor tips in its favor because it faces extinction absent an injunction while Defendants will experience only minor economic losses. This ignores the reality that two of the accused vehicles were introduced to the market during the 2006 model year and enjoining their sales will likely interrupt not only Defendants' business but that of related businesses, such as dealers and suppliers. The burgeoning hybrid market could also be stifled as the research and expense of bringing its product line to market would be frustrated. And the Court finds that enjoining Defendants will damage their reputation. Defendants face significant hardships if enjoined. Plaintiff's argument that it may go out of business unless Defendants are enjoined is again premised upon their contention that only injunctive relief will lead to a successful licensing program. As discussed above, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                  Page 5
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
**(Cite as: Slip Copy)**

Court does not agree with this contention. Thus, the balance of hardships tips decidedly in favor of Defendants.

Lastly, the Court concludes that the public interest does not weigh heavily in either party's favor. As Plaintiff argues, there is a long recognized public interest in enforcing patent rights. The grant of injunctive relief for such enforcement, as the *eBay* case directs, should be determined using the traditional four-factor test. Relief in non-injunctive form also serves this public interest. Insofar as Defendants argue that an injunction would be contrary to the public interest in reducing dependence of foreign oil, the Court finds this argument unavailing. Defendants' hybrid vehicles are not the only hybrid alternatives on the market, and there has been no evidence demonstrating the demand for hybrid vehicles could not be met by such alternatives. Thus, Defendants have not demonstrated that enjoining the sale of their hybrid vehicles will disserve the public interest.

Having found that Plaintiff has failed to demonstrate that injunctive relief is warranted under any of the four relevant factors, the Court will deny Plaintiff's request.

**V. CONCLUSION**

For all the above reasons, Plaintiff's Motion for Entry of an Injunction, Dkt. No. 207, is hereby **DENIED** and Defendants' Motion for a Stay of Any Injunction Entered, Dkt. No. 212, is **DENIED** as moot.

E.D.Tex.,2006.
Paice LLC v. Toyota Motor Corp.
Slip Copy, 2006 WL 2385139 (E.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 813675 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Reply Brief in Support of its Motion for Judgment as a Matter of Law Or, in The Alternative, for a New Trial (Feb. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 813676 (Trial Motion, Memorandum and Affidavit) Toyota's Reply Memorandum in Support of its Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial (Feb. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 813677 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Combined Response to Toyota's Motion for Stay and Reply in Support of its Motion for injunction (Feb. 15, 2006) Original

Image of this Document (PDF)
• 2006 WL 813672 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Memorandum in Opposition to Toyota's Motion for Judgment as a Matter of Law and, in The Alternative, for a New Trial (Feb. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 813673 (Trial Motion, Memorandum and Affidavit) Toyota's Combined (1) Opposition to Paice LLC's Motion for Entry of an Injunction and (2) in The Alternative, Motion for a Stay of any Injunction Entered (Feb. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 813674 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Motion for Judgment as a matter of Law Or, in The Alternative, for a New Trial (Feb. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 502267 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Motion for Entry of an Injunction (Jan. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 502268 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for Judgment as a Matter of Law and, in the Alternative, for a New Trial (Jan. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 502269 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Jan. 20, 2006) Original Image of this Document (PDF)
• 2005 WL 4656513 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for a Directed Verdict of no Infringement Under the Doctrine of Equivalents (Dec. 16, 2005)
• 2005 WL 4656511 (Trial Motion, Memorandum and Affidavit) Defendant Toyota's Opposition to Plaintiff Paice LLC'S Renewed Motion to Preclude or Limit Introduction of Evidence of Toyota Patents (Dec. 9, 2005)
• 2005 WL 4656512 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Renewed Motion to Preclude Or Limit Introduction of Evidence of Toyota Patents (Dec. 8, 2005)
• 2005 WL 4656510 (Trial Motion, Memorandum and Affidavit) Paice LLC's Opposition to the Toyota Defendants' Motion for Reconsideration and/or Clarification of Claim Term Definitions (Dec. 1, 2005)
• 2005 WL 3337409 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice Llc's Motion to Strike George Gelb from the Witness List of Defendants (Oct. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3337408 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice Llc's Motion to Strike

George Gelb from the Witness List of Defendants (Oct. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 2666726 (Trial Motion, Memorandum and Affidavit) Toyota's Motion in Limine No. 1 to Limit the Scope of the Trial Testimony of Dr. Steven Nichols (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2667128 (Trial Motion, Memorandum and Affidavit) Toyota's Motion in Limine No. 3 to Preclude Paice from Presenting at Trial Evidence of Conception of the Claimed Inventions Before the Respective Filing Dates of the Patents-In-Suit (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2667127 (Trial Motion, Memorandum and Affidavit) Toyota's Reply Memorandum in Support of Its Motion to Adjourn the Trial and to Reopen and Compel Discovery on Paice's Experimental Testing (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 2666724 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Opposition to the Toyota Defendants' Motion to Adjourn The Trial and to Reopen and Compel Discovery on Paice's Experimental Testing (Aug. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 2667126 (Trial Motion, Memorandum and Affidavit) Toyota's Reply Memorandum in Support of Its Motion for Summary Judgment of Non-Infringement (Aug. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 2299500 (Trial Motion, Memorandum and Affidavit) Toyota's Motion to Adjourn the Trial and to Reopen and Compel Discovery on Paice's Experimental Testing (Aug. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 2299566 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Second Motion to Compel (Aug. 4, 2005) Original Image of this Document (PDF)
• 2005 WL 4656522 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Second Motion to Compel (Aug. 4, 2005)
• 2005 WL 2299563 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for Summary Judgment of Non-Infringement and Substitute Memorandum in Support Thereof (Aug. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 4656521 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for Summary Judgment of Non-Infringement and Substitute Memorandum in Support Thereof (Aug. 2, 2005)
• 2005 WL 1924120 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for Summary Judgment of Non-Infringement and Memorandumin Support Thereof (Jul. 15, 2005) Original Image of this

Document (PDF)
• 2005 WL 4656520 (Trial Motion, Memorandum and Affidavit) Toyota's Motion for Summary Judgment of Non-Infringement and Memorandum in Support Thereof (Jul. 15, 2005)
• 2005 WL 1365999 (Trial Motion, Memorandum and Affidavit) Paice LLC's Reply Brief in Support of Its Motion to Compel (Apr. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 4656519 (Trial Motion, Memorandum and Affidavit) Paice LLC's Reply Brief in Support of Its Motion to Compel (Apr. 8, 2005)
• 2005 WL 1365994 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Motion to Compel (Apr. 5, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 4656518 (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Motion to Compel (Apr. 5, 2005)
• 2005 WL 1365985 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice Llc's Claim Construction Reply Brief (Mar. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 1365990 (Trial Motion, Memorandum and Affidavit) Toyota's Response to Plaintiff Paice LLC's Claim Construction Brief (Mar. 29, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 4656516 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC'S Claim Construction Reply Brief (Mar. 29, 2005)
• 2005 WL 4656517 (Trial Motion, Memorandum and Affidavit) Toyota's Response to Plaintiff Paice LLC's Claim Construction Brief (Mar. 29, 2005)
• 2005 WL 1365969 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice Llc's Claim Construction Brief (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 1365976 (Trial Motion, Memorandum and Affidavit) Opening Memorandum in Support of Defendants' Proposed Claim construction (Mar. 8, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 4656514 (Trial Motion, Memorandum and Affidavit) Plaintiff Paice LLC's Claim Construction Brief (Mar. 8, 2005)
• 2005 WL 4656515 (Trial Motion, Memorandum and Affidavit) Opening Memorandum in Support of Defendants' Proposed Claim Construction (Mar. 8, 2005)
• 2004 WL 3358538 (Trial Pleading) Paice Llc's Answer to Defendants' Counterclaims (Aug. 19, 2004) Original Image of this Document (PDF)
• 2004 WL 3361597 (Trial Pleading) Toyota's Answer, Affirmative Defenses, and Counterclaims (Jul. 30, 2004) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2385139 (E.D.Tex.)
**(Cite as: Slip Copy)**

• <u>2004 WL 4908846</u> (Trial Pleading) Toyota's Answer, Affirmative Defenses, and Counterclaims (Jul. 30, 2004)
• <u>2004 WL 3358536</u> (Trial Pleading) Complaint (Jun. 8, 2004) Original Image of this Document (PDF)
• <u>2004 WL 4908845</u> (Trial Pleading) Complaint (Jun. 8, 2004)
• <u>2:04cv00211</u> (Docket) (Jun. 8, 2004)
• <u>2002 WL 33928484</u> (Trial Motion, Memorandum and Affidavit) Toyota's Opposition to Plaintiff Paice LLC's Motion to Preclude USE of Certain of Defendant and Counter-Claim Plaintiff' Designations of Deposition Testimony at Trial (Dec. 13, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT K

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**

Briefs and Other Related Documents
Rates Technology Inc. v. Redfish Telemetris, Inc.E.D.N.Y.,2001.Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
RATES TECHNOLOGY INC., Plaintiff,
v.
REDFISH TELEMETRIX, INC., T-2000, Christopher Miner, and Gregory Romines, Defendants.
No. 99-CV-4644(RR).

Dec. 20, 2001.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE A. SIMON CHREIN

CHREIN, Magistrate J.
*1 By Order dated November 8, 1999, the Honorable Reena Raggi referred the above-captioned matter to the undersigned Magistrate Judge to conduct an inquest and prepare a report and recommendation on Plaintiff's damages, costs, and fees in view of the entry of default judgment against Defendant T-2000. For the reasons stated herein, I respectfully recommend that a default judgment be entered in the amount of $60,000 and that Plaintiff be granted prejudgment interest, a permanent injunction, and attorneys fees, which are to be assessed upon the filing of contemporaneous time records by Plaintiff.

BACKGROUND

This action was original commenced by Rates Technology, Inc. ("Plaintiff") against Redfish Telemetrix, Inc. ("Defendant Redfish") for patent infringement arising under 35 U.S.C. § § 271 and 281 through 285. (Complaint ¶ 3). <u>FN1</u> Plaintiff accused Defendant Redfish of producing, advertising, and marketing a patented device ("Rateseeker") in violation of three patents owned by Plaintiff. (Id. ¶ 12, Ex. 4). Prior to the issuance of the patent to Defendant Redfish for Rateseeker, Plaintiff had received three patents ("Plaintiff's Patents") for a device and method used to determine the cost of telephone calls in order to send the calls along the least costly route, as well as a method and system for updating calling rate databases.<u>FN2</u> (Id. Ex. 1-3). Plaintiff alleged that

Defendant Redfish failed to disclose the existence of Plaintiff's Patents when it applied for a patent for the Rateseeker device, which also provides a method and system for updating a call rating database.<u>FN3</u> (Id. ¶ 14). Plaintiff claimed that Defendant Redfish's Rateseeker patent was invalid because the device was not novel, and that Defendant Redfish's actions resulted in damages of not less than $5 million based on lost profits and/or reasonable royalties. (Id.; Id. ¶ C). Plaintiff also requested treble damages, prejudgment interest, an injunction, and attorneys fees and costs. (Id. ¶ ¶ C-F).

> FN1. All references to Plaintiff's Complaint for Patent Infringement and Demand for Jury Trial, dated August 10, 1999, are herein referred to as "Complaint."

> FN2. The patents, Numbers 4888822, dated December 19, 1989, 5425085, dated June 13, 1995, and 5519769, dated May 21, 1996, were issued to Gerald J. Weinberger, Roger C. Lee, and Stanley F. Miller.

> FN3. The patent, Number 5881139, dated March 9, 1999, was issued to Gregory Romines, an officer of Redfish Telemetrix, Inc.

Plaintiff and Defendant Redfish engaged in a first round of settlement discussions from approximately January 1999 to August 1999. (Am. Complaint ¶ 31).<u>FN4</u> Plaintiff alleges that at some point during the settlement discussions Defendant Redfish and/or Gregory Romines ("Romines"), an officer of Defendant Redfish, transferred or assigned the rights to the Rateseeker patent to T-2000 ("Defendant T-2000"), or otherwise licensed to Defendant T-2000 to use the patent for insufficient and/or inadequate consideration. (Id. ¶ ¶ 26-28). Plaintiff alleged that Defendant Redfish effected the transaction in order to avoid any liability for its patent infringement, and that Defendant T-2000 was aware of the fraudulent nature of the transaction. (Id. ¶ ¶ 27, 28). Defendants Redfish, Christopher Miner ("Miner"), president of Defendant Redfish, and Romines admitted to granting a limited right to Defendant T-2000 to sell the Rateseeker device, but denied that the transaction was fraudulent or was intended to avoid liability for any infringement claims made by Plaintiff. (Answer ¶ ¶ 22, 27-28).<u>FN5</u>

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

FN4. All references to the Plaintiff's First Amended Complaint for Patent Infringement, Declaratory Relief, Fraudulent Conveyance, and Fraud and Deceit; and Demand for Jury Trial, dated September 28, 1999, are herein referred to as "Am. Complaint."

FN5. All references to the Defendants Redfish, Miner, and Romines' Answer to Complaint; and Cross-Complaint, dated November 22, 1999, are herein referred to as "Answer."

**\*2** Following the transfer, Plaintiff amended its complaint to include Defendants T-2000, Miner, and Romines. (Am. Complaint ¶¶ 3-5). The Amended Complaint requested trebled damages in the sum of $15 million from Defendants Redfish and Miner based on lost profits and/or a reasonable royalty. In addition, Plaintiff requested $5 million, plus punitive and exemplary damages in an amount no less than $10 million from Defendants Redfish and Miner for fraud and deceit,[FN6] a ruling that the Rateseeker patent was invalid, the setting aside of the conveyance of Rateseeker patent to Defendant T-2000, an injunction preventing Defendants Redfish and T-2000 from further patent infringement, and attorneys fees and costs. (*Id.* ¶¶ A-K).

FN6. In the Amended Complaint, Plaintiff asserted that the fraudulent transfer occurred between Defendants Redfish, Romines, and T-2000, (Am. Complaint ¶ 26), but only sought damages for fraud and deceit against Defendants Redfish and Miner, (*Id.* ¶ G), presumably for engaging in settlement discussions in bad faith. (*Id.* ¶¶ 31-34).

A. Defendants Redfish, Miner, and Romines.

On November 22, 1999, Defendants Redfish, Miner, and Romines submitted an Answer and Cross-Complaint denying all allegations of wrongdoing and requested that Plaintiff's Patents be declared invalid. *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. Nov. 26, 1999). Plaintiff's responsive pleading requested dismissal of the cross-complaint of Defendant/Counterclaimants, and reiterated its claims for damages totaling $30 million, its requests for the invalidation of the Rateseeker patent, and injunctive relief. *Rates Technology Inc. v. Redfish Telemetrix,*

*Inc.,* 99-CV-4644 (RR) (E.D.N.Y. Dec. 17, 1999).

On January 4, 2001, Defendant Redfish filed a notice of bankruptcy. *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. Jan. 4, 2001). On June 26, 2001, following settlement of Plaintiff's claim for $20,000, Plaintiff and Defendants Redfish, Miner, and Romines filed a stipulation of dismissal of claims with prejudice and without cost to either party. (Sup. Dec. ¶ 9)[FN7]; *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. June 26, 2001). On August 28, 2001, the case was closed.

FN7. All references to Plaintiff's Supplemental Declaration Re Statement of Damages in Support of Default Judgment against Defendant T-2000, dated November 18, 2001, are herein referred to as "Sup. Dec."

B. Defendant T-2000.

On November 8, 1999, a default judgment was entered against Defendant T-2000. *Rates Technology Inc. v. Redfish Telemetrix, Inc .,* 99-CV-4644 (RR) (E.D.N.Y. Nov. 8, 1999). On September 13, 2000, Plaintiff was granted a fourth extension of time to serve Defendant T-2000 with a written submission of damages by November 30, 2000. *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. September 26, 2000). As the Court's records did not disclose a filing of a computation of damages by Plaintiff, and the submissions received presented an insufficient basis for this Court to make a determination of the total amount of damages suffered by Plaintiff or the amount of damages assignable to Defendant T-2000, I issued an Order dated November 2, 2001, directing Plaintiff to file additional submissions regarding damages. *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. November 6, 2001). In response to that Order, James B. Hicks, co-counsel for Plaintiff, filed a Supplemental Declaration Re Statement of Damages in Support of Default Judgment against Defendant T-2000. *Rates Technology Inc. v. Redfish Telemetrix, Inc.,* 99-CV-4644 (RR) (E.D.N.Y. November 26, 2001).

DISCUSSION

1. Default Judgment.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 3
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*3** A defendant's default is deemed an admission of all well-pleaded allegations in the complaint pertaining to liability. *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc.,* 193 F.R.D. 87 (E.D.N.Y.2000). However, damages must still be proven and the burden is on the applicant to establish his or her entitlement to recovery. *See Greyhound,* 973 F.2d at 158. While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.,* 122 F.R.D. 151, 156 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2d Cir.1989). In this case, because Defendant T-2000 did not answer, the determination of damages must be based solely on Plaintiff's submissions.

## II. Patent Infringement Claims.

### A. Damages Under 35 U.S.C. § 284.

#### 1. Primary Damages.

The statutory instruction for awarding damages for patent infringement is that the award must be "adequate to compensate for the infringement but in no event less than reasonable royalty for use of the invention." 35 U.S.C. § 284. The patent owner bears the burden of proving the amount of damages. *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1029 (Fed.Cir.1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1217 (Fed.Cir.1993). When damages cannot be ascertained with precision because the evidence available from the infringer is inadequate, any doubts must be resolved against the infringer. *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1572 (Fed.Cir.1996) (when defendant failed to retain production records during litigation period, district court drew strong adverse inference that records would have been unfavorable to defendant); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1065 (Fed.Cir.1983). "[W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Lam,* 718 F.2d at 1065 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563

(1931)).

#### a. Lost Profits.

Lost profits are the preferred method of assessing damages for patent infringement under 35 U.S.C. § 284. See *Del Mar Avonics, Inc. v. Quinton Instrument Co.,* 836 F.2d 1320, 1326 (Fed.Cir.1987). In order to show lost profits, the patent holder must establish the sales and profits lost as a result of the infringement. *Pentech Int'l, Inc. v. Hayduchok,* 931 F.Supp. 1167, 1173 (S.D.N .Y.1996),*citing Rite-Hite Corp. v. Kelly Co.,* 56 F.3d 1538, 1545 (Fed.Cir.1995), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.E.2d 122 (1995). The Federal Circuit has adopted a four-part test by which the patent holder may establish lost profits, which requires the patent holder to show: (1) that a demand for the patented product existed; (2) that there is an absence of acceptable non-infringing substitutes; (3) that the patentee possessed the manufacturing and marketing capability to exploit the demand; and finally, (4) the amount of lost profits due to the infringing activity or the amount of profit the patentee would have made. *Fonar Corp. v. General Electric Co.,* 107 F.3d 1543, 1553 (Fed.Cir.1997), *citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978); *Pentech,* 931 F.Supp. at 1173; *see Sensonics,* 81 F.3d at 1572. Once the patent holder has made that showing, a court may reasonably infer that the lost profits claimed were indeed caused by the infringing activity. *Rite-Hite,* 56 F.3d at 1545. The burden then shifts to the infringer to show that this inference is not reasonable for some or all of the lost profits. *Id.*

#### b. Reasonable Royalty.

**\*4** If the patent holder is unable to show lost profits, as is the case here, the minimum statutory recovery is the amount of reasonable royalty due to the patent holder by the infringer. 35 U.S .C. § 284; *Pentech,* 931 F.Supp. at 1173; *Rite-Hite,* 56 F.3d at 1544, *citing Del Mar Avonics,* 836 F.2d at 1326. However, where the patent holder presents little or no satisfactory evidence upon which the court could determine a reasonable royalty, the court may choose to not grant any royalty. For example, in *Devex Corp. v. General Motors Corp.,* 667 F.2d 347, 363 (3d. Cir.1982), *aff'd on other grounds,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.E.2d 211 (1983), the Third Circuit did not award any royalty for a portion of the patent infringement where the patentee's proposed standard for that portion "was vitiated by the facts, and there was insufficient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

evidence of the record upon which the fact finder could rely in formulating an alternative." *Id.* The court stated that while 35 U.S.C. § 284 requires the award of a reasonable royalty, "to argue that this requirement exists even in the absence of any evidence from which a court may derive the reasonable royalty goes beyond the possible meaning of the statute." *Id.* at 363. *See Pentech,* 931 F.Supp. at 1173 (where patentee failed to prove the total amount of incremental profit that it should have made absent the infringing activity, and the court could not otherwise determine the amount of patentee's lost profits, patentee's request for lost profits was reduced accordingly); *see also Lindemann Maschinenfabrick Gmbh v. American Hoist & Derrick Co,* 895 F.2d 1403, 1407 (Fed.Cir.1990) (patentee who puts on little or no satisfactory evidence of a reasonable royalty could not successfully appeal a district court's award of damages on the grounds that the award was not "reasonable" and in contravention of 35 U.S.C. § 284), *citing Rail Road Dynamics Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1519 (Fed .Cir.1984) ("One who fails to submit evidence in support of the position cannot be heard on appeal to complain the trial court failed to find facts upholding that position"), *cert. denied.* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

### c. Damages Award.

Following settlement with Defendant Redfish, Plaintiff requested that the court grant Plaintiff a default judgment for the amount of $14,980,000 against Defendant T-2000 ($15 million minus the $20,000 obtained in the settlement agreement with Defendant Redfish). (Sup. Dec.). Plaintiff asserted that its attempts to provide any statement of damages have been continually delayed by Defendants Redfish, Miner, Romines, and T-2000's refusal to provide any discovery. (*Id* . ¶¶ 4, 5). Specifically, Plaintiff asserts that Defendant T-2000's failure to appear in this matter has impeded its ability to obtain discovery against the defaulting defendant.

Although, for the reasons explained above, any doubt as to the amount of damages is to be resolved against Defendant T-2000, despite repeated opportunities, Plaintiff has failed to set forth any proof of damages beyond a generalized statement that it has suffered damages in the amount of $15 million. (*Id.* ¶¶ 7, 8). Although constrained by a lack of discovery in this litigation, certainly Plaintiff could have presented evidence accessible to it through other means, such as its own records of past profits or royalties generated from other clients or businesses by the three patents in

question. Plaintiff chose not to do so, and therefore damages cannot be based on lost profits.

\*5 Turning to the statutory floor of reasonable royalty, while Plaintiff's failure to present any basis for determining damages could also result in no award on this basis, I do not wish to reward Defendant T-2000 for disregarding its duty to answer. Therefore, I would find that damages based on a reasonable royalty are in order. *See Microsoft Corp. v. Wen & DC 2000,* 2001 WL 1456654 (N.D.Ca.2001) (after granting default judgment, court awarded more than just nominal damages to plaintiff on the premise that damage awards in copyright infringement cases must make infringement unprofitable). Plaintiff settled the original litigation with Defendants Redfish, Miner, and Romines for $20,000. This figure presumably took into consideration Defendant Redfish's notice of bankruptcy and the lower costs and fees associated with settlement versus litigation. Based on the above, I would find that Plaintiff's damages should be based on reasonable royalty in the amount of $20,000, which is to be trebled, as discussed below.

### 2. Enhanced Damages Under 35 U.S.C. § 284.

Under 35 U.S.C. § 284, damages for patent infringement may be increased "up to three times the amount found or assessed" upon a showing of deliberate or willful infringement. *American Safety Table Co. v. Schreiber,* 415 F.2d 373, 378 (2d Cir.1969), *cert. denied Schreiber v. American Safety Table Co.,* 396 U.S. 1038, 90 S .Ct. 683, 24 L.Ed.2d 682 (1970); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 891 F.Supp. 751, 814 (E.D.N.Y.1995), *aff'd,* 96 F.3d 1409 (Fed.Cir.1996). The Federal Circuit has set forth a two-step process for determining whether enhanced damages should be awarded upon a finding of infringement. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1569-1570 (Fed.Cir.1996).

First, the court is to determine whether the infringer is guilty of conduct that would merit increased damages, such as bad faith actions or willful infringement showing culpability.[FN8] *Id.* at 1570. Relevant factors used in determining cope ability may include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, once he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-827 (Fed.Cir.1992), *abrog'd on other grounds* by *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed.Cir.1995) (en banc); *Pentech,* 931 F.Supp. at 1178; *Stryker,* 891 F.Supp. at 834.

> FN8. The court was careful to point out that the term "bad faith" has a specific meaning in the context of assigning increased damages under 35 U.S.C. § 284, stating " 'bad faith' properly refers to an infringer's failure to meet his affirmative duty to use due care in avoiding infringement of another's patent rights," and not merely misconduct in the prosecution of or litigation over a patent. *Id.* at 1570-1571. The court acknowledged, however, that the latter type of bad faith could certainly be used "in determining whether or how much to increase the damage award once sufficient culpability is found." *Id.* at 1571. However, other decisions issued or affirmed by the Federal Circuit include defendants behavior in litigation as one of the nine factors which may be used in determining culpability, including *Stryker,* which was affirmed by the Federal Circuit the same year as the *Jurgens* decision was issued. *See Stryker,* 96 F.3d 1409. *See also Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-827 (Fed.Cir.1992), *abrog'd on other grounds* by *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed.Cir.1995) (en banc); *Pentech,* 931 F.Supp. at 1178.

Upon a finding of willful infringement, determining whether to award enhanced damages, and if so, to what extent, are matters within the discretion of the court, and is informed by the totality of the circumstances. *See* 35 U.S.C. § 284; *Jurgens,* 80 F.3d at 1570; *Read* 970 F.2d at 826; *State Industries, Inc. v. Mor-Flo Industries, Inc.,* 948 F.2d 1573, 1576 (Fed.Cir.1991).

**\*6** Assuming Plaintiff's submission to the true, Defendant T-2000 engaged in a fraudulent transfer in order to aid Defendant Redfish in its attempts to avoid liability and frustrate Plaintiff's attempts to pursue its infringement claims or enforce any judgment obtained against Defendant Redfish.[FN9] As this act of collusion was effected following commencement of this

litigation by Plaintiff against Defendant Redfish, there is a strong presumption that Defendant T-2000 was aware that Rateseeker patent could potentially be invalid at the time of the transfer. Certainly, Defendant T-2000 received actual notice of Plaintiff's patent rights following receipt of Plaintiff's Amended Complaint, which was served upon October 7, 1999. (*See* Default Judgment).[FN10] Once Defendant T-2000 was put on notice, it had an affirmative duty to exercise due care in order to determine whether or not the Rateseeker patent infringed upon Plaintiff's Patents. *See Variable Parameter Fixture Development Corp. v. Morpheus Lights Inc.,* 1994 WL 419830 at 1 (S.D.N.Y 1994), *citing Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389 (Fed.Cir.1983). It is clear that a Defendant T-2000 did not exercise the necessary due care.

> FN9. Plaintiff's Council, James B. Hicks, additionally claimed that Defendant Redfish's attorney, Lance Brewer, informed him that Defendant Redfish was reluctant to participate in any discovery that would aid in Plaintiff's attempts to obtain a default judgment against Defendant T-2000. (Sup. Dec. ¶ 5). However, as this matter was settled, I do not have to reach a decision on the merits of the claims of patent infringement or bad faith actions by Defendants Redfish, Miner, and Romines.

> FN10. The Default Judgment was signed by Judge Raggi on November 8, 1999.

Based on Defendant T-2000's collusive actions in accepting the Rateseeker patent from Defendant Redfish and its failure to exercise due care upon actual notice of its potentially infringing activities, it is clear that Defendant T-2000 willfully infringed on Plaintiff's Patents, warranting enhanced damages. In addition, there is also the issue of Defendant T-2000's actions, or lack thereof, in this litigation. Its failure to answer Plaintiff's allegations of fraud and deceit set forth in the Amended Complaint certainly lends itself to a showing of bad faith. *See Jurgens,* 80 F.3d at 1569-1570; *See also Lyons Partnership, L.P. v. AAA Entertainment Inc.,* 1999 WL 1095608 at 4 (S.D.N.Y., 1999) (in copyright infringement case, defaulting defendant's failure to respond to plaintiff's allegations was relevant consideration in concluding that defendant acted in bad faith). Based on the foregoing, I would award treble damages in the amount of $60,000 to Plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

B. Prejudgment Interest.

Pursuant to 35 U.S.C. § 284, prejudgment interest is ordinarily awarded, absent some justification for withholding such an award. *General Motors,* 461 U.S. 648, 656-657, 103 S.Ct. 2058, 76 L.E.2d 211 (1983). The actual determination of the interest rate and whether to award simple or compound interest are matters left to the court's discretion. *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1545 (Fed Cir.1991); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 556-57 (Fed.Cir.1984).

The purpose of prejudgment interest is to adequately compensate the patent owner for the use of its money during the infringing period. *Bio-Rad Lab., Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed.Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3187, 96 L.Ed.2d 675 (1987). Prejudgment interest may be awarded on lost profits or reasonable royalty. *Braintree Laboratories, Inc. v., Nephro-Tech, Inc.,* 81 F.Supp.2d 1122, 1138 (D.Kan.2000); *see Gyromat,* 735 F.2d at 556 (holding that prejudgment interest was properly applied to both lost profits and reasonable royalty portions of damages by lower court). However, the court may only apply it to the primary or actual damage portion of the damages award, and not the increased or punitive portion of the damages award based on finding of willful infringement. *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1580 (Fed.Cir.1991). Prejudgment interest is awarded from the date of infringement until entry of judgment. *Nickson Industries v. Rol Mfg. Co.,* 847 F.2d 795, 800 (Fed.Cir.1988).

*7 Although Plaintiff did not specifically request prejudgment interest in its Supplemental Declaration, it did request prejudgment interest from Defendant T-2000 in its Amended Complaint. (Am. Complaint ¶ F). As Defendant T-2000 did not to attempt to make any showing of extraordinary circumstances that would warrant a denial of prejudgment interest, I would award Plaintiff prejudgment interest.

Plaintiff did not specify the particular rate at which it wished to be compensated, thereby leaving the matter to the court's discretion. I would award prejudgment interest at the three-month Treasury Bill interest rate, compounded quarterly on the primary damages award of $20,000. *See BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 774 F.Supp. 832, 837 (S.D.N.Y.1991) (awarding prejudgment interest at the three-month Treasury Bill rate compounded quarterly),

*aff'd in relevant part,* 1 F.3d 1214 (Fed.Cir.1993); *Allen Archery, Inc. v. Browning Manufacturing Co.,* 898 F.2d 787, 789 (Fed.Cir.1990) ("[t]he three-month Treasury Bill represents a benchmark as the shortest-term, risk-free investment available to ordinary investors and is a proper basis upon which to compensate [the patentee] for the foregone use of the money"). The interest should be calculated from the date upon which Defendant T-2000 was served the Amended Complaint, and run until the date of entry of final judgment against Defendant T-2000.[FN11]

FN11. Defendant T-2000 was served the Amended Complaint on October 7, 1999.

C. Injunctive Relief.

Under 35 U.S.C. § 283, the district court has discretion to grant an injunction to prevent additional patent infringement, "on such terms as the court deems reasonable." According to Federal Circuit, "[i]t is the general rule that an injunction will be issued when infringement has been adjudged, absent a sound reason for denying it," *Richardson v. Suzuki Motors Co., Ltd.,* 868 F.2d 1226, 1247 (Fed.Cir.1983), although the district court enjoys considerable discretion in determining whether an injunction is necessary under the particular facts of the situation. *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1272 (Fed.Cir.1989). Plaintiff has requested that the court issue an injunction preventing the further use of the Rateseeker device, as it infringed upon Plaintiff's Patents. (Am. Complaint ¶   I). Based on the uncontroverted evidence of patent infringement by Defendant T-2000, I would grant Plaintiff a permanent injunction prohibiting Defendant T-2000 from further infringing on Plaintiff's Patents, unless and until such time that it to enters into an additional voluntary arrangements with Plaintiff to the contrary.

D. Attorney's Fees Under 35 U.S.C. § 285.

1. Propriety of Fee Award.

The court may award reasonable attorney's fees in exceptional patent cases. 35 U.S.C. § 285. Whether a case is "exceptional" is a question of fact, and the determination of whether to award attorney's fees is within the court's discretion. *Stryker,* 891 F.Supp. at 834. A finding of willfulness is a sufficient basis to find a case exceptional, thereby permitting an award of attorney fees. *Del Mar Avionics, Inc. v. Quinton*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*Instrument Co.,* 836 F.2d 1320, 1329 (Fed.Cir.1987) (affirming award of attorney's fees based on finding of willful infringement); *see Variable,* 1994 WL 419830 at 8 (where defendant had actual notice of another's patent rights and failed to exercise due care to determine whether his actions constitute infringement, and further engaged in behavior making discovery difficult, court found infringing activity to be willful and awarded attorney's fees). Although Plaintiff did not specifically requested attorney's fees in its Supplemental Declaration, it did make such a request in its Amended Complaint. (Am. Complaint ¶ J). As I have already found Defendant T-2000's behavior to be willful, warranting a treble increase in damages, I would also find this case to be an exceptional one under 35 U.S.C. § 285 and award attorney's fees to Plaintiff.


### 2. Contemporaneous Records.

**\*8** In order for reasonableness to be determined, an application for attorney's fees must be accompanied by contemporaneous time records which describe with specificity the work done. *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 898 F.Supp 116, 121 (E.D.N.Y.1995) (in patent infringement case, attorney's records must specify the attorney, date, hours expended, and nature of work done in order to recover attorney's fees); *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d. Cir1983) (announcing that accurate and contemporaneous time records are a prerequisite for attorneys fees in the Second Circuit). Plaintiff has not yet submitted contemporaneous time records. Therefore, I would keep open the question of the determination of attorneys fees until such time as the records have been submitted. I would respectfully recommend that the court direct those records to be filed January 21, 2002.


### E. Costs.

Although Plaintiff did make a generalized request for costs in its Amended Complaint, (Am. Complaint ¶ J), it did not specify any particular costs for which it wished to be reimbursed. Therefore I would recommend that each party bear its own costs. *See Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l Inc.,* 246 F.3d 1336, 1362 (Fed.Cir.2001) (upon a finding of willful patent infringement, court required each party to bear its own costs); *Stryker Corp.,* 96 F.3d at 1418 (upon a finding of willful patent infringement, court required each

party to bear its own costs).


### CONCLUSION

For the reasons set forth above, it is the respectful recommendation of the undersigned that Plaintiff's application for unpaid royalties pursuant to 35 U.S.C. § 284 be granted in the amount of $20,000, and that interest be awarded on this sum in an amount to be computed by the Clerk of the Court applying the standards set forth in Section II.B of this report and recommendation. I further recommend that primary damages be trebled to $60,000, and that a permanent injunction be issued against further use by Defendant T-2000 of the Rateseeker device or patent. In addition, I recommend that attorneys fees be granted upon the filing of contemporaneous time records. Finally, I recommend that costs not be granted to Plaintiff.

Any objections to the recommendations contained herein must be filed with the Honorable Reena Raggi on or before January 14, 2002. 28 U.S.C. § 636; Fed.R.Civ.P. 6, 72. Failure to object will preclude appellate review.

E.D.N.Y.,2001.
Rates Technology Inc. v. Redfish Telemetris, Inc.
Not Reported in F.Supp.2d, 2001 WL 1825854 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:99cv04644 (Docket) (Aug. 10, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT L

Westlaw.

Slip Copy                                                                                                                Page 1
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Rosco, Inc. v. Mirros Lite Co.E.D.N.Y.,2006.Only the
Westlaw citation is currently available.
United States District Court,E.D. New York.
ROSCO, INC., Plaintiff,
v.
MIRROR LITE COMPANY, Defendants.
**No. CV-96-5658 (CPS).**

Sept. 29, 2006.

Max Moskowitz, Ostrolenk, Faber, Gerb & Soffen,
L.L.P., New York, NY, for Plaintiff.
John S. Artz, Artz & Artz, Southfield, MI, Thomas M.
Furth, New York, NY, for Defendants.

MEMORANDUM OPINION AND ORDER
SIFTON, Senior Judge.
*1 In 1996, Rosco, Inc., brought this action against
Mirror Lite asserting claims of design patent
infringement, trade dress infringement, false
designation of origin, tortious interference with
business relationships, misrepresentation in violation
of 15 U.S.C. § 1125(a), and common law trademark
infringement. In addition to damages, the complaint
sought declaratory and injunctive relief pursuant to 29
U.S.C. § § 2201 and 2202. Mirror Lite asserted a
counterclaim of patent infringement in violation of 15
U.S.C. § 1125(a).

The matter was tried before the undersigned sitting
without a jury between March 6 and March 10, 2000.
After appeal to the Federal Circuit and remand for
determination of infringement, I found that Rosco had
infringed Mirror Lite's 984 patent. Now before this
Court is (1) Mirror Lite's motion for a permanent
injunction pursuant to 35 U.S.C § 283; and (2)Rosco's
request for limitations on the scope of post-trial
damages discovery and correction of factual finding #
16 of my August 26, 2005 opinion, that Rosco sold "in
excess of 150,000 Hawk Eye mirrors."

**BACKGROUND**

*Procedural History*

The facts of this case have already been stated several

times in the prior opinions in this case. *Rosco v. Miller
Lite,* 139 F.Supp.2d 287 (E.D.N.Y 2001); *Rosco v.
Miller Lite,* 304 F.3d 1373 (2d Cir.2002). It is
unnecessary to repeat them fully again here. A
procedural history is offered below.

Rosco's 357 design patent relates to an oval, highly
convex cross-view mirror with a black, flat metal
backing. Rosco applied for this patent in April of 1992,
and the patent issued in April of 1994. Mirror Lite's
984 utility patent relates to an oval cross-view mirror
with a varying radius of curvature along the major axis
of the convex ellipsoid mirror lens. Mirror Lite
applied for this patent in September of 1992, and the
patent issued in December of 1996.

In its complaint, Rosco sought a declaratory judgment
that all claims of Mirror Lite's 984 patent were invalid
and unenforceable due to Mirror Lite's inequitable
conduct in procuring the patent and a finding that
Mirror Lite infringed its 357 patent. Mirror Lite filed
a counterclaim alleging that Rosco infringed the 984
patent. At trial, Mirror Lite contended that Rosco's
patent was invalid as functional and therefore not
infringed.

After a bench trial, I held in relevant part that Rosco's
357 patent was invalid as functional and obvious
pursuant to 35 U.S.C. § 103.[FN1] I also found Mirror
Lite's patent invalid under 35 U.S.C. § 102(e) [FN2] and
(g).[FN3] Accordingly, I did not reach the merits of
Mirror Lite's patent infringement claim.

> FN1. 35 U.S.C. § 103 limits patentability
> if the differences between the subject matter
> sought to be patented and the prior art are
> such that the subject matter as a whole would
> have been obvious at the time the invention
> was made to a person having ordinary skill in
> the art to which said subject matter pertains.

> FN2. 35 U.S.C. § 102(e) provides that
> person is entitled to a patent unless the
> invention was the subject of a previously
> issued patent.

> FN3. 35 U.S.C. § 102(g) provides that
> person is entitled to a patent unless "before
> such person's invention thereof, the invention
> was made in this country by another inventor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

who had not abandoned, suppressed, or concealed it."

The Federal Circuit reversed the holdings that both Rosco and Mirror Lite's patents were invalid. The Court remanded in relevant part for consideration of: 1) whether Mirror Lite had proven by clear and convincing evidence that Rosco's patent was invalid under 35 U.S.C. § 103; 2) whether Mirror Lite had infringed Rosco's patent; 3) whether Mirror Lite's patent was invalid under 35 U.S.C. § § 102(a), [FN4] (f), and 103; 4) whether Mirror Lite's patent was unenforceable due to inequitable conduct; and 5) whether Rosco had infringed on Mirror Lite's patent.

> FN4. 35 U.S.C. § 102(a) provides in part that a person is not entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."

*2 On remand, Mirror Lite conceded that Rosco's patent was valid, while Rosco argued that Mirror Lite's 984 patent was invalid. Rosco contended that prior to the date of Mirror Lite's invention, Rosco had conceived, reduced to practice, and sold mirrors containing all the elements of claims 1, 2, 3, 6, 7, and 8 of the 984 patent, thus rendering it invalid under 35 U.S.C. § 102(a). Benjamin Englander, one of Rosco's owners, testified to that effect. Rosco introduced this mirror as Exhibit 110, called a "Hawk Eye Mirror" based on the 357 patent. Mirror Lite responded that: 1) Rosco failed to show that its previous mirror had decreasing radii of curvature along its major and minor axes and did not contain a reflective outer surface and a non-reflective inner surface; or in the alternative, 2) that Rosco could not show that it appreciated these aspects of its mirror; and 3) that Rosco could not prove that it had used this mirror publicly before the priority date of the 984 patent.

I found that Exhibit 110 did have these qualities, that Rosco had used the mirror publicly, and that Rosco had anticipated Mirror Lite's patent under 35 U.S.C. § 102. I also held that Mirror Lite's 984 patent was unenforceable due to Mirror Lite's inequitable conduct in procuring the patent. Specifically, I held that Mirror Lite had intended to mislead the examiner by failing to disclose prior art.

I also held that Rosco failed to prove its claim of infringement. In particular, Rosco sought to prove that

four of Mirror Lite's mirrors infringed on Rosco's 357 patent, but Rosco had not proven that the four allegedly infringing mirrors appropriated the novelties that distinguished Rosco's 357 patent from prior art.

On appeal for the second time, the Federal Circuit reversed this Court's holding that Exhibit 110 anticipated the 984 patent. Specifically, the Federal Circuit held that Rosco failed to prove by clear and convincing evidence that Exhibit 110 disclosed every claim limitation of the 984 patent because "[t]estimonial evidence of invalidity must be corroborated." Rosco, Inc. v. Mirror Lite, Co., 03-1562, 120 Fed.Appx. 832 (Fed.Cir. Jan. 19, 2005) (unpublished). Rosco presented the testimonial evidence of Benjamin Englander to the effect that he had designed Exhibit 110 and that it contained every element of claims 1, 2, 3, 6, 7, and 8 of Mirror Lite's 984 patent. Exhibit 110 itself, the Federal Circuit held, was insufficient to corroborate this testimony. Nor did the testimony of Rosco's expert witness, Harvey Manbeck, suffice because he based his testimony on Benjamin Englander's representations. With regard to my finding of inequitable conduct by Mirror Lite for failing to disclose prior art, the Federal Circuit held that there was insufficient evidence of Mirror Lite's intent to deceive. The Federal Circuit remanded "for further proceedings solely on the issue of infringement, the determination of which should be made on the existing trial record."

*3 I thereafter determined that Mirror Lite had proven that Rosco infringed Mirror Lite's 984 patent. I also ordered limited additional discovery on two issues: (1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors post-trial; and (2) post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors.

*Recent Factual History*

Rosco now asserts, through the declaration of Benjamin Englander, that Rosco holds patents for constant curvature oval cross-view mirrors [FN5] and has manufactured such mirrors since March 2000, under the Hawk Eye and Mini Hawk Eye registered trademark.[FN6] Englander further asserts that Ed Swain, Bob West, and Jed Routh, three employees of Thomas Buses Built Buses Inc. ("Thomas Buses"), a Rosco customer, informed Englander that Daniel Swain, Vice President of Sales for Mirror Lite, and another unidentified employee of Mirror Lite told the Thomas Buses employees that Mirror Lite had won the case

Slip Copy
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Page 3

against Rosco, that "Rosco is locked out from the cross-view mirror business," that Thomas Buses would no longer be able to buy any Rosco oval cross-view mirrors, and that Rosco's supply agreement with Thomas Buses for oval mirrors would be null and void.

> FN5. The three patents are U.S. patent numbers 6,328,450, 6,282,771 and 6,227,674 and are attached to the Englander Declaration as Exhibit A.

> FN6. If this statement is true then these mirrors would not infringe the 984 patent because they have a constant curvature.

In contrast, defendant submits the declaration of Daniel Swain who states that he never told employees at Thomas Buses that Rosco was "locked out from the cross-view mirror business," that Thomas Buses could no longer buy any oval view mirrors from Rosco, or that Rosco's supply agreement with Thomas Buses for oval mirrors would be null and void. Swain further states that neither he nor anyone else at Mirror Lite ever made a statement to Thomas Buses or anyone else in the industry that Rosco cannot sell cross-view mirrors with a constant radius of curvature.

## DISCUSSION

*Permanent Injunction*

*Should an Injunction be Issued at All?*

35 U.S.C. § 283 grants courts the power to issue permanent injunctions. ("The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.") The Supreme Court has recently held that
[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction.

*eBay Inc. v. Mercexchange, LLC,* 126 S.Ct. 1837, 1839 (2006). Whether to grant or deny a permanent injunction is within the district court's equitable discretion. *Id.*

*4 Rosco first urges that the injunction should be denied because it has ceased to manufacture and sell the infringing products. Cessation of production and sales is not in and of itself sufficient "sound reason" to deny a permanent injunction. *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1282 (Fed .Cir.1988)("The mere fact that [infringer] was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.") Rather, the request for an injunction should be denied only when "the evidence is very persuasive that further infringement will not take place." *Id.* For example, where the infringer no longer had the manufacturing capacity to produce the infringing item, a permanent injunction was not appropriate. *Id.* In this case, the only evidence of Rosco's cessation of infringement is its own statement that it has done so. If this sufficed for the "very persuasive" evidence that infringement had permanently ceased, few permanent injunctions would issue. As explained in *General Electric Co. v. New England Electric Mfg. Co.,* "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him...." 128 F. 738, 740 (2d Cir.1904).

Rosco next argues that equitable considerations require that an injunction not be granted against it. Rosco submits the declaration of Benjamin Englander, who states that Mirror Lite's Vice President of Sales, Daniel Swain, and another Mirror Lite employee have approached employees of Rosco customer Thomas Buses and informed it that Mirror Lite had won the case against Rosco, that "Rosco is locked out from the cross-view mirror business," that the customer will no longer be able to buy any Rosco oval cross-view mirrors, and that Rosco's supply agreement with the customer for oval mirrors will be null and void. FN7 Englander Declaration ¶ 8. Rosco asserts that it produces oval mirrors with constant radii of curvature which are not covered by the Mirror Lite Patent 984. As a result, Rosco claims that Mirror Lite's statements to Thomas Buses employees falsely represent my prior decision and attempt to parlay one patent ruling in its favor into industry domination.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN7. As explained in the facts section above, in his declaration Swain states that he never made any of these statements to personnel at Thomas Buses.

In support of the argument that equitable considerations may prevent the issuance of a permanent injunction, Rosco relies on *Foster v. American Machinery & Foundry Co.,* 492 F.2d 1317, 1324 (2d Cir.1977), holding that, "an injunction to protect a patent against infringement, like any other injunction, is an equitable remedy to be determined by the circumstances. It is not intended as a club to be wielded by a patentee to enhance his negotiating stance ." Rosco also points to *Nerrney v. New York, N.Y. & H.R. Co.,* 83 F.2d 409, 411 (2d Cir.1936) holding that, where "it is recognized that the only real advantage to a plaintiff in granting the injunction would be to strengthen its position ... an injunction should not issue."

\*5 Even assuming that the only purpose of the permanent injunction were for Mirror Lite to strengthen its position, a permanent injunction would still issue because *Foster* and *Nerrney* are distinguishable from this case. In *Foster* the patent owner did not actually manufacture any products covered by the patent. Granting a permanent injunction would have given the patent owner a negotiating advantage in negotiations to license the infringer's use of the patent. Instead the court decided it was more equitable to grant mandatory royalties under a licensing scheme. In this case it is undisputed that Mirror Lite manufactures mirrors covered by its 984 patent. Thus, this is not a case where a mandatory licensing scheme could adequately compensate the patent owner.

In *Nerrney* the requested permanent injunction would have given the patent owner very little benefit, would have huge costs for the railroad infringer, and would have caused a great inconvenience to the public because compliance would necessarily slow down train schedules. In this case, the permanent injunction would not disproportionately burden Rosco. To the extent an oval mirror with a varying radius of curvature is a superior bus mirror, a permanent injunction may be of significant value to Mirror Lite. Further, in *Nerrney* one factor for consideration was that the permanent injunction would inconvenience the public. Here that is not the case, since to the extent the public is interested in purchasing varying radii mirrors or riding on buses equipped such mirrors, such mirrors may be obtained from Mirror Lite. Finally,

even accepting Rosco's portrayal of Mirror Lite's conduct as true, its efforts at self-help are not so egregious as to forfeit its right to the legal protections of an injunction.

*What Should the Scope of the Injunction Be?*

Rosco argues that to the extent Mirror Lite is entitled to an injunction, the proposed injunction submitted by Mirror Lite is overbroad because it: (1) prohibits Rosco from infringing "any claims of the 984 patent" including non-asserted claims 4, 5, and 9 and (2) it prohibits any sale of "Rosco's Hawk Eye and Mini Hawk Eye mirror products despite the fact that, according to Rosco, it uses the "Hawk Eye" mark for mirrors with a constant radius of curvature.

Section 283 requires that the purpose behind an injunction be "to prevent the violation of any right secured by patent." 35 U.S.C. § 283. See also *Eli Lilly and Co. v. Medtronic, Inc.,* 915 F.2d 670, 674 (Fed.Cir.1990) ("an injunction is only proper to the extent it is 'to prevent the violation of any right secured by patent.' "). Therefore, "injunctive relief should be narrowly tailored to fit the specific legal violations." *Gemveto Jewelry Co. v. Jeff Cooper Inc.,* 800 F.2d 256, 259 (Fed.Cir.1986). This is because "judicial restraint of lawful competitive activities ... must be avoided." *Joy Technologies, Inc. v. Flackt, Inc.,* 6 F.3d 770, 777 (Fed.Cir.1993).

\*6 Recognizing that this is the law, in its Reply Mirror Lite submits an amended proposed permanent injunction which prevents infringement only of "claims 1-3 and 6-8 of the 984 patent" and the sale of Hawk Eye and Mini Hawk Eye mirror products only to the extent they have "an oval lens with a varying radius of curvature along the major axis." Amended Proposed Permanent Injunction ¶ 2(b). These changes partially address Rosco's concerns.

The amended permanent injunction also prevents the sale of mirrors with a list of characteristics including "a lens with a varying radius of curvature along the major axis and with such radius decreasing from the intersection with the minor axis to the perimetral edge." Amended Proposed Permanent Injunction 2(c)(7). As this is a characteristic of the infringing Hawk Eye and Mini Hawk Eye mirrors, ¶ 2(c)(7) covers the infringing Hawk Eye and Mini Hawk Eye mirrors. Without resolving the question of whether Mirror Lite has improperly suggested to customers that Rosco is totally out of the business and that all of its Hawk Eye and Mini Hawk Eye mirrors infringe, ¶

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 5
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)
**(Cite as: Slip Copy)**

2(b) of the amended proposed permanent injunction, specifically referring to certain Hawk Eye and Mini Hawk Eye mirrors, should also be struck in order to avoid potential misunderstanding on the part of consumers. Specifically naming the Hawk Eye and Mini Hawk Eye models might mislead consumers into thinking that all Hawk Eye and Mini Hawk Eye mirrors are enjoined. It is sufficient to list the characteristics of infringing mirrors, which would preclude the sale of infringing Hawk Eye and Mini Hawk Eye mirrors, but not all mirrors marketed under those names.[FN8]

> FN8. Although Mirror Lite's requested injunction will issue, modified as described above, such injunction will not issue until after the damages are resolved. At oral arguments I raised the issue of whether there was just reason for delay. *see* Fed.R.Civ.P. 54. Although the liability issue in this case is closed, the amount of damages is as yet undetermined. This would leave the more hotly contested damages issue to be appealed at a later date. It the interest of conservation of judicial resources, the injunction will be issued when the damages issue is decided so that both issues may be appealed together.

### Damages Issues

The measure of damages in an infringement case is "the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507 (1964). There must be adequate evidence in the record to recover lost profits. This requires evidence of "a causal relation between the infringement and its loss of profits." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218 (Fed.Cir.2001). Where the evidence is inadequate to establish lost profits, a Court must determine a "reasonable royalty rate." 35 U.S.C. § 284; *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.,* 895 F.2d 1403 (Fed.Cir.1990).[FN9] Under either a lost profit or reasonable royalty measure, the patent holder must "reconstruct the market to project economic results" of what would have occurred had the market developed absent the infringing product or what agreement would have resulted had a hypothetical negotiation over royalty rates occurred. *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1377 (Fed.Cir.2003); *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302,

1311 (Fed.Cir.2002).

> FN9. In determining a reasonable royalty rate, the Court is to consider, to the extent there is evidence on the record, the factors listed in *Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). *See Dow Chemical Co. v. Mee Indus., Inc.,* 341 F.3d 1370, 1381-82 (Fed.Cir.2003); *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.,* 895 F.2d 1403 (Fed.Cir.1990); *Devex Corp. v. Gen. Motors Corp.,* 667 F.2d 341 (Fed.Cir.1981); *National Presto Indus. v. Black & Decker (U.S.), Inc.,* 760 F.Supp. 699, 701 (N.D.Ill.1991).

### Pre-Trial Damages-Correction of Factual Finding of Number of Units Sold

*7 In the August Opinion, Fact Finding number 16, I found that, "Between February 13, 1997, and February 23, 2000, Rosco has sold in excess of 150,000 Hawk Eye mirrors." In making this finding I explicitly relied on Rosco's Revised Findings of Fact 5. Rosco now argues that the proposed Finding of Facts submitted by Rosco counsel never became part of the pre-trial order,[FN10] and argues that the 150,000 number was a typographical error. Rosco requests that I reconsider this factual finding as the only evidence submitted at trial concerning the number of mirrors sold was testimony by Rosco Owner and Vice President of Finance, Daniel Englander, that 90,000 mirrors were sold. Trial Tr. 479, March 9, 2000. This evidence was undisputed at trial and in fact was relied on by Mirror Lite in the "lost profits" section of its Post Trial Brief on Remaining Issues. As there was no evidence in the record to support the fact that 150,000 Hawk Eye Mirrors were sold, it was a mistake to do that. As the trial evidence is uncontroverted that only 90,000 mirrors were sold, I now find that 90,000 mirrors were sold and that such number should be used in the determination of damages.

> FN10. "Rule 16 (of the Federal Rules of Civil Procedure) indicates that only admissions made at a pre-trial conference and incorporated in a pre-trial order are binding." Fed.R.Civ.P. Rule 16; *Taylor v. Allis-Chalmers Mfg. Co.,* 320 F.Supp. 1381, 1384 (E.D.Pa.1969), *affirmed,* 436 F.2d 416 (3rd Cir.1970). "Proposed findings submitted by counsel are no more than informal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)
(Cite as: Slip Copy)

suggestions for the sole purpose of assisting the court." 7 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2578; *American Elastics v. U.S.,* 84 F.Supp. 198, 199 (S.D.N.Y.1949). Thus, the proposed findings of fact have no evidentiary significance. *City of Cleveland v. Cleveland Elec. Illuminating Co.,* 538 F.Supp 1257,1280 (N.D.Ohio 1980) (the plaintiff has utterly failed to direct the Court's attention to any legal authority which would support [its] rather novel contention that proposed findings of fact ... may properly serve as evidentiary admissions").

*Pre-Trial Damages: Reopening Discovery*

Mirror Lite filed a sur-reply arguing that my consolidation of the 1996 and 1999 cases "did not allow time for either party to make any discovery or retain any experts concerning the damages issue prior to the start of the trial on March 6, 2000" and that accordingly Mirror Lite believed that the damages issue would be heard and tried later and after full discovery. Mirror Lite thus requests that both it and Rosco now be allowed to conduct full discovery on damages, if any, occurring both before and after trial.

However, Mirror Lite never moved to bifurcate the issue of damages. It did not complain that it had inadequate time to conduct discovery on the damages issue. It presented a witness on the issue of damages and briefed the issue in its post-trial submissions. Mirror Lite did not appeal my consolidation order or its obligation to try damages. Accordingly, Mirror Lite will not be permitted to reopen the damages issue at this late date.

*Post-Trial Damages: Scope of Discovery*

This Court's August 26, 2005 Memorandum and Order allowed Mirror Lite to conduct discovery on post-trial damages issues:
Mirror Lite may, however, take additional discovery concerning: (1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors after the trial; and (2) post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors.

While Mirror Lite has been permitted to conduct discovery on post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye Mirrors, this discovery is not intended to supplement evidence of Mirror Lite's pre-trial damages. As already stated in the August Opinion, "to the extent that Mirror Lite failed to meet this burden at trial, it will not be permitted to supplement the record to close any evidentiary gaps."

*8 Each of Mirror Lite's interrogatories and document production requests ask for information and documents for "the period of December 31, 1996 to March 6, 2000" and "the period of March 7, 2000 to the present." The period of December 31, 1996 to March 6, 2000 is the pre-trial period. Discovery on these issues is closed and Mirror Lite will not be permitted to use discovery on post-trial damages to supplement the evidence it has already presented on pre-trial damages.

Interrogatories 1-3 and Requests for Production 1-4 request information on "mirrors" generally or on "all mirrors" without limiting their scope to Hawk Eye and Mini Hawk Eye mirrors. The discovery order specifically limited discover to issues of "post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of oval Hawk Eye and Mini Hawk Eye mirrors." Thus, interrogatories and requests for production on Rosco's production, manufacture and sales of mirrors generally is beyond the scope of permissible discovery.

Rosco further argues that as some Hawk Eye and Mini Hawk Eye Mirrors have a constant radius of curvature and are thus not infringing, Mirror Lite should not be allowed any discovery as to these mirrors. In order to facilitate discovery Rosco suggests that the magistrate judge appoint an independent accountant to audit all of Rosco's books and records and provide an accounting report concerning information only on post-trial varying radii of curvature mirrors.

This solution is inadequate. Rosco is only now contending that some Hawk Eye and Mini Hawk Eye mirrors do not infringe. This may very well be the case. However, Mirror Lite is entitled to determine for itself whether or not some Hawk Eye and Mini Hawk Eye mirrors have a constant radius of curvature and thus do not infringe. An independent accountant is not qualified to investigate the mirrors and make such a determination. Thus, Mirror Lite will be permitted to conduct its own discovery and will not be limited only to a report by an independent accountant. However, discovery of revenues and costs may be limited to those mirrors which are *prima facie* infringing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 7
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Finally, Rosco objects that Mirror Lite's interrogatories and production requests ask for information about hardware that is nowhere recited in the claims found to be infringed such as supplier names and cost of "tripod mounting brackets" "mounting bases, "cross view arms," "mirror arms," "trigger grip bases," "goosenecks," "twist arms," and "bracket kits." [FN11] Rosco is correct that these components are not themselves alleged to have infringed. However, to the extent Mirror Lite will attempt to establish a "reasonable royalty rate" it may be relevant to know the full construction cost of the infringing mirrors, not just the cost of the infringing components. This will assist Mirror Lite in determining the value of the infringing components to Rosco and what part of Rosco's profit may be attributed to the infringing components. *Austral Sales Corp. v. Jamestown Metal Equipment Co.,* 45 F. Supp 360 (W.D.N.Y 1942) (calculating a reasonable royalty based on the infringer's profits). Thus, discovery on this issue is permitted.

> FN11. Interrogatories 10 and 11; Requests for Production 12 and 13.

## CONCLUSION

*9 For the reasons set forth above, Mirror Lite's request for a permanent injunction is granted and its amended proposed permanent injunction, excepting ¶ 2(b) will be entered upon resolution of the remaining damages issues. The pre-trial sale figure of 90,000 infringing mirrors is adopted. Discovery is precluded as to inquiries concerning the December 31, 1996 to March 6, 2000 period and to the extent it requests information on "all mirrors" or on "mirrors" generally.

The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

E.D.N.Y.,2006.
Rosco, Inc. v. Mirror Lite Co.
Slip Copy, 2006 WL 2844400 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2929272 () Declaration of Benjamin Englander (Sep. 12, 2006) Original Image of this Document with Appendix (PDF)
• 2006 WL 2929273 () Declaration of Peter Sinclair (Sep. 12, 2006) Original Image of this Document

(PDF)
• 2005 WL 2892752 (Trial Motion, Memorandum and Affidavit) Rosco's Reply to Mirror Lite's Opposition to Rosco's Request for Reconsideration Concerning the Post-Trial Discovery (Sep. 30, 2005)
• 2005 WL 2892749 (Trial Motion, Memorandum and Affidavit) Rosco's Memorandum of Law in Opposition to Mirror Lite's Motion for a Permanent Injunction (Sep. 21, 2005)
• 2005 WL 2892745 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Permanent Injunction Following Judgment of Infringement (2005)
• 2001 WL 34764439 (Trial Motion, Memorandum and Affidavit) Affidavit of William P. Schmidt (2001)
• 2001 WL 34764440 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendant's Motion for Summary Judgment (2001)
• 2000 WL 34498426 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum Supporting Motion to Strike New Defense Grounds 35 U.S.C. || 102(e) and 103 (Mar. 8, 2000)
• 2000 WL 34498421 (Trial Motion, Memorandum and Affidavit) Plaintiffs Trial Memorandum (Jan. 10, 2000)
• 1999 WL 33929954 (Trial Pleading) Request for Reconsideration of Grant of Summary Judgment on Count V of the First Amended Complaint (Jun. 14, 1999)
• 1998 WL 34321460 (Trial Pleading) Defendant's Responses to Plaintiff's First Set of Requests for Admissions (Jan. 20, 1998)
• 1997 WL 33789612 (Trial Pleading) Second Amended Complaint (Jul. 1997)
• 1997 WL 33789613 (Trial Pleading) Defendant's Answer to First Amended Complaint (Mar. 4, 1997)
• 1:96cv05658 (Docket) (Nov. 19, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT M

Dbt f !3;13.dw.13984.TI N.t ub!!!!!Epdvn f ou3: 5!!!!!Gjmf1: 03903117!!!!!Qbhf !2!pg25

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SMITH & NEPHEW, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 02-2873 Ma/A |
| SYNTHES (U.S.A.) and SYNTHES-STRATEC, INC., | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

ORDER GRANTING PLAINTIFF'S PRAYER FOR ENTRY OF A PERMANENT
INJUNCTION

On November 13, 2002, Plaintiff Smith & Nephew, Inc. ("Smith & Nephew") sued Defendants Synthes (U.S.A.) and Synthes-Stratec, Inc. (collectively, "Synthes") for infringement of two patents, U.S. Patent No. 5,167,663 ("the '663 patent") and U.S. Patent No. 5,312,406 ("the '406 patent"). The patents relate to intramedullary nails and the methods used in the treatment of intertrochanteric femoral fractures using interfragmentary compression. On May 14, 2004, the court held a patent construction hearing under Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996), and entered an order construing the disputed patent terms on August 26, 2004. The case was tried discontinuously without a jury,

1

beginning December 6, 2004, and ending March 4, 2005. On August 26, 2005, this court issued its findings of fact and conclusions of law ("the Memorandum Opinion"). The court found that certain versions of Synthes' Trochanteric Fixation Nail ("TFN") and Proximal Femoral Nail ("PFN") infringed the '663 patent and the '406 patent.

In its complaint, Smith & Nephew prayed for relief in the form of a permanent injunction as well as damages. The court did not address the issue of a permanent injunction in its Memorandum Opinion. Both parties have had an opportunity to brief the court further on that issue, and the issue is now ready for decision. For the following reasons, Plaintiff's request for permanent injunction is GRANTED.

I.  **Background**

Synthes argues principally that (i) Smith & Nephew will not be irreparably harmed because of the limited competition between the primary Smith & Nephew product covered by the '663 and '406 patents and the infringing TFN nails, (ii) Smith & Nephew has shown a willingness to be compensated fully for its patents by money damages because in the past it has licensed the patents to its competitors and has extended several licensing offers to Synthes while this case has been pending, (iii) the overall balance of hardships favors Synthes because Smith & Nephew's business will not be significantly affected by continued sales of

2

the infringing products, and (iv) the public health interest in
having Synthes' allegedly safer and more effective TFN product
available to treat femoral fractures is substantial. (Def.'s
Mem. in Opp'n to Pl.'s Req. for Entry of Permanent Inj., October
3, 2005; Def.'s Resp. to Pl.'s Suppl. Br. Regarding the S. Ct.'s
eBay, Inc. v. MercExchange, L.L.C. Op. at 2, May 17, 2006.)

Smith & Nephew argues that (i) irreparable harm to the sales
of its patented femoral nails has been shown, together with the
loss of market momentum and the ability to form customer
relationships, (ii) money damages would not be adequate
compensation, and (iii) the public health interest would not be
adversely affected by a permanent injunction because substitute
products and methods of treatment are available to the public
through Plaintiff and its selected licensees. Smith & Nephew
argues that it is substantially smaller than Synthes in the field
of manufacturing trauma products, and, therefore, that an
injunction would give Smith & Nephew the competitive support it
needs to expand its customer base, increasing market competition.
(Smith & Nephew's Supplemental Br. Regarding the S. Ct.'s eBay,
Inc. v. MercExchange, L.L.C. Op. at 2-3, May 16, 2006; Pl.'s
Second Suppl. Post-Trial Mem. Supporting Permanent Inj. (with
Revised Proposed Order), October 20, 2005.)

## II.  Applicable Legal Standard

A plaintiff seeking permanent injunctive relief in a patent

infringement dispute must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 126 S. Ct. 1837, 1839, 547 U.S. ___ (2006).

The Court in eBay held that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with the traditional principles of equity, in patent disputes no less than in other cases governed by such standards." Id. at 1841. The Court thus rejected the traditional rebuttable presumption that a permanent injunction is to be automatically awarded to the plaintiff upon a showing of the validity and infringement of the patent. Christiana Indus. v. Empire Elecs., 2006 U.S. Dist. LEXIS 54210, at *5 (E.D. Mich. July 25, 2006). The four-factor eBay test is a balancing test under which the plaintiff must demonstrate that the totality of circumstances weighs in its favor. Canadian Lumber Trade Alliance et al. v. United States et al., 2006 Ct. Intl. Trade LEXIS 103, at *11, slip op. 2006-104 (Ct. Int'l Trade July 14, 2006).

**III. Analysis**

4

**A.  Irreparable Harm Suffered by Smith & Nephew**

Smith & Nephew has presented evidence that it has
suffered irreparable injury to its business because of Synthes'
infringement of the '663 and the '406 patents.
Irreparable harm is "'often suffered when the injury can[not] be
adequately atoned for in money . . . or when the district court
cannot remedy [the injury] following a final determination on the
merits,'" as when the plaintiff loses market share or its
reputation for innovation.  <u>Wald et al. v. Mudhopper Oilfield
Svcs., Inc. et al.</u>, 2006 U.S. Dist. LEXIS 51669, at *16 (W.D.
Okla. July 27, 2006) (quoting <u>Prairie Band of Potawatomi Indians
v. Pierce</u>, 253 F.3d 1234, 1250 (10th Cir. 2001)).  Although
stated as two separate factors under <u>eBay</u>, the irreparable harm
requirement contemplates the inadequacy of alternate remedies
available to the plaintiff.  <u>Canadian Lumber</u>, 2006 Ct. Intl.
Trade LEXIS 103, at *12.  Under the principles of equity to which
the Court referred throughout its opinion in <u>eBay</u>, irreparable
harm means "'that unless an injunction is granted, the plaintiff
will suffer harm which cannot be repaired.'" <u>Id.</u> at *12 (quoting
<u>Studebaker Corp. v. Gittlin</u>, 360 F.2d 692, 698 (2d Cir. 1966)).

When it introduced its patented devices to the market, Smith
& Nephew filled a market gap.  (Trial Tr. 876:23-877:6; Trial Tr.
876:17-22 (Hall)(C).)  Smith & Nephew has demonstrated flattening
sale growth, starting in 2002, in the market for the infringing

devices, attributable to a decreased ability to compete in the market. (Trial Tr. 905:5-910:9.) Synthes' expert admitted that if the infringing products had not been available, he would have used Smith & Nephew products instead. (Trial Tr. 1379:4-19.)

Synthes had stagnant growth in its compression hip screw line before it started producing the infringing products because surgeons chose to treat intertrochanteric fractures with intramedullary devices instead of devices Synthes was producing at that time. (Trial Tr. 876:23-877:17 (Hall)(C); Trial Tr. 908:25-909:14 (James)(D).) Since bringing the infringing products to market, Synthes has enjoyed significant sales in both TFN and PFN products and has identified TFN as one of the two products most important to its growth. (Trial Tr. 908:15-24 (James)(D).)

Synthes admits that competition exists between Smith & Nephew's products and the infringing devices. (Def.'s Mem. in Opp. at 5.) (See also Trial Tr. 908:15-25.) Smith & Nephew has shown that direct competition exists between the infringing products and Smith & Nephew's own products. (Trial Tr. 873:11-874:15 (Hall)(C).) Synthes' TFN and PFN products have had a direct negative impact on sales of Smith & Nephew products protected by the '663 patent, as well as on other Smith & Nephew orthopaedic products. (Trial Tr. 907:24-909:14 (James)(D).) This competition has been shown to reduce Smith & Nephew's

6

ability to create customer relationships.  (Trial Tr. 909:15-
910:8.)  The loss of sales due to the competition not only
affects Smith & Nephew monetarily, but also inhibits the
company's ability to develop new products because it interferes
with the relationships Smith & Nephew is able to form with
surgeons.  (Trial Tr. 902:10-903:1 (James)(D); Trial Tr. 909:15-
910:9 (James)(D).)

The loss of market share and the resulting lost profits and
loss of brand name recognition which Smith & Nephew suffered
because of Synthes' continued sale of the infringing products
constitute injuries that are both incalculable and irreparable.
The court finds no support for Synthes' assertions that Smith &
Nephew has not been irreparably harmed because of the limited
competition between the primary Smith & Nephew product covered by
the '663 and the '406 patents and the infringing products made by
Synthes.

Smith & Nephew has not been willing to accept royalty-type
damages in lieu of the market exclusivity that it intended to
secure by obtaining the '663 and the '406 patents.  Even if it
were, "a plaintiff's willingness to license its patent" is not
"sufficient to establish that the patent holder would not suffer
irreparable harm if an injunction did not issue."  eBay, 126 S.
Ct. at 1841 (citing the district court decision, 275 F. Supp. 2d
at 712 (E.D. Virginia. 2003)).

## B.  Adequacy of Remedies Available at Law

A violation of the right to exclude does not compel the conclusion that a patent holder cannot be adequately compensated by remedies at law, such as monetary damages.  However, by competing in the market for the patented invention with the infringing products and by damaging Smith & Nephew's goodwill and brand name recognition, as shown above, Synthes has violated Plaintiff's exclusionary right in a manner that cannot be compensated adequately through pecuniary damages.  "To recover lost profits, a patent owner must . . . show 'a reasonable probability that "but for" the infringing activity, the patentee would have made the infringer's sales, . . . a showing [that] necessarily entails a "reconstruct[ion] of the applicable market through sound economic proof."  KEG Techs., Inc. et al. v. Reinhart Laimer, Sewer Equip. Corp. et al., 436 F. Supp. 2d 1364 (N.D. Ga. June 8, 2006) (quoting Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1377 (Fed Cir. 2003)).  Such a showing, speculative at best, is more challenging to make in this case because of the presence of other suppliers in this highly competitive industry and the extensive time during which Synthes has been infringing Smith & Nephew's patents.  Damages due to lost sales might theoretically be proven with lesser or greater degree of certainty, but intangible losses, such as the loss of goodwill, can never be ascertained accurately.

8

Even if monetary damages were provable for some tangible components of Smith & Nephew's demand for damages, that relief would not necessarily be equitable. "'It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.'" Canadian Lumber, 2006 Ct. Intl. Trade LEXIS 103, at *18 (quoting Boyce's Ex'rs v. Grundy, 28 U.S. (3 Pet.) 210, 214 (1830)). Relief in the form of monetary damages alone would not meet the ends of justice here because this remedy would allow the infringement to continue. Monetary damages generally are not an adequate remedy against future infringement because the central value of holding a patent is the right to exclude others from using the patented product. Telequip Corp. v. The Change Exchange et al., 2006 U.S. Dist. LEXIS 61469, at *4 (N.D.N.Y., Aug. 15, 2006)(citing Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 397 F. Supp. 2d 537, 546 (D. Del. 2005)). Even if Synthes were to terminate its sales of the infringing products voluntarily, it would be free to return to its offending conduct, thereby further imposing monetary and intangible losses on Smith & Nephew. It is "[t]he purpose of an injunction ... to prevent future violations." Swift & Co. v. United States, 276 U.S. 311, 326 (1928). Indeed, "the entire purpose of an injunction is to take away defendant's discretion not to obey the law." Canadian

9

Lumber, 2006 Ct. Intl. Trade LEXIS 103, at *19.

### C.  The Balance of Hardships

          Patent infringement is a continuing threat to Smith & Nephew.  The hardship to Synthes of permanently enjoining its infringing conduct is limited to the injury ordinarily expected when an injunction is imposed.  "Only 'hardship to the defendant [that] is not an inseparable part of the plaintiff's right' is cognizable."  Canadian Lumber, 2006 Ct. Intl. Trade LEXIS 103, at *20 (quoting Dan B. Dobbs, Law of Remedies 80 (2d ed. 1993)).  Mere hardship incurred in the process of ceasing operations, however, is not sufficient.  Id.  Although Synthes' effort, time and expense in redesigning the nail product used for intertrochanteric fractures might be significant, that is the consequence of a patent infringement.

     No considerable hardship will be imposed on physicians or patients when the injunction is imposed because other competing products would fill any temporary void created by the injunction.

### D.  The Public Interest

     As a general matter, the public maintains an interest in protecting the rights of patent holders, and injunctions serve that interest.  Here, a permanent injunction will further consumer access to more competitive, and thus, presumably better, products by allowing Smith & Nephew the benefit of its patents and the ability to gain greater brand recognition.

Any minor disruption to the distribution of the infringing products will not negatively affect the public or those involved in the chain of distribution because none of the data on the record establishes undisputed and enormous public reliance on Synthes' products and because other, similar products are available in the market.

## IV.  Conclusion

The balance of equities warrants injunctive relief.  Smith & Nephew has demonstrated that it will suffer irreparable harm in the absence of a permanent injunction, harm that cannot be remedied adequately through the recovery of monetary damages. Both the balance of the hardships and the impact on the public interest, although speculative, weigh in favor of Smith & Nephew. For the foregoing reasons, Plaintiff's request for permanent injunction is GRANTED.

**IT IS THEREFORE ORDERED THAT** Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are hereby ENJOINED (i) for the life of the '663 patent, from infringing, inducing the infringement of, and contributorily infringing through the manufacturing, selling, using, offering for sale, importing, distributing or promoting in the United States (A) any version of

11

the Trochanteric Fixation Nail products and colorable variations thereof (*except* (1) fluted versions and (2) versions that have an 11 mm or a 12 mm diameter) (hereinafter, the "TFN products") and (B) any version of the Proximal Femoral Nail products and colorable variations thereof (*except* (1) versions that are solid and non-cannulated and (2) fluted versions) (hereinafter, the "PFN products"), as used for the treatment of intertrochanteric fractures, and from otherwise infringing or inducing others to infringe the '663 patent;

(ii) for the life of the '406 patent, from infringing through the use, selling or offering to sell (A) any version of the TFN products and (B) any version of the PFN products, indicated for use in the treatment of intertrochanteric fractures, and from otherwise infringing or inducing others to infringe the '406 patent; and

(iii) for the life of the '406 patent, from further publication or distribution of any product manual, sales literature, instrumentation, videos or other instructional or promotional materials distributed in the United States that describe or depict how (A) any version of the TFN products or (B) any version of the PFN products, designed, manufactured, sold or offered for sale by the Defendants, their officers, agents, employees, successors or assigns, may be used to treat intertrochanteric fractures (collectively, "instructional materials"), and are

12

further enjoined from communicating in any manner to any
potential or actual purchaser or user of (A) any version of the
TFN products or (B) any version of the PFN products that such
products may be used to treat intertrochanteric fractures.

**IT IS FURTHER ORDERED** that Defendants, within thirty days of the
issuance of this Order, sequester all instructional materials,
all surgical instrumentation within Defendants' possession,
title, custody or control especially designed and adapted for
using (A) any version of the TFN products or (B) any version of
the PFN products, in a method treating intertrochanteric
fractures, and revise instructional materials to eliminate any
reference to the use of (A) any version of the TFN products or
(B) any version of the PFN products, for treatment of
intertrochanteric fractures.

Defendants are **FURTHER ORDERED** to provide notice of this Order to
their officers, directors, agents, servants, representatives,
attorneys, employees, subsidiaries and affiliates, and those
persons in active concert or participation with them, including
any manufacturers, distributors, retailers, and health care
providers who have been involved in the making, using, selling,
offering for sale or importing of (A) any version of the TFN
products or (B) any version of the PFN products, used to treat

13

Dbtf !3;13.dw.13984.TI N.tub!!!!!Epdvnfou3: 5!!!!!Gjrne!1: 0B903117!!!!!Qbhf !25!pg25

intertrochanteric fractures, and to all other persons or entities involved in any way with the making, using, selling, offering for sale or importing of (A) any version of the TFN products or (B) any version of the PFN products, used to treat intertrochanteric fractures, and to notify all persons or entities known by Defendants to lease, own or control surgical instrumentation provided by Defendants for use in inserting into a patient TFN products or PFN products that such instrumentation may not be used to insert into a patient (A) any version of the TFN products, or (B) any version of the PFN products, to treat intertrochanteric fractures.  Defendants shall take whatever means are necessary or appropriate to ensure proper compliance with this Order.

All relief not specifically granted herein is denied.  This is a Final Judgment and is appealable.

So ordered this 28th day of September 2006.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

14

# EXHIBIT N

NOTE: Pursuant to Fed. Cir. R. 47.6, this order
is not citable as precedent. It is a public order.

# United States Court of Appeals for the Federal Circuit

2006-1574

TIVO, INC.,

Plaintiff-Appellee,

v.

ECHOSTAR COMMUNICATIONS CORPORATION, ECHOSTAR DBS
CORPORATION, ECHOSTAR TECHNOLOGIES CORPORATION, ECHOSTAR
LIMITED LIABILITY COMPANY, and ECHOSTAR SATELLITE LLC,

Defendants-Appellants.

ON MOTION

Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and BRYSON,
Circuit Judge.

BRYSON, Circuit Judge.

O R D E R

EchoStar Communications Corporation et al. (EchoStar) move for a stay,
pending appeal, of the permanent injunction entered by the United States District Court
for the Eastern District of Texas. TiVo, Inc. opposes. EchoStar replies. TiVo moves to
strike a portion of EchoStar's reply or, in the alternative, for leave to file a surreply.
EchoStar moves for leave to respond to TiVo's motion. TiVo replies.

TiVo sued EchoStar for infringement of its patent related to hardware and
software components of a digital video recorder (DVR). After a jury verdict of

infringement of the hardware and software claims, the district court entered a judgment and issued a permanent injunction. EchoStar appeals and moves for a stay, pending appeal, of the injunction.

To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor. Hilton v. Braunskill, 481 U.S. 770, 778 (1987). In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990).

Because EchoStar's DVR was found to infringe both the hardware and software claims, to obtain a stay of the injunction, EchoStar must show that it is likely to prevail on its arguments concerning both sets of claims. Based upon our review of the motions papers, and without prejudicing the ultimate determination of this case by the merits panel, EchoStar has met its burden of showing that there is a substantial case on the merits and that the harm factors militate in its favor. Thus, the motion for a stay is granted. Hilton, 481 U.S. at 778.

Accordingly,

IT IS ORDERED THAT:

(1)    EchoStar's motion for a stay is granted.

(2)    TiVo's motion to strike is denied. TiVo's motion for leave to file a surreply is granted.

2006-1574                              - 2 -

(3)    EchoStar's motion for leave to file a response is granted.

FOR THE COURT

OCT – 3 2006
_____
Date

William C. Bryson
Circuit Judge

cc:    Morgan Chu, Esq.
       Donald R. Dunner, Esq.

s8

**FILED**
**U.S. COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

OCT – 3 2006

**JAN HORBALY**
**CLERK**